AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Sarah Link Schultz (*pro hac vice* admission pending)
Travis A. McRoberts (*pro hac vice* admission pending)

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL SHIPHOLDING<br>CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-_____ (   )<br><br>Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (1) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT CERTAIN
PROTECTIONS TO PREPETITION LENDERS, (2) SCHEDULING
A FINAL HEARING, AND (3) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file

this motion (the "<u>Motion</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"),

pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and rule 4001-2 of the Local Bankruptcy Rules (the "Local Rules") for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), seeking, among other things:[2]

### Postpetition Financing

- authorization for the Debtors to obtain up to $16,000,000 in senior secured superpriority debtor-in-possession financing (the "DIP Facility") pursuant to that certain Debtor-in-Possession Credit Agreement, substantially in the form annexed to the order granting the relief requested in the Motion on an interim basis (the "Interim Order") as Exhibit A (as such agreement may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement" and, together with any exhibits attached thereto and other agreements related thereto, including, without limitation, all notices, guarantees, security agreements, related, or ancillary documents and agreements, and any mortgages contemplated thereby, the "DIP Documents"), by and among certain Debtors (in such capacity, the "Borrowers"), SEACOR Capital Corp., as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and DVB Bank SE (or an affiliate), SEACOR Capital Corp., and/or one or more of their designated affiliates or other lender parties thereto from time to time, as lenders (in its/their capacity as such, the "DIP Lenders");

- authorization for the Debtors to execute and deliver the DIP Documents and to perform all other and further acts as may be necessary or appropriate in connection with the same;

- authorization for the Debtors to use up to $7 million (the "Interim Amount") available under the DIP Facility upon entry of this Interim Order to avoid immediate and irreparable harm;

- authorization for the Debtors to grant security interests, liens, and superpriority claims to the DIP Agent, for the ratable benefit of itself and the DIP Lenders, to secure the Debtors' obligations under and with respect to the DIP Facility (the "DIP Obligations");

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement, the Interim Order, or the First Day Declaration (as defined herein), as applicable.

- authorization for the Debtors to use proceeds of the DIP Facility in accordance with, and for the purposes and in the amounts set forth in, the Budget, subject solely to any Permitted Variance (each as defined below);

### Use of Cash Collateral

- authorization for the Debtors to use Cash Collateral pursuant to Bankruptcy Code sections 361, 362, and 363, in accordance with the Budget to, among other things, make the Adequate Protection Payments (as defined below);[3]

### Adequate Protection

- authorization for the Debtors to provide adequate protection to the Prepetition Secured Parties under the Prepetition Facilities (as defined below);

### Certain Modifications and Waivers

- modification of the automatic stay under Bankruptcy Code section 362 on the terms and conditions set forth herein to the extent necessary to implement and effectuate the terms of the DIP Documents and the DIP Orders;

- waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including under Bankruptcy Rule 6004); and

### Final Hearing

- the scheduling of a final hearing (the "Final Hearing"), pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held within twenty-eight (28) days of entry of this Interim Order to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Order" and, together with the Interim Order, the "DIP Orders").

In support of this Motion, the Debtors submit the *Declaration of Erik L. Johnsen, President and Chief Executive Officer, Pursuant to Local Bankruptcy Rule 1007-2 and in Support of First Day Filings* (the "First Day Declaration").  In further support of this motion, the Debtors respectfully represent as follows:

---

[3] "Cash Collateral" shall have the meaning ascribed to it pursuant to Bankruptcy Code section 363(a) and shall consists of the Debtors' cash in which the Prepetition Secured Parties (as defined below) have an interest.

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are Bankruptcy Code sections 105, 361,

362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), Bankruptcy Rules 2002,

4001, and 9014, and Local Rule 4001-2.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors continue to operate their business and manage their properties as

debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee,

examiner, or statutory committee has been appointed in the Chapter 11 Cases.

6.      A description of the Debtors' business and the reasons for filing these Chapter 11

Cases is set forth in the First Day Declaration filed contemporaneously herewith and

incorporated by reference as if fully set forth herein.

## CONCISE STATEMENT PURSUANT TO LOCAL RULE 4001-2

7.      The Debtors submit this concise statement listing certain material terms set forth

in the DIP Documents and the proposed Interim Order.  Specifically, the Debtors believe that the

following financing terms are required to be identified pursuant to Bankruptcy Rule 4001(b), (c),

and (d) and Local Rule 4001-2 and, as discussed in detail herein, are necessary and justified in the context of, and the circumstances relating to, these Chapter 11 Cases.[4]

| Material Provision | Summary Description of Material Provision |
|---|---|
| **DIP Credit Agreement Parties**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | **Borrowers**: International Shipholding Corporation; Enterprise Ship Company, Inc.; Sulphur Carriers, Inc.; Central Gulf Lines, Inc.; Coastal Carriers, Inc.; Waterman Steamship Corporation; N. W. Johnsen & Co., Inc.; LMS Shipmanagement, Inc.; U.S. United Ocean Services, LLC; Mary Ann Hudson, LLC; Sheila McDevitt, LLC; Tower, LLC; Frascati Shops, Inc.; Gulf South Shipping, PTE LTD; LCI Shipholdings, Inc.; and Marco Shipping Company PTE LTD<br><br>**DIP Lenders**: DVB Bank SE (or an affiliate), SEACOR Capital Corp., and/or one or more of their designated affiliates or other lender parties thereto from time to time.<br><br>**DIP Agent**: SEACOR Capital Corp.<br><br>*See* Interim Order at ¶ I.A. |
| **Use of Cash Collateral and Amount of Borrowing**<br><br>Local Rule 4001-2(a)(1)<br><br>Fed. R. Bankr. P. 4001(b)(1)(B), (c)(1)(B) | **Cash Collateral**: The Debtors seek authority to use the Prepetition Secured Parties' Cash Collateral in accordance with the Budget. *See id.* at ¶ 7.<br><br>**Borrowing**: The Debtors seek to borrow up to $16,000,000 in senior secured superpriority debtor-in-possession financing, as follows: (a) authorization for the Debtors to use up to $7,000,000 on an interim basis upon entry of the Interim Order; and (b) authorization for the Debtors to use up to $9,000,000 in up to three separate borrowings after entry of the Final Order. *See id.* at ¶¶ I.A., I.C. |
| **Purpose / Use of Funds**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | Subject to the terms and conditions of the DIP Documents and the Interim Order, the Debtors will use Cash Collateral and all proceeds of the DIP Facility in accordance with, and for the purposes and in the amounts set forth in, the Budget (subject to any Permitted Variances), including to provide for: (i) ongoing working capital and general corporate requirements of the Borrowers and to pay fees, costs, and expenses relating to the Chapter 11 Cases in accordance with the Budget (including, without limitation, professional fees); (ii) all interest and fees required under the DIP Documents, including, without limitation, the reasonable and documented fees, expenses, and indemnities (including reasonable and documented fees and expenses |

---

[4] This summary is qualified in its entirety by the provisions of the DIP Credit Agreement and the Interim Order. Unless otherwise set forth in this summary, capitalized terms used within this summary shall have the meanings ascribed to them in the Interim Order.

| Material Provision | Summary Description of Material Provision |
|---|---|
| | of professionals) of the DIP Agent and the DIP Lenders as provided in the DIP Documents, whether incurred before or after the Petition Date; (iii) repayment in full of all obligations then outstanding under the ING Facility; (iv) the Adequate Protection Payments and (v) certain maintenance fees. *See id.* at ¶¶ 7, 8(b). |
| **Maturity Date and Repayment**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The earliest to occur of (i) January 31, 2017, (ii) the effective date of a plan of reorganization of the Borrowers that is confirmed pursuant to an order entered by the Bankruptcy Court or the consummation of any sale of all or substantially all of the assets of the Borrowers, (iii) the acceleration of the Loans and the termination of the Commitments in accordance with the terms of the DIP Facility, (iv) the appointment by the Bankruptcy Court of a trustee or an examiner with expanded powers in any of the Chapter 11 Cases, and (v) the entry of any order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code. *See* DIP Credit Agreement. |
| **Interest Rate**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | 12% per annum. *See* DIP Credit Agreement. |
| **Fees**<br><br>Local Rule 4001-2(a)(3)<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The DIP Facility contemplates that each Debtor is obligated to pay all fees required under the DIP Documents, including, without limitation, the reasonable and documented fees and expenses (including reasonable and documented fees and expenses of professionals) of the DIP Agent and the DIP Lenders, whether incurred before or after the Petition Date. *See* Interim Order at ¶ 9(b).<br><br>Facility Fee: $525,000 payable to the DIP Agent on behalf of SEACOR Capital Corp. upon the initial funding of the DIP Facility. *See* DIP Credit Agreement.<br><br>DIP Agent Fee: Payable to the DIP Agent for its own account, an administrative agency fee in the amount of $50,000, payable upon the execution and delivery of the DIP Facility. *See* DIP Credit Agreement. |
| **Prepayments**<br><br>Local Rule 4001-2(a)(13) | The DIP Facility contemplates that the Debtors will have the authority, to the extent applicable, to make prepayments of the DIP Facility as and when provided under, and for application in accordance with, the terms of the DIP Documents, including, without limitation, prepayment of the ING Facility as set forth in the DIP Documents. *See* Interim Order at ¶ 24. |

| Material Provision | Summary Description of Material Provision |
|---|---|
| **Duration of Use of Cash Collateral**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B) | Through and including January 31, 2017. *See* DIP Credit Agreement. |
| **Events of Default**<br><br>Local Rule 4001-2(a)(10)<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | Unless all DIP Obligations shall have been indefeasibly paid in full in cash and unless the requisite DIP Lenders have waived such default in accordance with the DIP Documents, any occurrence of an "Event of Default" pursuant to the DIP Documents shall constitute an event of default under the Interim Order and the Final Order (each, an "Event of Default"); *provided that,* notwithstanding the terms of the DIP Documents, the following shall also constitute an "Event of Default:" (i) the violation of any term, provision, or condition of the Interim Order or the Final Order, as applicable, and (ii) the Interim Order or Final Order, as applicable, shall be amended, modified, stayed, or vacated without the written consent of the DIP Agent (and no such consent shall be implied by any action, inaction or acquiescence by any party). *See* Interim Order at ¶ 16.<br><br>If any Event of Default (as defined in the DIP Credit Agreement) occurs and is continuing, and the Collateral Agent (as defined in the DIP Credit Agreement) is requested to enforce any liens or security interests created pursuant to the DIP Documents, the Interim Order, or the Final Order, the Collateral Agent shall use commercially reasonable efforts to exercise remedies with respect to, and foreclose on, the vessels *Bali Sea* and *Banda Sea* before exercising remedies with respect to other DIP Collateral. *See id.* at ¶ 9(f).<br><br>With respect to any sale of the vessel *Green Ridge*, (i) notwithstanding anything in the DIP Credit Agreement to the contrary, fifty-percent (50%) of the net cash proceeds of such sale shall be applied to pay obligations under the Senior Facility, subject to a maximum of $15,000,000; (ii) the remaining net cash proceeds of such sale shall not be required to prepay the DIP Obligations; *provided that* such net cash proceeds are promptly deposited in a blocked account of a Borrower, subject to the sole control of the Collateral Agent, and shall constitute DIP Collateral. *See id.* at ¶ 9(g). |
| **Liens, Priorities, Adequate Protection and Carve Out**<br><br>Local Rule 4001-2(a)(4) | As described herein, the DIP Facility includes, among other liens, priming liens granted pursuant to Bankruptcy Code section 364(d)(1) with respect to the Prepetition Collateral of the Prepetition Secured Parties. Additionally, the DIP Facility contemplates the provision of adequate protection to the Prepetition Secured Parties, including subordinated replacement liens, a superpriority administrative expense claim, and certain cash payments. |

| Material Provision | Summary Description of Material Provision |
|---|---|
| Local Rule 4001-2(a)(5)<br><br>Fed. R. Bankr. P. 4001(b)(1)(B), (c)(1)(B)(i), (ii), (xi) | **Debtor Collateral**:  The DIP Facility contemplates that, as security for the full and timely payment of the DIP Obligations, the Debtors will grant the DIP Agent, for the ratable benefit of itself and the DIP Lenders, valid, binding, continuing, enforceable, unavoidable, and fully perfected security interests in and liens on (collectively, the "DIP Liens") all of the Debtors' assets, including the Prepetition Collateral, and all products and proceeds of the foregoing, whether existing prior to or arising or acquired after the Petition Date; *provided that* (i) the proceeds of the sale of the vessel named "Green Ridge" shall be treated in accordance with the DIP Documents[5] (all of the foregoing after giving effect to the exclusions, the "DIP Collateral"):<br><br>(a) pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on, and security interest in, all unencumbered assets of the Debtors (now or hereafter acquired) and all proceeds thereof; *provided that,* with respect to such DIP Liens on any actions or claims under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 (collectively, "Avoidance Actions"), such DIP Liens shall be subject to the entry of a final order and shall not attach to the actions or claims, but shall, upon entry of the Final Order, attach to the proceeds of Avoidance Actions, whether by judgment, settlement, or otherwise;<br><br>(b) pursuant to Bankruptcy Code section 364(c)(3), a junior lien on and security interest in, any and all tangible and intangible property of the Debtors (other than the Prepetition Collateral of the Prepetition Secured Parties) that was subject to valid, perfected and unavoidable liens and security interests as of the Petition Date or that became subject to valid and unavoidable liens and security interests subsequent to the Petition Date pursuant to Bankruptcy Code section 546(b);<br><br>(c) pursuant to Bankruptcy Code section 364(d)(1), a first priority priming lien on, and security interest in, the Prepetition Collateral of the Prepetition Secured Parties; *provided, however*, that the DIP Liens shall be subject, and junior to, the Permitted Liens (as defined in the DIP Documents) and the Carve Out (as defined below); *provided, further*, that the DIP Liens shall not be, under any circumstance, (i) subject or subordinate to (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551, or (y) unless otherwise provided for in the DIP Documents or this Interim Order, any |

