UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: INTERNATIONAL SHIPHOLDING ) Case No.: 16-12220 (SMB)
CORPORATION, *et al.* )
) Chapter 11
)
Debtors. )
)

---

## MOTION OF SEAFARERS INTERNATIONAL UNION IN OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)AUTHORIZING DEBTORS TO (A) PAY PRE-PETITION WAGES, OTHER COMPENSATION AND REIMBURSEABLE EXPENSES, AND (B) CONTINUE EMPLOYEE BENEFIT PROGRAMS AND (C) PAY DIRECTORS' FEES AND EXPENSES; AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS RELATED TO SUCH OBLIGATIONS

The Seafarers International Union of North America, Atlantic, Gulf Lakes and Inland Waters, AFL-CIO (hereinafter "SIU" or Union), a creditor[1] in the above-captioned case, on behalf of itself and its affiliated employee benefit plans, files this motion in opposition to the Debtors' Motion requesting orders authorizing payments of certain wages and employee benefits, and authorizing certain financial transactions (Docket no. 10) (hereinafter "Debtors' Motion"). The SIU opposes the Debtors' Motion on the grounds that it does not portray an accurate picture of the Debtors' operations because it ignores an essential segment of the Debtors' workforce, and demonstrates poor business judgment.

## BACKGROUND

The SIU is a labor union that represents unlicensed seafarers that work on board U.S. flag vessels that sail on the deep seas, the Great Lakes and the inland waters of the U.S. Affidavit of

---

[1] The Debtors list the "Seafarers International Union" as creditor number 4 on the Consolidated List of Creditors; however the full name of the Union is as listed above. The debt is actually not owed to the Union itself, but to its affiliated employee benefit plans, which are described below. However, since the SIU is listed as the creditor and bargained with the Debtors for these contributions, the SIU is submitting the instant motion.

George Tricker (hereinafter "Tricker Aff.", attached hereto) at 3. The SIU represents the unlicensed crewmembers[2] on board the vessels operated by three of the Debtors: Waterman Steamship Corporation, Sulphur Carriers Inc., and Central Gulf Lines, Inc. (collectively referred to as the "Union Debtors"). *Id* at 4. For many years, including at the present time, the SIU has had collective bargaining agreements ("CBAs") with these three companies. *Id*. The employees covered by these CBAs ("SIU crewmembers") make up the majority of the crew on the Union Debtors' vessels, and perform essential functions such as transporting goods, navigating the vessel, maintaining the vessel in good working order, standing watch, docking and undocking, and cooking the food. *Id*.

Pursuant to the CBAs, the Union Debtors were obligated to remit monthly contributions to the various employee benefit plans affiliated with the SIU, in order to provide vacation pay, pension benefits, health benefits, training and certain other benefits to the SIU crewmembers and their families. *Id* at 7. The names of these plans are the Seafarers Vacation Plan, the Seafarers Health and Benefits Plan, the Seafarers Money Purchase Pension Plan, the Seafarers Joint Employment Fund and the Seafarers Harry Lundeberg School of Seamanship (collectively referred to as the "Plans"). *Id*. In addition, the Union Debtors agreed to remit monthly payments on behalf of each SIU crewmember to Transportation Institute ("TI"), an industry development fund. *Id*. Payments to the Plans and TI are based upon a specific daily rate per employee, multiplied by days worked that month. *Id* at 8.

The contributions to the Plans and TI are due on the 10th of each month, for the previous month worked by the crewmembers. *Id*. The Union Debtors owe contributions to the Plans for

---

[2] There are 3 other labor unions that represent the licensed crewmembers and the radio operators on the vessels operated by Waterman, Central Gulf Lines, Inc., and Sulfur Carriers, Inc. They are: the Marine Engineers Beneficial Association (MEBA), Masters Mates and Pilots (MMP) and the American Radio Association (ARA). Tricker Aff. at 5. The employee benefit plans that are affiliated with those unions are also creditors in this case, and the arguments herein apply to employees represented by those unions as well.

