**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Steven Fuhrman

and

**MOORE & VAN ALLEN PLLC**
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: 704.331.1000
David Walls

Counsel to Regions Bank, As Agent

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF REGIONS BANK, AS AGENT, IN RESPONSE TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) USE CASH COLLATERAL AND (C) GRANT CERTAIN PROTECTIONS TO PRE-PETITION LENDERS, (2) SCHEDULING A FINAL HEARING, AND (3) GRANTING CERTAIN RELATED RELIEF**

Regions Bank, in its capacity as the Administrative Agent and Collateral Agent for the

Senior Facility Lenders (as defined in the Interim DIP Order referred to below), submits this

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570).

limited objection and reservation of rights to the Debtors' Motion for Entry of Interim and Final Orders (1) Authorizing Debtors to (A) Obtain Post-Petition Financing, (13) Use Cash Collateral, and (C) Grant Certain Protections to Prepetition Lenders, (2) Scheduling a Final Hearing, and (3) Granting Certain Related Relief [Doc. 17] (the "<u>Motion</u>"[2]), and respectfully states:

1. On July 31, 2016 (the "<u>Petition Date</u>"), each of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") filed with this Court a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (as amended, the "<u>Bankruptcy Code</u>"), The Debtors' Chapter 11 cases are being jointly administered, the Debtors remain in possession of their assets and the operation of their businesses, each as a "debtor in possession," and a committee of unsecured creditors was appointed on September 1, 2016.

2. Prior to the Petition Date, Regions and the other Senior Facility Lenders provided revolving credit, term loan and letter of credit facilities to the thirteen (13) Senior Facility Borrowers pursuant to the Credit Agreement dated as of September 24, 2013 (as amended, supplemented or otherwise modified, the "<u>Senior Facility</u>").[3] To secure their respective obligations to the Senior Facility Lenders, each Senior Facility Borrower granted liens and security interests to Regions, as agent, on substantially all of its assets (the "<u>Senior Facility Collateral</u>"), including without limitation, the execution and delivery of first priority preferred ship and fleet mortgages on nine (9) remaining vessels[4], together with assignments

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Interim Order entered by the Court on August 4, 2016 after the interim hearing held on the Motion on August 3, 2016 [Doc. 42] (the "<u>Interim DIP Order</u>").

[3] CG Rail, a non-debtor subsidiary of Debtor International Shipholding Corporation, is also a Senior Facility Borrower under the Senior Facility.

[4] The vessels upon which Regions, as agent, holds a first priority preferred ship or fleet mortgage securing the Senior Facility are: the *Green Ridge* (Official Number 1176596), the *Mississippi Enterprise* (1108140),

of earnings, assignments of insurances, and other collateral specifically related to such vessels, all of which is more fully described in the credit and collateral documents executed in connection with the Senior Facility. As of the Petition Date, the Senior Facility Borrowers owed an outstanding principal balance of not less than $59.5 million under the Senior Facility. Without prejudice to the rights of other parties to the extent set forth in the Interim DIP Order, the Debtors have stipulated that the Senior Facility Lenders hold valid and perfected liens and security interests in the Senior Facility Collateral.

3. In addition to the Senior Facility, certain Debtors had three (3) other financing arrangements under separate facilities which, in each case, are secured by assets that do not secure the Senior Facility or any of such other financing arrangements (nor are any such other financing arrangements secured by the Senior Facility Collateral). As of the Petition Date, the aggregate principal amount of obligations outstanding under these three (3) other facilities was approximately $50 million: (i) approximately $27.3 million under the DVB Facility, (ii) approximately $16.8 million under the Citizens Facility and (iii) approximately $5.9 million under the Capital One Facility.

5. The Debtors' capital structure and existing financing arrangements are extremely complex given, among other things, that the four (4) prepetition financing facilities referenced above have totally separate collateral, there are no intercreditor agreements or arrangements in respect of such financing facilities, the borrower (LCI Shipholdings, Inc.) under the Capital One Facility and the Citizens Facility is not a borrower or guarantor of the Senior Facility (nor are any of the thirteen (13) subsidiary borrowers under the Senior Facility obligated in respect of the Capital One Facility or the Citizens Facility), the parent company (International Shipholding Corporation) is an obligor in respect of all four (4) prepetition

---

the *Texas Enterprise* (634621), the *Coastal 101* (544994), the *Louisiana Enterprise* (667454), the *Coastal 202* (583310), the *Florida Enterprise* (587045), the *Coastal 303* (545118), and the *Rosie Paris* (561709).

facilities, but such obligation is only a secured obligation in respect of the Senior Facility, one of the borrowers (CG Rail) under the Senior Facility is a non-Debtor entity currently subject to a consensual forbearance agreement entered into between CG Rail and the Senior Facility Lenders, and as a result of the Debtors' cash management arrangements, virtually all of the cash collateral as of the Petition Date was collateral only for the Senior Facility.

