AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter
Sean E. O'Donnell
Sunish Gulati
Stephanie L. Gal

AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
Sarah J. Crowe (*pro hac vice* admission pending)

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-12220 (SMB)<br><br>Joint Administration Requested |

**DEBTORS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT CERTAIN PROTECTIONS TO PREPETITION LENDERS, (2) SCHEDULING A FINAL HEARING, AND (3) GRANTING CERTAIN RELATED RELIEF**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................3

    I.    The Equity Cushion Is Anything But Illusory ........................................................4

        A.    Fair Market Values Should Be Used To Calculate The Equity
                Cushion ...................................................................................................5

        B.    Using Fair Market Values, All Prepetition Secured Parties Retain
                At Least A 37% Equity Cushion ...............................................................7

        C.    The Prepetition Secured Parties Are Adequately Protected Even
                Under An Orderly Liquidation Value Method ...........................................10

    II.    Citizens Lender's Remaining Arguments Are Equally Without Merit .................12

        A.    The Junior Adequate Protection Liens and Junior Superpriority
                Claims As Contemplated In The DIP Credit Agreement Are Valid
                Forms Of Adequate Protection.................................................................12

        B.    The Marshaling Of Assets Requirement Is Very Real ...............................14

    III.    The Regions Objection Raises No Colorable Legal Arguments............................15

CONCLUSION.......................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*,
  230 F.3d 569 (2d Cir. 2000)...............................................................................15

*Anchor Sav. Bank FSB v. Sky Valley, Inc.*,
  99 B.R. 117 (Bankr. N.D. Ga. 1989) ...............................................................9, 10

*In re Aqua Assocs.*,
  123 B.R. 192 (Bankr. E.D. Pa. 1991) ....................................................................9

*In re Beker Indus. Corp.*,
  58 B.R 725, 737 (Bankr. S.D.N.Y. 1986)...............................................................5

*In re Carson*,
  34 B.R. 502 (Bankr. D. Kan. 1983) ......................................................................12

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)..................................................................................15

*In re Elmira Litho, Inc.*,
  174 B.R. 892 (Bankr. S.D.N.Y. 1994)....................................................................4

*In re Fortune Smooth (U.S.) Ltd.*,
  No. 93 B 40907 (JLG), 1993 WL 261478 (Bankr. S.D.N.Y. July 6, 1993) ............4

*In re Hawaiian Pacific Indus.*,
  17 B.R. 670 (Bankr. D. Haw. 1982) .....................................................................12

*In re Health Diagnostics Lab, Inc.*,
  No. 15-32919, 2015 Bankr. LEXIS 4471 (Bankr. E.D. Va. Aug. 17, 2015)...........6

*In re Holt*,
  No. 09-62439-13, 2010 WL 3294693......................................................................9

*In re Las Torres Dev. L.L.C.*,
  413 B.R. 687 (Bankr. S.D. Tex. 2009) ..........................................................8, 9, 13

*In re LTAP US, LLP*,
  2011 WL 671761 (Bankr. D. Del. Feb. 18, 2011) ................................................13

*In re M.D. Moody & Sons, Inc.*,
  No. 3:09-bk-06247-JAF, 2010 Bankr. LEXIS 5220 (Bankr. M.D. Fla. Mar. 5,
  2010) .......................................................................................................................6

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
  950 F. Supp. 2d 568 (S.D.N.Y. 2013)....................................................................15

*In re McKillips*,
  81 B.R. 454 (Bankr. N.D. Ill. 1987) .......................................................................9

*Monex Fin. Servs. v. Nova Info. Sys.*,
  657 F. Supp. 2d 447 (S.D.N.Y. 2009 .....................................................................15

*Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential
  Capital, LLC)*,
  501 B.R. 549 (Bankr. S.D.N.Y. 2013) ....................................................3, 4, 12, 16

*In re Rogers Dev. Corp.*,
  2 B.R. 679 (Bankr. E.D. Va. 1980).......................................................................12

*Sanders v. Tucker (In re Tucker)*,
  5 B.R. 180 (Bankr. S.D.N.Y. 1980) ........................................................................4

*Scott-Macon Secs., Inc. v. Zoltek Co*s.,
  2005 U.S. Dist. LEXIS 9034 (S.D.N.Y. May 11, 2005)........................................15

*In re St. Petersburg Hotel Assoc., Ltd.*,
  44 B.R. 944 (Bankr. M.D. Fla. 1984) ...................................................................13

*In re Swedeland*,
  16 F.3d 552 (3d Cir. 1994)...............................................................................9, 13

*Williams Companies, Inc. v. Energy Transfer Equity, L.P.*,
  No. CV 12168-VCG, 2016 WL 3576682 (Del. Ch. June 24, 2016 .......................15

*Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.)*,
  490 B.R. 470 (S.D.N.Y. 2013)................................................................................4

*In re Windsor Hotel, LLC*,
  295 B.R. 307 (Bankr. C.D. Ill. 2003) ...................................................................13

