AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Sean E. O'Donnell
David H. Botter
Sunish Gulati
Stephanie L. Gal

AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
Sarah J. Crow (*pro hac vice* admission pending)

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Joint Administration Requested |

**SUPPLEMENTAL DECLARATION OF LAURENCE H. GURLEY IN SUPPORT OF ENTRY OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT CERTAIN PROTECTIONS TO PREPETITION LENDERS, (2) SCHEDULING A FINAL HEARING, AND (3) <u>GRANTING CERTAIN RELATED RELIEF</u>**

I, Laurence H. Gurley, declare as follows under penalty of perjury:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

1.  I am a Managing Director at Blackhill Partners, LLC ("Blackhill"), an investment banking firm with its principal office located at 2651 North Harwood St., Suite 120, Dallas, Texas, and the proposed investment banker for the Debtors in the above-captioned bankruptcy cases (the "Chapter 11 Cases"). I have worked at Blackhill from 2011 to the present.

2.  I submit this supplemental declaration in support of the *Motion for Entry of Interim and Final Orders (1) Authorizing Debtors to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral, and (C) Grant Certain Protections to Prepetition Lenders, (2) Scheduling a Final Hearing, and (3) Granting Certain Related Relief* (the "DIP Motion," ECF Doc. # 17) in the Chapter 11 Cases.

**A. The Debtors' Pre- and Post-Petition Negotiations and Marketing Process**

3.  In or about June 2016, the Debtors began marketing their business on a going-concern basis in an effort to reorganize. This robust marketing process has continued through today. Currently, the Debtors are in active negotiations with several potential chapter 11 plan of reorganization sponsors who are in the process of completing their due diligence of the Company. More specifically, the Debtors have executed 24 non-disclosure agreements, have had meaningful discussions with each of those parties, have participated in dozens of diligence meetings, and have received already several indications of interest and expect to receive more in the near future.

4.  Given that the marketing process and negotiations began in June 2016, the Debtors have been in continued negotiations for approximately three months. I believe that this three-month period, in addition to the anticipated future negotiations which remain ongoing, is and continues to be an adequate time to market the Debtors' assets. I do not believe that the marketing process thus far should be construed as compressed or forced such that the Debtors' ability to maximize value of the Debtors' assets would be hampered.

### B. Fair Market Value Is An Appropriate Method For Purposes of Valuing the Debtors' Assets At This Time

5. In anticipation of the final evidentiary hearing scheduled for September 7, 2016 to evaluate the Debtors' DIP Motion, the Debtors and Citizens Lender exchanged potential hearing exhibits. One of the exhibits provided by Citizens Lender is an appraisal of its pre-petition collateral, the *Green Dale* vessel, prepared by North American Marine Consultants, LLC and dated August 17, 2016. A true and correct copy of this appraisal is attached hereto as Exhibit A (hereinafter the "Citizens Appraisal").

6. The Citizens Appraisal provides three different valuation methodologies: (a) fair market value; (b) orderly liquidation value based on a forced sale within five to eight months; and (c) forced liquidation value based on a sale within 90 days. Citizens Appraisal at 5-6. The Debtors' vessel valuation expert, Mr. Mollard, disagrees with the Citizens Appraisal definitions and specifically the time periods applied to each methodology. Mollard Declaration at 13. Based on my industry experience and in accordance with the Debtors' vessel valuation expert's extensive experience, I agree with Mr. Mollard that the Citizens Appraisal does not properly define each of the valuation methodologies.

7. In my opinion, because the Debtors have been engaged in the marketing process for approximately three months and anticipate further negotiations, a forced liquidation value and an orderly liquidation value would be inappropriate. Rather, I believe a fair market value methodology would be most appropriate in evaluating the values of the Debtors' assets at this stage of the Chapter 11 Cases.

