**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

### FINAL ORDER (1) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT CERTAIN PROTECTIONS TO PREPETITION LENDERS AND (2) GRANTING CERTAIN RELATED RELIEF

Upon the motion [D.I. 17] (the "Motion")[2] of International Shipholding Corporation and certain of its affiliates and subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), in the above captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and rule 4001-2 of the Local Bankruptcy Rules (the "Local Rules"), seeking, among other things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

I.        Postpetition Financing

A.        authorization for the Debtors to obtain up to $16,000,000 in senior secured super-priority debtor-in-possession financing (the "DIP Facility") pursuant to that certain Debtor-in-Possession Credit Agreement (as amended on August 25, 2016 and on September 12, 2016) substantially in the form annexed to this order (this "Final Order") as Exhibit 1 (as such agreement may be amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement" and, together with any exhibits attached thereto and other agreements related thereto, including, without limitation, all notices, guarantees, security agreements, related or ancillary documents and agreements, and any mortgages contemplated thereby, the "DIP Documents"),[3] by and among the Debtors (in such capacity, the "Borrowers"), SEACOR Capital Corp., as administrative agent and collateral agent (in such capacity, the "DIP Agent"), and DVB Bank SE ("DVB Bank") and SEACOR Capital Corp. and/or one or more of their designated affiliates or other lender parties thereto from time to time, as lenders (in their capacities as such, the "DIP Lenders");

B.        authorization for the Debtors to execute and deliver the DIP Documents and to perform all other and further acts as may be necessary or appropriate in connection with the same;

C.        authorization for the Debtors to use (i) up to $7 million (the "Interim Amount") available under the DIP Facility upon entry of that certain *Interim Order (1) Authorizing Debtors*

---

[3] Notwithstanding anything herein to the contrary, prior to entering into any material modification of the DIP Documents, the Debtors shall provide five (5) business days' notice of such material modification to counsel to the Prepetition Secured Parties, the Committee, and the U.S. Trustee (each as defined below). If the Prepetition Secured Parties, the Committee, or the U.S. Trustee fail to object in writing to the proposed material modification within this five (5) business day period, the Debtors shall be authorized to proceed therewith. If the Prepetition Secured Parties, the Committee, or the U.S. Trustee lodge a timely objection, the Debtors may seek approval of such material modification, including approval on an expedited basis, from the Court. With respect to immaterial modifications of the DIP Documents, the Debtors shall provide notice to the same parties following such immaterial modification.

2

to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Certain Protections to Prepetition Secured Lenders, (2) Scheduling a Final Hearing, and (3) Granting Certain Related Relief [D.I. 42] (the "First Interim Order") to avoid immediate and irreparable harm, (ii) up to an additional $2 million available under the DIP Facility upon entry of that certain Order Adjourning Final Hearing on Debtors' Motion for Entry of Interim and Final Orders (1) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Certain Protections to Prepetition Secured Lenders, (2) Scheduling a Final Hearing, and (3) Granting Certain Related Relief [D.I. 127] (the "Second Interim Order") and (iii) up to an additional $7 million for a sum total of up to $16 million (the "Final Amount), upon entry of this Final Order (together with the Interim Order and the Second Interim Order, the "DIP Orders");

D.      authorization for the Debtors to grant security interests, liens, and superpriority claims to the DIP Agent, for the ratable benefit of itself and the DIP Lenders, to secure the Debtors' obligations under and with respect to the DIP Facility (the "DIP Obligations");

E.      authorization for the Debtors to use proceeds of the DIP Facility in accordance with, for the purposes, and in the amounts set forth in, the Budget (as defined below), subject solely to any Permitted Variance (as defined in the DIP Credit Agreement);

II.      Use of Cash Collateral

A.      authorization for the Debtors to use the Prepetition Secured Parties' (as defined below) Cash Collateral (as defined below) pursuant to Bankruptcy Code sections 361, 362 and 363, in accordance with the Budget to, among other things, make the Adequate Protection Payments (as defined below). "Cash Collateral" shall have the meaning assigned to the term "cash collateral" in Bankruptcy Code section 363(a) and consists of the Debtors' cash in which

3

the Prepetition Secured Parties or the DIP Agent (for the ratable benefit of the DIP Lenders) have

an interest;

III.    <u>Adequate Protection</u>

      A.    authorization for the Debtors to provide adequate protection to the Prepetition

Secured Parties;

IV.    <u>Certain Modifications and Waivers</u>

      A.    modification of the automatic stay under Bankruptcy Code section 362 on the

terms and conditions set forth herein to the extent necessary to implement and effectuate the

terms of the DIP Documents and the DIP Orders;

      B.    waiver of any applicable stay with respect to the effectiveness and enforceability

of the DIP Orders (including under Bankruptcy Rule 6004); and

V.    <u>Final Hearing</u>

      A.    the scheduling of a final hearing (the "<u>Final Hearing</u>"), pursuant to Bankruptcy

Rule 4001 and Local Rule 4001-2, to be held within twenty-eight (28) days of entry of the

Interim Order to consider entry of the Final Order; and the first interim hearing and the second

interim hearing (collectively, the "<u>Interim Hearings</u>") on the Motion having been held on August

3, 2016 and on August 22, 2016, respectively; and the Court having entered the First Interim

Order and the Second Interim Order on August 4, 2016 and August 24, 2016, respectively; and

the Final Hearing having been held on September 7, 2016; and based upon all of the pleadings

and declarations filed with the Court, the evidence presented at the Interim Hearings and the

Final Hearing, and the entire record of the Chapter 11 Cases; and there being no objections to the

relief sought in the Motion that have not previously been overruled, withdrawn, waived, settled,

or resolved; and the Court having noted the appearance of all parties in interest; and it appearing

that the relief requested in the Motion is in the best interests of the Debtors and the Debtors'

estates and creditors; and the Debtors having provided notice of the Motion as set forth in the

Motion and it appearing that no further or other notice of the Motion and the relief sought therein

need be given; and after due deliberation and consideration, and sufficient cause appearing

therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,**[4] that:

1.      <u>Approval of Motion</u>.   The Motion is approved on a final basis, subject to the

terms and conditions set forth in this Final Order.   This Final Order shall become effective

immediately upon its entry.   To the extent the terms of the DIP Documents or the Motion differ

in any respect from the terms of this Final Order, this Final Order shall control.

2.      <u>Jurisdiction and Venue</u>.   The Court has core jurisdiction over the Chapter 11

Cases commenced on July 31, 2016 (the "<u>Petition Date</u>"), the Motion, the parties affected by the

Motion, and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334.   Venue is proper

before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      <u>Notice</u>.   Notice of the Motion has been provided to (i) the Office of the United

States Trustee for Region 2 (the "<u>U.S. Trustee</u>"), Attn: Serene Nakano; (ii) the entities listed on

the List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy

Rule 1007(d); (iii) counsel to the agents or Lenders, as applicable, under the Prepetition Facilities

(as defined below);  (iv) counsel to the DIP Lenders; (v) the Internal Revenue Service; (vi) the

United States Attorney for the Southern District of New York; (vii) the Securities and Exchange

Commission; and (ix) any other party entitled to notice pursuant to Local Rule 9013-1(b).   Under

the circumstances, the notice given by the Debtors of the final relief requested in the Motion and

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.   To the extent any findings of fact constitute conclusions of law, they are adopted as such.   To the extent any conclusions of law constitute findings of fact, they are adopted as such.

of the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy

Rules 4001(b) and (c) and 9014, Bankruptcy Code section 1514, and Local Rule 4001-2, and no

further notice of the relief sought at the Final Hearing is necessary or required.

4.    <u>Creditors Committee</u>.  On September 1, 2016, the United States Trustee appointed

the Official Committee of Unsecured Creditors (the "<u>Committee</u>").  The Committee selected

counsel on September 12, 2016.

