**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1]<br><br>                            Debtors. | Chapter 11<br><br>Case No. 16-12220 (SMB)<br><br>Jointly Administered |

**DECLARATION OF MANUEL G. ESTRADA, CHIEF FINANCIAL OFFICER, IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO THE RESTRUCTURING SUPPORT AGREEMENT WITH SEACOR CAPITAL CORP.**

I, Manual G. Estrada, declare as follows under penalty of perjury:

1. I am Vice President and Chief Financial Officer of International Shipholding Corporation, a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). I am a 1977 graduate of Loyola University in New Orleans, Louisiana and received a certified professional accountant designation in 1986. I joined the Debtors in 1978 and have been employed in my present capacity since 2005. Accordingly, I am familiar with the Debtors' day-to-day operations, business, and financial affairs.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

2. I submit this declaration in support of the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into the Restructuring Support Agreement with SEACOR Capital Corp.* (the "Motion"),[2] which was filed contemporaneously herewith.

3. Except as otherwise indicated, all facts set forth herein are based on my personal knowledge, my discussions with other members of the Debtors' senior management, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this declaration. I am authorized to submit this Declaration on behalf of the Debtors.

4. Since early July 2016, the Debtors, through their investment banker and financial advisor, Blackhill Partners, LLC ("Blackhill"), have been targeting various strategic and financial third parties either as sponsors of a reorganization or outright buyers of the Debtors' business segments. Blackhill contacted approximately sixty-eight prospective buyers and received ten indications of interest for either purchasing substantially all of the Debtors' assets or for one of the Debtors' individual business segments. The Debtors provided diligence and negotiated terms with each interested counterparty.

5. Throughout this process, the Debtors have worked diligently with their key constituencies toward a goal of maximizing the value of the Debtors' estates. Where appropriate, the Debtors have engaged with their pre-petition secured lenders, the lenders under their post-petition debtor-in-possession credit facility, and the Committee regarding the best path forward

---

[2] Unless otherwise noted herein, capitalized terms not otherwise defined herein shall have the meaning(s) ascribed to such terms in the Motion.

to exit chapter 11 and consulted with these parties regarding the status of negotiations to effectuate a restructuring.

6. During the marketing process, SEACOR Capital Corp. ("SEACOR") emerged to the forefront of interested parties as a potential plan sponsor with an attractive offer to fund the restructuring of three of the Debtors' four business segments. Combined with the sale of the Debtors' Specialty Business Segment, the Debtors determined that entering into a restructuring support agreement with SEACOR was the best option for maximizing value for the estates. Specifically, after extensive consideration and exploration of many different avenues to emerge from chapter 11, a consensus has emerged that the value of the Debtors' estates will be maximized by a two-pronged approach: the Debtors will (1) execute a sale process for their Specialty Business Segment and (2) propose a plan of reorganization (the "Plan") with SEACOR as plan sponsor to reorganize the remaining business segments.

7. To effectuate the Plan, the Debtors and SEACOR entered into a restructuring support agreement (as amended, the "RSA"). The RSA commits the Debtors and SEACOR to pursue a pre-negotiated Plan consistent with the term sheet attached to the RSA (the "Term Sheet"). The Debtors seek to enter into the RSA to ensure that the agreement will be enforceable and that the Debtors' estates will realize the substantial benefits that the Debtors believe will arise from the RSA.

8. The Debtors and SEACOR arrived at an agreement on the terms of the RSA after extensive, arms'-length negotiations, with all parties represented by counsel. After considering all of the relevant factors, the Debtors believe that the resulting terms of reorganization set forth in the RSA and Term Sheet, combined with the sale of the Specialty Business Segment will maximize the value of their estates and, thereby, maximize creditor recovery. The Plan will

reduce the Debtors' indebtedness significantly and provide necessary capital to fund the Debtors' future operations, meet competitive conditions, and preserve asset value for the Debtors' estates and creditors.

9. Without SEACOR's support of the Plan, the Debtors would be forced to consider less attractive bids for the sale of their assets. The Debtors believe that continuing in chapter 11 for an extended period of time would harm the Debtors' businesses and lead to unnecessary administrative expense. The Debtors therefore seek to quickly emerge from chapter 11. Given the extensive marketing of the Debtors' assets to this point, the Debtors believe that it is unlikely that they will obtain more favorable terms than those represented by the RSA within a suitable amount of time.

10. The Debtors' decision, as approved by the disinterested members of its board of directors, to enter into and seek the assumption of the RSA combined with the sale of their Specialty Business Segment was an exercise of management's business knowledge and experience aimed at maximizing the value of the Debtors' estates. Further, the Debtors made the decision fully informed of the relevant considerations and with the benefit of information and advice from their retained professionals. Accordingly, I believe that the decision to enter into the RSA represents the sound business judgment of the Debtors and is in the best interest of the Debtors estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 28, 2016
      New Orleans, Louisiana

                                            Respectfully submitted,

                                            Manuel G. Estrada
                                            Vice President and Chief Financial Officer
                                            International Shipholding Corporation