**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INTERNATIONAL SHIPHOLDING | ) Case No. 16-12220 (SMB) |
| CORPORATION, *et al.*,[1] | ) |
| Debtors. | ) Jointly Administered |

## ORDER APPROVING THE SALE OF THE
## SPECIALTY BUSINESS ASSETS TO J LINE CORPORATION

Upon consideration of the motion of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") seeking entry of this order (the "Sale Order"),[2] (i) authorizing the sale of the Specialty Business Assets to J Line Corporation pursuant to the terms and conditions of that certain asset purchase agreement attached hereto as Exhibit "A" (such asset purchase agreement together with the exhibits and schedules thereto as amended, restated, supplemented or otherwise modified from time to time, the "Asset Purchase Agreement") free and clear of liens, claims, interests, and encumbrances; (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (iii) granting related relief, all as more fully described in the motion; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the motion, the the Bidding Procedures Order, or the Asset Purchase Agreement (as defined herein), as applicable.

this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that the motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the motion

and opportunity for objection having been given, and all objections having been resolved or

overruled, as the case may be; and it appearing that no other notice need be given; and after due

deliberation and sufficient cause therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Jurisdiction, Core Proceeding, Statutory Predicates, and Venue.**  This Court

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing

Order of Reference from the United States Southern District of New York*, dated as of January 31,

2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief

granted herein are Bankruptcy Code sections 105, 363, and 365, Bankruptcy Rules 2002, 6004,

and 6006, and Local Rule 6004-1 (including the Guidelines for the Conduct of Asset Sales (the

"Sale Guidelines") referenced therein).  Venue in this Court is proper pursuant to 28 U.S.C. §§

1408 and 1409.

B.    ~~**Just Cause.**  The legal and factual bases set forth in the motion establish just cause~~

~~for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and~~

~~their respective estates, creditors, and all other parties-in-interest.~~**[SMB: 12/30/16]**

C.    **Notice.**  The notice of the motion, the Sale Hearing, and the proposed entry of this

Sale Order was adequate and sufficient under the circumstances of these chapter 11 cases, and

such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy

Rules, and the Local Rules.  A reasonable opportunity to object or be heard regarding the relief

granted by this Sale Order has been afforded to those parties entitled to notice pursuant to the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the motion, the Sale Hearing, or this Sale Order is necessary or required.

D.       Actual written notice of the motion, the Bidding Procedures, the November 18, 2016 hearing on the motion regarding the Bidding Procedures, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the proposed Cure Costs, the Sale Transaction, and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been given as set forth in the (i) Affidavit of Service Regarding Debtors' Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets in the Specialty Business Segment [ECF No. 304]; (ii) Notice of Hearing on Debtors' Motion for (I) Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets in the Specialty Business Segment [ECF No. 308]; (iii) Affidavit of Service of Notice of Hearing on Debtors' Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Debtors' Assets in the Specialty Business Segment [ECF No. 314]; and (iv) Affidavit of Service of Notice of Bid Deadline, Auction, and Sale Hearing and Order Establishing Bidding Procedures Relating to the Sale of the Debtors Assets in the Specialty Business Segment [ECF No. 416].   Other parties interested in bidding on the Acquired Assets (as defined below) were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired Assets (as defined below).  The foregoing constitutes proper, timely, adequate, and sufficient notice under the particular circumstances of these cases, and no further notice need be provided.

E.       The Publication Notice was published in *The Wall Street Journal* on November 25, 2016 and *TradeWinds* on December 2, 2016, as set for the in the Notice of Certification of

Publication of Georgia L. Faust Regarding Notice of Bid Deadline, Auction, and Sale Hearing filed by Adam M. Adler on behalf of Prime Clerk, LLC [ECF No. 412]. Such Publication Notice was compliant with the Bidding Procedures Order, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

F.     ~~**Extensive Efforts by Debtors.** Since before the commencement of these chapter 11 cases, the Debtors worked with their counsel and financial advisors to implement a viable transaction that would allow them to maximize the value of the Acquired Assets (as defined below). The transaction that is the subject of this Sale Order is the result of the Debtors' extensive efforts seeking to maximize recoveries to the Debtors' estates for the benefit of the Debtors' stakeholders.~~[SMB: 12/30/16]

G.     **Business Justification.** The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Court to grant the relief requested in the motion, including, without limitation, to (i) authorize the sale of the Debtor Acquired Assets (as defined below) free and clear of Interests other than Permitted Liens and Assumed Liabilities; (ii) authorize the assumption and assignment of certain executory contracts and unexpired leases; and (iii) grant related relief as set forth herein. Such compelling and sound business justification, which was set forth in the motion and on the record at the Sale Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

H.     **Objections are Overruled.** All objections to the relief requested in the motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court are overruled.

