Hearing Date: January 24, 2017 at 10:00 a.m. (Eastern Time)
Objection Deadline: January 17, 2017 at 4:00 p.m. (Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
Sarah J. Crow (admitted *pro hac vice*)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON DEBTORS' APPLICATION FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION
OF (A) H CLARKSON & COMPANY LIMITED AND (B) JACQ. PIEROT JR.
& SONS INC. AS BROKERS FOR THE DEBTORS AND DEBTORS IN POSSESSION,
(II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS PURSUANT
TO LOCAL RULE 2016-1, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on January 10, 2017, the Debtors filed the *Debtors'*

*Application for Entry of an Order (I) Authorizing the Employment and Retention of (a) H*

*Clarkson & Company Limited and (b) Jacq. Pierot Jr. & Sons Inc. as Brokers for the Debtors*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

*and Debtors in Possession, (II) Waiving Certain Time-Keeping Requirements Pursuant to Local Rule 2016-1, and (III) Granting Related Relief* (the "Application").

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") to consider the Application shall be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004, Courtroom: 723, on January 24, 2017 at 10:00 a.m. (prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that any responses to the Application must be made in writing; shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court (the "Local Rules"); shall be filed with the Bankruptcy Court with a hard copy delivered directly to Chambers, and served so as to be actually received by (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: David Botter, Esq., Email: dbotter@akingump.com, and 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201, Sarah Link Schultz, Esq., Email: sschultz@akingump.com, proposed counsel for the Debtors; (ii) Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Robert J. Feinstein, Esq., Email: rfeinstein@pszjlaw.com, and Bradford J. Sandler, Esq., Email: bsandler@pszjlaw.com, proposed counsel to the statutory committee of unsecured creditors; (iii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick St., Room 1006, New York, New York 10014, Attn: Serene Nakano, Esq., Email: serene.nakano@usdoj.gov; (iv) counsel to the agents under the Debtors' pre-petition credit facilities; (v) counsel to the agent under the Debtors' post-petition debtor-in-possession financing; (vi) the Internal Revenue Service; (vii) the United States Attorney for the Southern

District of New York; (viii) the Securities and Exchange Commission; (ix) all parties that have

filed a request to receive service of court filings pursuant to Bankruptcy Rule 2002; and (x) all

other parties on the master service list prepared and maintained pursuant to the Order

Establishing Certain Notice, Case Management, and Administrative Procedures [ECF No. 178],

no later than **January 17, 2017 at 4:00 p.m. (prevailing Eastern Time) (the "<u>Objection</u>**

**<u>Deadline</u>").**

PLEASE TAKE FURTHER NOTICE that if no objections or responses are timely filed

and served with respect to the Application, the Debtors may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Application, which may be entered with no further notice or opportunity to be heard.

| | |
|---|---|
| Dated:  New York, New York<br>        January 10, 2017 | **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>By:  */s/ David H. Botter*<br>David H. Botter<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>Sarah Link Schultz (admitted *pro hac vice*)<br>Sarah J. Crow (admitted  *pro hac vice*)<br>1700 Pacific Avenue, Suite 4100<br>Dallas, TX 75201<br>Telephone: (214) 969-2800<br>Facsimile: (214) 969-4343<br><br>*Counsel to Debtors and Debtors in Possession* |

**Hearing Date: January 24, 2017 at 10:00 a.m. EST**
**Objection Deadline:  January 17, 2017 at 4:00 p.m. EST**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
Sarah J. Crow (admitted *pro hac vice*)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

**DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION**
**OF (A) H CLARKSON & COMPANY LIMITED AND (B) JACQ. PIEROT JR.**
**& SONS INC. AS BROKERS FOR THE DEBTORS AND DEBTORS IN POSSESSION,**
**(II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS PURSUANT**
**TO LOCAL RULE 2016-1, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this application for entry of an order, substantially in the form attached hereto as Exhibit A (the

"Proposed Order"), (i) authorizing the Debtors to employ and retain H Clarkson & Company

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380);  Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570).  The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

Limited ("Clarksons Platou") and (b) Jacq. Pierot Jr. & Sons Inc. ("Pierot" and, together with Clarksons Platou, the "Proposed Brokers") as their brokers in connection with the potential sale of the Debtors' Pure Car and Truck Carrier (PCTC) vessel named the "Green Dale" having IMO number 9181376 (the "Vessel"); (ii) waiving certain time-keeping requirements; and (iii) granting related relief.  In support of the application, the Debtors submit the declaration of Manuel G. Estrada (the "Estrada Declaration"), which is attached hereto as Exhibit B.  In further support of this application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a), 328(a), and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## BACKGROUND

**A.      General Background**

4.      On July 31, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  These chapter 11 cases have been consolidated for procedural purposes only.  No trustee or examiner has been appointed in the chapter 11 cases.  On September 1, 2016, the Office of the United States Trustee for Region 2 (the "U.S. Trustee")

appointed the statutory committee of unsecured creditors (the "Committee") [ECF No. 125]. On September 22, 2016, the U.S. Trustee amended the Committee's appointment [ECF No. 185].