---

[5] [For the avoidance of doubt, and notwithstanding anything to the contrary herein, the DIP Collateral shall not include the Excluded Property (as defined in the DIP Credit Agreement).]

| Material Provision | Summary Description of Material Provision |
|---|---|
| | liens arising after the Petition Date; or (ii) subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise.<br><br>*See id.* at ¶ 10.<br><br>To further assure the full and timely payment of the DIP Obligations, the DIP Facility contemplates granting to the DIP Agent, for the ratable benefit of itself and each of the DIP Lenders (subject solely to the Carve Out), superpriority administrative expense claims against each Debtor (the "DIP Superpriority Claims"), having priority over any and all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b) allowed in the Chapter 11 Cases, including, without limitation, any adequate protection claims.  The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof.  *See id.* at ¶ 11.<br><br>The "Carve Out" shall mean an amount equal to the sum total of:<br><br>(a) all fees required to be paid by the Debtors to the clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code;<br><br>(b) all reasonable and documented fees and expenses incurred by a Trustee under Bankruptcy Code section 726(b) in an aggregate amount not to exceed $25,000;<br><br>(c) all accrued and unpaid claims for fees, costs, and expenses incurred at any time before the Trigger Date or any monthly or other fees payable to persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 (collectively, the "Professional Persons," and such fees, costs, and expenses, the "Professional Fees") to the extent such Professional Fees are allowed by the Bankruptcy Court at any time (*i.e.*, before or after the Trigger Date) on a final basis; and<br><br>(d) all Professional Fees incurred on and after the Trigger Date and allowed by the Bankruptcy Court at any time, whether before or after the Trigger Date, whether by interim order, procedural order, or otherwise; *provided that* the payment of any Professional Fees (excluding fees and expenses of Professional Persons employed by individual members of the Committee) incurred and allowed at any time pursuant solely to this subsection (d) shall not exceed $750,000 in the aggregate (the "Carve Out Cap").  For the avoidance of doubt, any payments actually made in respect of the Carve Out Cap shall reduce the |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | Carve Out Cap on a dollar for dollar basis.<br><br>*See id.* at ¶ 15(a).<br><br>The "Trigger Date" shall mean the first business day after the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement) and delivery of written notice thereof (the "Carve Out Notice") (which may be delivered by electronic mail) by the DIP Agent to the Debtors' counsel.[6] *See id.* at ¶ 15(b).<br><br>**Adequate Protection**: The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Prepetition Collateral (including the Cash Collateral) to the extent of any diminution in the value of such interests:<br><br>(a) Replacement liens (collectively, the "Adequate Protection Liens") on all DIP Collateral subject and subordinate in all respects to the Carve Out, the DIP Liens and the valid perfected Prepetition Liens of the Prepetition Parties on the Prepetition Collateral;<br><br>(b) Superpriority claims (the "Adequate Protection Superpriority Claims") as provided for in Bankruptcy Code section 507(b), subject and subordinate in all respects to the Carve Out and the DIP Superpriority Claims.  The Prepetition Secured Parties shall not receive or retain any payments or other property on account of the Adequate Protection Superpriority Claims, except as otherwise set forth in the Interim Order, unless and until all DIP Obligations have been indefeasibly paid in cash and in full;<br><br>(c) The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551, or (B) any lien or security interest arising after the Petition Date, subject to the DIP Liens and the Carve Out, or (ii) except as otherwise set forth in this Interim Order, subordinated to or made pari passu with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise;<br><br>(d) Adequate protection payments in the form of (i) all interest |

---

[6] For the avoidance of doubt, in the event that a Carve Out Notice is served and the Debtors subsequently receive a determination from the Bankruptcy Court that no Event of Default occurred or was ongoing or that the DIP Agent and/or DIP Lenders were otherwise prohibited from exercising rights or remedies under the DIP Documents, the Professional Fees incurred from the Trigger Date through the date of any such determination shall not count against the Carve Out Cap.

| Material Provision | Summary Description of Material Provision |
|---|---|
| | payments at the applicable non-default rates due and payable under the Prepetition Facilities, and (ii) reasonable and documented professional fees and expenses as allowed under the applicable Prepetition Facility, whether incurred before or after the Petition Date, without the need to file retention motions or fee applications (collectively, the "Adequate Protection Payments"); and<br><br>(e) The Debtors shall comply, in all material respects, with the covenants set forth in the Prepetition Facilities, including, without limitation, reporting requirements, the maintenance of insurance, and the vessel mortgages.<br><br>*See id.* at ¶ 12. |
| **Reporting Covenants, Affirmative Covenants and Negative Covenants**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The Debtors will continue to provide the agents under the Prepetition Facilities financial and other reporting substantially in compliance with the Prepetition Facilities (all such reporting, the "Financial Reports") as well as any reporting provided to the DIP Agent and/or the DIP Lenders. *See id.* at ¶ 25. |
| **Financial Covenants**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | With respect to the Budget, commencing with August 18, 2016 and on every other Thursday thereafter (each such day, a "Budget Testing Date"), for the two-week period ending on a Saturday immediately preceding such Budget Testing Date (each such two-week or shorter period, the "Budget Testing Period"), the Borrowers will not have permitted the actual disbursements (net of professional fees) for each line item (other than the professional fees) during the Budget Testing Period to be more than fifteen percent (15%) for the budgeted amount of the projected disbursements (net of professional fees) for such line item in the Budget for such period.<br><br>On each Budget Testing Date, the Borrower will cause the amount of the actual receipts for each line item during the Budget Testing Period to be not less than fifteen percent (15%) for the budgeted amount of the projected receipts for such line item set forth in the Budget for such period. *See* DIP Credit Agreement. |
| **Milestones**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(vi) | The Borrower will cause and ensure that the following actions are completed on a timely basis, in each case subject to court availability:<br><br>1) either the completion of the actions set forth in this paragraph (a) or the actions set forth in paragraph (b) immediately below; *provided that* the Borrowers' determination of whether to pursue the actions set forth in paragraph (a) or (b) must be reasonably acceptable to |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | the Required Lenders: |

(a) on or before the date that is seventy-five (75) days after the Petition Date, the Borrowers shall have filed a plan of reorganization and a related disclosure statement that are, in each case, in form and substance reasonably acceptable to the Required Lenders (respectively, the "<u>Acceptable Plan of Reorganization</u>" and the "<u>Acceptable Disclosure Statement</u>");

(b) on or before the date that is 100 days after the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Required Lenders, approving the Acceptable Disclosure Statement;

(c) on or before the date that is 140 days after the Petition Date, the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Required Lenders (such date, the "<u>Confirmation Date</u>"); and

(d) on or before the date that is twenty-one (21) days after the Confirmation Date, the effective date of the Acceptable Plan of Reorganization shall have occurred;

2) the following sale milestones (which milestones may be fulfilled in lieu of the milestones set forth in clause (a) above):

(a) or before the date that is seventy-five (75) days after the Petition Date (the "<u>Sale Motion Filing Date</u>"), the Borrowers shall have filed a motion (the "<u>Sale Motion</u>"), in form and substance reasonably satisfactory to the Required Lenders, seeking the entry of an order (the "<u>Bidding Procedures Order</u>") (i) approving bidding and auction procedures in connection with a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "<u>363 Sale</u>") and (ii) scheduling the date for an auction, if necessary, and a hearing to consider approval of the 363 Sale;

(b) on or before the date that is 100 days after the Petition Date, the Bankruptcy Court shall have entered the Bidding Procedures Order, which Bidding Procedures Order (including the bidding procedures contained therein) shall be in form and substance reasonably satisfactory to the Required Lenders in their sole discretion and shall specify that the Lenders, and any designees thereof, shall have the unconditional right to "credit bid" (to the fullest extent permitted by law) for any and all assets offered for sale by the Debtors and that any other bids must include

| Material Provision | Summary Description of Material Provision |
|---|---|
| | sufficient cash purchase price to pay off the Obligations in cash and in full upon closing; |
| | (c) bids shall be due on or before the date that is twenty-five (25) days after entry of the Bidding Procedures Order (the "Bid Due Date"); |
| | (d) on or before the date that is ten (10) Business Days after the Bid Due Date, the Bankruptcy Court shall have entered an order approving the 363 Sale (the "Sale Order"), which Sale Order shall be in form and substance reasonably satisfactory to the Required Lenders; and |
| | (e) on or before the date that is twenty-five (25) days after the Bid Due Date, the Borrowers shall have consummated the 363 Sale with the winning bidder(s); |
| | 3) on or before the date that is 15 days after the Petition Date, the Borrowers shall have contacted for purposes of negotiations (i) authorized union representatives seeking modifications with respect to collective bargaining agreements, and (ii) authorized representatives of retirees seeking modifications with respect to retiree benefits; and |
| | 4) on or before the date that is ninety (90) days from the Petition Date, the Borrowers shall have either (i) reached agreements in good faith with the parties referred to in clause (i) and (ii) of paragraph (c) immediately above or (ii) filed any motions needed to approve such agreements, or (ii) filed any motions needed to authorize relief from the Bankruptcy Court pursuant to Bankruptcy Code section 1113 and/or 1114; *provided that* in the case of (i) and (ii) above, the agreements and/or motions shall be in a form and substance reasonably satisfactory to the Required Lenders.<br><br>*See* DIP Credit Agreement. |
| **Conditions Precedent to Closing and Borrowing, Including Budget Provisions**<br><br>Local Rule 4001-2(a)(2) | The Debtors have provided the DIP Lenders with a weekly statement of receipts and disbursements of the Debtors on a consolidated basis for the thirteen (13) weeks commencing with the first week following the Petition Date, including (i) individual line items for "Total Disbursements," and (ii) the anticipated uses of the proceeds of the DIP Loans and Cash Collateral for such period, in form and substance reasonably satisfactory to the DIP Agent (substantially similar to the form of the budget annexed hereto, the "Budget"). No less frequently than every two (2) week period, the Debtors will provide an updated |