2

the days worked by the SIU crewmembers in April, May, June and July, 2016. *Id* at 9. The total amount that the Union Debtors owe to each Plan is:

| | |
|---|---|
| Seafarers Health and Benefits Plan: | $1,193,688.53 |
| Seafarers Vacation Plan: | $992,361.94 |
| Seafarers Money Purchase Pension Plan | $66,407.99 |
| Seafarers Harry Lundeberg School of Seamanship: | $122,749.05 |
| Seafarers Joint Employment Fund: | $41,375.61 |
| Transportation Institute: | $29,262.75 |

*Id.*

SIU crewmembers receive credit for each day of contributions to the Seafarers Health and Benefits Plan so that they and their dependents will be eligible for health benefits. *Id* at 10. The money remitted to this Plan is also used to fund health benefits for retirees and their families. *Id.* The monies remitted to the Seafarers Money Purchase Pension Plan go into individual retirement accounts for each SIU crewmember. *Id* at 11. If contributions are not remitted, the employee will have less money in his/her account upon retirement. The monies paid into the Seafarers Vacation Plan are used to provide "vacation" pay to the SIU crewmembers during the time when they are not working. *Id.* Contributions to the Seafarers Harry Lundeberg School are used to fund this Union-affiliated training school, so that Seafarers can continue to be trained in necessary skills. *Id.* Contributions to the Seafarers Joint Employment Fund are used to maintain hiring halls, so that seafarers can obtain work. *Id.*

## ARGUMENT

A. <u>The Debtors' Failure to Take SIU and other Unionized Crewmembers into Account in their Motion Requesting Authorization to Pay Pre-petition Wages, Other Compensation and Continue Employee Benefit Plans Demonstrated Poor Business Judgment</u>

In order to stay in business, the Debtors must continue to operate their vessels. It is undisputable the Debtor cannot operate vessels without a crew. In their motion, the Debtors elaborated extensively about the "critical functions" performed by their shore-side personnel and

3

Directors, and detailed in a chart (pages 4 – 13 of Debtors' Motion) the wages, bonuses, vacation pay, sick time, medical, retirement and other benefits these employees must receive in order to remain in the Debtors' employ. Yet other than a perfunctory discussion of the back wages owed to three crewmembers, there is **no mention of the critical functions performed by the crew, or the vacation pay and benefits that those employees are entitled to receive.**

There are 229 individual unlicensed crewmembers represented by the SIU who worked on board the Union Debtors' vessels in April, May, June, July and August 2016. Tricker Aff. at 9.[3] The Union Debtors did not make benefit payments for any of these individuals for their vacation pay, their health benefits, their retirement accounts and other benefit plans during these months. *Id.* The Debtors had the audacity to state that their 123 shore-side personnel and 7 independent contractors depend on the debtors for their livelihood, without mentioning the fact that the 229 crewmembers depend upon the Debtors at least as much, and probably more than the more highly compensated company executives.

Debtors cite to *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y 1989), among other cases, for the premise that pre-petition obligations may be paid if there is a "sound business justification." It is clear however, that the Debtors lack sound business judgment, if they think they can continue to operate their vessels without properly compensating the crew. If these crewmembers do not receive the vacation pay and other benefits that are standard throughout the unionized maritime industry, they may refuse to work on the Union Debtors'

---

[3] The Debtors state that they employee 188 crewmembers for the U.S. flag vessels. Debtors' Motion at 3. This appears to be the number of individuals employed on their U.S. vessels at any one time. However, this does not take into account that many of these jobs are "rotary" positions, meaning that the crewmember is permitted to work a certain number of days on board a vessel, and then must be replaced by another individual. Tricker Aff. at 5. Accordingly, during the four months prior to the bankruptcy filing, the Debtors employed many more than 188 individual crewmembers from the 4 unions.

4

vessels, and seek employment elsewhere.[4] The SIU crewmembers are highly skilled, and cannot readily be replaced. The Union Debtors will immediately cease to operate if they cannot obtain crewmembers. As discussed in in the Debtors' Motion, the importance of a debtor's employees to its operation is well documented by numerous cases in this district. *See* cases cited in Debtors' Motion at 24. The Debtors' blatant disregard for their essential Union employees will have a significant effect on their business operation.