6.  As set forth in the Motion, the Debtors seek, among other things, authority to use the cash collateral of the Senior Facility Lenders and the other Prepetition Secured Parties pursuant to Bankruptcy Code section 363, and to obtain up to $16 million in senior secured, super-priority debtor-in-possession financing that would prime the Senior Facility Lenders and the other Prepetition Secured Parties pursuant to Bankruptcy Code sections 364 (d) (the "<u>DIP Facility</u>") from SEACOR Capital Corp. and DVB Bank SE (collectively, the "<u>DIP Lenders</u>").[5] Pursuant to the Interim DIP Order, the Debtors were authorized to obtain up to $7 million of the DIP Facility on an interim basis, which amount was thereafter increased to an interim amount of up to $9 million pursuant to a bridge order entered by the Court on August 24, 2016 pending the Final Hearing on the Motion now scheduled for September 7, 2016.

7.  In the context of the Motion, the complexity of the Debtors' capital structure in turn makes complicated the task of allocating fairly among the Prepetition Secured Parties the burden of the priming by the DIP Facility and the structuring of adequate protection to the Senior Facility Lenders and the other Prepetition Secured Parties. The Senior Facility Lenders had understood that the DIP Facility would prime all of the Prepetition Secured Parties, but as reflected in the Interim DIP Order and the remedies section of the DIP Credit Agreement, that is currently not the case. In addition, as currently structured, the DIP Lenders would be able to exercise remedies and foreclose (following the use of commercially reasonable efforts to first

---

[5] As reflected in the Interim DIP Order, as a result of an agreement reached on the proverbial "court house steps" the collateral securing the Citizens Facility was not primed in respect of the interim loans made under the DIP Facility.

exercise remedies in respect of two vessels that are currently unencumbered) on the Prepetition Collateral of just one (1) of the four (4) separate Prepetition Secured Parties and thereby allocate the entire burden of priming to such Prepetition Secured Party.

8.  In addition, the adequate protection proposed to be provided to the Prepetition Secured Parties raises certain legal and business concerns because it includes the grant of liens and claims in favor of Prepetition Secured Parties on the assets of Debtor entities that were *not* obligors in respect of the Prepetition Facilities provided by such Prepetition Secured Parties as of the Petition Date (and there has of course been no substantive consolidation of the Debtors). One such concern, for example, is that the adequate protection claims and liens to be granted to the Senior Lenders in respect of the Debtor Senior Facility Borrowers for diminution in the value of the Senior Facility Collateral would be diluted by the grant of such adequate protection liens and claims in favor of the Prepetition Secured Parties with no liens or claims whatsoever against such Debtor Senior Facility Borrowers.

9.  This is a limited objection because the Senior Facility Lenders, and presumably the other Prepetition Secured Parties, recognize that the Debtors have a need to use cash collateral and obtain postpetition financing. However, unless the issues now under discussion among such parties, the Debtors and the DIP Lenders are consensually resolved, the Senior Facility Lenders do not consent to the continued use of their cash collateral or to any incremental loans being advanced under the DIP Facility in excess of the $9 million of interim loans. The Senior Facility Lenders were clear at the Interim Hearing that their consent to entry of the Interim DIP Order was only in respect of the loans and the use of cash collateral authorized pursuant thereto.[6]

---

[6] Interim Hearing Transcript, at page 71:

MR. FUHRMAN: I do want to just note for the record that it is a delicate arrangement to get to an interim order today. There are different facilities with different vessels - -
THE COURT: It's the most complicated situation I've ever seen.

5

10. As noted, the Senior Facility Lenders continue to engage in good faith negotiations with the Debtors, the DIP Lenders and the other Prepetition Secured Parties to address and resolve their concerns. Given the confidential and sensitive nature of the ongoing negotiations, the Senior Facility Lenders will refrain from any further recitation of the matters under discussion. Rather, at this time the Senior Facility Lenders will simply reserve their right to raise any and all objections at the Final Hearing.

WHEREFORE, Regions Bank, as Agent for the Senior Facility Lenders, respectfully requests that this Court (i) deny the relief sought in the Motion absent a resolution of the objections of the Senior Facility Lenders and (ii) grant such other and further relief as is just and proper.

Dated: September 1, 2016

SIMPSON THACHER & BARTLETT LLP

By: /s/ Steven Fuhrman, Esq.
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Email: sfuhrman@stblaw.com

and

David S. Walls, Esq.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: 704.331.1000
Email: davidwalls@mvalaw.com

Counsel to Regions Bank, As Agent

---

MR. FUHRMAN: For the amount of money involved, certainly it is. And our consent to this interim DIP order and to the priming of our collateral, particularly in the context of the nonpriming that we just heard about, is limited to this interim order. And obviously we reserve our rights in connection with entry of a final order and the balance of the facility.