**Statutes**

11 U.S.C.S. § 361.................................................................................................12

11 U.S.C. § 363(b)(1) ...................................................................................11, 14

11 U.S.C. § 364(d)(1) ...............................................................................2, 3, 10

11 U.S.C. § 506(a), (b).........................................................................................17

**Other Authorities**

FED. R. BANKR. P. 2002 ........................................................................................................11, 14

Local Bankruptcy Rule 1007-2 .........................................................................................................1

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply memorandum of law (the "Reply Brief") in support of their *Motion for Entry of Interim and Final Orders (1) Authorizing Debtors to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral, and (C) Gant Certain Protections to Prepetition Lenders, (2) Scheduling a Final Hearing, and (3) Granting Certain Related Relief* (the "DIP Motion," ECF Doc. # 17) in the above-captioned chapter 11 cases (the "Chapter 11 Cases").[2]

## PRELIMINARY STATEMENT

1.      The Debtors principally filed these Chapter 11 Cases because they will soon run out of available cash and be forced to imminently cease operations absent additional liquidity.  In an effort to preserve the value of their estates for the benefit of all parties in interest, the Debtors seek the protection of the Bankruptcy Code and this Court's permission to (a) continue to access the full amount of the carefully negotiated $16,000,000 DIP Facility, and (b) use Cash Collateral, on a final basis.[3]

2.      As detailed in the DIP Motion, the DIP Facility is the product of good faith, arm's length negotiations and represents the sound exercise of the Debtors' business judgment.  The DIP Facility's terms are fair and reasonable, constituting the best economic terms available.  Those terms include the priming of the Prepetition Secured Parties.  Despite the Debtors' good faith efforts to reach an amicable resolution with all of the Prepetition Secured Parties, the Debtors remain at an impasse with Citizens Lender and Regions Bank.[4]

---

[2] The Debtors are also filing a supplemental declaration of Laurence H. Gurley (the "Supplemental Gurley Declaration") and a declaration of its vessel valuation expert, William B. Mollard (the "Mollard Declaration").

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement, the Interim Order, or the *Declaration of Erik L. Johnsen, President and Chief Executive Officer, Pursuant to Local Bankruptcy Rule 1007-2 and in Support of First Day Filings* (the "First Day Declaration," ECF Doc. # 7), as applicable.

[4] Regions Bank filed an objection in its capacity as administrative agent and collateral agent to the Senior Facility Lenders.  *Limited Objection and Reservation of Rights of Regions Bank, As Agent, In Response To Debtors' Motion For Entry Of Interim And Final Orders (1) Authorizing Debtors To (A) Obtain Post-Petition Financing, (B)*

3.      There is no dispute that the standard for priming in connection with debtor in possession financing is two-fold:  a debtor in possession must show that (a) it is "unable to obtain such credit otherwise," and (b) "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."  11 U.S.C. § 364(d)(1).  That the DIP Credit Agreement embodies the best available terms the Debtors would be able to obtain in satisfaction of the first of these prongs is not challenged by either Citizens Lender or Regions Bank—despite Citizens Lender's litany of superfluous complaints regarding such terms.  *See Citizens Asset Finance, Inc.'s Limited Objection to Senior Secured Post-Petition Financing and Objection to Use of its Cash Collateral* (the "Citizens' Objection"), ECF Doc. # 99, at 8-13; *see generally* Regions Objection.  Nor does Citizens Lender or Regions Bank dispute the Debtors' desperate need for the DIP Facility—in fact, Regions Bank expressly concedes "that the Debtors have a need to use cash collateral and obtain [this] financing."   Regions Objection ¶ 9.  Consequently, the only dispute under the Bankruptcy Code's priming standard regards the second prong requiring adequate protection and only Citizens Lender, not Regions Bank, has placed this prong in issue.

4.      Based on the fair market value of the Debtors' fleet as a whole less the Debtors' secured debt and the DIP Facility, all of the Prepetition Secured Parties—including Citizens Lender and Regions Bank—are adequately protected because ***there is an aggregate equity cushion in the amount of 37%***.  Supp. Gurley Declaration ¶ 8.  Although Citizens Lender touts

---

*Use Cash Collateral And (C) Grant Certain Protection To Pre-Petition Lenders, (2)Scheduling A Final Hearing, And (3) Granting Certain Related Relief* (the "Regions Objection"), ECF Doc. # 136.  For purposes of this reply brief and brevity, the Debtors refer to the objecting party as Regions Bank.