### C. The Prepetition Secured Parties Are Adequately Protected By A Sufficient Equity Cushion Using A Fair Market Value Methodology

8. The fair market value of the Debtors' fleet as a whole (i.e. the collateral subject to the proposed priming lien under the DIP Facility) provides a 37% aggregate equity cushion when

compared to all of the Debtors' secured debt including the DIP Facility. This 37% equity cushion is demonstrated in the chart below, using the fair market values of the vessels as appraised by the Debtors' vessel valuation expert, William B. Mollard. *See* Mollard Declaration at 16, 21, 25, 32.

| Vessel Name | Type | Lender/Facility | Outstanding Loan Balance[3] | Appraisal Midpoint | Value Cushion |
|---|---|---|---|---|---|
| Mississippi Enterprise | Bulk Carrier | Senior Facility | | 12,000,000 | |
| Florida Enterprise | Barge - ITB (Integrated Tub-Barge Unit) | Senior Facility | | 8,000,000 | |
| Coastal 202 | Tug - ITB (Integrated Tub-Barge Unit) | Senior Facility | | 2,500,000 | |
| Texas Enterprise | Bulk Carrier | Senior Facility | | 13,000,000 | |
| Louisiana Enterprise | Barge - ATB (Articulated Tub-Barge Unit) | Senior Facility | | 10,000,000 | |
| Coastal 101 | Tug - ATB (Articulated Tub-Barge Unit) | Senior Facility | | 1,500,000 | |
| Green Ridge | Pure Car Truck Carrier | Senior Facility | | 27,000,000 | |
| | | Subtotal - Senior Facility | 59,540,000 | 74,000,000 | 24% |
| Oslo Wave | Ice-strengthened Multi-purpose Vessel | CapitalOne | 5,915,591 | 4,500,000 | -24% |
| Green Bay | Pure Car Truck Carrier | DVB | 27,383,583 | 47,000,000 | 72% |
| Green Dale | Pure Car Truck Carrier | Citizens/RBS | 16,809,658 | 21,000,000 | 25% |
| Bali Sea | Specialized Roll-on Roll-off | | 0 | 12,750,000 | |
| Banda Sea | Specialized Roll-on Roll-off | | 0 | 12,750,000 | |
| | | Total | 109,648,832 | 172,000,000 | 57% |
| | | Plus: DIP Facility[4] | 16,000,000 | | |
| | | Total Incl. DIP Facility | 125,648,832 | 172,000,000 | 37% |

**D. The Prepetition Secured Parties Are Also Adequately Protected Using An Orderly Liquidation Valuation Methodology**

9. The DIP Interim Order obligates the Debtors and the DIP Lenders to use commercially reasonable efforts to sell the *Bali Sea* and the *Banda Sea* vessels before liquidating any of the other vessels in the event of default under the DIP Credit Agreement. The aggregate fair market value midpoint for the *Bali Sea* and the *Banda Sea* equals $25,500,000. Mollard

---

2    Outstanding Loan Balances refer to values stipulated to in Interim Order entered August 4, 2016.

3    The DIP Facility accounts for post-petition repayment on August 4, 2016 of $1,850,607 previously outstanding under existing ING Facility. This payment released the Bali Sea and Banda Sea (owned by Gulf South Shipping PTE Ltd., as guarantor) as collateral under the ING Facility. The ING Facililty was by and among Dry Bulk Americas Ltd. (which owned the vessel Bulk Americas) and Dry Bulk Australia Ltd. (which owned the vessel Bulk Australia). These dry bulk vessels were previously sold as part of the Company's Strategic Plan.

Declaration ¶ 16.  Using the Citizens Appraisal 25% discount rate, the orderly liquidation value for the *Bali Sea* and the *Banda Sea* equals $19,125,000 (75% of $25,500,000).  This amount would be more than sufficient to repay the $16,000,000 DIP Facility.

10. In the absolute worst case scenario, which is highly unlikely given the current status of negotiations, the entire fleet would be sold pursuant to an orderly liquidation.  Using the Debtors' vessel valuation expert's 15% discount rate for orderly liquidation valuation purposes, the value of the entire fleet aggregates to $146,200,000 with a net asset value of $20,551,168 when subtracting the Debtors' total secured debt, including the DIP Facility.  Thus, an orderly liquidation of the Debtors' entire fleet would still provide an equity cushion of 16.4%.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September 2, 2016
       Dallas, Texas

                                         Respectfully submitted,

                                         Laurence H. Gurley
                                         Managing Director
                                         Blackhill Partners, LLC