5.    <u>Debtors' Stipulations</u>.  Subject only to the rights of parties in interest specifically

set forth in Paragraph 6(b) below, the Debtors admit, stipulate, acknowledge, and agree that:

(a)    *Prepetition Indebtedness*.  As of the Petition Date, the Debtors (and non-

Debtor C.G. Railway, Inc. ("<u>CG Rail</u>") with respect to the Regions Facility (as defined below))

were unconditionally indebted and liable without defense, counterclaim, or offset of any kind,

under the following facilities:

(i)    <u>Existing Regions Facility</u>.  That certain Credit Agreement,

dated as of September 24, 2013, as amended, supplemented or modified from

time to time (the "<u>Regions Facility</u>"), by and among International Shipholding

Corporation ("<u>ISC</u>"), Enterprise Ship Company, Inc. ("<u>Enterprise</u>"), Sulphur

Carriers, Inc. ("<u>SCI</u>"), CG Rail, Central Gulf Lines, Inc. ("<u>CGL</u>"), Waterman

Steamship Corporation ("<u>WSC</u>"), Coastal Carriers, Inc., N.W. Johnsen & Co.,

Inc. ("<u>NWJ</u>"), LMS Shipmanagement, Inc. ("<u>LMS</u>"), U.S. United Ocean Services,

LLC ("<u>UOS</u>"), Mary Ann Hudson, LLC, Sheila McDevitt, LLC, Tower, LLC)

and Frascati Shops, Inc., as borrowers (the "<u>Regions Facility Borrowers</u>"), the

lenders party thereto (the "<u>Regions Facility Lenders</u>") and Regions Bank, as

administrative agent and collateral agent (in such capacities, "<u>Regions</u>" and

together with the Regions Facility Lenders, the "Regions Facility Parties") in an amount not less than $59,540,000 as of the Petition Date;

    a.    The aggregate value of the Regions Facility Collateral (as defined below) substantially exceeds the aggregate amount of the obligations under the Regions Facility.

    (ii)    ING Facility. That certain Assigned, Assumed, Amended and Restated Senior Secured Term Loan Facility Agreement, dated as of June 10, 2015, as amended, supplemented or modified from time to time (the "ING Facility"), by and among Dry Bulk Americas Ltd. and Dry Bulk Australia Ltd., corporations organized and existing under the laws of the British Virgin Islands, as borrowers (the "ING Borrowers"), ISC and Gulf South Shipping PTE Ltd. ("GSS"), a corporation organized under the laws of Singapore, as guarantors, the lenders party thereto (the "ING Lenders") and ING Bank N.V., London Branch, as facility agent and security trustee ("ING" and together with the ING Lenders, the "ING Parties") in an amount not less than $1,850,607 as of the Petition Date;

    a.    The aggregate value of the ING Collateral (as defined below) substantially exceeded the aggregate amount of the obligations under the ING Facility as of the Petition Date.

    b.    The Debtors fully repaid the ING Facility within a week after the Petition Date, as authorized by the First Interim Order.

    (iii)    Existing DVB Facility. That certain Senior Secured Term Loan Credit Agreement, dated as of August 26, 2014, as amended, supplemented or

modified from time to time (the "DVB Facility"), by and among CGL, as borrower, ISC, as guarantor, the lenders party thereto (the "DVB Lenders") and DVB Bank as mandated lead arranger, facility agent, and security trustee (together with the DVB Lenders, the "DVB Parties") in an amount not less than $27,383,583 as of the Petition Date;

> a.    The aggregate value of the DVB Collateral (as defined below) substantially exceeds the aggregate amount of the obligations under the DVB Facility.

(iv)    Existing Capital One Facility.  That certain Loan Agreement, dated as of December 28, 2011, as amended, supplemented or modified from time to time (the "Capital One Facility"), by and among LCI Shipholdings, Inc. ("LCI") (as successor to WSC), a corporation existing under the laws of the Marshall Islands, as borrower, ISC, as guarantor, and Capital One, National Association, as lender (the "Capital One Lender") in an amount not less than $5,915,591.48 as of the Petition Date;

> a.    The aggregate value of the Capital One Collateral (as defined below) substantially exceeds the aggregate amount of the obligations under the Capital One Facility.

(v)    Existing Citizens Facility.  That certain Loan Agreement, dated as of August 25, 2014, as amended, supplemented or modified from time to time (the "Citizens Facility"), by and among LCI, as borrower, ISC, as guarantor, and Citizens Asset Finance, Inc. (f/k/a RBS Asset Finance, Inc.), as lender (the "Citizens Lender") in an amount not less than $16,809,658 as of the Petition Date;

a.      The aggregate value of the Citizens Collateral (as defined below) substantially exceeds the aggregate amount of the obligations under the Citizens Facility.

 (all of the foregoing, collectively, the "Prepetition Facilities" and the agents, lenders, and any issuing banks under the Prepetition Facilities, the "Prepetition Secured Parties," and the Prepetition Facilities and any related documents or instruments from time-to-time executed in favor of the lenders under the Prepetition Facilities, the "Prepetition Documents", and the obligations thereunder, the "Prepetition Obligations").

(b)      *Prepetition Liens and Collateral.*  Prior to the Petition Date, as more fully set forth in the Prepetition Documents, the Debtors granted to the Prepetition Secured Parties liens and security interests (collectively, the "Prepetition Liens"), as follows:

(i)      pursuant to and in connection with the Regions Facility, valid, perfected, binding, non-avoidable, and enforceable first priority security interests in and liens on, subject to certain exceptions, substantially all personal property of the Regions Facility Borrowers and the U.S. flagged vessels (a) *Green Ridge*, (b) *Mississippi Enterprise*; (c) *Texas Enterprise*, (d) *Florida Enterprise*, (e) *Coastal 202*, (f) *Louisiana Enterprise*, (f) *Coastal 101*, (g) *Coastal 303*, and (h) *Rosie Paris* owned by the Regions Facility Borrowers along with customary assignments of earnings and insurance and other collateral related to such vessels (collectively, the "Regions Facility Collateral");

a.      The Debtors do not have any claims, counterclaims, causes of action, defenses, setoff rights, or entitlements to equitable relief related to the Regions Facility or the Regions

9

Facility Collateral, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the Regions Facility Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(ii)    pursuant to and in connection with the ING Facility, valid, perfected, binding, non-avoidable, and enforceable first priority security interests in the Singaporean flagged vessels (a) *Bali Sea* and (b) *Banda Sea* along with customary assignments of earnings and insurance and other collateral related to such vessels (collectively, the "ING Collateral");

a.    The Debtors do not have any claims, counterclaims, causes of action, defenses, setoff rights, or entitlements to equitable relief related to the ING Facility or the ING Collateral, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the ING Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(iii)    pursuant to and in connection with the DVB Facility, valid, perfected, binding, non-avoidable, and enforceable first priority security interests in the U.S. flagged vessel *Green Bay* along with customary assignments of earnings and insurance and other collateral related to such vessel, including

10

present and future credit balances standing to the credit of CGL in certain accounts maintained with DVB Bank (collectively, the "DVB Collateral");

      a.     The Debtors do not have any claims, counterclaims, causes of action, defenses, setoff rights, or entitlements to equitable relief related to the DVB Facility or the DVB Collateral, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the DVB Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(iv)    pursuant to and in connection with the Capital One Facility, valid, perfected, binding, non-avoidable, and enforceable first priority security interests in, and liens on, the Marshall Islands flagged vessel *Oslo Wave* along with customary assignments of earnings and insurance and other collateral related to such vessel (collectively, the "Capital One Collateral"); and

      a.     The Debtors do not have any claims, counterclaims, causes of action, defenses, setoff rights, or entitlements to equitable relief related to the Capital One Facility or the Capital One Collateral, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the Capital One Lender, and its respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

11

(v)     pursuant to the Citizens Facility, first priority security interests in the Marshall Islands flagged vessel Green Dale along with customary assignments of earnings and insurance and other collateral related to such vessel (collectively, the "Citizens Collateral" and, together with the Regions Facility Collateral, the ING Collateral, the DVB Collateral, and the Capital One Collateral, the "Prepetition Collateral").

a.     The Debtors do not have any claims, counterclaims, causes of action, defenses, setoff rights, or entitlements to equitable relief related to the Citizens Facility or the Citizens Collateral, whether arising on or prior to the date hereof, under the Bankruptcy Code, other applicable insolvency law, or applicable non-insolvency law, against the Citizens Lender, and its respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