I.    **Bidding Procedures Order.**  The Bidding Procedures Order [ECF No. 367] was entered by the Court on November 18, 2016, which, among other things, (i) approved the Bidding Procedures; (ii) established the Assumption and Assignment Procedures; (iii) approved the form and manner of notice of all procedures, protections, schedules, and agreements described in the motion and attached thereto; and (iv) scheduled a date for the Auction and Sale Hearing.  The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets (as defined below).

~~J.~~    **Auction; Asset Purchase Agreement.**  The Auction was properly conducted by the Debtors on December 15, 2016, in accordance with the Bidding Procedures Order and in a manner designed to result in the highest or otherwise best offer for the Acquired Assets. ~~which are defined in the Asset Purchase Agreement to include:~~ **[SMB: 12/30/16]**

> (a)    ~~all of Sellers' rights under each of the contracts, agreements or arrangements, written or oral (each, a "Contract") to which the MPV Companies are signatories, if any, as set forth on Exhibit A of the Asset Purchase Agreement (collectively, the "MPV Contracts");~~

> (b)    ~~the mortgages in favor of MPV, Inc., MPV Netherlands C.V., MPV Netherlands Cooperatief U.A. and MPV Netherlands B.V. and any related loans, each as set forth on Exhibit B of the Asset Purchase Agreement (the "Mortgages");~~

> (c)    ~~the Contracts to which LMS Shipmanagement, Inc., Marco Shipping Company (PTE) Ltd., and Gulf South Shipping PTE Ltd are signatories, set forth on Exhibit C, of the Asset Purchase Agreement (collectively, the "Non-MPV Contracts"), which, to the extent they are executory, shall be assumed by the Sellers and assigned to the Buyer and, to the extent they are not executory, shall be acquired by the Buyer;~~

> (d)    ~~the Contracts set forth on Exhibit D of the Asset Purchase Agreement (collectively, the "NWJ Contracts" and, together with the Mortgages, the MPV Contracts and the Non-MPV Contracts, the "Assigned Contracts"), which, to the extent they are executory, shall be assumed by the Sellers and assigned to the Buyer and, to the extent they are not executory, shall be acquired by the Buyer;~~

> (e)    ~~all of Sellers' rights, title and interest in and to the assets set forth on Exhibit E of the Asset Purchase Agreement;~~

5

(f)    ~~to the extent transferable using commercially reasonable efforts, all rights of Sellers under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors primarily relating to products sold, or services provided, to Sellers in respect of the Acquired Assets other than any warranties, representations and guarantees pertaining to any Excluded Assets (as defined below);~~

(g)    ~~all rights of Sellers under non-disclosure or confidentiality, non-compete or non-solicitation agreements with employees and agents of Sellers or with third parties primarily relating to the Business or the Acquired Assets (or any portion thereof);~~

(h)    ~~all of Sellers' rights to refunds of any Taxes (as defined below) that constitute Assumed Liabilities;~~

(i)    ~~all deposits (including, with respect to the Acquired Assets, customer deposits and security deposits (whether maintained in escrow or otherwise) for rent, electricity, telephone or otherwise) and prepaid charges and expenses of Sellers that relate exclusively to the Acquired Assets;~~

(j)    ~~except as set forth on Schedule 1.1(j), of the Asset Purchase Agreement all rights (including rights under insurance policies), Claims (as defined in section 101(5) of the Bankruptcy Code) or causes of action primarily arising from or related to the Acquired Assets and facts or circumstances occurring or existing on or prior to the Closing Date, other than Claims among Sellers as described in Section 1.2(m) of the Asset Purchase Agreement;~~