6.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Erik L. Johnsen, President and Chief Executive Officer, Pursuant to Local Bankruptcy Rule 1007-2 and in Support of First Day Filings* (the "First Day Declaration") [ECF No. 7], and are incorporated herein by reference.

**B.      The Debtors' Contemplated Vessel Sales**

7.      As the Court is aware, the Debtors are pursuing a two-pronged approach in order to maximize the value of the Debtors' estates: (1) execute the sale process for the majority of the assets contained in one of their four business segments, the "Specialty Business Segment,"[2] and (2) obtain confirmation of the Plan sponsored by SEACOR Capital Corp. to reorganize the Debtors' remaining three business segments.  On December 30, 2016, the Court approved the Specialty Business Sale to J Line Corporation [ECF No. 487].

8.      With respect to the remainder of the Debtors' business segments, the Debtors filed the Plan and Disclosure Statement on November 14, 2016 (the Plan was amended on December 28, 2016).  Under their proposed Plan, with respect to those vessels that will not be retained by the reorganized Debtors, the Debtors anticipate either (a) offering the vessels to the applicable lenders, or (b) selling the vessels and delivering the proceeds to the applicable lenders.  To facilitate this process, the Debtors seek to engage the Proposed Brokers to market the Vessel.

---

[2] The "Specialty Business Segment" assets to be sold to J Line Corporation include the various "Acquired Assets" as defined in the Asset Purchase Agreement between the Debtors and J Line Corporation.

9.     The Vessel secures the Debtors' obligations under their post-petition financing (the "DIP Facility") and under that certain Credit Agreement, dated as of August 25, 2014 (the "Citizens Facility"), with LCI Shipholdings, Inc., as borrower, International Shipholding Corporation, as guarantor, and Citizens Asset Finance, Inc. ("Citizens") as lender.  To obtain the highest or otherwise best offer for the Vessel, the Debtors seek to retain the Proposed Brokers as described in this Application.  The Debtors have consulted with Citizens regarding the selection of the Proposed Brokers and their proposed compensation and Citizens has consented to same.

## C.     The Proposed Brokers' Qualifications

### (i)     Clarksons Platou's Qualifications

10.     Clarksons Platou is a United Kingdom based subsidiary of Clarkson PLC, which is the world's largest provider of integrated shipping services.  Subsidiaries of Clarkson PLC provide an array of broking, financial, support, and research services across the globe.  The Debtors believe that Clarksons Platou provides unparalleled access resulting from of the geographic breadth, variety of the firm's operations, and visibility in the marketplace.

### (ii)     Pierot's Qualifications

11.     Pierot is a family-owned international ship sale and purchase brokerage firm that was established in 1894 in Rotterdam, The Netherlands and has been based in New York City since the late 1940's. It specializes in transactions involving all kinds of passenger and commercial vessels.  Professionals at the firm are also leading consultants to the shipping industry overall and well known appraisers of vessels.

12.     International Shipholding Corporation ("ISH") has been a client of Pierot for over 50 years.  Most recently, the firm brokered the sale of the Debtors' PCTC "Glovis Countess" for approximately $50 million in 2015 and the self-unloading bulk carrier "Energy

4

Enterprise" in July of 2016.  The Debtors believe that Pierot's history with the Debtors and knowledge of the Debtors' business and assets put the firm in a unique position to negotiate a sale of the Vessel.

### (iii)    Benefits of Joint Engagement

13.    The Debtors believe that the joint engagement of Clarksons Platou and Pierot will likely lead to a higher and better offer for the Vessel than the retention of either of the brokers individually.  Through joint engagement, the Debtors will be able to leverage the connections of both Proposed Brokers with the various potential buyers in their respective networks.  Further, the Debtors believe that the fee structure of the joint representation would encourage competition between the Proposed Brokers, thus maximizing the chance for the highest and best offer for the Vessel.

### D.    Scope of Services

14.    Subject to approval of the Court and consistent with the agreement (the "Brokerage Agreement") attached hereto as Exhibit B, the Proposed Brokers will provide the following services (the "Brokerage Services") to the Debtors in relation to the intended sale of the Vessel:[3]

    i.      identify potential purchasers of the Vessel;

    ii.     assist the Debtors regarding inspections of the Vessel and its records by potential purchasers;

    iii.    assist in negotiating the terms and conditions of an agreement (an "MOA") for the sale of the Vessel;

    iv.     assist the Debtors to prepare the documentation for delivery of the Vessel and with regard to the closing of the sale of the Vessel;

---

[3] The summary provided herein is for illustrative purposes only and is subject to the Brokerage Agreement in all respects.  In the event of any inconsistency between the summary of services as set forth herein and the Brokerage Agreement, the Brokerage Agreement will control.

     v.          inform the Debtors about any material circumstances or events known by Clarksons Platou or Pierot which may be relevant in the context of the sale of the Vessel.

     vi.        be available to give testimony and evidence in court regarding the Brokerage Services or the implementation of any MOA; and

     vii.      perform such other tasks as agreed between the Proposed Brokers and the Debtors.