| Material Provision | Summary Description of Material Provision |
|---|---|
| Fed. R. Bankr. P. 4001(c)(1)(B) | Budget for the following thirteen (13) week period to the DIP Agent and the Prepetition Secured Parties (the "Proposed Budget"). *See* Interim Order at ¶ 15(d). |
| **Indemnification and Expenses**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(ix) | The Debtors will, jointly and severally, be obligated to indemnify and hold harmless the DIP Agent, each DIP Lender, and each of their respective affiliates, officers, directors, fiduciaries, employees, agents, advisors, attorneys, and representatives from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, out-of-pocket fees and disbursements of counsel) in connection with any investigation, litigation, or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility or the transactions contemplated in the DIP Documents, except to the extent resulting from the bad faith, gross negligence, or willful misconduct of the DIP Agent or a DIP Lender. *See id.* at ¶ 27. |
| **Release, Waivers, and Limitations**<br><br>Local Rule 4001-2(a)(8)<br><br>Local Rule 4001-2(f)<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iii) and (c)(1)(B)(viii) | The Debtors make certain customary admissions and stipulations with respect to the aggregate amount of prepetition indebtedness owing to the Existing Lenders and the validity, enforceability and priority of the liens and security interests granted to the Existing Agent to secure such indebtedness.<br><br>The DIP Credit Agreement requires admissions and stipulations by the Debtors with respect to the aggregate amount of prepetition indebtedness owing to the Prepetition Secured Parties and the validity, enforceability, and priority of the liens and security interests granted to secure such indebtedness, that are binding (i) upon the Debtors, their respective estates and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee")) under all circumstances and for all purposes, and (ii) upon all other parties in interest, including any Trustee and the Committee, unless the Committee or any other party in interest (including any Trustee), in each case, with requisite standing, has duly filed an adversary proceeding or contested matter by no later than the date that is (a) in the case of any such adversary proceeding or contested matter filed by a party in interest with requisite standing other than the Committee, seventy-five (75) days after the date of entry of the Interim Order, (b) in the case of any such adversary proceeding or contested matter filed by the Committee, sixty (60) days after the appointment of the Committee, and (c) any such later date agreed to in writing by the respective Prepetition Secured Party (or the agent under the respective Prepetition Facility, as applicable) in its sole and absolute discretion or as ordered by the Bankruptcy Court upon a motion filed and served within any applicable period of time set forth |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | in the Interim Order. *See id.* at ¶¶ 6(a), 6(b). |
| | The Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative) and any party acting by, though, or under the Debtors or their estates, forever and irrevocably (a) release, discharge, waive, and acquit the current and future DIP Agent and the DIP Lenders, each of their respective participants, affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, and in each case solely in their capacities as such, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to any actions taken on or before the Petition Date with respect to, or, after the Petition Date, taken in compliance with, the DIP Facility, the DIP Documents, the DIP Orders, or the transactions contemplated hereunder or thereunder, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the DIP Obligations and the DIP Liens. Notwithstanding the foregoing, nothing in this provision shall be deemed to release, waive, discharge, or acquit any willful misconduct, fraud, or gross negligence on the part of the DIP Agent or the DIP Lenders. *See id.* at ¶ 26. |
| | The DIP Documents and the provisions of the Interim Order shall be binding upon all parties-in-interest in the Chapter 11 Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee and any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, the Debtors' estates and the Debtors' respective successors and assigns (including any Chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors, or similar responsible person or similar designee or litigation trust hereinafter appointed or elected for the estates of the Debtors) and shall inure to the respective benefit |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | of all of the foregoing. |
| | In determining to make any loan under the DIP Documents, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to or in connection with the Debtors' restructuring efforts or the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender, or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in Bankruptcy Code section 101(2)). *See id.* at ¶ 31. |
| **Limitations on Funding** <br><br> Local Rule 4001-2(a)(9) | Notwithstanding anything herein or in any other order by the Bankruptcy Court to the contrary, no borrowings under the DIP Facility, Cash Collateral, or the Carve Out Cap may be used: <br><br> (a) in connection with, or to finance in any way, any claim, cause of action, including Challenges and Defenses, counterclaim, investigation, action, suit, arbitration, proceeding, application, motion, or other litigation of any type (i) objecting to, challenging or contesting in any manner, invalidating, setting aside, avoiding, subordinating or raising any defenses to, in whole or in part, the amount, validity, extent, priority, enforceability or perfection of the DIP Obligations, the Prepetition Documents, the DIP Documents, the DIP Liens, the Prepetition Obligations or the Prepetition Liens, the DIP Superpriority Claims, or any other rights or interests of any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, (ii) asserting or seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Agent or the DIP Lenders or any of their respective officers, directors, employees, agents, affiliates, representatives, attorneys, advisors, assigns, or successors with respect to any transaction, occurrence, omission or action involving the Debtors; *provided* that nothing in this clause (ii) shall prohibit the Debtors from seeking to enforce the terms of this Interim Order or the Final Order, as applicable, or from exercising their fiduciary obligations as debtors in |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | possession, including, without limitation, the duty to maximize value for the benefit of all stakeholders,  or (iii) contesting, preventing, hindering, impairing, interfering with, or otherwise delaying the recovery by any DIP Lender on account of the DIP Obligations or exercise by any of the DIP Agent or any of the DIP Lenders of any rights or remedies under the DIP Documents or this Interim Order; *provided* that, notwithstanding anything to the contrary herein, no more than $75,000 in the aggregate of the borrowings under the DIP Facility, Cash Collateral, or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Prepetition Secured Parties; <br><br>(b) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or any of the lenders under the Prepetition Facilities hereunder or under the DIP Documents, in each of the foregoing cases, without such parties' prior written consent; or <br><br>(c) to pay any amount on account of any claims arising prior to the Petition Date unless such payment is approved by an order of this Court (including hereunder). <br><br>*See id.* at ¶ 18. |
| **Funding of Non-Debtor Affiliates** <br><br>Local Bankruptcy Rule 4001-2(a)(15) | No borrowings under the DIP Facility will be transferred to any non-Debtor affiliate without the prior written consent of the DIP Agent and the Prepetition Secured Parties; *provided*, that the Debtors shall be permitted to transfer up to $100,000 to CG Rail in the ordinary course of business upon three (3) business days' written notice to the DIP Agent and the Prepetition Secured Parties; *provided further* that, with respect to any transfers in excess of $100,000, the Debtors shall be permitted to make a secured loan in an amount of up to $1 million to CG Rail upon three (3) business days' written notice to the DIP Agent and the Prepetition Secured Parties, which loan shall be evidenced by a note, the form of which must be approved by the DIP Agent and the Prepetition Secured Lenders in their reasonable discretion.  *See id.* at ¶ 23. |
| **Automatic Stay** <br><br>Local Bankruptcy Rule 4001-2(c) <br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iv) | The DIP Facility contemplates that the automatic stay provisions of Bankruptcy Code section 362 will be vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to (i) take all actions necessary or desirable to implement the DIP Documents and the terms of this Interim Order, and (ii) unless the Bankruptcy Court orders otherwise during the Remedies Notice Period, (x) immediately upon the occurrence of an Event of Default, |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | (A) declare an Event of Default and terminate any further commitments under the DIP Facility, (B) declare the termination of the DIP Documents as to any future liability or funding obligation of the DIP Agent or the DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), (C) declare all DIP Obligations to be immediately due and payable, and (D) charge the default rate of interest on the DIP Loans; and (y) upon the occurrence of an Event of Default and providing seven (7) calendar days' prior written notice (which may be delivered by electronic mail) (the "Default Notice") to counsel to the Debtors, counsel to the Committee, counsel to the Prepetition Secured Parties, and the U.S. Trustee (such seven (7) calendar day period, the "Remedies Notice Period") (which period shall run concurrently with any notice required to be provided under the DIP Documents), exercise all rights and remedies provided for in the DIP Documents and under applicable law, including foreclosing on the DIP Collateral. |
| | Upon receipt of the Default Notice, parties in interest shall be entitled to seek an emergency hearing before the Bankruptcy Court solely to contest the occurrence of an Event of Default. If parties in interest fail to timely contest the occurrence of an Event of Default, or the Bankruptcy Court, after notice and a hearing, declines to stay enforcement of the Event of Default, at the end of the Remedies Notice Period, the automatic stay as to the DIP Agent and DIP Lenders shall be vacated without further action by the Bankruptcy Court. |
| | Upon receipt of a Default Notice, the Debtors will have no right to issue future payments or use any proceeds of the DIP Facility or any cash securing the DIP Facility without the consent of the DIP Agent, other than funding toward (i) ordinary course operations to the extent that the Debtors, in consultation with their financial advisors, deem that such funding is necessary to avoid immediate and irreparable harm to their estates; and/or (ii) satisfaction of the DIP Obligations and the Carve Out; *provided, that*, for the avoidance of doubt, professional fees and adequate protection payments shall not constitute "necessary" funding for purposes of clause (i) above. |
| | Upon (i) the occurrence and during the continuance of an Event of Default under the DIP Credit Agreement and expiration of the Remedies Notice Period, (ii) a violation of the terms of this Interim Order or Final Order, or (iii) this Interim Order or the Final Order being modified, stayed, or vacated without the written consent of the Prepetition Secured Parties (and no such consent shall be implied by any action, inaction, or acquiescence by any party), the Prepetition Secured Parties shall have no further obligation to permit the continued use of Cash Collateral; *provided that* nothing herein shall preclude the |

| Material Provision | Summary Description of Material Provision |
|---|---|
| | Debtors from seeking authority to use Cash Collateral on a non-consensual basis or the Prepetition Secured Parties from objecting to such use. *See id.* at ¶ 17. |
| **Section 506(c) Waiver**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(x) | Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Senior Facility Collateral, the DVB Collateral, the Senior Facility Parties, or the DVB Parties pursuant to Bankruptcy Code sections 105(a) or 506(c), or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Senior Facility Parties or the DVB Parties. *See id.* at ¶ 20. |
| **Section 552(b) Waiver**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | Subject to and effective upon entry of the Final Order, each of the Senior Facility Parties and the DVB Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Senior Facility Parties or the DVB Parties. *See id.* at ¶ 19. |

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek entry of the Proposed Orders authorizing them to enter into a credit agreement pursuant to the DIP Facility and approving the terms and conditions set forth in the DIP Credit Agreement, which will allow them to obtain the funds available through the DIP Facility pursuant to the terms set forth in this Motion, the DIP Credit Agreement, the Interim Order, and the Final Order.

## BASIS FOR RELIEF

9.      The Debtors seek two primary forms of relief: (a) approval of the DIP Facility and (b) the use of Cash Collateral.  Because the Debtors propose to obtain financing under the DIP Facility that primes liens that may exist on the Debtors' property, the approval of the DIP Facility is governed by Bankruptcy Code sections 364(c) and (d).  Pursuant to Bankruptcy Code

section 364(c), a court may authorize a debtor in possession to obtain credit or incur debt, the

repayment of which is (a) entitled to superpriority administrative expense status or (b) is secured

by a senior lien on (i) unencumbered property, (ii) a junior lien on encumbered property, or (iii) a

combination of the foregoing, if a debtor in possession is unable to obtain postpetition credit on

an unsecured basis.  A court may authorize a debtor in possession to obtain credit or incur debt

secured by a lien equal or senior to a lien on estate property pursuant to Bankruptcy Code section

364(d) if (a) the debtor in possession is unable to otherwise obtain postpetition credit and (b) the

interest of the holder of the pre-existing lien is adequately protected.  With regard to the use of

Cash Collateral, the Motion is governed by sections 363(c)(2) and 363(e) of the Bankruptcy

Code, which allow for approval of such use in these chapter 11 proceedings because the

Prepetition Secured Parties are adequately protected.

**A.      The DIP Facility Should be Approved Under Section 364(c)**

10.      Bankruptcy Code section 364(c) authorizes a debtor, in the exercise of its

business judgment, to incur secured debt if the debtor has been unable to obtain adequate

unsecured credit, and the proposed borrowing is in the best interests of its estate.  11 U.S.C.

§ 364(c); *see also, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990)

(finding courts "permit debtors-in-possession to exercise their basic business judgment"); *In re*

*Simasko Prod. Co.*, 47 B.R. 444, 448-49 (D. Colo. 1985) (authorizing interim financing where

debtor's business judgment determined necessary and reasonable); *Richmond Leasing Co. v.*

*Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985); *see also* 3 Collier on Bankruptcy

¶ 364.03 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

11.      To determine whether a debtor may obtain financing under section 364(c), courts

apply a three-prong test:

a.    the debtor is unable to obtain unsecured credit solely under section 364(b) (*i.e.*, by granting a lender administrative expense priority);

b.    the credit transaction is necessary to preserve the assets of the estate; and

c.    the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (citation omitted) (applying above test and holding "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit acquired is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere"); *Ames Dep't Stores*, 115 B.R. at 37-39. Here, the relief requested in the Debtors' Motion satisfies each of these prongs.

12.    *First*, the Debtors are unable to obtain financing on an unsecured basis. To meet this prong, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c). *Bray v. Shenandoah Fed. Savs. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtors could not obtain credit as an administrative expense); *Ames Dep't Stores*, 115 B.R. at 40 (approving financing facility and section 364(c)

21

standards satisfied where debtor approached four lending institutions, was rejected by two, and selected the most favorable of the two offers received).

13.     Despite their best efforts, the Debtors are unable to obtain financing on an unsecured basis.  The Debtors attempted to secure financing on terms other than a secured super-priority basis, but given the Debtors' asset base and balance sheet, they were unable to do so. The Debtors have been unable to obtain (a) adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense; (b) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien; or (c) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case, on more favorable terms and conditions than those provided in the DIP Facility.  In addition, the Debtors are unable to obtain credit for borrowed money without granting priming liens on the Debtor Collateral.  Indeed, no sophisticated lender, including the Prepetition Secured Parties, was willing to extend financing on anything less than a priming basis accompanied by superpriority claims.  Accordingly, the Debtors believe entering a DIP Facility with superpriority administrative claims, consensual priming liens on encumbered property, junior priority liens on the Debtors' encumbered property, and first priority liens on the Debtors' unencumbered property is appropriate under the circumstances of these Chapter 11 Cases.

14.     *Second*, as detailed in the First Day Declaration, the DIP Facility is necessary to preserve the assets of the estates, as it will allow the Debtors to continue, among other things, the orderly operation of the Debtors' business and the Chapter 11 Cases, and to otherwise satisfy their working capital requirements.  *See* First Day Declaration at ¶ 58.  Without immediate access to new borrowing relief, the Debtors' business operations, their assets, and the Chapter 11

Cases in general would be in serious jeopardy. *Id.* The new liquidity offered by the proposed DIP Facility will enable the Debtors to maintain and ultimately increase the value of their assets and successfully administer the Chapter 11 Cases through the bankruptcy process. *Id.* Thus, approval of the DIP Facility is crucial to maximizing the value of the Debtors' estates.

15.    *Third*, the terms of the DIP Facility are fair, reasonable, and appropriate. The proposed DIP Facility provides generally that the security interests and superpriority administrative expense claims granted to the DIP Lenders are subject to the Carve Out described above. In *Ames Department Stores*, the Bankruptcy Court found that such "carve outs" are not only reasonable but are necessary to insure the debtors' estates are adequately assisted by counsel and other professionals. *Ames*, 115 B.R. at 40.