B. Grounds for Payment to SIU-Affiliated Employee Benefit Plans

Debtors state that their request to pay benefits to non-union shore-side personnel and executives "will benefit the Debtors' estates and creditors by allowing the Debtors' business operations to continue without interruption…" Debtors' Motion at 23. Clearly, the same is true for payment to the Seafarers' Plans. Furthermore, the claims of several of the Plans have priority under the Bankruptcy Code, maritime law, or should be made because the crewmembers will be irreparably harmed.

A seaman's vacation pay is considered seaman's "wages" within the meaning of 46 U.S.C. § 10313. *Fanos v. Maersk Line Ltd.*, 363 F.3d 358, 361 (5th Cir. 2004); , *Mateo v. the M/S Kiso, et al.* 805 F. Supp 761, 781 (N.D. Ca. 1991). Crewmembers rely on the payments they receive from the Seafarers Vacation Plan to compensate them during the periods that they are not working. Tricker Aff. at 3. As wages that were earned during the 180 day period prior to the date of the petition, payments owed to the Seafarers Vacation Plan payments have fourth priority, up to $10,950 for each individual. 11 U.S.C. § 507 (a) (4). Furthermore, there is also the possibility that the seamen may seek a maritime lien for wages due. *See e.g. Governor &Co.*

---

[4] There are currently many jobs available on U.S. vessels through the SIU-affiliated hiring halls. Tricker Aff. at 13.

5

*of the Bank of Scotland v. Sabay et al.*, 211 F.3d 261 (5th Cir. 2000). Accordingly, the payments of the monies owed to the Seafarers Vacation Plan should be approved by this Court.

The employees of the Union Debtors, their families, and retirees and their families rely upon the health benefits that they receive from the Seafarers Health and Benefits Plan, which is a multiemployer employee benefit plan. Tricker Aff. at 10. Delinquent contributions to a multiemployer employee health plan "are entitled to administrative priority under section 1114(e) (2) even though the debtor may not have any retired employees receiving benefits under the plan." *In re A.C.E. Elevator Co.* 347 B.R. 473, 486 (Bankr. S.D.N.Y. 2006) Accordingly, the monies owed to the Seafarers Health and Benefits Plan should be treated as an administrative expense under 11U.S.C. 503(b) as an actual and necessary cost of preserving the estate.

The 229 crewmembers who worked for the Union Debtors in the months of April, May, June and July did not receive contributions that should these Debtors were obligated to remit to their individual retirement accounts. If these payments are not made, the crewmembers will be irreparably harmed, as they will have less money available to them upon retirement. For this reason, the Court should approve payment of these amounts.

The bankruptcy court has the "power to authorize the debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc., supra,* 98 B.R. at 175. Although the payments owed to all of the Plans are important, the pre-petition claims for contributions owed to the Seafarers Vacation Plan, the Seafarers Health and Benefits Plan and the Seafarers Money Purchase Plan are essential to the continued operation of the Union Debtors, and as such should be approved.

C.    Pre-petition Payments to Creditors should be Stayed until Creditors Committee is appointed

The "official committee of creditors plays a pivotal role in the bankruptcy process." *Pan Am Corp. v. Delta Airlines* 175 B.R. 438, 4__ (Bankr. S.D.N.Y. 1994. "The function of an official creditors committee is to aid, assist, and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected. " *Id.* A Committee of Unsecured Creditors has not yet been formed in this case. Once a Committee is formed, there will be an opportunity for the interests of all creditors, including the SIU, its Plans and the employee benefit plans affiliated with the other crewmember unions to have their interests considered. Until such time, the Court should stay payments to all creditors, to be sure the interests of all creditors are equally protected.

## CONCLUSION

The SIU respectfully requests that this Court approve pre-petition payments to the Seafarers Vacation Plan, the Seafarers Health and Benefits Plan and the Seafarers Money Purchase Pension Plan for the reasons stated above. In the alternative, the SIU requests that the Court stay payments to all creditors, under such time as the official Committee of Unsecured Creditors has been formed.

Dated: August 15, 2016

Camp Springs, Maryland

Respectfully submitted,

/s/

Ellen Silver
5201 Auth Way
Camp Springs, MD 20746
E-mail address: esilver@seafarers.org
Telephone: (301) 702-4408
Facsimile: (301) 702-4411