Although the Debtors have not yet reached an amicable resolution with Capital One N.A. ("Capital One"), Capital One has not filed any objection to the DIP Motion, and the Debtors remain hopeful that a deal will be reached with Capital One prior to an evidentiary hearing.  Importantly, the equity cushion calculations contained in this brief and in the accompanying expert declarations do not decrease regardless of whether or not Capital One consents to being primed.

that orderly liquidation values should be used, there is simply no evidence in the record suggesting that the Debtors will need to succumb to a forced sale of their fleet.  Rather, the Debtors have been and continue to negotiate toward a plan of reorganization or a going-concern sale—requiring the application of a fair market valuation methodology for purposes of adequate protection.  Moreover, even if the Debtors became obligated to sell some or all of their fleet, the current and continuing three-month time period available to conduct such a sale is already sufficient to merit using a fair market value instead of the orderly liquidation value advocated by Citizens Lender.  But this point is academic.  Even using orderly liquidation values, the Prepetition Secured Parties will still retain the "indubitable equivalent" of their secured positions prior to the imposition of any priming.

5.      Given that the Prepetition Secured Parties are adequately protected on purely valuation-related grounds, the other arguments raised in the Citizens' Objection and Regions Objection bear no weight and are, in any event, without merit.  As such, the Debtors respectfully request that this Court approve the DIP Credit Agreement and the DIP Facility to enable the Debtors to continue to operate their business and to maximize value for all stakeholders.

## ARGUMENT

6.      The crux of the dispute between the Debtors and Citizens Lender is whether the DIP Facility provides adequate protection under section 364(d)(1) of the Bankruptcy Code.  11 U.S.C. § 364(d)(1).[5]  Adequate protection may be provided in many forms, including payment of adequate protection fees or interest, or by granting replacement liens or administrative claims.  *See, e.g.*, *Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 501 B.R. 549, 589 (Bankr. S.D.N.Y. 2013).  Depending on the value of the relevant

---

[5] As already indicated, the Regions Objection does not contest that there is adequate protection; rather, Regions argues that the terms of the proposed priming is merely unfair.  *See* Regions Objection ¶ 7.

collateral, "[i]t is well-settled that the existence of an equity cushion can be sufficient, in and of itself, to constitute adequate protection." *Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 478 (S.D.N.Y. 2013) (collecting cases); *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994) ("It is beyond cavil that an equity cushion can, under certain circumstances, serve as a form of adequate protection."); *Sanders v. Tucker, (In re Tucker)*, 5 B.R. 180, 182 (Bankr. S.D.N.Y. 1980) ("An 'equity cushion' in and of itself may constitute adequate protection within the meaning of [section] 362(d)(1)."). Contrary to Citizens Lender's contentions, all of the Prepetition Secured Parties would be adequately protected by a sufficient equity cushion and through the other forms of adequate protection expressly provided for in the DIP Credit Agreement should the Court approve the Debtors' DIP Motion.

I.      **The Equity Cushion Is Anything But Illusory**

7.      To determine whether an equity cushion is sufficient for purposes of an adequate protection analysis, a court should ascertain the value of the collateral at issue and compare it to the relevant debt. *See In re Elmira Litho, Inc.*, 174 B.R. at 904 (recognizing equity cushion measured by "the amount of collateral available to satisfy a secured creditor's claim"); *In re Fortune Smooth (U.S.) Ltd.*, No. 93 B 40907 (JLG), 1993 WL 261478, at *6 (Bankr. S.D.N.Y. July 6, 1993) ("An equity cushion is the value in the property, above the amount owed to the creditor with a secured claim . . . .") (citations and internal quotation marks omitted).

8.      In doing so, a court "must account for the proposed disposition of the collateral." *In re Residential Capital, LLC*, 501 B.R. at 592-94 (citing 11 U.S.C. § 506(a)). For example, where—as here—the collateral is intended to be used in connection with (a) continuing the Debtors' business as a going concern through reorganization or (b) selling the business later as a going concern pursuant to Bankruptcy Code section 363, courts hold that the fair market value or

4

going concern value of the collateral is the applicable methodology for purposes of adequate protection. *Id.*; *In re Beker Indus. Corp.*, 58 B.R. at 737-39 (finding going concern valuation appropriate concerning DIP motion to prime non-consenting lenders' liens). And although the Debtors bear the burden of proof on this issue, the Debtors are not required to "prove up all different valuation scenarios." *In re Beker Indus. Corp.*, 58 B.R. 725, 737 (Bankr. S.D.N.Y. 1986). Rather, the Debtors need only provide sufficient evidence of the value of the collateral using an "appropriate" valuation methodology as determined within the "considerable discretion" of the bankruptcy court. *Id.* at 737-38.

A.    *Fair Market Values Should Be Used To Calculate The Equity Cushion*

9.    Citizens Lender has proffered three valuation methodologies:   (a) forced liquidation based on a sale within 90 days; (b) orderly liquidation based on a forced sale within five to eight months; and (c) fair market value. Supp. Gurley Decl. Ex. A ("Citizens Appraisal") at 5-6. Given that the Debtors have been conducting a marketing process for approximately 90 days to date, Citizens Lender cannot seriously dispute that its forced liquidation valuation methodology is clearly inapposite here. *See* Supp. Gurley Declaration ¶¶ 3-7. The critical inquiry, then, lies in whether orderly liquidation or fair market value is the "appropriate" methodology.