(c)     *Adequate Protection*.   Subject to the next sentence (which describes the relative priorities), the Prepetition Secured Parties other than the ING Parties (the "AP Prepetition Secured Parties") are entitled, pursuant to Bankruptcy Code sections 361, 362(c)(2), 363(e), and 364(d)(1), to adequate protection of their respective interests in the Prepetition Collateral, to the extent of any diminution in the value of such interests, as a result of  (i) the incurrence of the DIP Obligations and the granting of the priming DIP Liens and the DIP Superpriority Claims (each, as defined below) on account thereof, (ii) the use of their respective Cash Collateral, (iii)  the Debtors' use, sale or disposition of their respective Prepetition Collateral, and  (iv) the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (collectively, the "Adequate Protection Claims").  The Adequate Protection Claims

shall be divided into two types according to their respective priorities: (i) any Adequate Protection Claims arising as a result of the use of the AP Prepetition Secured Parties' Cash Collateral and/or other Prepetition Collateral to satisfy the DIP Obligations are hereinafter referred to collectively as the "Senior Adequate Protection Claims"; and (ii) all other Adequate Protection Claims are hereinafter referred to collectively as the "Junior Adequate Protection Claims".

(d)      *No Control Person*.  None of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties in their respective capacities as such, is a control person or insider of any of the Debtors by virtue of entry into the DIP Documents, the Prepetition Documents, or this Final Order, or of any action taken or omission to act by any of them in respect of or in connection with, respectively, the DIP Documents, the Prepetition Documents, or this Final Order.

6.      Effect of Stipulations on Third Parties.

(a)      Subject to Paragraph 6(b), each stipulation, admission, waiver and agreement contained in this Final Order, including, without limitation, the Debtors' stipulations in Paragraph 5 hereof (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors, their respective estates, and any successors thereto under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Claims and Defenses (as defined below) as of the Petition Date.

(b)      The Debtors' Stipulations shall be binding upon all other parties in interest, including the Committee, unless (i) the Committee or any other party in interest, in each case, with requisite standing for any party other than the Committee, has duly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to

the limitations contained herein, including without limitation, in Paragraph 18), challenging the validity, enforceability, priority or extent of any of the Prepetition Obligations or any of the Prepetition Liens on the Prepetition Collateral securing the Prepetition Obligations or otherwise asserting or prosecuting any Avoidance Actions (as defined below) or any other claims, counterclaims, causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, employees, representatives, attorneys, or advisors in connection with any matter related to the Prepetition Facilities, the Prepetition Obligations, the Prepetition Collateral, or the Debtors by no later than the date that is (a) in the case of any such adversary proceeding or contested matter, sixty (60) days after the date of entry of this Final Order, and (b) any such later date agreed to in writing by the applicable Prepetition Secured Party (or the agent under the relevant Prepetition Facility, as applicable) in its sole and absolute discretion, or (c) as ordered by the Court for cause shown prior to the expiration of such period (such time period, the "Challenge Period"); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided that*, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (y) the respective Prepetition Secured Party's liens on its Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be (with the exception of

14

the liens of the ING Parties), legal, valid, binding, perfected, and of the priority specified in

Paragraph 5, not subject to defense, counterclaim, recharacterization, subordination, or

avoidance; and (z) the Prepetition Obligations and the respective Prepetition Secured Party's

liens on the Prepetition Collateral (and the Prepetition Secured Parties and their respective

agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors) shall not

be subject to any other or further challenge by the Committee or any other party in interest, and

any such Committee or party in interest shall be enjoined from seeking to exercise the rights of

the Debtors' estates, including without limitation, any successor thereto.  If any such adversary

proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the

Debtors' Stipulations contained in this Final Order, including without limitation, in Paragraph 5

of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second

sentence of this Paragraph) on the Committee and any other person except as to any such

findings and admissions that were expressly and successfully challenged in such adversary

proceeding or contested matter.  Nothing in this Final Order vests or confers on any person, other

than the Committee, standing or authority to pursue any cause of action belonging to the Debtors

or their estates.  For the avoidance of doubt, the Committee is granted standing to pursue a

challenge pursuant to this Order and shall not be required to file any further motion or obtain a

further order concerning its standing to do so.  In the event that there is a timely successful

challenge brought pursuant to this Paragraph 6, the Court shall retain jurisdiction to fashion an

appropriate remedy.  For the avoidance of doubt, none of the challenge provisions set forth in

this Paragraph 6 shall apply to the DIP Facility, the DIP Obligations, the DIP Collateral, the DIP

Liens, the DIP Superpriority Claim, the DIP Agent, or any of the DIP Lenders, and in no event

shall any of the foregoing be subject to challenge on any grounds by any party.

7.      Use of DIP Facility Proceeds and Cash Collateral.  The Debtors are hereby
authorized, subject to the terms and conditions of the DIP Documents and this Final Order, to use
Cash Collateral and all proceeds of the DIP Facility in accordance with, and for the purposes and
in the amounts set forth in, the Budget (subject to any Permitted Variance, which, as set forth in
the DIP Credit Agreement, is 15%).

8.      Findings Regarding Need for the DIP Facility and Use of Cash Collateral.

(a)     *Good Cause*.  Good cause has been shown for entry of this Final Order.

(b)     *Need Regarding Postpetition Financing and Use of Prepetition Secured
Parties' Cash Collateral*.  The Debtors have a critical need to obtain secured postpetition
financing under the DIP Facility and use the Prepetition Secured Parties' Cash Collateral in order
to, among other things, preserve their going concern value, pay costs and expenses related to the
administration of the Chapter 11 Cases, and satisfy other working capital and operational needs
of the Debtors during the Chapter 11 Cases.  The access to sufficient working capital and
liquidity made available through the use of Cash Collateral and incurrence of new indebtedness
for borrowed money under the DIP Facility are vital to the Debtors' ability to meet payroll and
other operating expenses and to the Debtors' reorganization efforts.

(c)     *No Credit Available on More Favorable Terms*.  The Debtors are unable
to obtain sufficient committed financing, under existing circumstances, on more favorable terms
and conditions from sources other than the DIP Lenders pursuant to, and for the purposes set
forth in, the DIP Documents.  The Debtors are unable to obtain sufficient committed unsecured
credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The
Debtors also are unable to obtain sufficient committed secured credit allowable under
Bankruptcy Code section 364(c) without granting the DIP Lenders the DIP Liens and the DIP

16

Superpriority Claims on the terms and conditions set forth in this Final Order and the DIP Documents.

(d)    *Business Judgment*.  The terms and conditions of the DIP Facility and the DIP Documents, as well as the terms upon which the Debtors will be permitted to use Cash Collateral as provided in this Final Order, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are appropriate under the circumstances.

(e)    *Good Faith*.  The DIP Facility, the DIP Documents, and the use of Prepetition Collateral have been negotiated in good faith and at arm's length.  All loans and other financial accommodations extended under, in respect of or in connection with the DIP Facility, the DIP Documents, and the DIP Orders shall be deemed to have been extended in "good faith" as such term is used in Bankruptcy Code sections 105, 361, 363, and 364(e), and in express reliance upon the protections set forth therein, each of the DIP Agent and the DIP Lenders shall be entitled to the full protection available under Bankruptcy Code section 364(e) in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise and the Prepetition Secured Parties shall be entitled to the protections provided under Bankruptcy Code 363(m).

(f)    *Relief Essential; Best Interest*.  Without access to the DIP Facility and the use of Cash Collateral, the Debtors and their estates would suffer irreparable harm.  The Debtors may be forced to cease business operations, terminate substantially all of their employees, and be forced to wind-down their operations.  Access to the DIP Facility (up to the Final Amount) and the use of the Cash Collateral in accordance with this Final Order and the Budget are, therefore, in the best interest of the Debtors' estates.

17

9.    <u>Authorization of the DIP Documents and the DIP Facility</u>.

(a)    The terms and conditions of the DIP Documents are approved in all respects.