(k)    ~~except as set forth on Schedule 1.1(k) of the Asset Purchase Agreement, all rights, recoveries, refunds and rights of set-off and Claims and causes of action against third parties primarily arising from or to the extent relating to the Acquired Assets and facts or circumstances occurring or existing on or prior to the Closing Date;~~

(l)    ~~all files, documents, instruments, notices, papers, books, records, opinions and, to the extent in Sellers' possession, contents of files (whether in paper, digital or other tangible or intangible form) primarily relating to the Acquired Assets (the "Transferred Books and Records"); and~~

(m)    ~~all goodwill of, and other intangible rights of Sellers in, the Acquired Assets (collectively, (a) through (m), the "Acquired Assets").~~**[SMB: 12/30/16]**

The Acquired Assets include both assets owned by the Debtors (the "<u>Debtor Acquired Assets</u>")

and assets owned by non-Debtor Sellers (the "<u>Non-Debtor Acquired Assets</u>").  At the Auction, the

Debtors agreed in an exercise of their business judgment, in consultation with their management,

board of directors, advisors, and the Bid Consultation Parties or Consultation Parties, as applicable,

to enter into and consummate the Asset Purchase Agreement attached hereto as <u>Exhibit A</u> with J

Line Corporation (the "<u>Stalking Horse Purchaser</u>").   The consummation of the transactions

6

contemplated by the Asset Purchase Agreement, the motion, and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules, including the Sale Guidelines, have been complied with in respect of such transactions.

K.    **Sale Hearing.**  The Sale Hearing occurred on December 20, 2016 in accordance with the Bidding Procedures Order.

L.    **Adequate Marketing; Highest or Otherwise Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the declaration filed by the Debtors in support of the Sale Transaction [ECF No. 456],  (ii) the representations of counsel made on the record at the November 18, 2016 hearing on the Bidding Procedures and at the Sale Hearing, (iii) the Declaration of Erik L Johnsen in Support of Entry of Order Approving the Sale of the Specialty Business Assets to J Line Corporation  [ECF No. 481], and (iv) the Supplemental Declaration of Laurence H. Gurley in Support of Entry of Order Approving the Sale of the Specialty Business Assets to Stalking Horse Purchaser [ECF No. 480], a) the Debtors have adequately marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order; (b) a reasonable opportunity has been given to any interested party to make the highest or otherwise best offer for the Acquired Assets; (c) the consideration provided by the Stalking Horse Purchaser in the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; **and** (d) **the Sale Transaction in in the best interest of the estates.** ~~the consideration provided by the Stalking Horse Purchaser in the Asset Purchase Agreement provides fair and reasonable consideration for the Acquired Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia;~~

~~(e) the Sale Transaction will provide a greater recovery for the Debtors' creditors with respect to~~
~~the Acquired Assets than would be provided by any other practically available alternative;~~
~~(f) taking into consideration all relevant factors and circumstances, no other entity has offered to~~
~~purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g)~~
~~the Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise~~
~~best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business~~
~~judgment.~~**[SMB: 12/30/16]**

M.     **Arm's-Length Sale.**  The Stalking Horse Purchaser is an insider of the Debtors; however, the Debtors and the Stalking Horse Purchaser agreed to the Asset Purchase Agreement after an arm's-length negotiation. The Asset Purchase Agreement, the Sale Transaction, and the transactions contemplated therein and associated therewith were negotiated, proposed, and entered into by the Debtors and the Stalking Horse Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, their insiders and affiliates, nor the Stalking Horse Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale Transaction, or any part of the transactions thereby to be avoided under Bankruptcy Code section 363(n).

N.     **Good Faith Buyer.**  The Stalking Horse Purchaser is a good faith buyer and, as such, is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code with respect to the Debtor Acquired Assets.