15.     No services contemplated by the Brokerage Agreement are contemplated to be performed by any affiliates of the Proposed Brokers.

**E.    Professional Compensation and Expenses**

16.     The Proposed Brokers do not typically charge for their services on an hourly basis.  Instead, they customarily charge a percentage commission on the gross sales price of the marketed vessel to be paid at the closing of the sale.  The Brokerage Agreement follows the custom in the vessel brokerage industry and sets forth the commission-based fees that are to be payable to the Proposed Brokers.

17.     As set forth in the Brokerage Agreement, subject to the Court's approval, the Proposed Brokers will be compensated at a rate of 1.5% of the gross sales price of the Vessel (the "Fee"). The Proposed Broker that negotiates and concludes the sale of the Vessel will be compensated in the amount of 1% of the gross sales price of the Vessel.  The remaining 0.5% of the gross sale price forming the Fee will be paid to the other Proposed Broker. Other than their respective portions of the Fee and the reimbursement of actual, reasonable expenses associated solely with any testimony to be provided, the Proposed Brokers will not be entitled to any other compensation for the Brokerage Services.

18.     The Debtors believe that the Fee as set forth in the Brokerage Agreement is fair, reasonable, and advantageous to the Debtors' estates.  The Fee appropriately (i) reflects the nature of the services to be provided to the Debtors, (ii) reflects the fee structure provisions

6

typically utilized by the Proposed Brokers and other leading firms in the industry, which do not bill their clients on an hourly basis and are generally compensated on a transactional basis, (iii) aligns the Proposed Brokers' interests with those of the Debtors, their estates, and the creditors in these chapter 11 cases in maximizing the proceeds from the sale of the Vessel; and (iv) encourages each of the Proposed Brokers to quickly find a purchaser for the Vessel.

19.    Given the structure of the proposed Fee, the Debtors believes that it would be unnecessary to require the Proposed Brokers to submit interim or final fee applications pursuant to Bankruptcy Code sections 330 and 331 or time records Bankruptcy Rule 2016(a), Local Rule 2016-1, the United States Trustee Fee Guidelines, and any otherwise applicable orders or procedures of the Court. Thus, the Debtors respectfully request that the Proposed Brokers be permitted, pursuant to Bankruptcy Code section 328(a), to receive compensation for their services in the manner set forth in the Brokerage Agreement without filing interim or final fee applications. Instead, the Debtors will seek authorization to pay the Fee to the Proposed Brokers through the motion for authority to sell the Vessel.

20.    Notwithstanding the preceding paragraph, the Proposed Order provides that the U.S. Trustee shall retain the right to object to the compensation and fees and expenses to be paid to the Proposed Brokers pursuant to the Brokerage Agreement, including without limitation, the Fee described therein, based on the reasonableness standard provided for in Bankruptcy Code section 330 and the Court shall consider any such objection by the U.S. Trustee under Bankruptcy Code section 330.

21.    The Debtors have consulted with the DIP Agent, Citizens, and the Committee regarding the retention of the Proposed Brokers. Each of these parties consented to the retention of the Proposed Brokers under the terms of the Brokerage Agreement.

7

F.      **No Duplication of Services**

22.     The Debtors intend that the Proposed Brokers services will complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases, including the Debtors' investment banker who is not a vessel broker and will not seek compensation for the sale of the Vessel. Although the Debtors have marketed some of their vessels with the help of Blackhill Partners LLC, the Debtors believe that using the Proposed Brokers' market knowledge, experience, and connections will lead to the highest or otherwise best offer for the Vessel. This is reflected in the Brokerage Agreement, which provides that the Debtors will appoint no other broker or agent to attempt to sell the Vessel while the Brokerage Agreement is in effect. The Debtors also believe that the Proposed Brokers will work cooperatively with the Debtors' other professionals.

## RELIEF REQUESTED

23.     The Debtors request an order (i) authorizing the Debtors to employ and retain Clarksons Platou and Pierot as their brokers in connection with the potential sale of the Vessel on the terms set forth in the Brokerage Agreement; (ii) waiving certain time-keeping requirements; and (iii) granting related relief.

## SUPPORTING AUTHORITY

24.     The Debtors seek approval of the Brokerage Agreement, including the Fee provided thereunder, pursuant to Bankruptcy Code sections 327(a) and 328(a). Bankruptcy Code section 327(a) authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Prior to the hearing on the Application, each of the Proposed Brokers shall file a declaration demonstrating that they satisfy the disinterestedness standard of section 327(a).

8

25.     The Debtors seek approval of the Brokerage Agreement, including the Fee provided thereunder, pursuant to Bankruptcy Code section 328(a).  Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

26.     Section 328 permits the compensation of professionals, including brokers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations and emphasis omitted).