16.    Likewise, the Debtors believe the fees and other charges required by the DIP Lenders under the DIP Facility are reasonable and appropriate under the circumstances. The proposed fees under the DIP Facility are within the parameters of market fee structures for similar postpetition financing. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Bankruptcy Code section 364. *See Resolution Trust Corp. v. Official Unsecured Creditors Committee (In re Defender Drug Stores, Inc.)*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) (approving a debtor in possession financing facility that included a lender "enhancement fee"); *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 773, 783 (Bankr. E.D.N.Y. 2005) (postpetition financing arrangements under 364 "may include the payment of a loan commitment fee and reimbursement of reasonable fees and expenses in the event that the financing arrangement is not consummated."); *In re Mayco Plastics Inc.*, 379 B.R. 691, 698-99 (Bankr. E.D. Mich. 2008) (section 364 provides "certain incentives that a trustee or debtor in possession may offer, with court approval, to induce

potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate . . . . The greater the debtor's inability to obtain the necessary post-petition financing, the greater the inducements the debtor may offer to obtain such debt. Similarly, the greater the risk undertaken by the post-petition lender, the more heightened its need becomes to obtain the additional inducements that sections 364(c) and (d) permit the Court to authorize a debtor to offer.") (citation and internal quotation marks omitted). Thus, the terms of the DIP Facility are in the realm of the incentives contemplated by section 364 to induce potential lenders to undertake the risks involved in providing postpetition financing to a bankruptcy estate, and should be approved.

17.     In addition to the three-prong test, courts also examine whether the Debtors exercised sound business judgment in obtaining the credit prior to approval under section 364(c); this standard affords considerable deference to the Debtors' decision, provided that an agreement to obtain secured credit does not undermine the policies underlying the Bankruptcy Code. *See*, *e.g.*, *Ames Dept. Stores, Inc.*, 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under [Bankruptcy Code] section 364 is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting approval of postpetition financing requires, *inter alia*, "sound and reasonable business judgment"); *In re YL W. 87th Holdings I, LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and

receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *see also In re Barbara K Enters., Inc.*, 2008 WL 2439649, at \*14 ("[The] normal function in reviewing requests for post-petition financing is to defer to a debtor's own business judgment so long as a request for financing does not leverage the bankruptcy process and unfairly cede control of the reorganization to one party in interest.") (citation and internal quotation marks omitted). Indeed, bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R. at 974 (finding debtor's financing served as "framework" and "cornerstone" for debtor's plan of reorganization and reflected debtor's "sound and prudent business judgment"). To be sure, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

18.    In evaluating a debtor's business judgment, the court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *aff'd*, No. 06-302-SLR, 2008 WL 522516 (Feb. 27, 2008), *vacated on other grounds*, 607 F.3d 957 (3d Cir. 2010); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting courts should not second guess a debtor's business decision when the decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code"). Moreover, courts recognize a debtor is entitled (if not required) to consider non-economic benefits offered by a proposed postpetition facility:

> Although all parties, including the Debtors and the Committee, are
> naturally motivated to obtain financing on the best possible terms,
> a business decision to obtain credit from a particular lender is
> almost never based purely on economic terms. Relevant features of
> the financing must be evaluated, including noneconomic elements
> such as the timing and certainty of closing, the impact on creditor
> constituencies and the likelihood of a successful reorganization.

In re ION Media Networks, Inc., No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July

6, 2009).

19.    In accordance with this standard, the Debtors' determination to move forward

with the DIP Facility is plainly an exercise of their sound business judgment entitled to deference

from the Court and should be approved.  Specifically, and in the face of depleted liquidity, the

Debtors and their advisors undertook an analysis of the Debtors' projected financing needs and

determined the Debtors would require significant postpetition financing to support their

operational and restructuring activities.  Taking this conclusion in conjunction with their overall

efforts to determine a path forward for these chapter 11 reorganizations, the Debtors negotiated

the DIP Credit Agreement with the DIP Lenders in good faith, at arm's length, and with the

assistance of their advisors.  At the conclusion of the negotiations, the Debtors determined that

the resulting DIP Facility provides the Debtors with the capital necessary to meet their working

capital needs and the costs of these Chapter 11 Cases and is the best financing option the Debtors

would be able to obtain given the circumstances.

20.    There can be no reasonable dispute that the DIP Facility is an important step

toward achieving the Debtors' goal and the underlying purpose of chapter 11—reorganization

and continuation of the business as a going concern.  The DIP Facility will support not only the

Debtors' near term liquidity needs, but will also "bridge" the Debtors' operations to a value-

maximizing restructuring transaction, as reflected in the milestones set forth in the DIP Credit

Agreement. *See ION Media*, 2009 WL 2902568, at *4 ("[C]ooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan.").

21.    In sum, the Debtors submit entry into the DIP Facility is in the best interests of the Debtors' estates, is necessary to preserve the value of estate assets, and is an exercise of the Debtors' sound and reasonable business judgment.   The Debtors respectfully request that the Court authorize the Debtors to provide the DIP Lenders superpriority administrative expense status for any obligations arising under the DIP Credit Agreement as provided for in Bankruptcy Code section 364(c)(1).

**B.    The Prepetition Secured Parties' Consent and the Existence of Adequate Protection Supports Approval of the DIP Facility Under Section 364(d)(1)**

22.    The DIP Facility should also be approved under section 364(d)(1) because the Debtors' two largest Prepetition Secured Parties, the Senior Facility Lenders and the DVB Lenders, have consented to such relief, and the Debtors anticipate that the remaining Prepetition Secured Parties will consent prior the hearing on this motion.   To the extent that the remaining Prepetition Secured Parties, the Capital One Lender and the Citizens Lender, do not consent, the DIP Facility should be approved under section 364(d)(1) because the interests of the existing lien holders are adequately protected by the collateral at issue and the terms of the DIP Credit Agreement. *See* 11 U.S.C. § 364(d)(1).

23.    When determining whether to authorize a debtor to obtain credit secured by a "priming" lien pursuant to section 364(d), courts focus on whether the transaction will enhance the value of the debtor's assets, considering a number of factors, including, without limitation:

a.    whether the party subject to a priming lien has consented to such treatment or is otherwise adequately protected;

      b.      whether alternative financing is available on any other basis (i.e., whether any better offers, bids or timely proposals are before the court);

      c.      whether the proposed financing is necessary to preserve estate assets and is necessary, essential, and appropriate for continued operation of the debtor's business;

      d.      whether the terms of the proposed financing are reasonable and adequate given the circumstances of both the debtor and proposed lender(s); and

      e.      whether the proposed financing agreement was negotiated in good faith and at arm's length and entry therein is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors.

*See, e.g.*, *Ames Dep't Stores, Inc.*, 115 B.R. at 37-39; *Barbara K. Enters.*, No. 08- 11474, 2008 WL 2439649 at *13 (Bankr. S.D.N.Y. Jun. 16, 2008); *In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); *see also* 3 Collier on Bankruptcy ¶ 364.05 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

24.     As shown above, factors (b) through (e) have been sufficiently met.  The Senior Facility Lenders and the DVB Lenders have consented to priming.  Thus, the only remaining factor for the Debtors to satisfy is (a) with respect to the Capital One Lender and the Citizens Lender, to the extent they do not consent to priming prior to the interim hearing on this motion. As discussed below, factor (a) is satisfied in these chapter 11 cases because the Debtors will provide Adequate Protection for the Capital One Lender's and the Citizen Lender's interests in the collateral subject to priming liens arising under the DIP Facility upon which they held a security interest on the Petition Date.

25.     What constitutes adequate protection is decided on a case-by-case basis, and adequate protection may be provided in various forms, including payment of adequate protection fees, payment of interest, or granting of replacement liens or administrative claims.  *See, e.g.*, *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("The determination of adequate

protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and internal quotation marks omitted); *In re Realty Sw. Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (stating determination of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process" (citations omitted)).

26.     Here, the Senior Facility Lenders and the DVB Lenders have affirmatively consented to the priming of their prepetition secured interests.  In addition, the DIP Facility will provide adequate protection of all Prepetition Secured Parties' interests in the prepetition collateral in several critical ways.  First, the DIP Lenders have agreed to use commercially reasonable efforts to seek recovery under the DIP Facility against the *Bali Sea* and the *Banda Sea* in the first instance.  These vessels have minimal prepetition liens of $1.8 million against them, which liens will be satisfied either from insurance proceeds or, alternatively from the proceeds of the DIP Facility, rendering them not subject to the liens of the Prepetition Secured Parties.  Second, all Prepetition Secured Parties will receive superpriority administrative claims pursuant and corresponding adequate protection liens to protect against diminution in value, if any, during the life of the Debtors' chapter 11 cases.  These administrative expense claims will be senior to all other superpriority claims and other administrative expense claims except the DIP Superpriority Claim and the Carve Out.  Third, the DIP Facility will provide funds for capital expenditures necessary to maintain the Prepetition Collateral, which preserves the Prepetition Secured Parties' collateral and protects such collateral from the risk of loss in value.  Fourth, the proceeds of the DIP Facility will give the Debtors the ability to operate, providing an opportunity to maximize value, including with respect to the Prepetition Secured Parties' prepetition

collateral.  Fifth, the DIP Facility will permit the Debtors to pay the Prepetition Secured Parties certain adequate protection payments during the pendency of these Chapter 11 Cases.  Specifically, the Prepetition Secured Parties will receive periodic interest payments at the applicable non-default rates due and payable under the Prepetition Facilities as well as reasonable and documented professional fees and expenses as allowed under the applicable Prepetition Facility.  Sixth, the DIP Facility requires certain financial reporting, which will inure to the benefit of the Prepetition Secured Parties.

27.    The Debtors, accordingly, respectfully submit that (a) the foregoing adequate protection satisfies the requirements of Bankruptcy Code section 364(d), and (b) the Court should approve the DIP Facility as a sound and reasonable exercise of the Debtors' business judgment.

**C.    The Debtors Should Be Authorized To Use Cash Collateral Immediately**

28.    In connection with their need for DIP financing, the Debtors also require the immediate use of Cash Collateral.  Pursuant to Bankruptcy Code section 363(c)(2), a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  The use of the cash collateral, however, is generally conditioned upon the maintenance of adequate protection of the interests.  *See id.* §§ 363(d)(1), (e).

29.    It is clear that the Debtors have satisfied the requirements of Bankruptcy Code sections 363(c)(2) and (e), and should be authorized to use the Cash Collateral as contemplated in the DIP Credit Agreement on an immediate and interim basis.  First, as noted above, the DIP Lenders support the Debtors' use of the Cash Collateral subject to the conditions set forth in the

DIP Credit Agreement.   Second, the Prepetition Secured Parties' have consented to this relief and their interests in the Cash Collateral are adequately protected as described above.

30.     Finally, the Debtors' request for interim and immediate authorization to use $7 million of the Cash Collateral pursuant to the terms of the proposed Interim Order is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P. 4001(b)(2), (c)(2).   As described in greater detail in the First Day Declaration, the Debtors cannot maintain the value of their estates during the pendency of these Chapter 11 Cases without immediate access to cash.   The Debtors will be unable to operate their businesses as a going concern in the near term without the ability to access the DIP Facility and use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.   By contrast, if the Debtors are immediately permitted to use the Cash Collateral, the Debtors will use the liquidity to, among other things, procure goods and services from vendors, continue operational projects, pay their employees, and satisfy other working capital needs during these Chapter 11 Cases.   In short, the Debtors' ability to finance their operations and the availability of sufficient working capital and liquidity to the Debtors through the use of the DIP Facility and Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors' estates.

31.     In light of the established immediate need to avoid irreparable harm to the Debtors' estates pending the Final Hearing pursuant to Bankruptcy Rules 4001(b) and 4001(c), the Court should grant the Debtors' request an expedited preliminary hearing and immediate authorization to access the Cash Collateral as set forth in the DIP Credit Agreement.

**D.     The DIP Lenders Should Be Deemed Good Faith Lenders Under Section 364(e)**

32.     Bankruptcy Code section 364(e) protects a good faith lender's right to collect on loans extended to a debtor, and its rights in any lien or security interest securing those loans,

31

even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.  11 U.S.C. § 364(e).

33.      As detailed above, the DIP Facility is the result of the Debtors' reasonable and informed determination that the DIP Lenders offered the most favorable terms on which to obtain needed postpetition financing, and extended arm's length, good faith negotiations between and among the Debtors and the DIP Lenders.  The terms and conditions of the DIP Facility are fair and reasonable, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code and pursuant to the Budget.  Further, no consideration is being provided to any party to the DIP Facility other than as described herein.  Accordingly, the Court should find the DIP Lenders are "good faith" lenders within the meaning of Bankruptcy Code section 364(e), and are entitled to all of the protections afforded thereby.

**E.      The Scope of the Carve Out is Appropriate**

34.      The proposed DIP Facility subjects the security interests and administrative expense claims of the DIP Lenders to the Carve Out.  Such carve outs for professional fees have been found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can obtain appropriate assistance from counsel and other professionals.  *See, e.g.*, *Ames Dep't Stores*, 115 B.R. at 40; *In re SunEdison, Inc.*, No 16-10992 (SMB) (Bankr. S.D.N.Y. Apr. 21, 2016); *In re United Retail Group, Inc.*, No. 12-10405 (Bankr. S.D.N.Y. Feb. 23, 2012) [Docket No. 243]; *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Feb. 16, 2012) [Docket No. 375].  The Carve Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring assets remain for the payment of U.S. Trustee fees and professional fees notwithstanding the grant of superpriority and administrative liens and claims under the DIP Facility.