10.    Based on the extensive and ongoing negotiations the Debtors have been engaging to procure a plan of reorganization or going-concern sale, *see* Supp. Gurley Declaration ¶¶ 3-7, the Debtors submit that a fair market valuation methodology should be applied in this Court's adequate protection analysis. Citizens Lender—or any party in interest for that matter—has presented no evidence refuting the Debtors' intention to pursue a plan of reorganization or going-concern sale. And nothing in the record even suggests that the Debtors, at this early stage of the

5

Chapter 11 Cases, are remotely "close to liquidation." *See In re Health Diagnostics Lab, Inc.*, No. 15-32919, 2015 Bankr. LEXIS 4471, at *30 (Bankr. E.D. Va. Aug. 17, 2015).

11.     Moreover, even if the Debtors elected to sell some or all of their vessels, there is more than ample time to do so in a manner that would enable the Debtors to obtain fair market value. *See* Supp. Gurley Declaration ¶¶ 5-7; Mollard Declaration ¶¶ 9-13. Contrary to the five to eight month period for orderly liquidation valuation proffered by the Citizens Appraisal, the Debtors' market lends itself to a much shorter time period for achieving a sale at fair market value. Mollard Declaration ¶ 13. The Debtors' vessel valuation expert, William B. Mollard, has more than 50 years of experience as a ship sales and purchase broker and states in his sworn declaration that fair market value is generally achievable if the marketing and sale process takes place for at least 90 days. *Id.* ¶¶ 9-13. Indeed, the Debtors' history in selling other vessels in their fleet illustrates that fair market value may be—*and has been*—achieved in a sale conducted in even less time (*i.e.*, approximately one month). *Id.* ¶ 11.

12.     Fair market value, accordingly, is more appropriate here than an orderly liquidation value for purposes of calculating the available equity cushion to the Prepetition Secured Parties. *See, e.g.*, *In re Health Diagnostics Lab, Inc.*, No. 15-32919, 2015 Bankr. LEXIS 4471, at *28-30 (holding fair market value applicable to determine equity cushion, not orderly liquidation value) ("No evidence was presented to suggest that the Debtors are close to liquidation and, as such, liquidation value (either as orderly liquidation value or forced liquidation value) is not appropriate to value the Debtors' assets. To the contrary, the evidence presented to the Court at the Interim DIP Hearing indicated that the Debtors would remain a going concern as the Debtors pursue the going concern sale of their assets."); *In re M.D. Moody & Sons, Inc.*, No. 3:09-bk-06247-JAF, 2010 Bankr. LEXIS 5220, at *27-28 (Bankr. M.D. Fla.

6

Mar. 5, 2010) (holding fair market value more appropriate than orderly liquidation value in determining equity cushion) ("'The appropriate method of valuation to gauge whether the objecting party is adequately protected in a *reorganization case* is 'going concern' or fair market value.'" (citing cases)).

13.    But, again, the point is somewhat moot.    As illustrated below, while there certainly is a larger equity cushion available using the appropriate fair market valuation, the Prepetition Secured Parties remain adequately protected even under an orderly liquidation analysis.

   B.    *Using Fair Market Values, All Prepetition Secured Parties Retain At Least A 37% Equity Cushion*

14.    The equity cushion based on the fair market value of the Debtors' fleet as a whole is more than sufficient to warrant the requested priming.    As illustrated below and in the accompanying expert declarations, there is a 37% aggregate equity cushion when comparing the fair market value of all of the secured collateral subject to the proposed priming lien (*i.e.*, the Debtors' entire fleet) to all of the secured debt including the DIP Facility.

| Vessel Name | Type | Lender/Facility | Outstanding Loan Balance[5] | Appraisal Midpoint | Value Cushion |
|---|---|---|---|---|---|
| Mississippi Enterprise | Bulk Carrier | Senior Facility | | 12,000,000 | |
| Florida Enterprise | Barge - ITB (Integrated Tub-Barge Unit) | Senior Facility | | 8,000,000 | |
| Coastal 202 | Tug - ITB (Integrated Tub-Barge Unit) | Senior Facility | | 2,500,000 | |
| Texas Enterprise | Bulk Carrier | Senior Facility | | 13,000,000 | |
| Louisiana Enterprise | Barge - ATB (Articulated Tub-Barge Unit) | Senior Facility | | 10,000,000 | |
| Coastal 101 | Tug - ATB (Articulated Tub-Barge Unit) | Senior Facility | | 1,500,000 | |
| Green Ridge | Pure Car Truck Carrier | Senior Facility | | 27,000,000 | |
| | | Subtotal - Senior Facility | 59,540,000 | 74,000,000 | 24% |
| | | | | | |
| Oslo Wave | Ice-strengthened Multi-purpose Vessel | CapitalOne | 5,915,591 | 4,500,000 | -24% |
| | | | | | |
| Green Bay | Pure Car Truck Carrier | DVB | 27,383,583 | 47,000,000 | 72% |
| | | | | | |
| Green Dale | Pure Car Truck Carrier | Citizens/RBS | 16,809,658 | 21,000,000 | 25% |
| | | | | | |
| Bali Sea | Specialized Roll-on Roll-off | | 0 | 12,750,000 | |
| Banda Sea | Specialized Roll-on Roll-off | | 0 | 12,750,000 | |
| | | Total | 109,648,832 | 172,000,000 | 57% |
| | | Plus: DIP Facility[6] | 16,000,000 | | |
| | | Total Incl. DIP Facility | 125,648,832 | 172,000,000 | 37% |