(b)    Each Debtor is authorized and directed to execute and deliver, and perform all acts under, the DIP Documents, and to pay all fees required thereunder, including, without limitation, the reasonable and documented fees, expenses, and indemnities (including reasonable and documented fees and expenses of professionals) of the DIP Agent and the DIP Lenders as provided in the DIP Documents, whether incurred before or after the Petition Date, without the need to file retention or fee applications.  The DIP Agent shall submit to the U.S. Trustee and counsel to each of the Debtors, the Committee, and the Prepetition Secured Parties (other than the ING Parties) summary statements of its and the DIP Lenders' legal counsel's and financial advisor's fees, and the Debtors, the U.S. Trustee, the Committee, and the Prepetition Secured Parties (other than the ING Parties) shall have ten (10) days following their receipt of any such summary statement to object to the reasonableness of the fees and expenses included in such summary statement.  If such objection is not resolved within ten (10) days after it is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in these Chapter 11 Cases; *provided that* the Debtors shall pay any undisputed portion of such fees, costs, and expenses fifteen (15) days after the initial presentment to the Debtors of such summary statement.  For the avoidance of doubt, all fees, expenses, and indemnities of the DIP Agent and the DIP Lenders shall constitute DIP Obligations and shall be secured by the DIP Liens and the DIP Superpriority Claims and afforded all of the priorities and protections afforded to the other DIP Obligations under this Final Order and the DIP Documents.

(c)      Upon execution and delivery of the DIP Documents, (i) the DIP Documents shall constitute legal, valid, binding, enforceable, and unavoidable obligations of the Debtors, enforceable against each Debtor in accordance with the terms thereof and of this Final Order, and (ii) the DIP Obligations shall constitute "allowed claims" against each Debtor within the meaning of Bankruptcy Code section 502.

(d)      No obligation, payment, transfer or grant of security under the DIP Documents or this Final Order, including the Adequate Protection Liens (as defined below), shall be stayed, restrained, void, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, rejection, subordination, disallowance, impairment, cross-claim, counterclaim, or any other claims, causes of action, or challenges of any nature under the Bankruptcy Code, any other applicable law or regulation, or otherwise.

(e)      The Debtors are hereby authorized to borrow up to the Final Amount under the DIP Facility (subject to any conditions precedent on borrowings under the DIP Documents), which amount shall be used for any purposes permitted under the DIP Documents, in accordance with, and for the purposes and in the amounts set forth in, the Budget (subject to any Permitted Variance).

(f)      In the event the DIP Lenders are exercising remedies in respect of the DIP Facility, the DIP Lenders shall foreclose on the vessels *Bali Sea* and *Banda Sea* before exercising remedies with respect to other DIP Collateral (as defined below); *provided, that*, (w) the foregoing shall not require the DIP Lenders to undertake commercially unreasonable actions in

respect of the foreclosure on the *Bali Sea* or the *Banda Sea*, as applicable, (x) the DIP Lenders can satisfy the foregoing obligation through any type of foreclosure, including by selling the vessels *Bali Sea* and *Banda Sea* for scrap, (y) the DIP Lenders shall provide reasonable notice of any such foreclosure to the Prepetition Secured Parties (other than the ING Parties) (so that any such parties may place a higher bid and/or better bid, including to the extent that the proceeds of the vessels *Bali Sea* and *Banda Sea* are insufficient to indefeasibly pay all DIP Obligations in cash and in full) and counsel to the Committee and (z) the DIP Lenders' obligation to foreclose on the vessels *Bali Sea* and *Banda Sea* before exercising remedies with respect to the other DIP Collateral set forth in the first sentence of this Paragraph 9(f) shall be deemed satisfied (such that the priming described in Paragraph 10(c) shall be in effect notwithstanding no foreclosure having occurred) if any of the following conditions are met and, with respect to (i), (ii) and (iii) only, if such condition lasts for any 60 days out of 90 consecutive days:

(i)        The DIP Lenders are legally prohibited (other than as a result of the DIP Lenders' actions) from foreclosing on the *Bali Sea* and *Banda Sea,* as applicable; *provided*, *that* the DIP Lenders are not required to seek to appeal or challenge any such prohibition or otherwise cause it to be overturned;

(ii)        With respect to the *Bali Sea*, if there is an "arrest" of the *Bali Sea;*

(iii)        With respect to the *Banda Sea*, if there is an "arrest" of the *Banda Sea*; or

(iv)        With the written consent of the Prepetition Secured Lender whose collateral is subject to priming.

(g)    With respect to a sale of the vessel *Green Ridge*,

(i)    Except during an exercise of remedies after the expiration of any Remedies Notice Period (as defined below),

a.    (x) fifty percent (50%) of the net cash proceeds of such sale shall be immediately applied to pay obligations under the Regions Facility, subject to a maximum of $15,000,000; and (y) the remaining net cash proceeds of such sale shall not prepay the DIP Obligations except under circumstances of an exercise of remedies after an Event of Default and in compliance with Paragraph 9(f) above; *provided that* such net cash proceeds shall be promptly deposited in a blocked account of CGL, subject to the sole control of the Collateral Agent (as defined in the DIP Credit Agreement), and shall constitute DIP Collateral and Regions Collateral, consistent with the priorities set forth in this Final Order; and

b.    The consent of the Required Lenders (as defined in the Regions Facility) and the Required Lenders (as defined in the DIP Credit Agreement) shall be required prior to any sale of the *Green Ridge*, which consent shall not be unreasonably withheld or delayed; *provided that* (x) the Court shall retain jurisdiction to determine whether any requested consent was unreasonably withheld or delayed and (y) the consent of the Required Lenders under the DIP Credit Agreement shall be deemed given if (i) the net cash proceeds of any such sale exceed an amount confidentially agreed to by the Required Lenders (as defined in

21

the Regions Facility) and the Required Lenders (as defined in the DIP Credit Agreement), and (ii) all terms and conditions other than the purchase price are reasonably acceptable to the Required Lenders under the DIP Credit Agreement.  Counsel to the Committee shall be given three (3) business days' notice of any such sale.

        (ii)     Under circumstances of an exercise of remedies after an Event of Default (as defined in the DIP Credit Agreement), the DIP Lenders shall be entitled to (among other things) foreclose on any DIP Collateral and to recover, on a priming basis, the full amount of the DIP Obligations subject to (x) the terms, conditions and limitations set forth in the DIP Credit Agreement (including, without limitation, in respect of the DVB Collateral) and (y) the full amount of the Regions Facility Priming Cap (including as a result of any foreclosure on the vessel *Green Ridge*), the Capital One Priming Cap and the Citizens Priming Cap (each as defined below), as applicable, and in each case consistent with this Final Order and subject to the DIP Lenders' obligations under, and the terms of, Paragraph 9(f) above.

        10.    DIP Liens.  As security for the full and timely payment of the DIP Obligations, the DIP Agent, for the ratable benefit of itself and the DIP Lenders, is hereby granted valid, binding, continuing, enforceable, unavoidable, and fully perfected security interests in and liens on (collectively, the "DIP Liens") all of the Debtors' assets, including the Prepetition Collateral, subject to Paragraph 10(c) below, and all products and proceeds of the foregoing, whether existing prior to or arising or acquired after the Petition Date (all of the

foregoing, the "DIP Collateral"); *provided that* the proceeds of the sale of the vessel *Green Ridge*

shall be treated in accordance with the DIP Documents and Paragraph 9(g) hereof:[5]

        (a)      pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on, and

security interest in, all unencumbered assets of the Debtors (now owned or hereafter acquired)

and all proceeds thereof, including, without limitation, the proceeds of actions or claims under

Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550, or 553 (collectively, the

"Avoidance Actions").  The application of the proceeds of Avoidance Actions to repay the DIP

Obligations shall be subject to Paragraph 13 below;

        (b)      pursuant to Bankruptcy Code section 364(c)(3), a junior lien on and

security interest in, any and all tangible and intangible property of the Debtors and its proceeds

(other than the Prepetition Collateral that is being primed pursuant to Paragraph 10(c) below)

that was subject to valid, perfected and unavoidable liens and security interests as of the Petition

Date (including the Prepetition Secured Parties' liens not subject to priming pursuant to

Paragraph 10(c)(i)-(iii) below) or that became subject to valid and unavoidable liens and security

interests subsequent to the Petition Date pursuant to Bankruptcy Code section 546(b);

        (c)      pursuant to Bankruptcy Code section 364(d)(1), subject to the limitations

set forth in Paragraph 10(c) below, a first priority priming lien on, and security interest in, the

Prepetition Collateral; *provided*, *however*, that the DIP Liens shall be subject, and junior to, the

Carve Out and the Permitted Liens (as defined in the DIP Credit Agreement);[6] *provided*, *further*,

that the DIP Liens shall not be, under any circumstance, (i) subject or subordinate to (x) any lien

---

[5] For the avoidance of doubt, and notwithstanding anything to the contrary herein, the DIP Collateral shall not include the Excluded Property (as defined in the DIP Credit Agreement).