O.     **Independence and Separateness of Stalking Horse Purchaser and Debtors.** ~~The Stalking Horse Purchaser would not have bid on the Acquired Assets and is unwilling to~~
~~purchase the Debtor Acquired Assets that are the subject of the Asset Purchase Agreement unless~~
~~the Debtors are able to sell the Debtor Acquired Assets to Stalking Horse Purchaser free and clear~~

~~of existing liens, claims, and interests, other than Permitted Liens and Assumed Liabilities under the Asset Purchase Agreement, and without an order of the Court authorizing a sale free and clear of such liens, claims, and interests.~~  The Stalking Horse Purchaser is not purchasing all of the Debtors' assets, but rather, the Stalking Horse Purchaser is purchasing the assets of only one of four business segments owned and operated by the collective Debtors and assuming only those liabilities associated with the Assigned Contracts.  The Stalking Horse Purchaser does not and will not hold itself out to the public as a continuation of the Debtors.  Neither the Stalking Horse Purchaser nor any of its subsidiaries or affiliates is merging with any Debtor or non-Debtor subsidiary or affiliate of the Debtors.  There will be no substantial continuity or continuity of enterprise between the Debtors and the Stalking Horse Purchaser.**[SMB: 12/30/16]**

P.      **Sale in Best Interests.**  ~~The actions represented to be taken by the Debtors and the Stalking Horse Purchaser are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, their interest holders, and other parties in interest.  Approval of the Asset Purchase Agreement, the Sale Transaction, and all related transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.~~**[SMB: 12/30/16]**

Q.      **No *Sub Rosa* Plan.**  The consummation of the Sale Transaction outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Asset Purchase Agreement, the Sale Transaction, and the transactions contemplated therein and associated therewith do not constitute a *sub rosa* plan of reorganization.

R.    **Corporate Authority.  The Debtors represents that** Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Debtor Acquired Assets pursuant to the Asset Purchase Agreement has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.**[SMB: 12/30/16]**

S.    **Free and Clear Findings Required by the Stalking Horse Purchaser.**  The Stalking Horse Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction if the sale of the Debtor Acquired Assets to the Stalking Horse Purchaser were not, pursuant to Bankruptcy Code section 363(f), free and clear, except for Permitted Liens and Assumed Liabilities,[3] of all liens, claims, and interests whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests"). A sale of the Debtor Acquired Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale Transaction as contemplated. Therefore, the Sale Transaction contemplated by the Asset Purchase Agreement and approved herein for the Debtor Acquired Assets free and clear of all Interests, except for Permitted Liens

---

[3] "Permitted Liens" and "Assumed Liabilities" shall have the meanings ascribed to them in the Asset Purchase Agreement.

and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T.    **Binding and Valid Transfer.**  ~~The transfer of the Acquired Assets to the Stalking Horse Purchaser will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Stalking Horse Purchaser with all right, title, and interest of the Debtors to the Debtor Acquired Assets free and clear of all Interests and any liabilities of the Debtors.~~**[SMB: 12/30/16]**

~~U.~~    **Satisfaction of Section 363(f) Standards.**  The Debtors may sell the Debtor Acquired Assets free and clear of all Interests of any kind or nature whatsoever, because, in each case,  **the party asserting an interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for its interest.** ~~one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Interests who did not object, or who withdrew their objections to the motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  In all cases, each such person with Interests in the Debtor Acquired Assets is enjoined from taking any action against the Stalking Horse Purchaser, the Stalking Horse Purchaser's affiliates, or any agent of the foregoing to recover any such Interest.~~**[SMB: 12/30/16]**

V.    **Necessity of Order.**  The Stalking Horse Purchaser would not have entered into the Stalking Horse Agreement or the Asset Purchase Agreement and would not consummate the transactions without all of the relief provided for in this Sale Order (including, but not limited to, that the transfer of the Debtor Acquired Assets to the Stalking Horse Purchaser be free and clear of all Interests).  The consummation of the transactions pursuant to this Sale Order and the Asset

Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

W.     **Time of the Essence.**  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Stalking Horse Purchaser intend to close the sale of the Assets as soon as reasonably practicable.

X.     **Assigned Contracts.**  The Debtors have demonstrated that it is an exercise of their sound business judgment to **assign the Debtor Assigned Contracts** ~~sell, or assume and assign, as applicable,  the unexpired leases and executory contracts~~ designated on Exhibits A, B, C & D of the Asset Purchase Agreement ~~(collectively, the "Assigned Contracts", individually, an "Assigned Contract", and to the extent that one of the Debtors is a party to such Assigned Contracts, the "Debtor Assigned Contracts" and, individually a "Debtor Assigned Contract")~~ to the Stalking Horse Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Debtor Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Debtor Assigned Contracts being assigned to the Stalking Horse Purchaser are an integral part of the Acquired Assets being purchased by the Stalking Horse Purchaser, and, accordingly, such assumption and assignment of the Debtor Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' bankruptcy estates.**[SMB: 12/30/16]**