27.     The Debtors believe that the ultimate benefit of the Proposed Brokers' services cannot be measured by reference to the number of hours to be expended by the Proposed Brokers in the performance of such services.  The Debtors believe that the commission-based fee will allow the Debtors to obtain the highest or otherwise best offer for the Vessel by leveraging industry expertise and connections.  The Debtors also believe that hiring two brokers who will divide the Fee unevenly, with the broker that negotiates and concludes the sale of the Vessel receiving greater compensation, will further incentivize the Proposed Brokers toward

quickly identifying the highest or otherwise best offer, while making use of the Proposed Broker's strengths.

28.    In light of the foregoing, the Debtors believe that the Fee under the Brokerage Agreement appropriately reflects the nature and scope of services to be provided by the Proposed Brokers.  In agreeing to seek the Proposed Broker's retention under Bankruptcy Code section 328(a), the Debtors acknowledge the following:  (a) they believe that Proposed Brokers' experience, connections, and comparative strengths will inure to the benefit of the Debtors in pursuing the sale of the Vessel; (b) the value to the Debtors of the Brokerage Services under the Brokerage Agreement derives in substantial part from that experience, connections, and each Proposed Broker's comparative strengths; and (d) accordingly, the structure and amount of the Fee is reasonable regardless of the number of hours to be expended or out-of-pocket expenses to be incurred by the Proposed Brokers in the performance of the Brokerage Services.

29.    The Fee is consistent with and typical of compensation arrangements entered into by the Proposed Brokers and other comparable firms in connection with the rendering of similar services under similar circumstances.   Indeed, commission-based compensation for brokers has been routinely approved and implemented by courts in this circuit and elsewhere. *See, e.g.*, *In re Maxus Energy Corp.*, No. 16-11501 (SCC) (Bankr. D. Del. Dec. 15, 2016) (authorizing a 6% commission for a broker selling the debtors' IP addresses); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y July 20, 2016) (approving a 4% commission on gross proceeds for real estate broker); *In re FL 6801 Spirits LLC*, No. 14-11691 (SCC) (Bankr. S.D.N.Y June 25, 2014) (approving commission out of sale proceeds equal to (i) 1.50% of the gross purchase price up to and including $18,000,000 plus (ii) 6.5% of the gross purchase price that exceeds $18,000,000).

## NOTICE

30.    No trustee or examiner has been appointed in the Debtors' chapter 11 cases.  The Debtors have caused notice of this application to be provided by electronic mail, facsimile, regular or overnight mail, and/or hand delivery to: (i) the U.S. Trustee; (ii) the agent under the Debtors' post-petition debtor-in-possession financing and its counsel; (iii) the Committee and its counsel; (iv) counsel to the agents under the Debtors' pre-petition credit facilities; (v) the United States Attorney's Office for the Southern District of New York; (vi) the Internal Revenue Service; (vii) the United States Securities and Exchange Commission; (viii) the United States Attorney for the Southern District of New York; (ix) all parties that have filed a request to receive service of court filings pursuant to Bankruptcy Rule 2002; and (x) all other parties on the master service list prepared and maintained pursuant to the Order Establishing Certain Notice, Case Management, and Administrative Procedures [ECF No. 178].  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court (a) enter a final order, substantially in the form of the Proposed Order, granting the relief requested herein, and (b) grant such other and further relief as may be just and proper.

New Orleans, Louisiana

Date: January 10, 2017

 /s/*Manuel G. Estrada*
Manuel G. Estrada,
Vice President and Chief Financial Officer
International Shipholding Corporation

**<u>Exhibit A</u>**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

### ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF (A) H CLARKSON & COMPANY LIMITED AND (B) JACQ. PIEROT JR. & SONS INC. AS BROKERS FOR THE DEBTORS AND DEBTORS IN POSSESSION, (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-1, AND (III) GRANTING RELATED

Upon the application (the "Application")  of the Debtors[2] for entry of this Order, pursuant

to Bankruptcy Code sections 327(a), 328(a), and 330, Bankruptcy Rules 2014(a) and 2016, and

Local Rule 2014-1, authorizing the Debtors to retain and employ H Clarkson & Company Jacq.

Pierot Jr. & Sons Inc. as their brokers in connection with the potential sale of the Debtors' Pure

Car and Truck Carrier (PCTC); (ii) waiving certain time-keeping requirements; and (iii) granting

related relief, all as further described in the application; and the Court having jurisdiction to

consider the application and the relief requested therein in accordance with 28 U.S.C. § 1334 and

the *Amended Standing Order of Reference from the United States Southern District of New York*,

dated as of January 31, 2012; and consideration of the application and the relief requested therein

being a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2); and venue being proper in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380);  Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094);  Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570).  The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the application.

this jurisdiction pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the application being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the application; and Estrada Declaration, the record of the hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the application is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the application establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

1.      The Application is granted to the extent set forth herein.

2.      The retention and employment by the Debtors of H Clarkson & Company Limited ("Clarksons Platou") and (b) Jacq. Pierot Jr. & Sons Inc. ("Pierot" and, together with Clarksons Platou, the "Proposed Brokers") as brokers pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rules 2014, and Local Rule 2016-1, on the terms and conditions set forth in the Brokerage Agreement (attached hereto as Exhibit 1) and the Application, is approved.