**F.      Request for Modification of the Automatic Stay**

35.      The proposed Interim Order contemplates the modification of the automatic stay (to the extent applicable) to the extent necessary to implement its terms.  Stay modification provisions of this sort are ordinary and usual features of DIP financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances.  Although Bankruptcy Code section 362 provides for an automatic stay upon the filing of a bankruptcy petition, the Debtors respectfully request the Court to authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order and DIP Credit Agreement.

## ADEQUACY OF THE BUDGET PURSUANT
## (LOCAL BANKRUPTCY RULE 4001-2(h))

36.      The Debtors are required to use Cash Collateral and the proceeds of the DIP Facility pursuant to the Approved Budget.  The Debtors have reason to believe that the Approved Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the DIP Facility and the Approved Budget.

## DEBTORS SATISFY BANKRUPTCY RULE 6003

37.      Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ." Fed R. Bankr. P. 6003(b).  The Debtors submit that, because the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

38.      To implement the foregoing successfully, the Debtors also request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order

authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Pursuant to

Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than

cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the payments proposed herein

are essential to prevent potentially irreparable damage to the Debtors' operations, value and

ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver

of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## RESERVATION OF RIGHTS

39.     Nothing contained herein is intended or should be construed as (i) an agreement

or admission by the Debtors as to the validity of any claim against their estates, (ii) a waiver or

impairment of the Debtors' rights to dispute any claim on any grounds, (iii) a promise by the

Debtors to pay any claim or (iv) an implication or admission by the Debtors that such claim is

payable pursuant to an order granting the relief requested in this motion.

## NOTICE

40.     No trustee, examiner, or creditors' committee has been appointed in the Debtors'

chapter 11 cases.  The Debtors have caused notice of this motion to be provided by electronic

mail, facsimile, regular or overnight mail, and/or hand delivery to:  (i) the Office of the United

States Trustee for Region 2 (the "U.S. Trustee"), Attn: Serene Nakano; (ii) the entities listed on

the List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy

Rule 1007(d); (iii) counsel to the agents under the Debtors' prepetition credit facilities;  (iv)

counsel to the DIP Agent; (v) the Internal Revenue Service; (vi) the United States Attorney for

the Southern District of New York; (vii) the Securities and Exchange Commission; and (viii) any

other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b).  Due to the urgency

of the circumstances surrounding this motion and the nature of the relief requested herein, the

Debtors respectfully submit that no further notice is required or necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (a) enter interim and final

orders, substantially in the form of the Proposed Orders, granting the relief requested herein, and

(b) grant such other and further relief as may be just and proper.


Dated:  New York, New York　　　　**AKIN GUMP STRAUSS HAUER & FELD LLP**
　　　　July 31, 2016　　　　　　　By:  _/s/ David H. Botter_
　　　　　　　　　　　　　　　　　David H. Botter
　　　　　　　　　　　　　　　　　One Bryant Park
　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　Telephone:  (212) 872-1000
　　　　　　　　　　　　　　　　　Facsimile:  (212) 872-1002

　　　　　　　　　　　　　　　　　Sarah Link Schultz (*pro hac vice* admission pending)
　　　　　　　　　　　　　　　　　Travis A. McRoberts (*pro hac vice* admission pending)
　　　　　　　　　　　　　　　　　1700 Pacific Avenue, Suite 4100
　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　Telephone:  (214) 969-2800
　　　　　　　　　　　　　　　　　Facsimile:  (214) 969-4343

　　　　　　　　　　　　　　　　　*Proposed Counsel to Debtors and Debtors in*
　　　　　　　　　　　　　　　　　*Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) ) ) ) | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | | Case No. 16-_____ ( ) |
| Debtors. | | Joint Administration Requested |

**INTERIM ORDER (1) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT CERTAIN PROTECTIONS TO PREPETITION LENDERS, (2) SCHEDULING A FINAL HEARING, AND (3) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion")[2] of International Shipholding Corporation  and certain of

its affiliates and subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"),

in the above captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361,

362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), and

rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the

"Bankruptcy Rules"), and rule 4001-2 of the Local Bankruptcy Rules (the "Local Rules") for the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"), seeking, among other things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co.  (9059); Sulphur Carriers, Inc.  (8965); Central Gulf Lines, Inc.  (8979); Coastal Carriers, Inc.  (6278); Waterman Steamship Corporation (0640); N.W.  Johnsen & Co., Inc.  (8006); LMS Shipmanagement, Inc.  (0660);  U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380);  Tower LLC (6755); Frascati Shops, Inc.  (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc.  (8094);  Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570).  The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

I.        Postpetition Financing

A.        authorization for the Debtors to obtain up to $16,000,000 in senior secured super-priority debtor-in-possession financing (the "DIP Facility") pursuant to that certain Debtor-in-Possession Credit Agreement, substantially in the form annexed to this order (this "Interim Order") as Exhibit 1 (as such agreement may be amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement" and, together with any exhibits attached thereto and other agreements related thereto, including, without limitation, all notices, guarantees, security agreements, related or ancillary documents and agreements, and any mortgages contemplated thereby, the "DIP Documents"),[3] by and among the Debtors (in such capacity, the "Borrowers"), SEACOR Capital Corp., as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and DVB Bank SE ("DVB Bank") (or an affiliate) and SEACOR Capital Corp. and/or one or more of their designated affiliates or other lender parties thereto from time to time, as lenders (in its/their capacity as such, the "DIP Lenders");

B.        authorization for the Debtors to execute and deliver the DIP Documents and to perform all other and further acts as may be necessary or appropriate in connection with the same;

C.        authorization for the Debtors to use up to $7 million (the "Interim Amount") available under the DIP Facility upon entry of this Interim Order to avoid immediate and irreparable harm;

---

[3] Notwithstanding anything herein to the contrary, prior to entering into any material modification of the DIP Documents, the Debtors shall provide five (5) business days' notice of such material modification to counsel to the Prepetition Secured Parties, the Committee, and the U.S. Trustee (each as defined below). If the Prepetition Secured Parties, the Committee, or the U.S. Trustee fail to object in writing to the proposed material modification within five (5) business days, the Debtors shall be authorized to proceed therewith. If the Prepetition Secured Parties, the Committee, or the U.S. Trustee lodge a timely objection, the Debtors may seek approval of such material modification, including approval on an expedited basis, from the Bankruptcy Court. With respect to immaterial modifications of the DIP Documents, the Debtors shall provide notice to the same parties following such immaterial modification.

#4831-8662-0725v1

D.      authorization for the Debtors to grant security interests, liens, and superpriority claims to the DIP Agent, for the ratable benefit of itself and the DIP Lenders, to secure the Debtors' obligations under and with respect to the DIP Facility (the "DIP Obligations");

E.      authorization for the Debtors to use proceeds of the DIP Facility in accordance with, and for the purposes, and in the amounts set forth in, the Budget, subject solely to any Permitted Variance (each as defined below);

II.      Use of Cash Collateral

A.      authorization for the Debtors to use Cash Collateral pursuant to Bankruptcy Code sections 361, 362 and 363, in accordance with the Budget to, among other things, make the Adequate Protection Payments (as defined below). "Cash Collateral" shall have the meaning assigned to the term "cash collateral" under Bankruptcy Code section 363(a) and consists of the Debtors' cash in which the Prepetition Secured Parties (as defined below) have an interest.

III.      Adequate Protection

A.      authorization for the Debtors to provide adequate protection to the Prepetition Secured Parties under the Prepetition Facilities (as defined below);

IV.      Certain Modifications and Waivers

A.      modification of the automatic stay under Bankruptcy Code section 362 on the terms and conditions set forth herein to the extent necessary to implement and effectuate the terms of the DIP Documents and the DIP Orders;

B.      waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including under Bankruptcy Rule 6004); and

V.      Final Hearing

A.      the scheduling of a final hearing (the "Final Hearing"), pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held within twenty-eight (28) days of entry of this

3

Interim Order to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Order" and, together with this Interim Order, the "DIP Orders");

The interim hearing on the Motion having been held on August [2], 2016 (the "Interim Hearing"); and based upon all of the pleadings and declarations filed with the Bankruptcy Court, the evidence presented at the Interim Hearing and the entire record of the Chapter 11 Cases; and there being no objections to the relief sought in the Motion that have not previously been withdrawn, waived, settled, or resolved; and the Bankruptcy Court having noted the appearance of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and the Debtors' estates and creditors; and the Debtors having provided notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion and the relief sought therein need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,**[4] that:

1.      Approval of Motion.  The Motion is approved on an interim basis, subject to the terms and conditions set forth in this Interim Order.  This Interim Order shall become effective immediately upon its entry.  To the extent the terms of the DIP Documents or the Motion differ in any respect from the terms of this Interim Order, this Interim Order shall control.

2.      Jurisdiction and Venue.  The Bankruptcy Court has core jurisdiction over the Chapter 11 Cases commenced on July 31, 2016 (the "Petition Date"), the Motion, the parties affected by the Motion, and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

3.      _Notice_.  Notice of the Motion has been provided to (i) the Office of the United States Trustee for Region 2 (the "_U.S. Trustee_"), Attn: Serene Nakano; (ii) the entities listed on the List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) counsel to the agents under the Debtors' Prepetition Facilities;  (iv) counsel to the DIP Lenders; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the Securities and Exchange Commission; and (ix) any other party entitled to notice pursuant to Local Rule 9013-1(b) (collectively, the "_Notice Parties_").   Under the circumstances, the notice given by the Debtors of the interim relief requested in the Motion and of the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and 9014, Bankruptcy Code section 1514, and Local Rule 4001-2, and no further notice of the relief sought at the Interim Hearing is necessary or required.

4.      _Creditors Committee_.   No statutory committee of unsecured creditors (the "_Committee_") has yet been appointed in any of these Chapter 11 Cases.

5.      _Debtors' Stipulations_.  Subject only to the rights of parties in interest that are specifically set forth in Paragraph 6(b) below, the Debtors admit, stipulate, acknowledge, and agree that:

(a)      *Prepetition Indebtedness*.  As of the Petition Date, the Debtors (and non-Debtor CG Rail, Inc. ("_CG Rail_") with respect to the Senior Facility (as defined below)) were unconditionally indebted and liable under the following facilities without defense, counterclaim, or offset of any kind:

(i)      Existing Senior Facility.  That certain Credit Agreement, dated as of September 24, 2013, as amended, supplemented or modified (the

"Senior Facility"), by and among International Shipholding Corporation ("ISC"),
Enterprise Ship Company, Inc. ("Enterprise"), Sulphur Carriers, Inc. ("SCI"), CG
Rail, Central Gulf Lines, Inc. ("CGL"), Waterman Steamship Corporation
("WSC"), Coastal Carriers, Inc., N.W. Johnsen & Co., Inc. ("NWJ"), LMS
Shipmanagement, Inc. ("LMS"), U.S. United Ocean Services, LLC ("UOS"),
Mary Ann Hudson, LLC, Sheila McDevitt, LLC, Tower, LLC) and Frascati
Shops, Inc., as borrowers (the "Senior Facility Borrowers"), the lenders party
thereto (the "Senior Facility Lenders") and Regions Bank, as administrative agent
and collateral agent (in such capacities, "Regions" and together with the Senior
Facility Lenders, the "Senior Facility Parties") in an amount not less than
$59,540,000 as of the Petition Date;

        a.     The aggregate value of the Senior Facility
Collateral (as defined below) substantially exceeds the aggregate
amount of the obligations under the Senior Facility.

    (ii)    Existing ING Facility. That certain Assigned, Assumed, Amended
and Restated Senior Secured Term Loan Facility Agreement, dated as of June 10,
2015, as amended, supplemented or modified from time to time (the "ING
Facility"), by and among Dry Bulk Americas Ltd. and Dry Bulk Australia Ltd.,
corporations organized and existing under the laws of the British Virgin Islands,
as borrowers (the "ING Borrowers"), ISC and Gulf South Shipping PTE Ltd.
("GSS"), a corporation organized under the laws of Singapore, as guarantors, the
lenders party thereto (the "ING Lenders") and ING Bank N.V., London Branch,

as facility agent and security trustee ("ING" and together with the ING Lenders, the "ING Parties") in an amount not less than $[___] as of the Petition Date;

a.     The aggregate value of the ING Collateral (as defined below) substantially exceeds the aggregate amount of the obligations under the ING Facility.

(iii)    Existing DVB Facility.  That certain Senior Secured Term Loan Credit Agreement, dated as of August 26, 2014, as amended, supplemented or modified from time to time (the "DVB Facility"), by and among CGL, as borrower, ISC, as guarantor, the lenders party thereto (the "DVB Lenders") and DVB Bank as mandated lead arranger, facility agent, and security trustee (together with the DVB Lenders, the "DVB Parties") in an amount not less than $27,383,583 as of the Petition Date;

a.     The aggregate value of the DVB Collateral (as defined below) substantially exceeds the aggregate amount of the obligations under the DVB Facility.