Supp. Gurley Declaration ¶ 8.  This 37% aggregate equity cushion is sufficient for all of the Debtors' Prepetition Facilities and the DIP Facility combined and therefore constitutes adequate protection for all of the Prepetition Secured Parties whose claims would be primed as a result of the DIP Credit Agreement.  *See In re Las Torres Dev. L.L.C.*, 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009) ("[C]ase law is clear that an equity cushion of 20% or more constitutes adequate

---

[6] Outstanding Loan Balances refers to values stipulated to in Interim Order entered August 4, 2016.  Supp. Gurley Declaration ¶ 8, n.2.

[7] The DIP Facility accounts for post-petition repayment on August 4, 2016 of $1,850,607 previously outstanding under existing ING Facility.  This payment released the Bali Sea and Banda Sea (owned by Gulf South Shipping PTE Ltd., as guarantor) as collateral under the ING Facility.  The ING Facililty was by and among Dry Bulk Americas Ltd. (which owned the vessel Bulk Americas) and Dry Bulk Australia Ltd. (which owned the vessel Bulk Australia). These dry bulk vessels were previously sold as part of the Company's Strategic Plan.  Supp. Gurley Declaration ¶ 8 n.3.

protection." (citations omitted)); *In re Holt*, No. 09-62439-13, 2010 WL 3294693, at *6 (collecting cases); *In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (collecting cases).

15.    Yet Citizens Lender argues—apparently based solely on the single appraisal it procured of its own pre-petition collateral, the *Green Dale*—that the $16 million DIP Facility priming lien would "[d]estroy[] [w]hatever [e]quity [c]ushion" Citizens Lender has in the *Green Dale*. Citizens Obj. ¶ 39-40.  Not so.  The proposed priming lien is secured by the Debtors' ***entire*** fleet—not just the *Green Dale*, which, as shown above, yields a 37% equity cushion to Citizens Lender and the other Prepetition Secured Parties.  Citizens Lender, accordingly, either overlooks or misconstrues the scope of the proposed priming lien when it argues that the equity cushion in the *Green Dale* alone must be sufficient to protect Citizens Lender's secured claim in addition to the DIP Lenders' claim.  *Id.* ¶ 39.  To be sure, the main case Citizens Lender cites in support of its assertion involves a priming lien over a *single* asset subject to a *single* pre-petition secured interest with an *insufficient* equity cushion; not a group of assets subject to a group of pre-petition secured claims with varying equity cushions amounting to an aggregate cushion that is sufficient pursuant to well settled case law.  *See In re Aqua Assocs.*, 123 B.R. 192 (Bankr. E.D. Pa. 1991).[8]  Here, unlike in *In re Aqua Assocs.*, Citizens Lender and the other Prepetition Secured Parties are being adequately protected by no fewer than 12 ships with an aggregate equity cushion of at least 37%.

16.    Citizens Lender also confusingly argues that "if the Debtors in fact could not obtain any third-party financing without priming liens, that would demonstrate that there is no

---

[8] The other cases Citizens Lender relies upon are equally unpersuasive.  On the one hand, in *Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 119 (Bankr. N.D. Ga. 1989), the court approved a priming lien in light of a 160% equity cushion in the lienholder's collateral—a percentage a debtor in possession need not meet in order to obtain court approval of adequate protection.  *See In re Las Torres*, 413 B.R. at 697; *In re Holt*, No. 09-62439-13, 2010 WL 3294693, at *6 (collecting cases); *In re McKillips*, 81 B.R. at 458 (collecting cases).  On the other hand, *Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)* involves an undersecured pre-petition lienholder without any equity cushion—facts that are simply not present here. 16 F.3d 552, 564 (3d Cir. 1994) (finding lender was "undersecured by many millions of dollars").

9

confidence in the market that there is sufficient value to reach administrative creditors." Citizens' Obj. ¶ 41. This is a non-sequitur. Given that a debtor is *required* to demonstrate that it is unable to obtain financing through lesser means than priming in order to justify such priming in the first instance, it cannot be that such a showing precludes priming. This would otherwise render meaningless the express provisions in the Bankruptcy Code permitting priming upon a showing of adequate protection. *See* 11 U.S.C. § 364(d)(1); *see also Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 123-24 (Bankr. N.D. Ga. 1989) ("[I]t is unlikely that Congress would have included § 364(d) and (e) in the Bankruptcy Code if it considered the loss of a first priority position, irrespective of adequate protection was, *ipso facto*, irreparable harm.").