[6] As defined in the DIP Credit Agreement, as amended, "Permitted Liens" means each of the Liens permitted pursuant to clauses (d) through (i) of Section 8.2 of the DIP Credit Agreement (other than, for the avoidance of doubt, any liens granted pursuant to the Prepetition Documents), and each of the Liens permitted pursuant to clause (c) of Section 8.2 that are senior to the Liens securing the Prepetition Obligations by operation of Applicable Laws.

or security interest that is avoided and preserved for the benefit of the Debtors and their estates

under Bankruptcy Code section 551, or (y) unless otherwise provided for in the DIP Documents

or this Final Order, any liens arising after the Petition Date; or (ii) subordinated to or made *pari*

*passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or

otherwise.  The priming liens granted in this Paragraph 10(c) shall be limited as follows:

> (i)    <u>Existing Regions Facility</u>:  with respect to the Regions
> Facility Collateral, such liens shall be limited to $13,000,000 (the "<u>Regions
> Facility Priming Cap</u>") and shall be subject to the DIP Lenders' obligations under,
> and the terms of, Paragraph 9(f);

> (ii)    <u>Existing Capital One Facility</u>:  with respect to the Capital
> One Collateral, such liens shall be limited to $1,250,000 (the "<u>Capital One
> Priming Cap</u>") and shall be subject to the DIP Lenders' obligations under, and the
> terms of,  Paragraph 9(f); and

> (iii)    <u>Existing Citizens Facility</u>:  with respect to the Citizens
> Collateral, such liens shall be limited to $6,000,000 (the "<u>Citizens Priming Cap</u>")
> and shall be subject to the DIP Lenders' obligations under, and the terms of,
> Paragraph 9(f).

11.    <u>DIP Superpriority Claims</u>.  To further assure the full and timely payment of the

DIP Obligations, the DIP Agent, for the ratable benefit of itself and each of the DIP Lenders, is

hereby granted (subject solely to the Carve Out) a superpriority administrative expense claim

against each Debtor (the "<u>DIP Superpriority Claims</u>"), having priority over any and all other

administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b)

allowed in the Chapter 11 Cases, including, without limitation, the Adequate Protection

Superpriority Claims (as defined below).  The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof, subject to Paragraph 13 below.

12.    <u>Adequate Protection for the AP Prepetition Secured Parties</u>.    Pursuant to Bankruptcy Code sections 361, 362, 363(e) and 507, the AP Prepetition Secured Parties shall be granted, as adequate protection on account, and to the extent of, their respective Adequate Protection Claims, if any, the following:

(a)    With respect to the Senior Adequate Protection Claims,

(i)    Replacement liens (collectively, the "<u>Senior Adequate Protection Liens</u>") on all DIP Collateral (excluding Avoidance Actions), subject and subordinate in all respects only to (x) the Carve Out, (y) the DIP Liens, and (z) the valid and perfected Prepetition Liens of the AP Prepetition Secured Parties on their respective Prepetition Collateral.

(ii)    Superpriority claims (the "<u>Senior Adequate Protection Superpriority Claims</u>") as provided for in Bankruptcy Code section 507(b), subject and subordinate in all respects only to (x) the Carve Out, and (y) the DIP Superpriority Claims.  The AP Prepetition Secured Parties shall not receive or retain any payments or other property on account of the Senior Adequate Protection Superpriority Claims unless and until all DIP Obligations have been indefeasibly paid in cash and in full (for the avoidance of doubt, nothing in this Paragraph shall impact the payments due pursuant to Paragraph 12(d) below). The Senior Adequate Protection Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all

proceeds thereof. The application of the proceeds of Avoidance Actions to pay Senior Adequate Protection Superpriority Claims shall be subject to Paragraph 13 below.

(b)     With respect to the Junior Adequate Protection Claims,

(i)     Replacement liens (collectively, the "Junior Adequate Protection Liens", and along with the Senior Adequate Protection Liens, the "Adequate Protection Liens") on all DIP Collateral (excluding Avoidance Actions), subject and subordinate in all respects only to (w) the Carve Out, (x) the DIP Liens, (y) the valid and perfected Prepetition Liens of the AP Prepetition Secured Parties on their respective Prepetition Collateral, and (z) the Senior Adequate Protection Liens.

(ii)     Superpriority claims (the "Junior Adequate Protection Superpriority Claims", and along with the Senior Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims") as provided for in Bankruptcy Code section 507(b), subject and subordinate in all respects to (x) the Carve Out, (y) the DIP Superpriority Claims and (z) the Senior Adequate Protection Superpriority Claims. The AP Prepetition Secured Parties shall not receive or retain any payments or other property on account of the Junior Adequate Protection Superpriority Claims unless and until all DIP Obligations and Senior Adequate Protection Superpriority Claims have been indefeasibly paid in cash and in full (for the avoidance of doubt, nothing in this Paragraph shall impact the payments due pursuant to Paragraph 12(d) below). The Junior Adequate Protection Superpriority Claims shall be payable from, and have

recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof. The application of the proceeds of Avoidance Actions to pay Junior Adequate Protection Superpriority Claims shall be subject to Paragraph 13 below.

(c)     The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551, or (B) any lien or security interest arising after the Petition Date, subject to the DIP Liens and the Carve Out, or (ii) except as otherwise set forth in this Final Order, subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code sections 363 or 364 or otherwise.

(d)     *Adequate Protection Payments*. The Debtors are authorized and directed to (i) make all interest payments at the applicable non-default rates due and payable under the relevant Prepetition Facilities of the AP Prepetition Secured Parties (without limiting the consent set forth in Paragraph 13 below, with all payments of interest to be without prejudice to the rights of the applicable AP Prepetition Secured Parties to assert a claim for payment of additional interest at any other rates in accordance with the applicable Prepetition Facility); (ii) beginning in August 2016, on the last business day of each month, pay additional $25,000 per month to the Capital One Lender (the "Capital One Payment") to be applied as follows: (a) first to pay default interest, if applicable, (b) second, in the event that it is ultimately determined that the Capital One Lender is not entitled to default interest, to pay any allowed Adequate Protection Claim of the Capital One Lender, if any, and (c) third, to the extent that any portion of the Capital One Payment remains after the payment of the allowed Adequate Protection Claim of the Capital One Lender, if any, to the principal of the Capital One Facility;

27

(iii) beginning September 2016, on the last business day of each month, pay additional $50,000

to the Citizens Lender (the "Citizens Payment") to be applied as follows: (a) first to pay default

interest, if applicable, (b) second, in the event that it is ultimately determined that the Citizens

Lender is not entitled to default interest, to pay the allowed Adequate Protection Claim of the

Citizens Lender, if any, and (c) third, to the extent that any portion of the Citizens Payment

remains after the payment of the allowed Adequate Protection Claim of the Citizens Lender, if

any, to the principal of the Citizens Facility; and (iv) pay all agency and letter of credit fees and

reasonable and documented professional fees and expenses in accordance with the applicable

Prepetition Facility, whether incurred before or after the Petition Date, without the need to file

retention or fee applications (collectively, the "Adequate Protection Payments"); *provided that*

the Debtors shall submit copies of the AP Prepetition Secured Parties' legal counsel's and

financial advisor's summary statement of fees to the U.S. Trustee and counsel to each of the

Committee, the DIP Agent, and the DIP Lenders, and the Debtors, the DIP Agent, the DIP

Lenders, the U.S. Trustee, and the Committee shall have ten (10) days following their receipt of

such summary to object to the reasonableness of the fees and expenses included in any such

invoice.   If any such objection is not resolved within ten (10) days after such objection is

interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus

hearing in these Chapter 11 Cases, *provided that* the Debtors shall pay any undisputed portion of

such fees, costs, and expenses fifteen (15) days after the initial presentment to the Debtors of

such summary statement.   Notwithstanding the foregoing, the rights of any party are reserved to

argue that, to the extent that any cash payment of interest, fees, and expenses as an Adequate

Protection Payment to any AP Prepetition Secured Party is not allowed under Bankruptcy Code

section 506(b) and not allowed on any other basis (including, without limitation, on account of

the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the applicable Prepetition Documents; *provided*, *however*, that the rights of the AP Prepetition Secured Parties to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application are similarly reserved.