Y.     **Cure and Adequate Assurance.**  The Debtors have cured or the Debtors have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the Debtor Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A).  ~~The proposed Cure Costs or any other cure amount reached by~~

~~agreement after any objection by a counterparty to a Debtor Assigned Contract (an "Assigned Contract Objection") are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code section 365(b), under such Debtor Assigned Contracts. The Stalking Horse Purchaser's promise to perform the obligations under the Debtor Assigned Contracts arising after the Closing shall constitute adequate assurance of its future performance of and under the Debtor Assigned Contracts, within the meaning of Bankruptcy Code sections 365(b)(1) and 365(f)(2). All counterparties to the Debtor Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Stalking Horse Purchaser. The filed objections of all counterparties to the Assigned Contracts that were heard at the Sale Hearing (to the extent not withdrawn or adjourned), were considered by the Court, and are overruled on the merits with prejudice.~~ The Court finds that, with respect to all such Debtor Assigned Contracts, the payment of the proposed Cure Costs in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code section 365(b). Accordingly, all of the requirements of Bankruptcy Code section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Stalking Horse Purchaser of each of the Debtor Assigned Contracts. To the extent any Debtor Assigned Contract is not an executory contract within the meaning of Bankruptcy Code section 365, it shall be transferred to the Stalking Horse Purchaser in accordance with the terms of this Sale Order that are applicable to the Debtor Acquired Assets.**[SMB: 12/30/16]**

    Z.    **Unenforceability of Anti-Assignment Provisions.** Anti-assignment provisions in any Debtor Assigned Contract shall not restrict, limit, or prohibit the assumption, assignment, and

sale of the Debtor Assigned Contracts and should be deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

AA.    **Final Order.**  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

~~BB.    **Best Interest.**  Entry of this Sale Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.~~**[SMB: 12/30/16]**

CC.    **Findings and Conclusions.**  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

**General Provisions**

1.    The motion is granted and the relief requested therein with respect to the Sale Transaction is granted and approved in its entirety, as set forth herein.

~~2.    Any objections to the entry of this Sale Order or to the relief granted herein or the relief requested in the motion, including any objections to the proposed Cure Costs or the assumption and assignment of any Debtor Assigned Contracts, that have not been adjourned, withdrawn, waived, or settled, or not otherwise addressed or resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.~~**[SMB: 12/30/16]**

**Approval of the Sale of the Acquired Assets**

3.     The Asset Purchase Agreement~~, and all the terms and conditions thereof,~~ is approved.  **[SMB: 12/30/16]**

~~4.~~     Pursuant to Bankruptcy Code section 363(b), the sale of the Debtor Acquired Assets to the Stalking Horse Purchaser **shall be**   free and clear of all obligations, Interests and encumbrances (except Permitted Liens and Assumed Liabilities), **with all such obligations, interests and encumbrances attaching to the proceeds with the same priority.** ~~and the transactions contemplated thereby is approved in all respects.~~**[SMB: 12/30/16]**

**Sale and Transfer of the Acquired Assets**

~~5.~~     Pursuant to Bankruptcy Code sections 105, 363, and 365, the Debtors are authorized to **take all actions necessary and appropriate to** ~~perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and~~ consummate the Sale Transaction and the related transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Sale Order.  ~~The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Asset Purchase Agreement, together with all additional instruments and documents that the Debtors or the Stalking Horse Purchaser deem necessary or appropriate to implement the Asset Purchase Agreement and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by the Stalking Horse Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Stalking Horse Purchaser or reducing to Stalking Horse Purchaser's possession the Debtor Acquired Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement.  Further, the Debtors, their officers, employees and agents, including, but not limited to Manuel Estrada, are~~

~~authorized to take all actions necessary or appropriate to cause the non-Debtor subsidiaries of the~~ ~~Debtors to perform their obligations under the Asset Purchase Agreement and this Sale~~ ~~Order.~~[SMB: 12/30/16]