3.      The Proposed Brokers' compensation shall be subject to the standard of review provided in Bankruptcy Code section 328(a) and not subject to any other standard of review under Bankruptcy Code section 330.

4.      Notwithstanding the preceding paragraph, the U.S. Trustee shall retain the right to object to the compensation and expenses to be paid to the Proposed Brokers pursuant to the Brokerage Agreement, including, without limitation, the Fee described therein, based on the

2

reasonableness standard provided for in Bankruptcy Code section 330, and the Court shall consider any such objection by the U.S. Trustee under Bankruptcy Code section 330.

5.      In light of the services to be provided by the Proposed Brokers and the compensation structure in the Brokerage Agreement, the Proposed Brokers and their professionals shall be excused from the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-1, and the United States Trustee Fee Guidelines.

6.      The Proposed Brokers shall be compensated in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any other applicable orders of this Court.

7.      The Proposed Brokers shall use their best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

8.      To the extent that this Order differs from the Brokerage Agreement, this Order shall control.

9.      This Court shall retain jurisdiction to construe and enforce the terms of this Order.


New York, New York
Date: _____, 2017


_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1 to Exhibit A**

**Brokerage Agreement**

<u>**Brokerage Agreement**</u>
**("Agreement")**

This Agreement is made on this   January 2017 by and between:

(1)    **LCI Shipholding Inc.** (the "**Company**") a corporation incorporated and existing under the laws of the Marshall islands,  with a case pending pursuant to chapter 11 of title 11 of the United States Code before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (Case No. 16-2228) administered together with International Shipholdings Corporation and other subsidiaries of it  under case No 16-2220;

(2)    **H CLARKSON & COMPANY LIMITED,** a company organized and existing under the laws of England and having its registered address at Commodity Quay, St Katharine Docks, London E1W 1BF, England ("**Clarksons Platou**"); and

(3)    **JACQ. PIEROT JR. & SONS INC.,** a corporation incorporated and existing under the laws of the State of [Delaware] with a registered office at 29 Broadway, Suite 1825, New York, NY  10006  U.S.A. ("**Pierot**")

(together, the **"Parties"**; each a **"Party"**)

**WHEREAS**

A.    The Company is the sole owner of the Marshall Islands registered Pure Car and Truck Carrier "Green Dale" having IMO number 9181376 ( the "**Vessel**"):

B.    The Company has expressed its intention to sell the Vessel, subject to the entry of an order by the Bankruptcy Court approving such sale, and, for this purpose, it intends to use the Services of Clarksons Platou and Pierot.

**FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE PARTIES AGREE AS FOLLOWS:**

1.    **DEFINITIONS AND INTERPRETATION**

1.1    In this Agreement:

**"Affiliate"** of any person means any other person (individual or body corporate) that directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such person (together, the "**Affiliates**");

 "**Confidential Information**" shall refer to any and all information that is disclosed by any one Party to any other Party clearly marked as confidential and that relates to the sale of the Vessel or the Services including but not limited to, information concerning potential purchasers of the Vessel and the offers they may make for the Vessel.

**"control"** (including the terms "controls", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management, policies or activities of a person, whether through the

ownership of securities, by contract or agency or otherwise;

**"Fee"** means has the meaning given to it in Clause 2.8 below;

**"MOA**" means any agreement, whether verbal or in writing, in relation to the sale of the Vessel by the Company;

**"person"** means any individual, entity, partnership, limited partnership, firm, trust, body corporate, company, corporation, government, governmental body, agency or instrumentality, unincorporated body of persons or association;

**"Period"** means the period from the date hereof until 30 June 2017, mutually renewable by agreement, during which the Services shall be provided by Clarksons Platou and Pierot to the Company;

**"Services"** has the meaning given to in clause 2.2;

## 2.    SERVICES AND FEES

2.1    In relation to the sale of the Vessel, the Company grants to each of Clarksons Platou and Pierot a mandate to perform the Services, acting in the best interest of the Company. For so long as this Agreement is in effect, the Company shall appoint no other broker or agent to perform the Services or any part thereof or to sell the Vessel. In the event that any third party makes direct or indirect contact with the Company or any Affiliate or agent of it relating to the sale of the Vessel, such third party will be directed to contact Clarksons Platou or Pierot and ~~to~~ no-one else.  Either party to this agreement may terminate the agreement for cause upon five (5) days' written notice to the other party.