(iv)    Existing Capital One Facility.  That certain Loan Agreement, dated as of December 28, 2011, as amended, supplemented or modified from time to time (the "Capital One Facility"), by and among LCI Shipholdings, Inc. ("LCI") (as successor to WSC), a corporation existing under the laws of the Marshall Islands, as borrower, ISC, as guarantor, and Capital One, National Association, as lender (the "Capital One Lender") in an amount not less than $[___] as of the Petition Date;

#4831-8662-0725v1

(v)     Existing Citizens Facility.  That certain Loan Agreement, dated as of August 25, 2014, as amended, supplemented or modified from time to time (the "Citizens Facility"), by and among LCI, as borrower, ISC, as guarantor, and Citizens Asset Finance, Inc. (f/k/a RBS Asset Finance, Inc.), as lender (the "Citizens Lender") in an amount not less than $[___] as of the Petition Date;

(all of the foregoing, collectively, the "Prepetition Facilities" and the agents, lenders, and any issuing banks under the Prepetition Facilities, the "Prepetition Secured Parties," and the Prepetition Facilities and any related documents or instruments from time-to-time executed in favor of the lenders under the Prepetition Facilities, the "Prepetition Documents") the obligations thereunder, the "Prepetition Obligations").

(b)     *Prepetition Liens and Collateral*.  Prior to the Petition Date, as more fully set forth in the Prepetition Documents, the Debtors granted to the Prepetition Secured Parties liens and security interests (collectively, the "Prepetition Liens"), as follows:

(i)     pursuant to and in connection with the Senior Facility, a valid, perfected, binding, non-avoidable, and enforceable first priority security interest in and liens on, subject to certain exceptions, substantially all personal property of the Senior Facility Borrowers and the U.S. flagged vessels (a) Green Ridge, (b) Mississippi Enterprise; (c) Texas Enterprise, (d) Florida Enterprise, (e) Coastal 202, (f) Louisiana Enterprise, (f) Coastal 101, (g) Coastal 303, and (h) Rosie Paris owned by the Senior Facility Borrowers along with customary assignments of earnings and insurance and other collateral related to such vessels (collectively, the "Senior Facility Collateral");

8

a.    The Debtors do not have any claims, counterclaims, causes of action, defense, setoff rights, or entitlements to equitable relief related to the Senior Facility or the Senior Facility Collateral, whether arising on or prior to the date hereof, under the applicable Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the Senior Facility Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(ii)    pursuant to and in connection with the ING Facility, a valid, perfected, binding, non-avoidable, and enforceable first priority security interest in the Singaporean flagged vessels (a) Bali Sea and (b) Banda Sea along with customary assignments of earnings and insurance and other collateral related to such vessels (collectively, the "ING Collateral");

a.    The Debtors do not have any claims, counterclaims, causes of action, defense, setoff rights, or entitlements to equitable relief related to the ING Facility or the ING Collateral, whether arising on or prior to the date hereof, under the applicable Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the ING Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(iii)    pursuant to and in connection with the DVB Facility, a valid, perfected, binding, non-avoidable, and enforceable first priority security interest

9

in the U.S. flagged vessel Green Bay along with customary assignments of earnings and insurance and other collateral related to such vessel, including present and future credit balances standing to the credit of CGL in certain accounts maintained with DVB Bank (collectively, the "DVB Collateral");

        a.      The Debtors do not have any claims, counterclaims, causes of action, defense, setoff rights, or entitlements to equitable relief related to the DVB Facility or the DVB Collateral, whether arising on or prior to the date hereof, under the applicable Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the DVB Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(iv)     pursuant to the Capital One Facility, a first priority security interest in the Marshall Islands flagged vessel Oslo Wave along with customary assignments of earnings and insurance and other collateral related to such vessel (collectively, the "Capital One Collateral"); and

(v)     pursuant to the Citizens Facility, a first priority security interest in the Marshall Islands flagged vessel Green Dale along with customary assignments of earnings and insurance and other collateral related to such vessel (collectively, the "Citizens Collateral" and, together with the Senior Facility Collateral, the ING Collateral, the DVB Collateral, and the Capital One Collateral, the "Prepetition Collateral").

#4831-8662-0725v1

(c)    *Adequate Protection*.    The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 362(c)(2), 363(e) and 364(c) and 364(d)(1), to adequate protection of their respective interests in the collateral (including the Cash Collateral) securing their respective Prepetition Facilities, the "Prepetition Collateral," to the extent of any diminution in the value of such interests, as a result of (i) the incurrence of the DIP Obligations and the granting of the priming DIP Liens and DIP Superpriority Claims (each, as defined below) on account thereof, (ii) the use of their Cash Collateral, (iii) diminution in the value of the Prepetition Collateral arising from the Debtors' use, sale or disposition of Prepetition Collateral, and (iv) the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (collectively, the "Diminution Claim").

(d)    *No Control Person*.    None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in their *respective* capacities as such, is a control person or insider of any of the Debtors by virtue of any action taken or omission to act by any of them in respect of or in connection with, respectively, the DIP Documents, the Prepetition Documents, or this Interim Order.

6.    Effect of Stipulations on Third Parties.

(a)    Subject to Paragraph 6(b), each stipulation, admission, waiver and agreement contained in this Interim Order, including, without limitation, the Debtors' stipulations in Paragraph 5 hereof (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors, their respective estates and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee") under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.

11

(b)     The Debtors' Stipulations contained in this Interim Order, including

without limitation, in Paragraph 5 of this Interim Order, shall be binding upon all other parties in

interest, including any Trustee and the Committee, unless (i) the Committee or any other party in

interest (including any Trustee), in each case, with requisite standing, has duly filed an adversary

proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to

the limitations contained herein, including without limitation, in Paragraph 18), challenging the

validity, enforceability, priority or extent of any of the Prepetition Obligations or any of the

Prepetition Liens on the Prepetition Collateral securing the Prepetition Obligations or otherwise

asserting or prosecuting any Avoidance Actions (as defined below) or any other claims,

counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and

Defenses") against any of the Prepetition Secured Parties or their respective agents, affiliates,

subsidiaries, directors, officers, employees, representatives, attorneys or advisors in connection

with any matter related to the Prepetition Facilities, the Prepetition Obligations, the Prepetition

Collateral, or the Debtors by no later than the date that is (a) in the case of any such adversary

proceeding or contested matter filed by a party in interest with requisite standing other than the

Committee, seventy-five (75) days after the date of entry of this Interim Order, (b) in the case of

any such adversary proceeding or contested matter filed by the Committee, sixty (60) days after

the appointment of the Committee, and (c) any such later date agreed to in writing by the

respective Prepetition Secured Party (or the agent under the respective Prepetition Facility, as

applicable) in its sole and absolute discretion or as ordered by the Bankruptcy Court upon a

motion filed and served within any applicable period of time set forth in this paragraph (such

time period, the "Challenge Period"); and (ii) an order is entered by a court of competent

jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such

12

challenge or claim in any such duly filed adversary proceeding or contested matter; *provided that*, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case; (y) the respective Prepetition Secured Party's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in Paragraph 5, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Prepetition Obligations and the respective Prepetition Secured Party's liens on the Prepetition Collateral (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by the Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the Debtors' Stipulations contained in this Interim Order, including without limitation, in Paragraph 5 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this Paragraph) on the Committee and any other person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Nothing in this Interim Order vests

13

or confers on any person, including a Committee or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates. In the event that there is a timely successful challenge brought pursuant to this Paragraph 6, the Bankruptcy Court shall retain jurisdiction to fashion an appropriate remedy. For the avoidance of doubt, none of the challenge provisions set forth in this Paragraph 6 shall apply to the DIP Facility, the DIP Obligations, the DIP Collateral, the DIP Liens, the DIP Superpriority Claim, the DIP Agent or any of the DIP Lenders, and in no event shall any of the foregoing be subject to challenge on any grounds by any party.

7.     <u>Use of DIP Facility Proceeds and Cash Collateral</u>.   The Debtors are hereby authorized, subject to the terms and conditions of the DIP Documents and this Interim Order, to use Cash Collateral and all proceeds of the DIP Facility in accordance with, and for the purposes and in the amounts set forth in, the Budget (subject to any Permitted Variances).

8.     <u>Findings Regarding Immediate Need for the DIP Facility and Use of Cash Collateral</u>.

(a)     *Good Cause*.   Good cause has been shown for immediate entry of this Interim Order.

(b)     *Need Regarding Postpetition Financing*.   The Debtors have an immediate and critical need to obtain secured postpetition financing under the DIP Facility and use the Cash Collateral in order to, among other things, preserve their going concern value, pay costs and expenses related to the administration of the Chapter 11 Cases, and satisfy other working capital and operational needs of the Debtors during these Chapter 11 Cases. The access to sufficient working capital and liquidity made available through the use of Cash Collateral and incurrence

14

of new indebtedness for borrowed money under the DIP Facility are vital to the Debtors' ability to meet payroll and other operating expenses and to the Debtors' reorganization efforts.

(c)    *No Credit Available on More Favorable Terms*.  The Debtors are unable to obtain sufficient committed financing, under existing circumstances, on more favorable terms and conditions from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents.  The Debtors are unable to obtain sufficient committed unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors also are unable to obtain sufficient committed secured credit allowable under Bankruptcy Code section 364(c) without granting the DIP Lenders the DIP Liens and the DIP Superpriority Claims on the terms and conditions set forth in this Interim Order and the DIP Documents.

(d)    *Business Judgment*.  The terms and conditions of the DIP Facility and the DIP Documents, as well as the terms upon which the Debtors will be permitted to use Cash Collateral as provided in this Interim Order, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are appropriate under the circumstances.

(e)    *Good Faith*.  The DIP Facility, the DIP Documents, and the use of Prepetition Collateral have been negotiated in good faith and at arm's length.  All loans and other financial accommodations extended under, in respect of or in connection with the DIP Facility, the DIP Documents, and the DIP Orders shall be deemed to have been extended in "good faith" as such term is used in Bankruptcy Code sections 105, 361, 363, and 364(e), and in express reliance upon the protections set forth therein, and each of the DIP Agent and the DIP Lenders shall be entitled to the full protection available under Bankruptcy Code section 364(e) in the

15

event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise and the Prepetition Secured Parties shall be entitled to the protections provided under Bankruptcy Code 363(m).

(f)     *Relief Essential; Best Interest*.   The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2.   Without immediate access to the DIP Facility and the continued use of Cash Collateral, the Debtors and their estates would suffer immediate and irreparable harm.   The Debtors may be forced to cease business operations, terminate substantially all of their employees, and be forced to wind-down their operations.   Immediate access to  the DIP Facility (up to the Interim Amount) and the use of the Cash Collateral in accordance with this Interim Order and the Budget are, therefore, in the best interest of the Debtors' estates.

9.     <u>Authorization of the DIP Documents and the DIP Facility</u>.

(a)     The terms and conditions of the DIP Documents are approved in all respects.

(b)     Each Debtor is authorized and directed to execute and deliver, and perform all acts under, the DIP Documents, and to pay all fees required thereunder, including, without limitation, the reasonable and documented fees, expenses, and indemnities (including reasonable and documented fees and expenses of professionals) of the DIP Agent and the DIP Lenders as provided in the DIP Documents, whether incurred before or after the Petition Date, without the need to file retention motions or fee applications.  The Debtors shall submit copies of the DIP Agent and DIP Lenders' legal counsel's and financial advisor's summary statement of fees to the U.S. Trustee and counsel to the Committee and the Prepetition Secured Parties, and the Debtors, the U.S. Trustee, the Committee, and the Prepetition Secured Parties shall have ten

16

(10) days following their receipt of such summary statement to object to the reasonableness of the fees and expenses included in any such summary statement.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in these Chapter 11 Cases; *provided, however*, that the Debtors shall pay all fees, costs and expenses fifteen (15) days after the initial presentment to the Debtors of an invoice and the payment of invoices shall not be delayed based on any objections and the relevant professional shall only be required to disgorge any of the amounts objected to upon being directed to do so by a final order of the Bankruptcy Court.

(c)    Upon execution and delivery of the DIP Documents, (i) the DIP Documents shall constitute legal, valid, binding, enforceable, and unavoidable obligations of the Borrowers, enforceable against each Borrower in accordance with the terms thereof and of this Interim Order, and (ii) the DIP Obligations shall constitute "allowed claims" against the Debtors within the meaning of Bankruptcy Code section 502.

(d)    No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order, including the Adequate Protection Liens, shall be stayed, restrained, void, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, rejection, subordination, disallowance, impairment, cross-claim, counterclaim, or any other claims, causes of action or challenges of any nature under the Bankruptcy Code, any other applicable law or regulation or otherwise.

17

(e)     The Debtors are hereby authorized to borrow the Interim Amount under the DIP Facility (subject to any conditions precedent on borrowings under the DIP Documents), which amount shall be used for any purposes permitted under the DIP Documents, in accordance with, and for the purposes and in the amounts set forth in, the Budget (subject to any Permitted Variance under the DIP Credit Agreement).

(f)     If any Event of Default (as defined in the DIP Credit Agreement) occurs and is continuing, and the Collateral Agent (as defined in the DIP Credit Agreement) is requested to enforce any liens or security interests created pursuant to the DIP Documents, this Interim Order, or the Final Order, the Collateral Agent shall use commercially reasonable efforts to exercise remedies with respect to, and foreclose on, the vessels *Bali Sea* and *Banda Sea* before exercising remedies with respect to other DIP Collateral (as defined below).