C.    *The Prepetition Secured Parties Are Adequately Protected Even Under An Orderly Liquidation Value Method*

17.    But if the Debtors are required to sell any of their vessels, even under Citizens Lender's orderly liquidation scenario, the Prepetition Secured Parties would remain adequately protected. The DIP Interim Order obligates the Debtors and the DIP Lenders to use commercially reasonable efforts to sell the *Bali Sea* and the *Banda Sea* vessels before liquidating any of the other vessels in the event of default under the DIP Credit Agreement. The aggregate fair market value midpoint for the *Bali Sea* and the *Banda Sea* equals $25,500,000. Mollard Declaration ¶¶ 16-20. Citizens Lender contends that a 25% discount applies to the fair market value for purposes of calculating the orderly liquidation value. Citizens Appraisal at 5-6. The Debtors dispute this discount amount,[9] but even using Citizens Lender's math, the orderly liquidation value for the *Bali Sea* and the *Banda Sea* equals $19,125,000 (75% of $25,500,000).

---

[9] Although a 25% discount rate may be used to calculate an orderly liquidation value, this discount rate is at the very top of the range; it may be appropriate to apply a discount of anywhere up to 15% to 25%. Mollard Declaration ¶ 12. Under the current circumstances in which the Debtors have been engaged in extensive and ongoing negotiations for a period of time (already) longer than the usual less than 90-day period triggering an orderly liquidation valuation methodology, a 25% discount rate is inappropriate. *Id.* ¶¶ 12-13.

Supp. Gurley Declaration ¶ 9.   This amount would be more than sufficient to repay the $16,000,000 DIP Facility.  *Id.*  And since the DIP Facility would no longer retain a lien over any of the vessels once it is paid off, each of the Prepetition Secured Parties would be the first and only secured claim upon the orderly liquidation of the *Bali Sea* and *Banda Sea*, subject only to administrative claims.   In other words, Citizens Lender would be in at least as good of a position as it was prior to being primed—*i.e.*, adequately protected by a sufficient equity cushion and possessing a first priority secured claim junior only to the administrative expense claims in the Chapter 11 Cases.

18.     Citizens Lender also makes a lot of noise in its objection about vessel sales absent an event of default, but any vessel sale by the Debtors outside the ordinary course would require approval from this Court on notice to Citizens Lender and other parties in interest.   At such time, Citizens Lender would be well within its rights to object to and oppose the sale.   11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate . . . ."); FED. R. BANKR. P. 2002; *id*. R. 6004.   The Court, accordingly, need not, at this time, evaluate the adequate protection proffered in the proposed DIP Credit Agreement and DIP Facility in terms of a hypothetical sale of a lender's asset that may or may not occur sometime in the unforeseeable future.

19.     Moreover, under the absolute ***worst case*** scenario where the Debtors' ***entire*** fleet would be sold pursuant to an orderly liquidation—which is highly unlikely based on the current status of the Debtors' plan negotiations—the Prepetition Secured Parties would retain an aggregate equity cushion of approximately 16.4%, using the Debtors' vessel valuation expert's 15% discount rate.  Supp. Gurley Declaration ¶ 10; Mollard Declaration ¶¶ 16, 21, 25.  And this equity cushion arising out of the ***worst case*** scenario for the future of the Debtors in these

11

Chapter 11 Cases is still within the range of percentages approved by courts as constituting adequate protection. *See, e.g.*, *In re Carson*, 34 B.R. 502, 506-07 (Bankr. D. Kan. 1983) (holding 11% equity cushion to be adequate protection); *In re Hawaiian Pacific Indus.*, 17 B.R. 670, 673 (Bankr. D. Haw. 1982) (holding 15% equity cushion to be adequate protection); *In re Rogers Dev. Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (holding 15% to 20% equity cushion constitutes adequate protection).

## II.    Citizens Lender's Remaining Arguments Are Equally Without Merit

### A.    *The Junior Adequate Protection Liens and Junior Superpriority Claims As Contemplated In The DIP Credit Agreement Are Valid Forms Of Adequate Protection*

20.    Turning to the contractual adequate protection prescribed by the DIP Credit Agreement, Citizens Lender argues that the Junior Superpriority Claims and corresponding Junior Adequate Protection Liens do not constitute adequate protection because recovery pursuant to such liens and claims is "speculative" and "illusory." Citizens' Obj. § I.B. Not so. This argument ignores that administrative claims and replacement liens are valid forms of adequate protection expressly recognized in the Bankruptcy Code. *In re Residential Capital, LLC*, 501 B.R. at 589 ("11 U.S.C.S. § 361 articulates three separate examples of what may constitute adequate protection: (1) periodic cash payments; (2) offering a replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; and (3) other relief that will assure the creditor that its position will not be adversely affected by the stay."). Citizens Lender's contention is also based on the faulty premise that it would only obtain recovery pursuant to these liens and claims "potentially after all other obligations under the Prepetition Facilities have been repaid." Citizens' Obj. ¶ 42. But there is simply no basis to assume that Citizens Lender will be last in line in terms of recovery, particularly at this stage of the Chapter 11 Cases when there is no proposal or chapter 11 plan

12

pre-determining the order in which all claims will necessarily be satisfied.  When such a proposal

or order is proposed, if ever, Citizens Lender will be more than able to oppose any such plan that

purports to place Citizens Lender last in line.