(e)    The Debtors shall comply, in all material respects, with the covenants set forth in the Prepetition Facilities of the AP Prepetition Secured Parties, including, without limitation, reporting requirements, the maintenance of insurance, and the vessel mortgages.

13.    <u>Avoidance Action Proceeds</u>.  All proceeds of Avoidance Actions (other than an amount sufficient to reimburse the DIP Lenders for the aggregate amount of DIP Facility used to fund the investigation, initiation, and prosecution of any such Avoidance Actions, which amounts shall be immediately transferred to the DIP Agent for application against the DIP Obligations) shall be held in a cash collateral account (the "<u>Avoidance Action Collateral Account</u>") as security for the DIP Obligations and the Adequate Protection Superpriority Claims (consistent with the priorities set forth in this Final Order) and shall not be used for working capital or other corporate purposes; *provided that*, if the DIP Lenders and/or and the AP Prepetition Secured Parties are exercising remedies, proceeds from Avoidance Actions shall not be applied to satisfy DIP Obligations or the Adequate Protection Superpriority Claims unless and until the DIP Lenders and the AP Prepetition Secured Parties, as applicable, have used commercially reasonable efforts to liquidate all of the DIP Collateral and applied the proceeds thereof first to the DIP Obligations, second to the Senior Adequate Protection Superpriority Claims, and third to the Junior Adequate Protection Superpriority Claims.  The Debtors shall not grant any lien on nor make a postpetition loan from the Avoidance Action Collateral Account or,

except as otherwise provided herein, on the Avoidance Actions, in each case, without the prior consent of the DIP Lenders and AP Prepetition Secured Parties.

14.    <u>Sufficiency of Adequate Protection</u>.  Under the circumstances, the Bankruptcy Court finds that, based on the consent of the AP Prepetition Secured Parties, the foregoing adequate protection is reasonable and sufficient to adequately protect the interests of the AP Prepetition Secured Parties based upon the usage of collateral as provided herein. Notwithstanding any other provision hereof, the grant of adequate protection to the AP Prepetition Secured Parties pursuant hereto is without prejudice to their right to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest, including, but not limited to, the DIP Lenders and the DIP Agent, to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the AP Prepetition Secured Parties under the Prepetition Documents or under equity or law, and the AP Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under their respective  Prepetition Documents and/or equity or law in connection therewith.

15.    <u>Perfection of Liens</u>.  The DIP Agent, the DIP Lenders, and the AP Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the applicable Debtor, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, security agreements, notices of lien, or similar instruments (collectively, the "<u>Perfection Instruments</u>") in any jurisdiction, or take possession of or control over deposit

accounts and securities accounts or any other asset, in each case, in order to perfect the respective liens and security interests granted to them in this Final Order.

(a)    The Debtors shall execute and deliver to the DIP Agent and the AP Prepetition Secured Parties all such Perfection Instruments and other documents as the DIP Agent or the AP Prepetition Secured Parties may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the DIP Liens or the Adequate Protection Liens, as applicable.

(b)    Subject to applicable non-bankruptcy law, including the requirement to pay filing fees, a certified copy of this Final Order may be filed with or recorded in the filing or recording offices in addition to or in lieu of any of the Perfection Instruments, and all filing and recording officers are hereby authorized and directed to accept such certified copy of this Final Order for filing and recording.  For the avoidance of doubt, the automatic stay provisions of Bankruptcy Code section 362(a) shall be modified (and any stay of such modification under Bankruptcy Rule 4001(a)(3) is waived) to the extent necessary to permit the DIP Agent and the AP Prepetition Secured Parties to take all actions permitted by this Paragraph 14.

(c)    For the avoidance of doubt, whether or not the DIP Agent or the AP Prepetition Secured Parties choose to file any Perfection Instruments or this Final Order, or take possession of or control over deposit accounts and securities accounts or any other assets, the DIP Liens and the Adequate Protection Liens shall be legal, valid, perfected, allowed, enforceable, unavoidable, and not subject to challenge, dispute, impairment, or subordination, at the time of entry of this Final Order.

16.    <u>Carve Out</u>.

(a)    For purposes hereof, the "<u>Carve Out</u>" shall mean an amount equal to the sum of:

(i)    all fees required to be paid by the Debtors to the clerk of the Bankruptcy Court and to the U.S. Trustee under sections 1930(a) of title 28 and 3717 of title 31 of the United States Code;

(ii)    all reasonable and documented fees and expenses incurred by any chapter 7 trustee under Bankruptcy Code section 726(b), if any, in an aggregate amount not to exceed $25,000;

(iii)    all accrued and unpaid claims for fees, costs, and expenses incurred at any time before the Trigger Date (as defined below) or any monthly or other fees payable to persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 (collectively, the "<u>Professional Persons</u>," and such fees, costs, and expenses, the "<u>Professional Fees</u>") to the extent such Professional Fees are allowed by the Bankruptcy Court at any time (*i.e.*, before or after the Trigger Date) on a final basis; and

(iv)    all Professional Fees incurred on and after the Trigger Date and allowed by the Bankruptcy Court at any time, whether before or after the Trigger Date, whether by interim order, procedural order, or otherwise; *provided that* the payment of any Professional Fees incurred and allowed at any time pursuant solely to this subsection (iv) shall not exceed $750,000 in the aggregate (the "<u>Carve Out Cap</u>").  For the avoidance of doubt, any payments actually made in

32

respect of the Carve Out Cap shall reduce the Carve Out Cap on a dollar for dollar basis.

(b)    The "Trigger Date" shall mean the first business day after the occurrence and during the continuance of an Event of Default and delivery (which may be by electronic mail) of written notice thereof (the "Carve Out Notice") by the DIP Agent to the Debtors' counsel and the AP Prepetition Secured Parties' counsel.[7]

(c)    *Seniority of Carve Out*.  For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations and/or the Prepetition Obligations granted or recognized as valid.

(d)    *Budget*.  Annexed as Exhibit 2 hereto and incorporated by reference herein is the weekly statement of receipts and disbursements of the Debtors on a consolidated basis for the 13 weeks commencing with the first week following the Petition Date, including (i) individual line items for "Total Disbursements," and (ii) the anticipated uses of the proceeds of the DIP Facility and Cash Collateral for such period, in form and substance reasonably satisfactory to the DIP Agent (substantially similar to the form of the budget annexed hereto, the "Budget").  No less frequently than every two week period, the Debtors shall provide an updated Budget for the following 13-week period to the DIP Agent, the AP Prepetition Secured Parties, and counsel to the Committee (the "Proposed Budget").  The Proposed Budget shall become the Budget upon the written consent of the DIP Agent, which consent shall not be unreasonably

---

[7] For the avoidance of doubt, in the event that a Carve Out Notice is served and the Debtors subsequently receive a determination from the Court, consistent with Paragraph 17 below, that no Event of Default occurred or was ongoing or that the DIP Agent and/or the DIP Lenders were otherwise prohibited from exercising rights or remedies under the DIP Documents, the Professional Fees incurred from the Trigger Date through the date of any such determination shall not count against the Carve Out Cap.

withheld; *provided that* the Debtors shall have the right to seek approval of the Proposed Budget from the Court in the event that the DIP Agent's consent has been withheld and the Debtors believe such refusal is unreasonable.