6.      Following the Closing, the Debtors or the Stalking Horse Purchaser are authorized and directed to execute and file a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, encumbrances and Interests in the Debtor Acquired Assets of any kind or nature whatsoever.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing an Interest in the Debtors or the Debtor Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Debtors or the Debtor Acquired Assets or otherwise, then (i) the Debtors are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Debtor Acquired Assets, and (ii) the Stalking Horse Purchaser is authorized to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Debtors or the Debtor Acquired Assets.  Upon the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Debtor Acquired Assets and a bill of sale transferring good and marketable title in the Debtor Acquired Assets to the Stalking Horse Purchaser free and clear of all Interests, except for the Permitted Liens and Assumed Liabilities.   Each and every federal, state, and local governmental agency or department is hereby authorized and directed to

accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Sale Order.  This Sale Order shall be binding upon and shall govern the acts of all persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests; provided that nothing herein shall relieve any entity of the obligation to pay filing fees required to be paid under non-bankruptcy law.

7.    ~~Except for the Permitted Liens and Assumed Liabilities, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtor Acquired Assets shall be transferred to the Stalking Horse Purchaser as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Interests of any person, including, without limitation, all such Interests specifically enumerated in this Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which the holder of an Interest claims or may claim an Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.~~**[SMB: 12/30/16]**

8.    The transfer of the Debtor Acquired Assets to the Stalking Horse Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Debtor Acquired Assets and shall vest the Stalking Horse Purchaser with all right, title, and interest of the Debtors in and to the Debtor Acquired Assets free and clear of all Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities. ~~To the fullest extent authorized by applicable law, the transfer of any of the Non-Debtor Acquired Assets of the non-debtor subsidiaries of the Debtors to the Stalking Horse Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid and effective transfer of such Non-Debtor Acquired Assets and shall vest the Stalking Horse Purchaser with all right, title, and interest of such non-debtor subsidiaries of the Debtors in and to the Non-Debtor Acquired Assets free and clear of all Interests of any kind or nature whatsoever except for Permitted Liens and Assumed Liabilities.~~**[SMB: 12/30/16]**

9.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Stalking Horse Purchaser in accordance with the Asset Purchase Agreement and this Sale Order; *provided* that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order, or from enforcing its rights under Bankruptcy Code section 365 or relieve the Stalking Horse Purchaser of any Assumed Liability.

10.    Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, contract counterparties, and other creditors, holding liens, claims

18

encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtor Acquired Assets or the operation of the Debtor Acquired Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Debtor Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Stalking Horse Purchaser, its respective successors and assigns, its respective property and the Debtor Acquired Assets, such persons' or entities' liens, claims, encumbrances, or other Interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, *provided* that nothing herein shall impair or otherwise affect any right under Bankruptcy Code section 365 of a lease or contract counterparty to a Debtor Assigned Contract under its respective Debtor Assigned Contract(s), or relieve the Stalking Horse Purchaser of any Assumed Liability.

11.    All entities that are currently, or on the Closing may be, in possession of some or all of the **Debtor Acquired** Assets are hereby directed to surrender possession of the **Debtor Acquired Assets** Assets to the Stalking Horse Purchaser on the Closing, unless the Stalking Horse Purchaser otherwise agrees.**[SMB: 12/30/16]**

12.    The Sale Order is self-executing, and neither the Debtors nor the Stalking Horse Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

13.    To the extent provided by Bankruptcy Code section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Debtor Acquired Assets sold, transferred, or conveyed to the Stalking Horse Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

**Implementation of the Sale**

14.    On Closing, the Debtors shall (a) pay an amount up to $350,000 to Hemisphere Logistics LLC ("HLL"), as Backup Bidder, in accordance with the terms of the Bidding Procedures Order, and (b) deposit the remaining proceeds of the Sale Transaction into a segregated account and any and all liens and/or security interests against the **Debtor** Acquired  Assets shall attach to such proceeds in the same priority as the liens against such **Debtor Acquired** Assets (including, for the avoidance of doubt, as such priority is set forth in the final order approving the Debtors' post-petition financing), pending further order of the Bankruptcy Court (which may be an order confirming a plan of reorganization) authorizing the withdrawal of the proceeds of the Sale Transaction.  All parties reserve all rights with respect to the allocation of the proceeds of the Sale Transaction. **[SMB: 12/30/16]**

15.    The Sellers shall not terminate the Asset Purchase Agreement for the purpose of entering into an Alternate Transaction without first consulting with the Bid Consultation Parties (as defined in the Bidding Procedures Order).