2.2    In relation to the intended sale of the Vessel Clarksons Platou and Pierot shall provide the following Services to the Company during the Period:

  i.    identify potential purchasers of the Vessel;

  ii.    assist the Company regarding inspections of the Vessel and its records by potential purchasers;

  iii.    assist in negotiating the terms and conditions of the MOA;

  iv.    assist the Company to provide the documentation for delivery of the Vessel and with regard to the closing of the sale of the Vessel;

  v.    inform the Company about any material circumstances or events known by Clarksons Platou or Pierot which may be relevant in the context of the intended sale of the Vessel.

  vi.    make the relevant brokers available to give testimony and evidence in court regarding the Services or the implementation of the MOA; and

  vii.    perform such other tasks as agreed between the Parties.

  Clarksons Platou and Pierot shall endeavour to assist the Company to enter into the MOA or the implementation of any other sale authorised or administered by the Bankruptcy Court in relation to the Vessel at the earliest opportunity that is

commercially available. Neither Clarksons Platou nor Pierot shall have any further obligations.

**2.3**  Clarksons Platou and Pierot each undertakes to provide the Services during the Period in accordance with this Agreement solely as an independent contractor and not an agent, partner, coventurer, member or Affiliate of the Company and shall not hold itself out as, or conduct any act or omission that could give rise to a finding under any applicable law that Clarksons Platou or Pierot is, an agent, partner, coventurer, member or Affiliate of the Company. Nothing in this Agreement shall constitute, or be deemed to constitute, a partnership or a joint venture between the Parties nor, shall it constitute, or be deemed to constitute an agency of any other party for any purpose.

**2.4**  Clarksons Platou and Pierot shall use reasonable efforts to assist the Company with implementation of the MOA and the Company shall procure that the managers of the Vessel shall fully co-operate with Clarksons Platou and Pierot as regards the identification of, and interaction with, potential purchasers, the conclusion of the sale of the Vessel and the implementation of the MOA.

**2.5**  Clarksons Platou and Pierot will each independently provide the Company for its sole and internal use with a detailed monthly report setting out the progress of the sale process of the Vessel, including, without limitation, (A) names of potential buyers contacted, (B) date and outcome of physical inspections, (C) indicative prices offered and (D) the date of such offers.

**2.6**  Clarksons Platou and Pierot will each promptly provide the Company for their sole and internal use with any additional information requested by the Company and, upon request of the Company, will attend conference calls and meetings.

**2.7**  In the event that any request is made for provision of a sworn declaration or affidavit, testimony or witness statement or other evidence regarding the performance of the Services or the implementation of any MOA as referred to in paragraph iii of clause 2.2 above, the same shall be provided without any personal liability on the part of the persons within Clarksons Platou or Pierot providing the same to the extent permitted by applicable law and the Company shall be responsible for all reasonable, documented, travel and hotel expenses of the person or persons within Clarksons Platou and/or Pierot providing such sworn declaration or affidavit, testimony or witness statement or other evidence and shall procure such further indemnities and disclaimers as Clarksons Platou and Pierot  may reasonably require.

**2.8**  In relation to the sale of the Vessel the Company shall, subject to the approval by the Bankruptcy Court, pay ~~each of~~ Clarksons Platou ~~or or~~  andPierot a total commission of One and One Half per cent (1.50%) of the gross sale price in immediately available funds within three (3) banking days in New York following payment of the sale price under the MOA (the **"Fee"**), which Fee shall be paid in way of 1.0% to the Broker successful in negotiating the Sale of the Vessel with the remaining 0.50% being payable to the other Broker. The obligation to make payment of the Fee shall continue after the termination of this Agreement in respect of any sale finalised prior to the expiry of the Period or where the purchaser of the Vessel was introduced by Clarksons Platou or Pierot prior to the expiry of the Period and a sale to such purchaser closes within three (3) months of the expiration of the Period.

## 3.   MISCELLANEOUS

**3.1**   The Company undertakes that the terms of this Agreement and all information provided by Clarksons Platou and Pierot pursuant hereto shall be kept strictly private and confidential except as reasonably required to be disclosed to the legal and financial advisors of the Company on a strictly confidential basis or as may be required by any regulatory body.

**3.2**   The Company shall provide Clarksons Platou and Pierot with all the reasonable co-operation and assistance which might be required and/or advisable to achieve the purpose of this Agreement.

**3.3**   The Parties acknowledge and agree that the cooperation and assistance obligation of the Company set out above shall include, but not be limited to, (i) the delivery of all the technical documentation of the Vessel (including, without limitations, any class records (and any registers held by the relevant classification society (ii) the arrangement of and/or the making of the Vessel available for any physical inspection; and (iii) the delivery of any other document or the carrying out of any action that Clarksons Platou or Pierot might consider appropriate to enhance the sales process of the Vessel.

**3.4**   Unless otherwise agreed to in advance, in writing, by the disclosing Party or except as expressly permitted by this Agreement, the receiving Party will not, except as required by law or court order, use Confidential Information of the disclosing Party or disclose it to any third party including the other broker that is party to this Agreement for the term of this Agreement and for a period of one (1) year thereafter; provided, however, that nothing contained herein shall prevent the Company from disclosing confidential information (i) to the Company's creditors, including the Official Committee of Unsecured Creditors of International Shipholding Corporation, et al., and (ii) in filings with the Bankruptcy Court for the purpose of obtaining an order approving the sale of the Vessel.