(g)     With respect to any sale of the vessel *Green Ridge*, (i) notwithstanding anything in the DIP Credit Agreement to the contrary, fifty-percent (50%) of the net cash proceeds of such sale shall be applied to pay obligations under the Senior Facility, subject to a maximum of $15,000,000; (ii) the remaining net cash proceeds of such sale shall not be required to prepay the DIP Obligations; *provided that* such net cash proceeds are promptly deposited in a blocked account of a Borrower, subject to the sole control of the Collateral Agent, and shall constitute DIP Collateral.

10.    <u>DIP Liens</u>.  As security for the full and timely payment of the DIP Obligations, the DIP Agent, for the ratable benefit of itself and the DIP Lenders, is hereby granted valid, binding, continuing, enforceable, unavoidable, and fully perfected security interests in and liens on (collectively, the "<u>DIP Liens</u>") all of the Debtors' assets, including the Prepetition Collateral, and all products and proceeds of the foregoing, whether existing prior to or arising or acquired

18

after the Petition Date; *provided that* the proceeds of the sale of the vessel named "Green Ridge" shall be treated in accordance with the DIP Documents (all of the foregoing, the "DIP Collateral"):[5]

(a)    pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on, and security interest in, all unencumbered assets of the Debtors (now or hereafter acquired) and all proceeds thereof; *provided that* with respect to such DIP Liens on any actions or claims under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 (collectively, "Avoidance Actions"), such DIP Liens shall be subject to the entry of a final order and shall not attach to the actions or claims, but shall, upon entry of the Final Order, attach to the proceeds of Avoidance Actions, whether by judgment, settlement, or otherwise;

(b)    pursuant to Bankruptcy Code section 364(c)(3), a junior lien on and security interest in, any and all tangible and intangible property of the Debtors (other than the Prepetition Collateral of the Prepetition Secured Parties) that was subject to valid, perfected and unavoidable liens and security interests as of the Petition Date or that became subject to valid and unavoidable liens and security interests subsequent to the Petition Date pursuant to Bankruptcy Code section 546(b);

(c)    pursuant to Bankruptcy Code section 364(d)(1), a first priority priming lien on, and security interest in, the Prepetition Collateral of the Prepetition Secured Parties; *provided, however*, that the DIP Liens shall be subject, and junior to, the Permitted Liens (as defined in the DIP Documents) and the Carve-Out (as defined below); *provided, further*, that the DIP Liens shall not be, under any circumstance, (i) subject or subordinate to (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates

---

[5] [For the avoidance of doubt, and notwithstanding anything to the contrary herein, the DIP Collateral shall not include the Excluded Property (as defined in the DIP Credit Agreement).]

under Bankruptcy Code section 551, or (y) unless otherwise provided for in the DIP Documents or this Interim Order, any liens arising after the Petition Date; or (ii) subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

11.    <u>DIP Superpriority Claims</u>.  To further assure the full and timely payment of the DIP Obligations, the DIP Agent, for the ratable benefit of itself and each of the DIP Lenders, is hereby granted (subject solely to the Carve Out) superpriority administrative expense claims against each Debtor (the "<u>DIP Superpriority Claims</u>"), having priority over any and all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b) allowed in the Chapter 11 Cases, including, without limitation, any adequate protection claims. The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof.

12.    <u>Adequate Protection for the Prepetition Secured Parties</u>.  Pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364(c), 364(d)(1), and 507, the Prepetition Secured Parties shall be granted, as adequate protection on account, and to the extent of, the Diminution Claim, if any, the following:

(a)    Replacement liens (collectively, the "<u>Adequate Protection Liens</u>") on all DIP Collateral, subject and subordinate in all respects to (x) the Carve Out, (y) the DIP Liens, and (z) the valid and perfected Prepetition Liens of the Prepetition Secured Parties on the Prepetition Collateral.

(b)    Superpriority claims (the "<u>Adequate Protection Superpriority Claims</u>") as provided for in Bankruptcy Code section 507(b), subject and subordinate in all respects to (x) the Carve Out, and (y) the DIP Superpriority Claims.  The Prepetition Secured Parties shall not

20

receive or retain any payments or other property on account of the Adequate Protection Superpriority Claims (for the avoidance of doubt, nothing in this Paragraph shall impact the payments due pursuant to Paragraph 12(d) below) unless and until all DIP Obligations have been indefeasibly paid in cash and in full.

(c)     The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551, or (B) any lien or security interest arising after the Petition Date, subject to the DIP Liens and the Carve Out, or (ii) except as otherwise set forth in this Interim Order, subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

(d)     *Adequate Protection Payments*.  The Debtors are authorized and directed to (i) make all interest payments at the applicable non-default rates due and payable under the Prepetition Facilities (without limiting the consent set forth in Paragraph 13 below, with all payments of interest to be without prejudice the rights of the applicable Prepetition Secured Parties to assert a claim for payment of additional interest at any other rates in accordance with the applicable Prepetition Facility), and (ii) pay all reasonable and documented professional fees and expenses in accordance with the applicable Prepetition Facility, whether incurred before or after the Petition Date, without the need to file retention motions or fee applications (collectively, the "Adequate Protection Payments"); *provided that* the Debtors shall submit copies of the Prepetition Secured Parties' legal counsel's and financial advisor's summary statement of fees to the U.S. Trustee and counsel to the Committee, the DIP Agent, and the DIP Lenders, and the Debtors, the DIP Agent, the DIP Lenders, the U.S. Trustee, and the Committee shall have ten (10) days following their receipt of such summary to object to the reasonableness of the fees and

expenses included in any such invoice.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in these Chapter 11 Cases, *provided that* the Debtors shall pay any undisputed portion of such fees, costs and expenses fifteen (15) days after the initial presentment to the Debtors of such summary statement.  Notwithstanding the foregoing, the rights of all parties to argue that, to the extent that any cash payment of interest, fees and expenses as an Adequate Protection Payment to any Prepetition Secured Party is not allowed under Bankruptcy Code section 506(b) and not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the applicable Prepetition Documents; *provided*, *however*, that the rights of the Prepetition Secured Parties to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application are similarly reserved.

(e)     The Debtors shall comply, in all material respects, with the covenants set forth in the Prepetition Facilities, including, without limitation, reporting requirements, the maintenance of insurance, and the vessel mortgages.

13.     <u>Sufficiency of Adequate Protection</u>.  Under the circumstances, the Bankruptcy Court finds that, based on the consent of the Senior Facility Lenders and the DVB Lenders, the foregoing adequate protection is reasonable and sufficient to adequately protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to their right to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the

#4831-8662-0725v1

Debtors or any other party in interest, including, but not limited to, the DIP Lenders and the DIP

Agent, to contest any such modification.  Nothing herein shall be deemed to waive, modify or

otherwise impair the respective rights of the Prepetition Secured Parties  under the Prepetition

Documents or under equity or law, and the Prepetition Secured Parties expressly reserve all of

their respective rights and remedies whether now existing or hereafter arising under the

Prepetition Documents and/or equity or law in connection therewith.

14.    <u>Perfection of Liens</u>.    The DIP Agent, the DIP Lenders, and the Prepetition

Secured Parties are hereby authorized, but not required, to file or record (and to execute in the

name of the Debtors, as its true and lawful attorney, with full power of substitution, to the

maximum extent permitted by law) financing statements, trademark filings, copyright filings,

mortgages, security agreements, notices of lien, or similar instruments (collectively, the

"<u>Perfection Instruments</u>") in any jurisdiction, or take possession of or control over deposit

accounts and securities accounts or any other asset, in each case, in order to perfect the liens and

security interests granted to them in this Interim Order.

(a)    The Debtors shall execute and deliver to the DIP Agent and the Prepetition

Secured Parties all such Perfection Instruments and other documents as the DIP Agent or the

Prepetition Secured Parties may reasonably request to evidence, confirm, validate, or perfect, or

to insure the contemplated priority of, the DIP Liens or the Adequate Protection Liens, as

applicable.

(b)    A certified copy of this Interim Order may be filed with or recorded in the

filing or recording offices in addition to or in lieu of any of the Perfection Instruments, and all

filing and recording officers are hereby authorized and directed to accept such certified copy of

this Interim Order for filing and recording.  For the avoidance of doubt, the automatic stay

23

provisions of Bankruptcy Code section 362(a) shall be modified (and any stay of such modification under Bankruptcy Rule 4001(a)(3) is waived) to the extent necessary to permit the DIP Agent and Prepetition Secured Parties to take all actions permitted by this Paragraph 14;

(c)    For the avoidance of doubt, whether or not the DIP Agent or the Prepetition Secured Parties choose to file any Perfection Instruments or this Interim Order, or take possession of or control over deposit accounts and securities accounts or any other assets, the DIP Liens and the Adequate Protection Liens shall be deemed legal, valid, perfected, allowed, enforceable, unavoidable, and not subject to challenge, dispute, impairment, or subordination, at the time of entry of this Interim Order.

15.    Carve Out.

(a)    For purposes hereof, the "Carve Out" shall mean an amount equal to the sum total of:

(i)    all fees required to be paid by the Debtors to the clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code;

(ii)    all reasonable and documented fees and expenses incurred by a Trustee under Bankruptcy Code section 726(b) in an aggregate amount not to exceed $25,000;

(iii)    all accrued and unpaid claims for fees, costs, and expenses incurred at any time before the Trigger Date (as defined below) or any monthly or other fees payable to persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 (collectively, the "Professional Persons," and such fees, costs, and expenses, the "Professional

24

Fees") to the extent such Professional Fees are allowed by the Bankruptcy Court at any time (*i.e.*, before or after the Trigger Date) on a final basis; and

(iv)    all Professional Fees incurred on and after the Trigger Date and allowed by the Bankruptcy Court at any time, whether before or after the Trigger Date, whether by interim order, procedural order, or otherwise; *provided that* the payment of any Professional Fees (excluding fees and expenses of Professional Persons employed by individual members of the Committee) incurred and allowed at any time pursuant solely to this subsection (iv) shall not exceed $750,000 in the aggregate (the "Carve Out Cap").  For the avoidance of doubt, any payments actually made in respect of the Carve Out Cap shall reduce the Carve Out Cap on a dollar for dollar basis.

(b)    The "Trigger Date" shall mean the first business day after the occurrence and during the continuance of an Event of Default and delivery of written notice thereof (the "Carve Out Notice") (which may be delivered by electronic mail) by the DIP Agent to the Debtors' counsel and the Prepetition Secured Parties' counsel.[6]

(c)    *Seniority of Carve Out*.  For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations and/or the Prepetition Obligations granted or recognized as valid.

---

[6] For the avoidance of doubt, in the event that a Carve Out Notice is served and the Debtors subsequently receive a determination from the Bankruptcy Court, consistent with Paragraph 17 below, that no Event of Default occurred or was ongoing or that the DIP Agent and/or DIP Lenders were otherwise prohibited from exercising rights or remedies under the DIP Documents, the Professional Fees incurred from the Trigger Date through the date of any such determination shall not count against the Carve Out Cap.

#4831-8662-0725v1

(d)    *Budget*.  Annexed as <u>Exhibit 2</u> hereto and incorporated by reference herein is the weekly statement of receipts and disbursements of the Debtors on a consolidated basis for the 13 weeks commencing with the first week following the Petition Date, including (i) individual line items for "Total Disbursements," and (ii) the anticipated uses of the proceeds of the DIP Loans and Cash Collateral for such period, in form and substance reasonably satisfactory to the DIP Agent (substantially similar to the form of the budget annexed hereto, the "<u>Budget</u>").  No less frequently than every two week period, the Debtors shall provide an updated Budget for the following 13-week period to the DIP Agent and the Prepetition Secured Parties (the "<u>Proposed Budget</u>").  The Proposed Budget shall become the Budget upon the written consent of the DIP Agent, which consent shall not be unreasonably withheld; *provided that* the Debtors shall have the right to seek approval of the Proposed Budget from the Bankruptcy Court in the event that the DIP Agent's consent has been withheld and the Debtors believe such refusal is unreasonable.

(e)    As set forth in the DIP Credit Agreement, receipts and disbursements, other than any disbursements in connection with any Professional Fees, shall be tested bi-weekly on a line item by line item basis, subject to the Permitted Variance (as defined in the DIP Credit Agreement, the Permitted Variance is 15%).

16.    <u>Events of Default</u>.

(a)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash and unless the DIP Agent has waived such default in accordance with the DIP Documents, any occurrence of an "Event of Default" pursuant to the DIP Documents shall constitute an event of default hereunder (each, an "<u>Event of Default</u>"); *provided that* notwithstanding the terms of the DIP Documents, the following shall also constitute an "Event of Default:"  (i) the violation of

26

any term, provision, or condition of this Interim Order or the Final Order, as applicable, and (ii) this Interim Order or Final Order, as applicable, shall be amended, modified, stayed or vacated without the written consent of the DIP Agent (and no such consent shall be implied by any action, inaction or acquiescence by any party).