21.    In addition, Citizens Lender's contention that the proposed Junior Adequate

Protection Liens are somehow illusory because no new collateral has been offered to Citizens

Lender ignores the fact that Citizens Lender is being granted additional collateral in the

remainder of the Debtors' fleet to further guard against any diminution in value.  Each of the

cases to which Citizens Lender cites involves the priming of a lienholder who was undersecured

and was not afforded the benefit of ***any*** equity cushion—let alone the sufficient cushion

identified here.  *In re St. Petersburg Hotel Assoc., Ltd.*, 44 B.R. 944, 946 (Bankr. M.D. Fla.

1984) ("[T]his Court has no doubt that the Mortgagee is already under-collateralized . . . ."); *In*

*re Windsor Hotel, LLC*, 295 B.R. 307, 316 (Bankr. C.D. Ill. 2003) ("This Court determines the

current fair market value of the HOTEL property, inclusive of personal property, to be $2.0

million.  Because the existing liens total at least $3.5 million, there is no equity in the HOTEL

property that would permit the existing lienholders to be adequately protected if a senior priming

lien is granted."); *In re Swedeland*, 16 F.3d at 567 (finding lender was "undersecured by many

millions of dollars"); *In re LTAP US, LLP*, 2011 WL 671761, at *3-4 (Bankr. D. Del. Feb. 18,

2011) (finding lender held an "undersecured position" and the debtor failed to meet its burden

that there was a sufficient equity cushion).  Indeed, the only case Citizens Lender cites that

involved a lender who was oversecured—like Citizens Lender—held that although a replacement

lien may not be sufficient adequate protection on its own, the priming of the lender's lien was

appropriate because the equity cushion was above 20%.  *In re Las Torres*, 413 B.R. at 697.

13

22.    Given that the Debtors have evidenced a sufficient equity cushion in the Debtors' fleet as a whole, the validity of the Junior Adequate Protection Liens and Junior Superpriority Claims is not dispositive on this DIP Motion.

### B.    The Marshaling Of Assets Requirement Is Very Real

23.    Finally, Citizens Lender also scoffs at the marshal-related provisions in the DIP Credit Agreement, arguing that they "offer[] absolutely no protections" to Citizens Lender because (a) the proposed marshaling of the *Bali Sea* and *Banda Sea* first only applies in the event of default but not otherwise, and (b) the marshaling is only subject to a "commercially reasonable efforts" standard, which is not a "firm requirement" that would be easily enforceable. Citizens' Obj. § I.C.  Neither of these arguments holds water.

24.    First, the fear of a marshaling of assets outside an event of default assumes a fire sale-type liquidation that is (a) not contemplated in these Chapter 11 Cases, (b) highly unlikely given the current state of the Debtors' negotiations, (c) would be contrary to the best interests of all of the Debtors' stakeholders, and, (d) in any event, places the cart before the horse.  As already indicated, if the Debtors do seek to sell the *Green Dale* or any other secured collateral— in a fire sale or otherwise—the Debtors will be required to file a motion seeking approval from this Court on notice to parties in interest.  11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate . . . ."); Fed. R. Bankr. P. 2002; *id*. R. 6004.  It is at that time that Citizens Lender may appropriately raise its objections to the proposed sale; rather than now where the facts remain merely hypothetical and the terms of the sale are wholly unknown.

25.    Second, contrary to Citizens Lenders' contention otherwise, the "commercially reasonable efforts" provision in the DIP Facility is a recognized contractual legal standard that

imposes a binding obligation on parties to a contract. *See, e.g., Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("Regardless of the standard, the 'best efforts' clause in the Agreement clearly obligated FXDD to attempt in good faith at least to execute customer orders at the specified level."); *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*, 230 F.3d 569, 578 (2d Cir. 2000) (finding an "every effort" clause in a collective bargaining agreement was sufficient to impose an enforceable obligation on the employer to make "every reasonable effort" to preserve bargaining unit work, and that the company breached the agreement); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 950 F. Supp. 2d 568, 617 (S.D.N.Y. 2013) ("[T]he 'commercially reasonable efforts' clause . . . establishes an objective standard of conduct."); *Monex Fin. Servs. v. Nova Info. Sys.*, 657 F. Supp. 2d 447, 454 (S.D.N.Y. 2009) ("New York courts have explained that a 'best efforts' clause imposes an obligation to act with good faith in light of one's own capabilities."); *Williams Companies, Inc. v. Energy Transfer Equity, L.P.*, No. CV 12168-VCG, 2016 WL 3576682, at *16 (Del. Ch. June 24, 2016) (noting that by agreeing to make "commercially reasonable efforts" to obtain a certain tax opinion, a party "bound itself to do those things objectively reasonable to produce the desired 721 Opinion, in the context of the agreement reached by the parties.").[10]