(e)    As set forth in the DIP Credit Agreement, receipts and disbursements, other than any disbursements in connection with any Professional Fees, shall be tested bi-weekly on a line item by line item basis, subject to the Permitted Variance.

17.    <u>Events of Default</u>.

(a)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash and unless the DIP Agent has waived such default in accordance with the DIP Documents, any occurrence of an "Event of Default" pursuant to the DIP Documents shall constitute an event of default hereunder (each, an "<u>Event of Default</u>"); *provided that* notwithstanding the terms of the DIP Documents, the following shall also constitute an "Event of Default:"  (i) the violation of any term, provision, or condition of this Final Order, and (ii) this Final Order shall be amended, modified, stayed, or vacated without the written consent of the DIP Agent (and no such consent shall be implied by any action, inaction, or acquiescence by any party).

18.    <u>Modification of the Automatic Stay</u>.

(a)    The automatic stay provisions of Bankruptcy Code section 362 are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to (i) take all actions necessary or desirable to implement the terms of the DIP Documents and this Final Order, and (ii) unless the Bankruptcy Court orders otherwise during the Remedies Notice Period (as defined below), (x) immediately upon the occurrence and during the continuance of an Event of Default, (A) declare an Event of Default and terminate any further commitments under the DIP Facility, (B) declare the termination of the DIP Documents as to any future liability or

funding obligation of the DIP Agent or the DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), (C) declare all DIP Obligations to be immediately due and payable, (D) terminate the Debtors' use of the DIP Lenders' Cash Collateral , and (E) charge the default rate of interest on the DIP Loans; and (y) upon the occurrence of an Event of Default and providing seven (7) calendar days' prior written notice (which may be delivered by electronic mail) (the "Default Notice") to counsel to the Debtors, counsel to the Committee, counsel to the AP Prepetition Secured Parties, and the U.S. Trustee (such seven (7) calendar day period, the "Remedies Notice Period") (which period shall run concurrently with any notice required to be provided under the DIP Documents), exercise all rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP Collateral, including foreclosing on any and all such collateral (subject to the terms of this Final Order).

(b)     Upon receipt of the Default Notice, parties in interest shall be entitled to seek an emergency hearing before the Court solely to contest the occurrence and continuance of an Event of Default.  If parties in interest fail to timely contest the occurrence and continuance of an Event of Default, or the Court, after notice and a hearing, declines to stay enforcement of the DIP Agent's remedies, at the end of the Remedies Notice Period, the automatic stay as to the DIP Agent and DIP Lenders shall be vacated without further action by the Court.

(c)     Notwithstanding anything to the contrary in this Final Order, upon receipt of a Default Notice, the Debtors shall have no right to use any proceeds of the DIP Facility or any of the DIP Lenders' Cash Collateral without the consent of the DIP Agent,[8] other than toward (i) funding ordinary course operations to the extent that the Debtors, in consultation with

---

[8] For the avoidance of doubt, nothing contained herein shall prohibit the Debtors' banks from clearing checks and/or other payments issued prior to the receipt of a Default Notice.

their financial advisors, deem that such funding is necessary to avoid immediate and irreparable

harm to their estates; (ii) satisfaction of the DIP Obligations, and/or (iii) the Carve Out; *provided*

*that*, for the avoidance of doubt, funding of Professional Fees and Adequate Protection Payments

shall not be "necessary" for purposes of clause (i) above.

(d)    The DIP Agent's delay or failure to exercise any rights and remedies

under the DIP Documents or this Final Order shall not constitute a waiver of such rights and

remedies; any effective waiver must be pursuant to a written instrument executed in accordance

with the terms of the applicable DIP Documents.

(e)    Upon (i) the occurrence and during the continuance of an Event of Default

and expiration of the Remedies Notice Period, (ii) a violation of the terms of this Final Order and

expiration of the Remedies Notice Period, or (iii) this Final Order being modified, stayed, or

vacated without the written consent of the Prepetition Secured Parties (and no such consent shall

be implied by any action, inaction, or acquiescence by any party), the AP Prepetition Secured

Parties shall have no further obligation to permit the continued use of their respective Cash

Collateral; *provided that* nothing herein shall preclude the Debtors from seeking authority to use

the AP Prepetition Secured Parties' Cash Collateral on a non-consensual basis or the AP

Prepetition Secured Parties from objecting to such use.

19.    <u>Limitation on Use of DIP Proceeds and Cash Collateral</u>.    Notwithstanding

anything herein or in any other order by the Court to the contrary, except as set forth in this

Paragraph, no borrowings under the DIP Facility, no Cash Collateral, or the Carve Out may be

used:

(a)    in connection with, or to finance in any way, any claim, cause of action,

including Claims and Defenses, counterclaim, investigation, action, suit, arbitration, proceeding,

application, motion, or other litigation of any type (i) objecting to, challenging or contesting in

any manner, invalidating, setting aside, avoiding, subordinating, or raising any defenses to, in

whole or in part, the amount, validity, extent, priority, enforceability, or perfection of the DIP

Obligations, the Prepetition Documents, the DIP Documents, the DIP Liens, the Prepetition

Obligations, the Prepetition Liens, the DIP Superpriority Claims, the Adequate Protection

Superpriority Claims or any other rights or interests of any of the DIP Agent, the DIP Lenders, or

the Prepetition Secured Parties, (ii) asserting or seeking any order, judgment, determination, or

similar relief against, or adverse to the interests of, in any capacity, the DIP Agent, the DIP

Lenders, or the Prepetition Secured Parties or any of their respective officers, directors,

employees, agents, affiliates, representatives, attorneys, advisors, assigns, or successors with

respect to any transaction, occurrence, omission, or action involving the Debtors; *provided that*

nothing in this clause (ii) shall prohibit the Debtors from seeking to enforce the terms of this

Final Order, or from exercising their fiduciary obligations as debtors in possession, including,

without limitation, the duty to maximize value for the benefit of all stakeholders,[9] or (iii)

contesting, preventing, hindering, impairing, interfering with, or otherwise delaying the recovery

by any DIP Lender on account of the DIP Obligations or exercise by the DIP Agent or any of the

DIP Lenders of any rights or remedies under the DIP Documents or this Final Order; *provided*

*that*, notwithstanding anything to the contrary herein, no more than $125,000 in the aggregate of

the borrowings under the DIP Facility, Cash Collateral, or the Carve Out may be used by any

Committee to investigate the validity, enforceability, or priority of the Prepetition Obligations,

the Prepetition Liens or the Prepetition Collateral or investigate any Claims and Defenses or

---

[9] Notwithstanding this clause (ii), nothing shall (a) excuse the Debtors from complying with their obligations under the DIP Documents or this Final Order, and (b) prohibit, condition or otherwise modify the rights of the DIP Agent or the DIP Lenders under the DIP Documents and this Final Order and the Prepetition Secured Parties under this Final Order.

other causes action against the Prepetition Secured Parties.  Notwithstanding the foregoing, nothing herein shall be deemed to (a) limit the ability of the Committee's professionals to seek approval from the Court to be paid from unencumbered assets, if any, for services rendered in the investigation or prosecution of claims against the Prepetition Secured Parties; (b) preclude the Court from awarding fees and expenses to the Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered; nor (c) relieve the Debtors or any plan proponent(s) from paying all allowed administrative expenses in connection with confirmation of any plan;

(b)    to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, or any of the lenders under the Prepetition Facilities hereunder or under the DIP Documents, in each of the foregoing cases, without such parties' prior written consent; or

(c)    to pay any amount on account of any claims arising prior to the Petition Date unless such payment is approved by an order of this Court (including hereunder).

20.    <u>Bankruptcy Code Section 552(b)</u>.  The AP Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the AP Prepetition Secured Parties.