16.    All parties in interest in these chapter 11 cases expressly reserve their rights with respect to any allocation of the Purchase Price or value among the Acquired Assets.

**Good Faith**

17.    ~~The transactions contemplated by the Asset Purchase Agreement are undertaken by the Stalking Horse Purchaser without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts).~~  The Stalking Horse Purchaser is ~~a buyer in good faith of the Acquired Assets and is~~ entitled to all the protections afforded by Bankruptcy Code section 363(m) with regard to the Debtor Acquired Assets.  Neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Stalking Horse Purchaser, and the Sale Transaction may not be avoided pursuant to Bankruptcy Code section 363(n).**[SMB: 12/30/16]**

**Assumption and Assignment of Debtor Assigned Contracts**

18.    Pursuant to Bankruptcy Code sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale Transaction, the Debtors' sale and assumption and assignment to the Stalking Horse Purchaser of the Assigned Contracts is approved, and the requirements of Bankruptcy Code section 365(b)(1) with respect to the Debtor Assigned Contracts, are deemed satisfied.

19.    The Debtors are authorized and directed in accordance with Bankruptcy Code sections 105(a) and 365 to (i) assume and assign to the Stalking Horse Purchaser, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the Asset Purchase Agreement, the Debtor Assigned Contracts, and (ii) execute and deliver to the Stalking Horse Purchaser such documents or other instruments as the Stalking Horse Purchaser reasonably deems necessary to assign and transfer the Debtor Assigned Contracts to the Stalking Horse Purchaser.

20.    The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of the Stalking Horse Purchaser, notwithstanding any provision in any such Debtor Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer.  The Debtors shall be relieved from any further liability with respect to the Debtor Assigned Contracts after such assumption and assignment to the Stalking Horse Purchaser. The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code sections 363 and 365, and any provisions in any Debtor Assigned Contracts that prohibit or condition the assignment of such Debtor Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Debtor Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Stalking Horse Purchaser of each Debtor Assigned Contract have been satisfied.

21.    All defaults and all other obligations or liabilities under any Debtor Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Stalking Horse Purchaser shall be deemed cured or satisfied upon payment by the Stalking Horse Purchaser (or the Seller as specified in the Asset Purchase Agreement) of the proposed Cure Costs, as set forth in the Cure Notice, or any other cure amount reached by agreement after an Assigned Contract Objection, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code section 365(b)(1), ~~whether or not~~

~~such Debtor Assigned Contract is an executory contract within the meaning of Bankruptcy Code~~
~~section 365.~~  The Cure Costs listed on the Cure Notice, or any other cure amount reached by agreement after an Assigned Contract Objection, reflect the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults under the Debtor Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Stalking Horse Purchaser of the Debtor Assigned Contracts.**[SMB: 12/30/16]**

22.    Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Debtor Assigned Contract, and all holders of such claims arising from and after Closing under any Debtor Assigned Contract are forever barred and estopped from asserting any claims under any Debtor Assigned Contract against the Debtors, their successors or assigns, and/or their estates.

23.    The failure of the Debtors or the Stalking Horse Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Stalking Horse Purchaser's rights to enforce every term and condition of the Assigned Contracts.

24.    Except for the Assumed Liabilities and Cure Costs that will be paid as provided in the Asset Purchase Agreement, neither the Stalking Horse Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest against the Debtors that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Acquired Assets prior to the Closing.  The Stalking Horse Purchaser is not and shall not be deemed a "successor" to the Debtors or their estates, have, *de facto* or otherwise, merged with or into the Debtors, or be a mere continuation, alter ego or substantial continuation

of the Debtors or the enterprise of the Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Assets.

**Backup Bidder**

25.    HLL is hereby approved as the Backup Bidder and pursuant to Bankruptcy Code sections 105, 363 and 365, and the asset purchase agreement submitted by HLL with a purchase price of $24,000,000 and the sale of the Assets to and consummation of the sale to HLL are hereby approved as the Backup Bid.  The Backup Bid, pursuant to the terms submitted therewith, is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction up to and including April 28, 2017.  In the event that the Successful Bidder cannot or refuses to consummate the Sale Transaction, HLL will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with HLL on the Backup Bid without further order of the Bankruptcy Court, and in such case the findings and other provisions of this Sale Order shall apply to HLL and the Backup Bid to the same extent they do with respect to the Stalking Horse Purchaser and the Asset Purchase Agreement.