**3.5**   The receiving Party may disclose Confidential Information of the disclosing Party only to those of its employees or contractors who need to know such information. In addition, prior to any disclosure of such Confidential Information to any such employee or contractor, such employee or contractor shall be made aware of the confidential nature of the Confidential Information and shall execute, or shall already be bound by, a non-disclosure agreement containing terms and conditions consistent with the terms and conditions of this Agreement.

**3.6**   In any event, the receiving Party shall be responsible for any breach of the terms and conditions of this Agreement by any of its employees or contractors.

**3.7**   The receiving Party shall use the same degree of care to avoid disclosure of the disclosing Party's Confidential Information as the receiving Party employs with respect to its own Confidential Information of like importance, but not less than a reasonable degree of care.

**3.8**   An amendment or waiver which relates to the rights or obligations of the Company under this Agreement may not be effected without the consent of the bankruptcy Court and any other amendment or waiver which does not relates to the rights or obligations

of the Company under this Agreement must be immediately notified to all the Parties.

3.9    This Agreement and any dispute arising out of or in connection herewith shall be governed by and construed in accordance with the law of England.  The Parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement (any of the foregoing, a "**Claim**") shall be commenced in the Bankruptcy Court (or, if the Bankruptcy Court does not have jurisdiction or declines jurisdiction, in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York), which shall have exclusive jurisdiction over the adjudication of such matters.  The Parties agree and consent to personal jurisdiction, service of process and venue of such courts with respect to any Claim, and agree not to assert the defence of forum non-conveniens.

4.    **NOTICES**

4.1    Any communication to be made under or in connection with this Agreement shall be made in writing and, unless otherwise stated, may be made by electronic mail or other electronic means, fax or letter.

4.2    The address, email and fax number (and the department or officer, if any, for whose attention the communication is to be made) for any communication or document to be made or delivered under or in connection with this Agreement is:

(i) in case of the Company:

Attn: Brooke Y. Grehan

LCI Shipholding, Inc.

29000 Hwy 98,

Building C, Suite 201

Daphne, Alabama 36526;

Email: grehanby@intship.com

(ii) in case of Clarksons Platou:

H. Clarkson & Co Ltd;

Commodity Quay, St Katharine Docks

London E1W1BF

Email: containers@clarksons.com

(iii) in case of the Pierot:

Jacq. Pierot Jr. & Sons, Inc.

29 Broadway

Suite 1825

New York, NY  10006

U.S.A.

Email: snp@pierotshipping.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement in triplicate on the date first above written.

**LCI SHIPHOLDINGS INC.**    **H. CLARKSON & CO LTD**

By:            By:

Name:          Name:

Title:           Title:

**JACQ. PIEROT JR. & SONS, INC.**

By:

Name:

Title:

**<u>Exhibit B</u>**

**Estrada Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | )    Chapter 11 |
| INTERNATIONAL SHIPHOLDING | ) |
| CORPORATION, *et al.*,[1] | )    Case No. 16-12220 (SMB) |
| | ) |
| Debtors. | )    Jointly Administered |

## DECLARATION OF MANUEL G. ESTRADA IN SUPPORT
## OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF
## (A) H CLARKSON & COMPANY LIMITED AND (B) JACQ. PIEROT JR. & SONS INC.
## AS BROKERS FOR THE DEBTORS AND DEBTORS IN POSSESSION,
## (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS PURSUANT TO
## LOCAL RULE 2016-1, AND (III) GRANTING RELATED RELIEF

I, Manuel G. Estrada, being duly sworn, deposes and says:

1.      I am the Vice President and Chief Financial Officer of International Shipholding

Corporation ("ISH"), which maintains offices at 610 Poydras Street, Suite 1850, New Orleans,

Louisiana 70130.  ISH is the debtors and debtors in possession in the above-captioned cases

(collectively, the "Debtors" and, together with their non-debtor affiliates, the "Company").  I

submit this declaration in support of the Debtors' Application for Entry of an Order (I)

Authorizing the Employment and Retention of (A) H Clarkson & Company Limited and (B)

Jacq. Pierot Jr. & Sons Inc. as Brokers for the debtors and Debtors in Possession, (II) Waiving

Certain Time-Keeping Requirements Pursuant to Local Rule 2016-1, and (III) Granting Related

Relief (the "Application").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570).  The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

2.      The Debtors are pursuing a two-pronged approach in order to maximize the value of the Debtors' estates: (1) execute the sale process for the majority of the assets contained in one of their four business segments, the "Specialty Business Segment," and (2) obtain confirmation of the Plan sponsored by SEACOR Capital Corp. to reorganize the Debtors' remaining three business segments. On December 30, 2016, the Court approved the Specialty Business Sale to J Line Corporation [ECF No. 487].