17.    <u>Modification of the Automatic Stay</u>

(a)    The automatic stay provisions of Bankruptcy Code section 362 are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to (i) take all actions necessary or desirable to implement the DIP Documents and the terms of this Interim Order, and (ii) unless the Bankruptcy Court orders otherwise during the Remedies Notice Period (as defined below), (x) immediately upon the occurrence of an Event of Default, (A) declare an Event of Default and terminate any further commitments under the DIP Facility, (B) declare the termination of the DIP Documents as to any future liability or funding obligation of the DIP Agent or the DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), (C) declare all DIP Obligations to be immediately due and payable, and (D) charge the default rate of interest on the DIP Loans; and (y) upon the occurrence of an Event of Default and providing seven (7) calendar days' prior written notice (which may be delivered by electronic mail) (the "<u>Default Notice</u>") to counsel to the Debtors, counsel to the Committee, counsel to the Prepetition Secured Parties, and the U.S. Trustee (such seven (7) calendar day period, the "<u>Remedies Notice Period</u>") (which period shall run concurrently with any notice required to be provided under the DIP Documents), exercise all rights and remedies provided for in the DIP Documents and under applicable law, including foreclosing on the DIP Collateral.

(b)    Upon receipt of the Default Notice, parties in interest shall be entitled to seek an emergency hearing before the Bankruptcy Court solely to contest the occurrence of an Event of Default.  If parties in interest fail to timely contest the occurrence of an Event of Default, or the Bankruptcy Court, after notice and a hearing, declines to stay enforcement of the Event of Default, at the end of the Remedies Notice Period, the automatic stay as to the DIP Agent and DIP Lenders shall be vacated without further action by the Bankruptcy Court.

(c)    Notwithstanding anything to the contrary in this Interim Order, upon receipt of a Default Notice, the Debtors shall have no right to issue future payments or use any proceeds of the DIP Facility or any cash securing the DIP Facility without the consent of the DIP Agent,[7] other than funding toward (i) ordinary course operations to the extent that the Debtors, in consultation with their financial advisors, deem that such funding is necessary to avoid immediate and irreparable harm to their estates; and/or (ii) satisfaction of the DIP Obligations and the Carve Out; *provided, that*, for the avoidance of doubt, professional fees and adequate protection payments shall not constitute "necessary" funding for purposes of clause (i) above.

(d)    The DIP Agent's delay or failure to exercise any rights and remedies under the DIP Documents or this Interim Order shall not constitute a waiver of such rights and remedies; any effective waiver must be pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

(e)    Upon (i) the occurrence and during the continuance of an Event of Default under the DIP Credit Agreement and expiration of the Remedies Notice Period, (ii) a violation of the terms of this Interim Order or Final Order, or (iii) this Interim Order or the Final Order being modified, stayed, or vacated without the written consent of the Prepetition Secured Parties (and

---

[7] For the avoidance of doubt, nothing contained herein shall prohibit the Debtors' banks from clearing checks and /or other payments issued prior to the receipt of a Default Notice.

no such consent shall be implied by any action, inaction, or acquiescence by any party), the Prepetition Secured Parties shall have no further obligation to permit the continued use of Cash Collateral; *provided that* nothing herein shall preclude the Debtors from seeking authority to use Cash Collateral on a non-consensual basis or the Prepetition Secured Parties from objecting to such use.

18.     Limitation on Use of DIP Proceeds and Cash Collateral.    Notwithstanding anything herein or in any other order by the Bankruptcy Court to the contrary, no borrowings under the DIP Facility, Cash Collateral, or the Carve Out Cap may be used:

(a)     in connection with, or to finance in any way, any claim, cause of action, including Challenges and Defenses, counterclaim, investigation, action, suit, arbitration, proceeding, application, motion, or other litigation of any type (i) objecting to, challenging or contesting in any manner, invalidating, setting aside, avoiding, subordinating or raising any defenses to, in whole or in part, the amount, validity, extent, priority, enforceability or perfection of the DIP Obligations, the Prepetition Documents, the DIP Documents, the DIP Liens, the Prepetition Obligations or the Prepetition Liens, the DIP Superpriority Claims, or any other rights or interests of any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, (ii) asserting or seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the DIP Agent or the DIP Lenders or any of their respective officers, directors, employees, agents, affiliates, representatives, attorneys, advisors, assigns, or successors with respect to any transaction, occurrence, omission or action involving the Debtors; *provided that* nothing in this clause (ii) shall prohibit the Debtors from seeking to enforce the terms of this Interim Order or the Final Order, as applicable, or from exercising their fiduciary obligations as debtors in possession, including, without limitation, the duty to maximize value

29

for the benefit of all stakeholders,[8] or (iii) contesting, preventing, hindering, impairing, interfering with, or otherwise delaying the recovery by any DIP Lender on account of the DIP Obligations or exercise by any of the DIP Agent or any of the DIP Lenders of any rights or remedies under the DIP Documents or this Interim Order; *provided that*, notwithstanding anything to the contrary herein, no more than $75,000 in the aggregate of the borrowings under the DIP Facility, Cash Collateral, or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Prepetition Secured Parties;

(b)    to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or any of the lenders under the Prepetition Facilities hereunder or under the DIP Documents, in each of the foregoing cases, without such parties' prior written consent; or

(c)    to pay any amount on account of any claims arising prior to the Petition Date unless such payment is approved by an order of this Court (including hereunder).

19.    <u>Bankruptcy Code Section 552(b)</u>.  Subject to and effective upon entry of the Final Order, each of the Senior Facility Parties and the DVB Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Senior Facility Parties or the DVB Parties.

20.    <u>Bankruptcy Code Section 506(c)</u>. Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or

---

[8] Notwithstanding this clause (ii), nothing shall (a) excuse the Debtors from complying with their obligations under the DIP Documents or this Interim Order, and (b) prohibit, condition or otherwise modify the rights of the DIP Agent and the DIP Lenders under the DIP Documents or this Interim Order and the Prepetition Secured Parties under this Interim Order.

other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Senior Facility Collateral, the DVB Collateral, the Senior Facility Parties, or the DVB Parties pursuant to Bankruptcy Code sections 105(a) or 506(c), or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Senior Facility Parties or the DVB Parties.

21.    <u>Prohibition on Granting of Additional Liens or Interests</u>.  Except with respect to the Carve Out, no liens, claims, interests or priority status that are superior or *pari passu* with the DIP Liens, the DIP Superpriority Claims, or the Adequate Protections Liens, as applicable, shall be granted by the Debtors while any portion of the DIP Obligations or the Prepetition Obligations remain outstanding, or any commitment under the DIP Documents or the Prepetition Documents remains in effect.  Notwithstanding the forgoing, the imposition of a lien under applicable maritime law by a third-party shall not be construed, under any circumstances, as the Debtors having granted a lien, claim, interest, or priority status that is superior or *pari passu* with the DIP Liens, the DIP Superpriority Claims, or the Adequate Protection Liens.

22.    <u>Prohibition on Further Financing</u>.  The Debtors shall not request authorization to obtain, other than from the DIP Agent or DIP Lenders and other than in accordance with this Interim Order and the DIP Documents, postpetition loans or other financial accommodations pursuant to Bankruptcy Code sections 364(c) or (d) or otherwise that are (or are proposed to be) secured by any liens or security interests on any of the DIP Collateral (unless the proceeds of such postpetition loans or other financial accommodations shall be used to indefeasibly pay in full all DIP Obligations).

#4831-8662-0725v1

23.    <u>Prohibition on Non-Debtor Transactions</u>.  Notwithstanding anything herein to the contrary, no borrowings under the DIP Facility shall be transferred to any non-Debtor affiliate without the prior written consent of the DIP Agent and the Prepetition Secured Parties; *provided, that* the Debtors shall be permitted to transfer up to $100,000 to CG Rail in the ordinary course of business upon three (3) business days' written notice to the DIP Agent and the Prepetition Secured Parties; *provided further that*, with respect to any transfers in excess of $100,000, the Debtors shall be permitted to make a secured loan in an amount of up to $1 million to CG Rail upon three (3) business days' written notice to the DIP Agent and the Prepetition Secured Parties, which loan shall be evidenced by a note, the form of which must be approved by the DIP Agent and the Prepetition Secured Lenders in their reasonable discretion.

24.    <u>Prepayments</u>.    The Debtors are authorized, to the extent applicable, to make prepayments of the DIP Facility as and when provided under, and for application in accordance with, the terms of the DIP Documents, including, without limitation, prepayment of the ING Facility as set forth in the DIP Documents.

25.    <u>Financial Reporting</u>.  The Debtors shall continue to provide the agents under the Prepetition Facilities financial and other reporting substantially in compliance with the Prepetition Facilities (all such reporting, the "<u>Financial Reports</u>") as well as any reporting provided to the DIP Agent and/or the DIP Lenders.

26.    <u>Release</u>.  The Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative) and any party acting by, though, or under the Debtors or their estates, forever and irrevocably (a) release, discharge, waive, and acquit the current and future DIP Agent and the DIP Lenders, each of their respective participants, affiliates, former, current, or future officers, employees, directors, agents, representatives,

owners, members, partners, financial advisors, legal advisors, shareholders, managers,

consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, and in

each case solely in their capacities as such, the "Released Parties"), of and from any and all

claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness,

and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses,

damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known,

unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent,

pending, or threatened, including, without limitation, all legal and equitable theories of recovery,

arising under common law, statute or regulation or by contract, of every nature and description,

arising out of, in connection with, or relating to any actions taken on or before the Petition Date

with respect to, or, after the Petition Date, taken in compliance with, the DIP Facility, the DIP

Documents, the DIP Orders, or the transactions contemplated hereunder or thereunder, including,

without limitation, any so-called "lender liability" or equitable subordination claims or defenses,

and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of

any nature or kind) as to the DIP Obligations and the DIP Liens.  Notwithstanding the foregoing,

nothing in this Paragraph 24 shall be deemed to release, waive, discharge, or acquit any willful

misconduct, fraud, or gross negligence on the part of the DIP Agent or the DIP Lenders.

27.    Indemnification.   The Debtors shall, jointly and severally, be obligated to

indemnify and hold harmless the DIP Agent, each DIP Lender, and each of their respective

affiliates, officers, directors, fiduciaries, employees, agents, advisors, attorneys, and

representatives from and against all losses, claims, liabilities, damages, and expenses (including,

without limitation, out-of-pocket fees and disbursements of counsel) in connection with any

investigation, litigation, or proceeding, or the preparation of any defense with respect thereto,

#4831-8662-0725v1

arising out of or relating to the DIP Facility or the transactions contemplated in the DIP Documents, except to the extent resulting from the bad faith, gross negligence, or willful misconduct of the DIP Agent or a DIP Lender.

28.     <u>Subsequent Reversal or Modification</u>.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all protections and benefits afforded by Bankruptcy Code section 364.  Any financial accommodations made by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties shall be deemed to have been made in good faith, as such term is used in Bankruptcy Code section 363(e).  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, on appeal or otherwise, (i) such action shall not affect (1) the validity of any obligation, indebtedness or liability incurred or payment made hereunder by any of the Debtors to the DIP Agent, any DIP Lender, or the Prepetition Secured Parties, or (2) the validity and enforceability of any lien or priority authorized, created, or granted hereunder, and (ii) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e).

29.     <u>No Marshaling</u>.  Except as otherwise provided in this Interim Order with respect to the vessels *Bali Sea* and *Banda Sea*, neither the DIP Agent nor the DIP Lenders shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

30.     <u>Order Governs</u>.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall control.

31.     <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions of this Interim Order shall be binding upon all parties-in-interest in the Chapter 11 Cases,

#4831-8662-0725v1

including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee and any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, the Debtors' estates and the Debtors' respective successors and assigns (including any Chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors, or similar responsible person or similar designee or litigation trust hereinafter appointed or elected for the estates of the Debtors) and shall inure to the respective benefit of all of the foregoing.

32.    <u>Limitation of Liability</u>.    In determining to make any loan under the DIP Documents, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to or in connection with the Debtors' restructuring efforts or the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 <u>et</u> <u>seq.</u> as amended, or any similar federal or state statute).    Furthermore, nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender, or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in Bankruptcy Code section 101(2)).

33.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon its entry on the docket of the Chapter 11 Cases,

#4831-8662-0725v1

and any stay of the effectiveness of this Interim Order under Bankruptcy Rule 6004 or otherwise is waived.

34.  <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

35.  <u>Headings</u>.  The heading of any provision of this Interim Order is intended only for convenience and shall not be construed to be or interpreted as a part, or limitation on the scope, any such provision.

36.  <u>Final Hearing</u>.  The Final Hearing on the Motion shall be held on _____**, 2016 at ____:___ ___.m. (prevailing Eastern Time)**, before the Bankruptcy Court.

37.  <u>Notice of Final Hearing and Objection Deadline</u>.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with the Bankruptcy Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been selected.  Any party-in-interest objecting to the relief sought at the Final Hearing shall file a written objection with the Bankruptcy Court and serve it upon (i) the proposed attorneys for the Debtors, Akin Gump Strauss Hauer & Feld LLP (Attn: David H. Botter and Sarah Link Schultz), and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (prevailing Eastern Time) on** _____**, 2016**.

Dated: _____, 2016
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

36

## <u>Exhibit 1</u>

**DIP Credit Agreement**

## **Exhibit 2**

**Budget**