## III.    The Regions Objection Raises No Colorable Legal Arguments

The Regions Objection is expressly limited in nature and appears to be devoid of legal arguments, primarily reserving the rights of the lenders under the Senior Facility.  The only challenges Regions Bank raises relate to (a) whether the priming burden is "allocate[ed] fairly among the Prepetition Secured Parties" and (b) Regions Bank's purported "legal and business concerns" that the Junior Adequate Protection Liens and corresponding Junior Superpriority

---

[10] In New York, the term "reasonable efforts" is used interchangeably with "best efforts." *Scott-Macon Secs., Inc. v. Zoltek Co*s., 2005 U.S. Dist. LEXIS 9034, *40 (S.D.N.Y. May 11, 2005) (considering whether a party failed to undertake "reasonable efforts" to secure certain financing and in so doing, breached a contract.).

15

Claims granted to the Senior Facility Lenders would be "diluted by the grant" of similar liens and claims to the other Prepetition Secured Parties against certain of the Debtor Senior Facility Borrowers that those other Prepetition Secured Parties did not originally have claims against. Regions Objection ¶¶ 8-9. Both of these contentions are unavailing.

First, whether the priming allocation is "fair" is not the relevant inquiry for purposes of approving a priming lien under Bankruptcy Code section 364(d). *See* 11 U.S.C. § 364(d). The Debtors are only required to demonstrate that they could not obtain financing on better terms and that the parties being primed are adequately protected. *See id.* The Debtors have done that here. And while Regions Bank may believe that the Senior Facility Lenders have drawn the short stick, nobody refutes the fact that the DIP Credit Agreement offers the best terms available to the Debtors and that the additional liquidity provided by the DIP Facility is necessary to maximize the value of the estate. In short, the terms are fair and reasonable under the circumstances.

Second, Regions Bank's "concerns" about the Junior Adequate Protection Liens and corresponding Junior Superpriority Claims, are purely "business" in nature, not "legal" as Regions Bank touts. Legally, such liens and claims are recognized and valid forms of adequate protection. *In re Residential Capital, LLC*, 501 B.R. at 589. Additionally, Regions Bank ignores that it would be receiving similar liens and claims against collateral that it did not have interests in pre-petition—and the vast majority of that new collateral is significantly oversecured with equity cushions equaling and tripling the equity cushion Regions Bank retains in its pre-petition collateral. Supp. Gurley Declaration ¶ 8 (illustrating a 72% equity cushion in the *Green Bay* and a 25% equity cushion in the *Green Dale*). Regions Bank also overlooks the facts that (a) the Junior Adequate Protection Liens and Junior Superpriority Claims are in fact "junior" to its pre-petition secured liens and claims, DIP Interim Order ¶ 12(a), and (b) it is entitled to—and has

16

been timely receiving—adequate protection payments covering the interest and fees under its

Senior Facility.  Thus, Regions Bank would continue to enjoy the full amount of its allowable

secured claim, as defined under section 506 of the Bankruptcy Code, if priming is permitted.  *See*

11 U.S.C. § 506(a), (b) ("An allowed claim of a creditor secured by a lien on property in which

the estate has an interest . . . is a secured claim to the extent of the value of such creditor's

interest in the estate's interest in such property . . . and is an unsecured claim to the extent that

the value of such creditor's interest . . . is less than the amount of such allowed claim. . . . To the

extent that an allowed secured claim is secured by property the value of which, after any

recovery under subsection (c) of this section, is greater than the amount of such claim, there shall

be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or

charges provided for under the agreement or State statute under which such claim arose.").

## **CONCLUSION**

In sum, Citizens Lender and Regions Bank have failed to provide a single meritorious argument in opposition to the relief requested in the DIP Motion. As a result, this Court should overrule the Citizens Objection and the Regions Objection and allow the Debtors to prime Citizens Lender and Regions Bank as prescribed by the DIP Credit Agreement.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the final order, substantially in the form of the Proposed Order, granting the relief requested herein and in the DIP Motion, and (b) grant such other and further relief as may be just and proper.

Dated:  September 2, 2016    **AKIN GUMP STRAUSS HAUER & FELD LLP**
        New York, New York    By:  /s/ *Sean E. O'Donnell*

David H. Botter
Sean E. O'Donnell
Sunish Gulati
Stephanie L. Gal
One Bryant Park
New York, NY 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

Sarah Link Schultz (admitted *pro hac vice*)
Sarah J. Crow (*pro hac vice* admission pending)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

*Proposed Counsel to Debtors and Debtors in Possession*