21.    <u>Bankruptcy Code Section 506(c)</u>. Except to the extent of the Carve Out, no expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Regions Facility Collateral, the DVB Collateral, the Capital One Collateral, the Citizens Collateral, the Regions Facility Parties, the DVB Parties, the Capital One Lender, or the Citizens Lender, pursuant to Bankruptcy Code sections 105(a) or

506(c), or any similar principle of law or equity, without the prior written consent of the affected

party, and no such consent shall be implied from any other action, inaction, or acquiescence by

the Prepetition Secured Parties.

22.      Prohibition on Granting of Additional Liens or Interests.  Except with respect to

the Carve Out, no liens, claims, interests or priority status that are superior or *pari passu* with the

DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, or the

Adequate Protections Liens, as applicable, shall be granted by the Debtors while any portion of

the DIP Obligations or the Prepetition Obligations remain outstanding, or any commitment under

the DIP Documents or the Prepetition Documents remains in effect.  Notwithstanding the

forgoing, the imposition of a lien under applicable maritime law by a third-party shall not be

construed, under any circumstances, as the Debtors having granted a lien, claim, interest, or

priority status that is superior or *pari passu* with the DIP Liens, the DIP Superpriority Claims,

the Adequate Protection Superpriority Claims or the Adequate Protection Liens.

23.      Prohibition on Further Financing.  The Debtors shall not request authorization to

obtain, other than from the DIP Agent or the DIP Lenders and other than in accordance with this

Final Order and the DIP Documents, postpetition loans or other financial accommodations

pursuant to Bankruptcy Code sections 364(c) or (d) or otherwise that are (or are proposed to be)

secured by any liens or security interests on any of the DIP Collateral (unless the proceeds of

such postpetition loans or other financial accommodations shall be used to indefeasibly pay in

full in cash all DIP Obligations).

24.      Prohibition on Non-Debtor Transactions.  Notwithstanding anything herein to the

contrary, no borrowings under the DIP Facility or any Cash Collateral shall be transferred to any

non-Debtor affiliate without the prior written consent of the DIP Agent and the AP Prepetition

Secured Parties; *provided that* the Debtors shall be permitted to transfer up to $100,000 to CG

Rail in the ordinary course of business upon three (3) business days' written notice to the DIP

Agent, the AP Prepetition Secured Parties, counsel to the Committee, and the U.S. Trustee;

*provided further that*, with respect to any transfers in excess of this $100,000, the Debtors shall

be permitted to make a secured loan to CG Rail in an amount of up to $1 million upon three (3)

business days' written notice to the DIP Agent, the AP Prepetition Secured Parties, counsel to

the Committee, and the U.S. Trustee, which loan shall be evidenced by a note, the form of which

must be approved by the DIP Agent and the Prepetition Secured Parties in their reasonable

discretion.

25.     <u>Prepayments</u>.  The Debtors are authorized, to the extent applicable, to make

prepayments of the DIP Facility as and when provided under, and for application in accordance

with, the terms of the DIP Documents.

26.     <u>Sections 1113 and 1114 of the Bankruptcy Code</u>.  Nothing in this Final Order or

the DIP Documents shall excuse the Debtors from any of their obligations under Sections 1113

or 1114 of the Bankruptcy Code.

27.     <u>Financial Reporting</u>.  The Debtors shall continue to provide the agents under the

Prepetition Facilities of the AP Prepetition Secured Parties and counsel to the Committee

financial and other reporting substantially in compliance with such Prepetition Facilities as well

as any reporting provided to the DIP Agent and/or the DIP Lenders under the DIP Documents.

The Debtors shall also provide the Capital One Lender with non-consolidated financial

statements related to the Capital One Collateral on a monthly basis.

28.     <u>Release</u>.  The Debtors, on behalf of themselves and their estates (including any

successor trustee or other estate representative) and any party acting by, though, or under the

Debtors or their estates, forever and irrevocably (a) release, discharge, waive, and acquit the current and future DIP Agent and the DIP Lenders, each of their respective participants, affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, and in each case solely in their capacities as such, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to any actions taken on or before the Petition Date with respect to, or, after the Petition Date, taken in compliance with, the DIP Facility, the DIP Documents, the DIP Orders, or the transactions contemplated hereunder or thereunder, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims. Notwithstanding the foregoing, nothing in this Paragraph 28 shall be deemed to release, waive, discharge, or acquit any bad faith, fraud, gross negligence, or willful misconduct on the part of the DIP Agent or a DIP Lender.  For the avoidance of doubt, the release in this Paragraph 28 shall apply to the DVB Parties solely in their capacities as DIP Lenders.

29.    <u>Indemnification</u>.    The Debtors shall, jointly and severally, be obligated to indemnify and hold harmless the Released Parties in connection with any investigation, litigation, or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility or the transactions contemplated in the DIP Documents, except to the extent resulting from the bad faith, gross negligence, or willful misconduct of the DIP Agent or a DIP Lender.

30.    <u>Subsequent Reversal or Modification</u>.    The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all protections and benefits afforded by Bankruptcy Code sections 363 and 364, as applicable.    Any financial accommodations made by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties shall be deemed to have been made in good faith, as such term is used in Bankruptcy Code sections 363(m) and 364(e), as applicable.

31.    <u>No Marshaling</u>.    Except as otherwise provided in this Final Order with respect to the vessels *Bali Sea* and *Banda Sea*, neither the DIP Agent nor the DIP Lenders shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

32.    <u>Order Governs</u>.    In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall control.

33.    <u>Binding Effect; Successors and Assigns</u>.    The provisions of the DIP Documents and this Final Order shall be binding upon all parties-in-interest in the Chapter 11 Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, and any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, the Debtors' estates and the Debtors' respective successors and

assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors, or similar responsible person, designee, or litigation trust) and shall inure to the respective benefit of all of the foregoing.

34.    <u>Limitation of Liability</u>.    In determining to make any loan under the DIP Documents, or consenting to the use of Cash Collateral, pursuant to this Final Order and the DIP Documents, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to or in connection with the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 <u>et</u> <u>seq.</u> as amended, or any similar federal or state statute).

35.    <u>Effectiveness</u>.    This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon its entry on the docket of the Chapter 11 Cases, and any stay of the effectiveness of this Final Order under Bankruptcy Rule 6004 or otherwise is waived.

36.    <u>Retention of Jurisdiction</u>.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

37.    <u>Headings</u>.    The heading of any provision of this Final Order is intended only for convenience and shall not be construed to be or interpreted as a part, or limitation on the scope, any such provision.

38.    <u>DIP Credit Agreement</u>.    The DIP Lenders acknowledge, and the Court finds, that the Debtors have fulfilled the requirements of Section 7.16(c) of the DIP Credit Agreement.  Section 7.16(d) of the DIP Credit Agreement is hereby amended by replacing the words "90 days" with "97 days".  The introductory clause of Section 9.1(q) ("<u>Appointment of Trustee or Examiner</u>") of the DIP Credit Agreement is modified as follows:  "The Debtors shall file a motion seeking, or an order shall be entered granting, the appointment of . . .".  The remainder of that section remains the same.

39.    <u>Provisions Relating to Westchester</u>.  Nothing in this Final Order shall affect the rights of Westchester Fire Insurance Company and/or its successors and/or assigns (the "<u>Surety</u>"), as to (a) any funds it is rightfully holding and/or are being held for it under applicable law, whether in trust or as security, (b) any substitutions or replacements of said funds (including accretions to and interest earned on said funds), and (c) any letters of credit related to any indemnity, collateral trust, or related agreements between the Surety and any of the Debtors (collectively (a) to (c), the "<u>Surety Assets</u>").  Nothing in this Final Order shall affect the rights of the Surety under any indemnity, collateral trust, or related agreements between the Surety and any of the Debtors as to the Surety Assets.  In addition, nothing herein shall affect any subrogation rights of the Surety.  For the avoidance of doubt, the foregoing is not an admission by the Debtors, the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties of Surety's rights to the Surety Assets (if any), and the Debtors, DIP Agent, the DIP Lenders and the Prepetition Secured Parties expressly reserve the right to challenge any assertion by the Surety of an interest in any assets of the Debtors.

Dated: <u>September 20th</u>, 2016
New York, New York

                    /s/ STUART M. BERNSTEIN_____
                    UNITED STATES BANKRUPTCY JUDGE