**Additional Provisions**

26.    If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, encumbrances, or Interests in any of the Debtor Acquired Assets (other than any Permitted Liens or Assumed Liabilities) does not deliver to the Debtors or the Stalking Horse Purchaser prior to the Closing, in proper form for filing and executed by the appropriate

parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests and other Interests that the person or entity has or may assert with respect to any of the Debtor Acquired Assets, the Debtors and/or the Stalking Horse Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Debtor Acquired Assets.

27.    This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Interests, all counterparties to the Debtor Assigned Contracts, all counterparties to contracts that are not assumed or assigned, all successors and assigns of the Stalking Horse Purchaser, each Debtor and their affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Debtors' chapter 11 cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and this Sale Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case, any order confirming any such chapter 11 plan, or any other order in these chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

28.    If (A) after the conclusion of the hearing at which the Bankruptcy Court approves Stalking Horse Purchaser bid, but (B) the Closing has not occurred by the Outside Closing Date solely as a result of a Material Breach by any of the Sellers (as defined in the Asset Purchase Agreement), and (C) an Alternate Transaction with respect to the Business is consummated within six (6) months of the termination of the Asset Purchase Agreement for a net purchase price at least equal to the Purchase Price, the Buyer shall have the right to terminate the Asset Purchase

25

Agreement, pursuant to the terms thereof, and shall be entitled to a general administrative Claim allowed in an amount up to $2,000,000 in liquidated damages (the "Liquidated Damages"). The Liquidated Damages shall constitute an allowed claim for administrative expenses under sections 503(b) and 507 of the Bankruptcy Code and shall not be subject to defense, recharacterization, subordination, or challenge of any nature, or offset on account of any claim, defense or counterclaim.  All payments of the Liquidated Damages shall be made free and clear or any claims or interests and without any withholding on account of taxes.

29.    To the extent applicable, the automatic stay pursuant to Bankruptcy Code section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Stalking Horse Purchaser to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Stalking Horse Purchaser to take any and all actions permitted by the Asset Purchase Agreement.

30.    No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale Transaction, the Asset Purchase Agreement, the motion, and this Sale Order.

31.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, all amendments hereto, and any waivers and consents hereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Assets to the Stalking Horse Purchaser; (ii) interpret, implement, and enforce the provisions of this Sale Order; (iii) protect the Stalking Horse Purchaser, any of the Stalking Horse Purchaser's affiliates, or any agent of the foregoing, against any Interests against the Debtors or the Assets of any kind or nature whatsoever,

except for the Permitted Liens and Assumed Liabilities, and (iv) enter any order under Bankruptcy Code sections 363 and 365.

32.    No brokers were involved in consummation of the Sale Transaction, and no brokers' commissions are due to any person in connection with the Sale Transaction; *provided*, *however*, that this provision does not impact any transaction or other fees due to investment bankers or financial advisors employed by the Debtors or certain of their creditors for which the Debtors may be obligated to pay in accordance with an engagement letter with such professional(s).

33.    To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

34.    The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

35.    The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, *provided* that the Debtors shall provide the Bid Consultation Parties with three (3) business days' notice thereof and *provided further* that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have a material adverse effect on the Debtors' estates.

36.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately

27

upon entry, and the Debtors and the Stalking Horse Purchaser are authorized to close the transactions immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Stalking Horse Purchaser intend to close the transactions as soon as practicable.  This Sale Order is a final, appealable order and the period in which an appeal must be filed shall commence upon the entry of this Sale Order.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

37.    The provisions of the Asset Purchase Agreement and this Sale Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing.

38.    Headings utilized in this Sale Order are for convenience of reference only, and do not constitute a part of this Sale Order for any other purpose.

39.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.    The provisions of this Sale Order are nonseverable and mutually dependent.


New York, New York
Dated: <u>December 30th</u> , 2016

                            /s/ STUART M. BERNSTEIN_____
                            UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT 1</u>

**Asset Purchase Agreement**