3.      With respect to the remainder of the Debtors' business segments, the Debtors filed the Plan and Disclosure Statement on November 14, 2016 (the Plan was amended on December 28, 2016). Under their proposed Plan, with respect to those vessels that will not be retained by the reorganized Debtors, the Debtors anticipate either (a) offering the vessels to the applicable lenders, or (b) selling the vessels and delivering the proceeds to the applicable lenders. To facilitate this process, the Debtors seek to engage the Proposed Brokers to market the Vessel.

4.      The Vessel secures the Debtors' obligations under their post-petition financing (the "DIP Facility") and under that certain Credit Agreement, dated as of August 25, 2014 (the "Citizens Facility"), with LCI Shipholdings, Inc., as borrower, International Shipholding Corporation, as guarantor, and Citizens Asset Finance, Inc. ("Citizens") as lender. To obtain the highest or otherwise best offer for the Vessel, the Debtors seek to retain the Proposed Brokers as described in this Application. The Debtors have consulted with Citizens regarding the selection of the Proposed Brokers and their proposed compensation and Citizens has consented to same.

5.      Clarksons Platou is a United Kingdom based subsidiary of Clarkson PLC, which is the world's largest provider of integrated shipping services. Subsidiaries of Clarkson PLC

2

provide an array of broking, financial, support, and research services across the globe.   The Debtors believe that Clarksons Platou provides unparalleled access resulting from of the geographic breadth, variety of the firm's operations, and visibility in the marketplace.

6.    Pierot is a family-owned international ship sale and purchase brokerage firm that was established in 1894 in Rotterdam, The Netherlands and has been based in New York City since the late 1940's. It specializes in transactions involving all kinds of passenger and commercial vessels.   Professionals at the firm are also leading consultants to the shipping industry overall and well known appraisers of vessels.

7.    ISH has been a client of Pierot for over 50 years.   Most recently, the firm brokered the sale of the Debtors' PCTC "Glovis Countess" for approximately $50 million in 2015 and the self-unloading bulk carrier "Energy Enterprise" in July of 2016.   The Debtors believe that Pierot's history with the Debtors and knowledge of the Debtors' business and assets put the firm in a unique position to negotiate a sale of the Vessel.

8.    The Debtors believe that the joint engagement of Clarksons Platou and Pierot will likely lead to a higher and better offer for the Vessel than the retention of either of the brokers individually.   Through joint engagement, the Debtors will be able to leverage the connections of both Proposed Brokers with the various potential buyers in their respective networks.   Further, the Debtors believe that the fee structure of the joint representation would encourage competition between the Proposed Brokers, thus maximizing the chance for the highest and best offer for the Vessel.

9.    The Debtors believe that the Fee as set forth in the Brokerage Agreement is fair, reasonable, and advantageous to the Debtors' estates.   The Fee appropriately (i) reflects the nature of the services to be provided to the Debtors, (ii) reflects the fee structure provisions

3

typically utilized by the Proposed Brokers and other leading firms in the industry, which do not bill their clients on an hourly basis and are generally compensated on a transactional basis, (iii) aligns the Proposed Brokers' interests with those of the Debtors, their estates, and the creditors in these chapter 11 cases in maximizing the proceeds from the sale of the Vessel; and (iv) encourages each of the Proposed Brokers to quickly find a purchaser for the Vessel.

10.    Given the structure of the proposed Fee, the Debtors believes that it would be unnecessary to require the Proposed Brokers to submit interim or final fee applications pursuant to Bankruptcy Code sections 330 and 331 or time records Bankruptcy Rule 2016(a), Local Rule 2016-1, the United States Trustee Fee Guidelines, and any otherwise applicable orders or procedures of the Court. Thus, the Debtors respectfully request that the Proposed Brokers be permitted, pursuant to Bankruptcy Code section 328(a), to receive compensation for their services in the manner set forth in the Brokerage Agreement without filing interim or final fee applications.  Instead, the Debtors will seek authorization to pay the Fee to the Proposed Brokers through the motion for authority to sell the Vessel.

11.    The Debtors intend that the Proposed Brokers services will complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases, including the Debtors' investment banker who is not a vessel broker and will not seek compensation for the sale of the Vessel.  Although the Debtors have marketed some of their vessels with the help of Blackhill Partners LLC, the Debtors believe that using the Proposed Brokers' market knowledge, experience, and connections will lead to the highest or otherwise best offer for the Vessel.  This is reflected in the Brokerage Agreement, which provides that the Debtors will appoint no other broker or agent to attempt to sell the Vessel

4

while the Brokerage Agreement is in effect.  The Debtors also believe that the Proposed Brokers will work cooperatively with the Debtors' other professionals.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

New Orleans, Louisiana                      /s/*Manuel G. Estrada*_____
Date: January 10, 2017                     Manuel G. Estrada,
                                           Vice President and Chief Financial Officer
                                           International Shipholding Corporation