AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
David F. Staber (admitted *pro hac vice*)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE DEBTORS TO CONSUMMATE THE SALE OF THE LOUISIANA ENTERPRISE**

     **PLEASE TAKE NOTICE** that, on March 21, 2017, the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), filed the *Debtors' Motion for Entry of an*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

*Order Authorizing the Debtors to Consummate the Sale of the Louisiana Enterprise* (the "Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion shall be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court of the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, on April 11, 2017, at 10:00 a.m. (prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion must be made in writing; shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court (the "Local Rules"); shall be filed with the Bankruptcy Court with a hard copy delivered to Chambers, and served so as to be actually received by (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: David Botter, Esq., Email: dbotter@akingump.com, and 1700 Pacific Avenue, Suite 4100, Dallas, Texas 75201, Sarah Link Schultz, Esq., Email: sschultz@akingump.com, counsel for the Debtors; (ii) Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017, Attn: Robert J. Feinstein, Esq., Email: rfeinstein@pszjlaw.com, and Bradford J. Sandler, Esq., Email: bsandler@pszjlaw.com, counsel to the statutory committee of unsecured creditors; (iii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick St., Room 1006, New York, New York 10014, Attn: Serene Nakano, Esq., Email: serene.nakano@usdoj.gov; (iv) counsel to the agents and lenders under the Debtors' pre-petition credit facilities; (v) counsel to the agent under the Debtors' post-petition debtor-in-possession financing; (vi) the Internal Revenue Service; (vii) the

---

[2] Capitalized termed used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

United States Attorney for the Southern District of New York; (viii) the Securities and Exchange Commission; (ix) all parties that have filed a request to receive service of court filings pursuant to Bankruptcy Rule 2002; and (x) all other parties on the master service list prepared and maintained pursuant to the *Order Establishing Certain Notice, Case Management, and Administrative Procedures* [Docket No. 178], no later than **April 4, 2017 at 4:00 p.m. (prevailing Eastern Time)**.

Dated:  New York, New York              **AKIN GUMP STRAUSS HAUER & FELD LLP**
       March  21, 2017                By: _/s/ David H. Botter_
                                      David H. Botter
                                      One Bryant Park
                                      New York, NY 10036
                                      Telephone: (212) 872-1000
                                      Facsimile: (212) 872-1002

                                      Sarah Link Schultz (admitted *pro hac vice*)
                                      David F. Staber (admitted *pro hac vice*)
                                      1700 Pacific Avenue, Suite 4100
                                      Dallas, Texas 75201
                                      Telephone: (214) 969-2800
                                      Facsimile: (214) 969-4343

                                      *Counsel to Debtors and Debtors in Possession*

**Hearing Date: April 11, 2017 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: April 4, 2017 at 4:00 p.m. (prevailing Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
David F. Staber (admitted *pro hac vice*)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO CONSUMMATE THE SALE OF THE LOUISIANA ENTERPRISE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion for entry of an order, substantially in the form annexed hereto as Exhibit A (the

"Proposed Order"), authorizing the Debtors to consummate the sale of its vessel known as the

"Louisiana Enterprise," together with its associated tug, free of clear of all liens, claims, and

encumbrances. In support of the motion, the Debtors submit the *Declaration of Manuel Estrada*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

*in Support of the Debtors' Motion for Entry of an Order Authorizing the Debtors to Consummate the Sale of the Louisiana Enterprise* (the "Estrada Declaration") attached hereto as Exhibit C.  In further support of the motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      By this motion, the Debtors seek the authority to sell their vessel and its associated tug, the Louisiana Enterprise (USCG Official No. 667454) and the Coastal 101 (USCG Official No. 544994) (collectively, the "Louisiana Enterprise").  As the Court is aware, the Debtors have made significant progress toward bringing these chapter 11 cases to a successful resolution, including the implementation of a competitive sale process for one segment of their business (the "Specialty Business Sale") and the confirmation of a chapter 11 plan reorganization (the "Plan") for the remaining business segments.  The Debtors' confirmed Plan provides for the sale of assets, including the Louisiana Enterprise, which is pledged to Regions Bank ("Regions Bank").  As the result of ongoing marketing efforts related to this anticipated disposition of the Louisiana Enterprise, the Debtors have obtained an offer from Southern Recycling, L.L.C. ("Buyer") to purchase the Louisiana Enterprise for $740,000.[2]  The Debtors believe that the immediate sale of the Louisiana Enterprise pursuant to this offer is in the best interests of their estates and is entirely consistent with the terms of their confirmed Plan. The Debtors have conferred with Regions Bank, the secured lender with a pre-petition secured interest in the Louisiana Enterprise, and SEACOR Capital Corp. ("SEACOR"), the agent under the debtors post-petition facility (the "DIP Agent"), and have offered each party the opportunity to credit bid for the vessel.  Both parties have declined to credit bid for the Louisiana Enterprise, and each of Regions Bank and the DIP Agent have advised that they have no objection to the

---

[2] This purchase price is subject to upward or downward adjustment at the time of closing to account for any changes in commodity market prices, however the parties have agreed that the adjusted price shall be no lower than $650,000.

proposed sale.  The Debtors intend to place the proceeds of the sale in a segregated account and distribute the funds in accordance with the terms of the Plan following the Plan effective date (the "Effective Date").[3]  Accordingly, and for all the reasons set forth more fully herein, the Debtors seek the entry of an order authorizing the Debtors to sell the Louisiana Enterprise to the Buyer for $740,000 (subject to adjustment as described herein).

## JURISDICTION

2.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.       Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 6004-1 of the Local Rules (the "Local Bankruptcy Rules") for the United States Bankruptcy Court for the Southern District of New York, and the Guidelines for the Conduct of Assets Sales promulgated by the Amended Guidelines for the Conduct of Asset Sales, General Order M-383 (the "Sale Guidelines").

## BACKGROUND

A.       **General Background**

5.       On July 31, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.       The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to Bankruptcy Code

---

[3] Under the terms of the Plan, the Louisiana Enterprise and certain other assets, to the extent not disposed of or collected prior to the Effective Date, will serve as collateral for a non-recourse note for Regions Bank in an amount of $4.5 million less any amounts distributed to Regions Bank prior to the Effective Date.  Accordingly, the sale of the Louisiana Enterprise prior to the Effective Date will allow the proceeds to be distributed to Regions Bank on the Effective Date and will also reduce the face amount of the note for Regions Bank.

sections 1107 and 1108.  These chapter 11 cases have been consolidated for procedural purposes only.  No trustee or examiner has been appointed in the chapter 11 cases.  On September 1, 2016, the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors (the "Committee") [ECF No. 125].  On September 22, 2016, the U.S. Trustee amended the Committee's appointment [ECF No. 185].

7.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Erik L. Johnsen, President and Chief Executive Officer, Pursuant to Local Bankruptcy Rule 1007-2 and in Support of First Day Filings* [ECF No. 7] (the "First Day Declaration"), and are incorporated herein by reference.

8.    On March 2, 2017, the Court entered an order confirming the Debtors' *First Amended Modified Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and Its Affiliated Debtors* [ECF No. 671].  As described below, the Plan contemplates the sale of both the Louisiana Enterprise for the benefit of Regions Bank.

**B.    Specific Background**

*(i)    Debtors Contemplate Selling Certain Vessels to Effectuate Their Restructuring*

9.    As the Court is aware, the Debtors are nearing completion of their two-pronged approach in these chapter 11 cases in order to maximize the value of the Debtors' estates: (1) execute the sale process for the majority of the assets contained in one of their four business segments, the "Specialty Business Segment,"[4] and (2) obtain confirmation of the Plan with a plan sponsor to reorganize the Debtors' remaining three business segments.  The Court approved the

---

[4] The "Specialty Business Segment" assets sold to J Line Corporation include the various "Acquired Assets" as defined in the Asset Purchase Agreement between the Debtors and J Line Corporation.

Specialty Business Sale to J Line Corporation on the record at the hearing on December 20, 2016, and entered an order approving the sale on December 30, 2016 [ECF No. 487].

10.    With respect to the remainder of the Debtors' business segments, the Debtors entered into a restructuring support agreement with the sponsor of the Plan as approved by the Court on November 21, 2016 [ECF No. 376].  The Plan involves, among other things, (i) the issuance of new equity in the reorganized Debtors to SEACOR in exchange for a $10.5 million cash infusion from SEACOR, which amount may, under certain circumstances be increased to $13.5 million, and the conversion of 100% of the Debtors' $18.1 million outstanding debtor-in-possession financing claims,[5] (ii) $25 million in a new senior debt exit facility, a substantial majority of which will be used to satisfy creditor claims under the Plan, (iii) the purchase and transfer by the Company of two leased pure car/truck carrier vessels, together with the transfer of additional pure car/truck carrier vessels currently owned by the Debtors, to NYK Group Americas Inc. (or its nominee), (iv) the sale of certain vessels not being transferred to SEACOR, including the Louisiana Enterprise, and (iv) assumption of certain of the Debtors' key pre-petition contracts.

11.    Specifically, with respect to Regions Bank, the Plan provides in section 3.3.3 that the Louisiana Enterprise, along with an additional vessel and an associated tug, will either be sold by the Debtors or will serve as collateral for a non-recourse note (the "Regions Note") issued to Regions Bank on the Effective Date.  In addition, Regions Bank's consent is required prior to any disposition of the Louisiana Enterprise, unless the proposed sale(s) are reasonably expected to generate proceeds sufficient to satisfy the Regions Note in full.  Finally, SEACOR can elect to have the Louisiana Enterprise transferred to a liquidating trust for the benefit of the

---

[5] The Plan sponsor funded a portion of the debtor-in-possessing financing and, pursuant to the restructuring support agreement, has committed to purchasing the remainder of this post-petition financing provided by another lender in connection with the implementation of the Plan.

Regions Facility Claims (as defined in the Plan). Based on discussions with Regions Bank, the Debtors have continued to market the Louisiana Enterprise for sale and have obtained the agreement of the Buyer to purchase the vessel as described herein.

(ii)    *The Louisiana Enterprise*

12.    The Louisiana Enterprise (USCG Official No. 667454), together with the Coastal 101 (USCG Official No. 544994), is an Articulated Tug Barge Unit owned by Debtor U.S. United Ocean Services, LLC. The Louisiana Enterprise is a U.S.-flagged Jones Act-eligible vessel that is registered in Tampa, Florida with a 33,000-ton capacity, is presently laid up, and has been inactive for the past year. The Louisiana Enterprise (USCG Official No. 667454) was constructed in 1984 and the Coastal 101 tug (USCG Official No. 544994) in 1973.

13.    The Louisiana Enterprise is part of the collateral under a senior secured credit facility with a syndicate of lenders led by Regions Bank pursuant to that certain Credit Agreement, dated as of September 24, 2013, with Regions Bank, as administrative agent and collateral agent, and Regions Bank, Capital One, N.A., Branch Banking and Trust Company, and Whitney Bank, as lenders, (as comprehensively amended on November 13, 2015, the "Regions Facility"). The vessel secures Regions Bank's claim of $59.25 million in these chapter 11 cases.

14.    Further, under the *Final Order (1) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Certain Protections to Prepetition Lenders and (2) Granting Certain Related Relief* [ECF No. 180] (the "Final DIP Order"), DVB Bank SE and the DIP Agent (the "DIP Lenders"), hold a first priority, senior security interest against the Louisiana Enterprise and a junior security interests in the Debtors' encumbered property, including the Louisiana Enterprise.

6

(iii)    *Pre-Petition Marketing Efforts*

15.    As described in the First Day Declaration, since 2014, International Shipholding has encountered certain challenges related to complying with debt covenants and overall liquidity restraints.  In an attempt to strengthen International Shipholding's financial position, on October 21, 2015, the Board of Directors of ISH approved a plan (the "Strategic Plan") to restructure International Shipholding by focusing on its three (3) core segments—the Jones Act,[6] PCTC,[7] and Rail-Ferry[8] segments—with the objective to reduce debt to more manageable levels and to increase liquidity.  Since that date, International Shipholding has modified the Strategic Plan in response to new developments, including efforts to sell assets and ongoing discussions with its lenders, lessors, directors, and others.

16.    In tandem with these efforts, the Debtors also marketed the Louisiana Enterprise for sale prior to the Petition Date.

(iv)    *The Buyer's Offer to Purchase the Louisiana Enterprise*

17.    In approximately January 2017, the Debtors together with their financial advisors, Blackhill Partners, LLC ("Blackhill"), identified and reached out to seven (7) potential buyers for the Louisiana Enterprise.  The Debtors thereafter engaged with each of the potential buyers

---

[6] The Merchant Marine Act of 1920 (better known as the Jones Act) requires that all goods transported by water between U.S. ports must, subject to certain limited exceptions, be carried aboard U.S. flag vessels that are constructed in the U.S., owned predominantly by U.S. citizens, and crewed by U.S. citizens.  Under its Jones Act segment, International Shipholding currently deploys two (2) bulk carriers, one (1) integrated tug-barge unit, one (1) articulated tug-barge unit, and one (1) vessel that transports molten sulphur.  Vessels deployed under the Jones Act segment serve primarily in the Gulf of Mexico and operate as the primary marine transporter of coal, sulphur, and phosphate rock.  Petroleum coke and fertilizer are the other principal cargoes carried by the Jones Act vessels.

[7] The PCTC business segment currently includes five (5) vessels, four (4) of which are U.S. flag vessels and one (1) of which is an international flag vessel.  The PCTC vessels transport all types of vehicles from fully assembled passenger cars to construction machinery and equipment in large number on multiple internal decks.

[8] The Rail-Ferry segment currently uses two (2) double-deck roll-on/roll-off rail ferries, which carry rail cars between the U.S. Gulf Coast and Mexico in regularly scheduled waterborne service.  The service provides departures every four (4) days from Mexico and the U.S. Gulf Coast, respectively, for a three (3) day transit between ports.  Since 2007, International Shipholding has conducted these operations out of its terminal in Mobile, Alabama and a terminal in Coatzacoalcos, Mexico.  Trade for this segment is primarily driven by commodities such as forest products, sugar, metals, minerals, plastics and chemicals.  In August 2012, ISH acquired two (2) related businesses that own and operate a certified rail-car repair facility near the port of Mobile, Alabama.

and provided vessel specifications and general information to each. Five (5) of these parties then visited the units to survey the vessel. The Debtors thereafter received offers from four (4) of these potential buyers for both the Louisiana Enterprise.[9] After ongoing, arm's-length negotiations, and research into the market for the Louisiana Enterprise, the Debtors determined that the offer from the Buyer reflected in the Memorandum of Agreement attached hereto as Exhibit B (the "MOA") to be the best offer and otherwise appropriate under the circumstances.

18.    Although the Debtors did not conduct a Court-authorized sale process to market the Louisiana Enterprise, they conducted an analysis of recent comparable sales and they contacted brokers regarding the Buyer's offer. The Debtors also discussed the proposal with Regions Banks and SEACOR. As the result of this inquiry, the Debtors have determined that the Buyer's offer is higher than any offer that the Debtors could reasonable expect to obtain after additional marketing or establishing auction procedures.

19.    Due the difficulties facing the global shipping industry, the secondary vessel market is weak—and has only declined since the filing of the Debtors' cases—especially for vessels like the Louisiana Enterprise. In addition, the Louisiana Enterprise would require an extensive amount of capital expenditure in order to satisfy applicable class requirements to be seaworthy, and therefore has only received offers based on the vessel's scrap value.

20.    Given the pre-petition marketing of the Louisiana Enterprise, the state of the secondary vessel market, the current condition of the Louisiana Enterprise, the notice of the Debtors' intention to liquidate the Louisiana Enterprise contained in the Plan, and the fact that the proposed sale will not require the payment of a broker fee, the Debtors do not believe that they have a realistic chance of obtaining a better offer than the offer reflected in the MOA. The

---

[9] One (1) potential buyer subsequently withdrew its offer and submitted a bid for the Coastal 101 tug unit (USCG Official No. 544994) only.

Debtors therefore believe it is in the best interests of their estates and creditors to enter into an asset purchase agreement with the Buyer.

## PROPOSED MEMORANDUM OF AGREEMENT

**A.    Summary of Proposed MOA**

21.    A summary of the principal terms of the proposed MOA, a complete copy of which is attached hereto as Exhibit B, is as follows:[10]

|  | **Description of Provision** |
|---|---|
| **Assets** | Louisiana Enterprise (USCG Official No. 667454) and Coastal 101 (USCG Official No. 544994) |
| **Purchaser** | Southern Recycling, L.L.C. |
| **Debtor Seller** | U.S. United Ocean Services, LLC |
| **Purchase Price** | $740,000 (subject to adjustment at the time of closing to account for actual market price but which shall be adjusted downward to no less than $650,000)[11] |
| **Extraordinary Provisions of MOA / Sale Order** | 1. The Debtors do not intend on holding an auction.<br>2. Order seeks relief from Bankruptcy Rule 6004(h). |
| **Releases** | Sale "as is, where is" |
| **Other** | Buyer deposited a five percent (5%) earnest money deposit in a segregated account with Regions Bank simultaneously with execution of the MOA |

---

[10] The following summary is qualified in its entirety by reference to the provisions of the MOA. In the event of any inconsistencies between the provisions of the MOA and the terms herein, the terms of the MOA shall govern.

[11] Specifically, as provided for in Exhibit A to the MOA, the current purchase price is a per-ton value based on the March 2017 market price for scrap steel ($290 per ton) less an agreed upon differential ($158.89 per ton). The resulting per ton value ($131.11) of the Louisiana Enterprise is then multiplied by the gross tonnage of the vessel (5,644 tons) to arrive at the present purchase price, $740,000. This purchase price formula will be applied at the time of closing using the market price for scrap steel at such time to account for any subsequent price fluctuations in the commodities market, provided that in no case will the total lump sum price equal less than $650,000.

22.     The Debtors have discussed the sale of the Louisiana Enterprise pursuant to the

MOA with Regions Bank, the DIP Agent, and the Committee.  Regions Bank and the DIP Agent

have consented, and the Committee does not object, to the proposed sale.

**B.     Extraordinary Provisions in the MOA**

23.     The proposed Sale Order and the MOA contain the following items that may be

considered Extraordinary Provisions under the Sale Guidelines:

- <u>Private Sale/No Competitive Bidding</u>:   The sale of the Louisiana
  Enterprise pursuant to the MOA does not contemplate an auction or other
  further competitive bidding process.  As described in more detail herein,
  the Debtors believe that an expedited sale of the Louisiana Enterprise to
  the Buyer provides the best opportunity to maximize value, particularly
  given the marketing process completed through these chapter 11 cases.
  The Debtors believe that any delay resulting from an auction or further
  bidding process risks losing the committed Buyer, would require the
  Debtors to engage a vessel broker, thus increasing transaction fees, and
  would be unlikely to achieve a higher or better offer for the Louisiana
  Enterprise from any other potential purchaser.

- <u>Relief from Bankruptcy Rule 6004(h)</u>: The Debtors seek relief from the
  fourteen day stay imposed by Bankruptcy Rule 6004(h) to enable closing
  as quickly as possible if the sale is approved.

<u>**RELIEF REQUESTED**</u>

24.     By this motion, the Debtors request entry of the Proposed Order authorizing the

Debtors to consummate the sale of the Louisiana Enterprise pursuant to the MOA free of clear of

all liens, claims, and encumbrances.

<u>**SUPPORTING AUTHORITY**</u>

25.     The Debtors submit that application of Bankruptcy Code section 363(b) standard

to sales outside of the ordinary course of a debtor's business is met here.  This Court's power

under Bankruptcy Code section 363 is supplemented by Bankruptcy Code section 105(a), which

provides in relevant part: "The Court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As set forth below, the Debtors submit they have satisfied the requirements of Bankruptcy Code sections 105 and 363 as those sections have been construed by courts in the Second Circuit.

**A.     Approval of the Sale Transaction is Warranted Pursuant to Bankruptcy Code Section 363(b) because a Sound Business Reason Exists for the Sale Transaction.**

26.     Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is an "articulated business justification" for the action to be taken. *See Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (citation omitted). When a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted).

27.     Furthermore, Bankruptcy Code section 363(b) applies to private sales consummated in the absence of competitive bidding. *See, e.g., In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("Section 363(b) is not limited to sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth procedures for Section 363(b) transfers, expressly provides for private sales."). In this District, the Sale Guidelines require that, if a debtor moves to sell assets in the absence of an auction, or if the debtor has not otherwise sought higher or better offers, the movant must state and explain why such sale is likely to maximize the sale price. *See* Sale Guidelines at ¶ I.D.3.

28.     The Debtors have articulated a clear business justification for entering into the sale transaction for the Louisiana Enterprise.  The Plan, which has been confirmed but has not yet been declared effective, allows for the sale of the Louisiana Enterprise.  To that end, the Debtors have secured, after good-faith, arm's-length negotiations, an offer from the Buyer for the Louisiana Enterprise.  To date, as set forth in greater detail above, the Debtors and their professionals have engaged in sale and marketing efforts with respect to the Louisiana Enterprise since prior to the Petition Date.  In addition, the Debtors engaged in negotiations with the Buyer in the formulation of the MOA.  Thus, the Debtors entered into the MOA after a deliberate effort to market the Louisiana Enterprise and are confident that the sale price is fair and reasonable.

29.     The Debtors and the Buyer both have the relevant industry experience to competently and proficiently engage in a fair and arm's-length negotiation of the MOA.  In addition, based on relevant industry knowledge, it is the Debtors' belief that there is no higher value or better use for the Louisiana Enterprise than the sale to the Buyer pursuant to the MOA. Accordingly, it is a valid exercise of the Debtors' business judgment to seek the relief requested in the Proposed Order.

30.     Moreover, Bankruptcy Rule 6004(f)(1) explicitly permits a debtor to enter into transactions outside of the ordinary course of business through private sales.  As discussed above, the sale to the Buyer provides the Debtors with the best—and perhaps only—opportunity to maximize the sale price of the Louisiana Enterprise and prevent the value loss associated with losing the Buyer and being forced to sell the Louisiana Enterprise for a lower value. Furthermore, the Debtors believe that an auction is not warranted on account of the cost and time to conduct an auction process for the Louisiana Enterprise as compared to the value of the Louisiana Enterprise and the current state of the secondary vessel market.

31.     Courts in this District have previously approved private sales in accordance with the Sale Guidelines where the benefit of the private sale outweighs the delay and expense of conducting a public auction. *See In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2012) [ECF No. 857] (authorizing private sale under Rule 6004(f)(1) where public auction would require estate to incur substantial additional costs, but would result in no additional value to the estate); *In re Dewey & Leboeuf LLP*, 2012 Bankr. LEXIS 5116 at *17-18 (Bankr. S.D.N.Y. Nov. 1, 2012) (finding good business reason to sell assets pursuant to private sale where public sale would be more costly); *In re Chemtura Corp.*, Case No. 09-11233 (REG), 2010 Bankr. LEXIS 5349 (Bankr. S.D.N.Y. July 23, 2010) (approving private sale of debtor's business pursuant to asset purchase agreement where prior purchase right would stifle third-party interest in the business and purchaser was uniquely positioned to operate the business); *In re Sonix Med. Res. Inc.*, Case No. 09-77781 (DTE), 2010 Bankr. LEXIS 5471 (Bankr. E.D.N.Y. March 19, 2010) (authorizing private sale of debtors' assets and approving asset purchase agreement where there was substantial risk that value of assets would deteriorate if sale was not consummated and purchase agreement was best opportunity to realize value of assets on going-concern basis and avoid decline and devaluation of debtors' business); *see also In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("Section 363(b) is not limited to sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth procedures for Section 363(b) transfers, expressly provides for private sales."); *Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.)*, 233 B.R. 619 (D.P.R. 1999) (upholding bankruptcy court order approving private sale by debtor).

32.     Completing the sale of the Louisiana Enterprise to the Buyer pursuant to the MOA is an exercise of the Debtors' sound business judgment, is permitted by the Bankruptcy Code and Bankruptcy Rules, and is in the best interests of the Debtors' estates and creditors.

**B.      The Proposed Sale Transaction Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear**

33.     Bankruptcy Code section 363(f) permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable non-bankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f).  Because Bankruptcy Code section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 825 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).  The sale of the Louisiana Enterprise to the Buyer free and clear of liens or other interests pursuant to the MOA is appropriate under Bankruptcy Code section 363(f).

34.     The Debtors may sell the Louisiana Enterprise free and clear of the interests of the DIP Lenders pursuant to Bankruptcy Code section 363(f)(2), which provides that property of the estate may be sold free and clear of an entity's interest in the property if such entity consents. The Debtors propose to sell the Louisiana Enterprise in a commercially reasonable manner and expect that the value of the proceeds from such sale will fairly reflect the value of the property sold and Regions Bank and the DIP Agent have consented to the sale contemplated by the MOA and the Proposed Order.

14

35.    In addition, the Debtors may sell the Louisiana Enterprise free and clear of the interests of Regions Bank pursuant to Bankruptcy Code section 363(f)(5), which provides that property of the estate may be sold free and clear of an entity's interest in the property if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.    Judicial or non-judicial foreclosure and enforcement actions can satisfy Bankruptcy Code section 363(f)(5) where the junior lienholder may be required to accept less than full payment on the debt secured by the collateral. *In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010).  In addition to any applicable state law remedies, with respect to ship mortgages and maritime liens such as the one Regions Bank holds against the Louisiana Enterprise, 46 U.S.C. § 31326(a) provides that "when a vessel is sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage lien or a maritime lien, any claim in the vessel existing on the date of sale is terminated . . . and the vessel is sold free of all those claims." Regions Bank's interest is therefore one that may therefore be satisfied by monetary satisfaction.

36.    The Debtors are not aware of any entities other than Regions Bank and the DIP Lenders that hold a lien or other interest in the Louisiana Enterprise.  Nonetheless, to the extent that any other lienholder does not object to the proposed sale transaction, that entity should be deemed to have consented to the relief sought herein, thereby satisfying Bankruptcy Code section 363(f)(2).  Any entity holding liens, claims, or encumbrances on the Louisiana Enterprise will receive notice of this motion and the hearing on the motion.  Accordingly, all parties in interest will be given sufficient opportunity to object to the relief requested herein.  Failure to object should be deemed consent.  *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest

can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted).

37.     Furthermore, any party with an interest in the Louisiana Enterprise pursuant to this motion will have the opportunity to assert a corresponding security interest in the sale proceeds received by the Debtors therefrom (with all of the Debtors' claims, defenses and objections with respect to the amount, validity, or priority of each such interest and the underlying liabilities expressly preserved). *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.").

38.     Therefore, any lienholders are adequately protected and could be compelled to accept a monetary satisfaction of their interest. As such, the requirements of Bankruptcy Code section 363(f)(5) would be satisfied for a sale of the Louisiana Enterprise free and clear of all liens, claims, and encumbrances.

**C.     The Buyer Should be Entitled to the Protections of Bankruptcy Code Section 363(m).**

39.     Bankruptcy Code section 363(m) provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11

16

U.S.C. § 363(m).  "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' . . . most courts have adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'"  *In re Gucci*, 126 F.3d at 390 (citation omitted).  The Third Circuit has held that: "'[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings.'"  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citation omitted).  Typically, the misconduct that would destroy a purchaser's good faith status involves "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 56 (7th Cir. 1983) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m))).   In addition, section 363(m) protection applies in the context of private sales.  *See In re Wieboldt Stores, Inc.*, 92 B.R. at 312.  The Debtors submit that the sale contemplated in the MOA is an arm's-length transaction entitled to the protections of Bankruptcy Code section 363(m), negotiated by sophisticated and unrelated parties.

**D.      The Purchase Price Constitutes Reasonably Equivalent Value for the Assets Transferred.**

40.     A debtor receives reasonably equivalent consideration when "the debtor's net worth has been preserved" following a transfer of its assets.  *Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*, 507 B.R. 452, 472 (Bankr. S.D.N.Y. 2014); *see also Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646-47 (3d Cir. 1991) ("The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred.").  A finding of reasonably equivalent value does not require an exact equivalent exchange of consideration, but the benefits that a

17

debtor receives from the transfer should approximate its costs.  *Harrison*, 507 B.R. at 472 ("[I]f [the value received] approximates the value of what the debtor transferred, there will be reasonably equivalent value[.]").  Further, transactions between a debtor and a third-party on an arm's-length basis are presumptively for reasonably equivalent value.  *See Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 247 B.R. 51, 109 (Bankr. S.D.N.Y. 1999) ("[W]hen there is an arm's-length transaction by parties that have equal knowledge, a court should not substitute its own view of a fair market price.") (citing *Cooper v. Ashley Comm., Inc., (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 465, 474-75 (4th Cir. 1990)).

41.    Here, the sale of the Louisiana Enterprise constitutes an arm's-length transaction between the Debtors and an unaffiliated third party.  As set forth herein, the Debtors believe that the sale proceeds represent reasonably equivalent value for the Louisiana Enterprise.  The Debtors have kept Regions Bank, the DIP Agent, and the Committee apprised of the negotiations and analysis regarding the sale of the Louisiana Enterprise.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

42.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h).  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Time is of the essence in consummating the sale, and the Debtors and the Buyer intend to close on the sale transaction as soon as reasonably practicable.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

43.     No trustee or examiner has been appointed in the Debtors' chapter 11 cases.  The

Debtors have caused notice of this application to be provided by electronic mail, facsimile,

regular or overnight mail, and/or hand delivery to: (i) the U.S. Trustee; (ii) the agent under the

Debtors' post-petition debtor-in-possession financing and its counsel; (iii) the Committee and its

counsel; (iv) counsel to the agents and lenders under the Debtors' pre-petition credit facilities;

(v) the U.S. Attorney's Office for the Southern District of New York; (vi) the Internal Revenue

Service; (vii) the United States Securities and Exchange Commission; (viii) all parties that have

filed a request to receive service of pursuant to Bankruptcy Rule 2002; (ix) all other parties on

the master service list prepared and maintained pursuant to the *Order Establishing Certain

Notice, Case Management, and Administrative Procedures* [ECF No. 178]; and (x) any party

claiming an interest in the Louisiana Enterprise.  In light of the nature of the relief requested, the

Debtors respectfully submit that no further notice is necessary.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order, substantially in the form of the Proposed Order, granting the relief requested herein, and (b) grant such other and further relief as may be just and proper.

| | |
|---|---|
| Dated:  New York, New York<br>March 21, 2017 | **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>By: _/s/ David H. Botter_<br>David H. Botter<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>Sarah Link Schultz (admitted *pro hac vice*)<br>David F. Staber (admitted *pro hac vice*)<br>1700 Pacific Avenue, Suite 4100<br>Dallas, Texas 75201<br>Telephone: (214) 969-2800<br>Facsimile: (214) 969-4343<br><br>*Counsel to Debtors and Debtors in Possession* |

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | ) ) Case No. 16-12220 (SMB) ) |
| Debtors. | ) Jointly Administered ) |

### ORDER AUTHORIZING THE DEBTORS TO
<u>CONSUMMATE THE SALE OF THE LOUISIANA ENTERPRISE</u>

Upon the motion of the above-captioned debtors and debtors in possession (collectively,

the "<u>Debtors</u>")[2] for entry of this Order authorizing the Debtors to consummate the sale of the

Louisiana Enterprise (USCG Official No. 667454) and the Coastal 101 (USCG Official No.

544994) (collectively, the "<u>Louisiana Enterprise</u>") pursuant to the Memorandum of Agreement

(the "<u>MOA</u>") dated as of March 17, 2017, between U.S. United Ocean Services, LLC and

Southern Recycling, L.L.C. (the "<u>Buyer</u>") free of clear of all liens, claims, and encumbrances;

and the Court having jurisdiction to consider the motion and the relief requested therein in

accordance with 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the

United States Southern District of New York, dated as of January 31, 2012; and consideration of

the motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C.

§§ 157(b)(2); and venue being proper in this jurisdiction pursuant to 28 U.S.C. §§ 1408 and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the motion or in the Estrada Declaration, as applicable.

1409; and due and proper notice of the motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the motion; and upon the Estrada Declaration, the record of the hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT**:

A.      The transaction contemplated by the MOA constitutes the highest and best offer for the Louisiana Enterprise, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the MOA constitutes the highest and best offer constitutes a valid and sound exercise of the Debtors' business judgment.

B.      The MOA represents a fair and reasonable offer to purchase the Louisiana Enterprise under the circumstances of these chapter 11 cases.  No other person or entity or group of entities has offered to purchase the Louisiana Enterprise for greater value to the Debtors' estates than the Buyer.

C.      Approval of the motion and the MOA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

D.       The terms of the MOA and the sale transaction contemplated therein are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are the best available to the Debtors under the circumstances.

E.       U.S. United Ocean Services, LLC may sell the Louisiana Enterprise free and clear of all liens, claims and encumbrances because, in each case, the party asserting an interest could be compelled, in a legal or equitable proceeding, to accept money satisfaction for its interests.

F.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent that any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The motion is granted to the extent set forth herein.

2.       Subject to paragraph 7 of this Order, notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtors, the creation of an administrative priority claim on account of the pre-petition obligations sought to be paid, or the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

3.       The MOA, and all of the terms and conditions thereof, is hereby approved.

4.       Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtors are authorized, and empowered to take any and all actions necessary or appropriate to consummate the sale transaction of the Louisiana Enterprise with the Buyer upon the terms and subject to the

conditions set forth in the MOA and this Order, without further application to, or order of, the Court.

5.      On the Closing Date, the Buyer shall take title to and possession of the Louisiana Enterprise free and clear of all liens, claims, and encumbrances pursuant to Bankruptcy Code section 363(f).

6.      Subject to paragraph 8 of this Order, all liens, claims, and encumbrances on the Louisiana Enterprise shall attach solely to the proceeds of the Louisiana Enterprise sale transaction with the same validity, priority, force and effect that they now have as against the Louisiana Enterprise.  The proceeds of the Louisiana Enterprise transaction shall be held in a segregated account pending distribution pursuant to the terms of the Plan.

7.      The Debtors admit, acknowledge, stipulate and agree that upon closing of the MOA, Regions Bank will have a valid, perfected, binding, non-avoidable, and enforceable first priority security interest in, and liens on, the proceeds from the sale transaction contemplated under the MOA, subject only to the priming lien of the DIP Lenders.

8.      Except as expressly permitted or otherwise specifically provided in this Order, all persons or entities holding liens, claims, and encumbrances on all or any portion of the Louisiana Enterprise arising under or out of, in connection with, or in any way relating to the Debtors, the Louisiana Enterprise, the operation of the Debtors' business prior to the closing of the Louisiana Enterprise sale transaction, or the transfer of the Louisiana Enterprise to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, or their property, such persons' or entities' liens, claims, and encumbrances in and to the Louisiana Enterprise.

4

9.      The provisions of this Order authorizing the sale of the Louisiana Enterprise by the Debtors free and clear of liens, claims, and encumbrances shall be self-executing, and none of the Debtors, the Buyer, or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the MOA or as otherwise set forth in this Order or requested by Buyer.

10.     Without limiting the foregoing, upon consummation of the transactions set forth in the MOA, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any lien or encumbrance with respect to the Louisiana Enterprise (but not the proceeds thereof) that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded to act to cancel any of the liens, claims, and encumbrances on the Louisiana Enterprise of record.

11.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions contemplated by MOA; provided that nothing herein shall relieve any entity of the obligation to pay filing fees required to be paid under non-bankruptcy law.

12.     If any person or entity which has filed statements or other documents or agreements evidencing liens, claims, and encumbrances on, interests in, all or a portion of the Louisiana Enterprise shall not have delivered to the Debtors prior to the closing of the MOA, in proper form for filing and executed by appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all liens, claims, and encumbrances on the Louisiana Enterprise, which the person or entity has or may assert with respect to all or any portion of the Louisiana Enterprise, the Debtors are hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Louisiana Enterprise.

13.     The Buyer is purchasing the Louisiana Enterprise in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*:  (i) all agreements or arrangements entered into by the Buyer in connection with the sale transaction have been disclosed; (ii) the Buyer has not violated Bankruptcy Code section 363(n) by any action or inaction; and (iii) the negotiation and execution of the MOA was at arms' length and in good faith.

14.     In the absence of a stay pending appeal, the Buyer will be acting in good faith pursuant to Bankruptcy Code section 363(m) in closing the transaction contemplated by the MOA, at any time on or after entry of this Order in accordance with the MOA.

15.     Notice of the motion as provided herein was good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this order shall be immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this order.

18.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this order.

New York, New York
Dated: _____, 2017

_____
United States Bankruptcy Judge

## **EXHIBIT B**

**Memorandum of Agreement**

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (the "Agreement") is made this 12th day of March 2017 between U.S. United Ocean Services, LLC as Owner of the Barge and Tug described below (the "Seller") and Southern Recycling, L.L.C. (the "Buyer").

1.   Seller agrees to sell and Buyer agrees to buy, subject to the terms and conditions hereinafter set forth, the whole of the United States Barge "Louisiana Enterprise" having the official number 667454 (the "Barge") and the whole of the United States Tug "Coastal 101" having the official number 544994 (the "Tug").

2. The Barge and Tug shall be delivered safely afloat, at a freely accessible berth or anchorage of Seller's choosing in Tampa, Florida with all her machinery, spares, parts and equipment as onboard, with all useable fuel and/or lubricants and spares included, with minimal ballast onboard, with cargo holds clean and free of cargo, normal wear and tear excepted. Except for the warranties expressly stated herein, Buyer expressly recognizes that the Barge and Tug are being sold AS IS, WHERE IS to Buyer with absolutely no warranties as to the seaworthiness of the Barge and Tug or their reasonable fitness.

Closing and Delivery shall occur on dates to be mutually agreed within March 21, 2017 – April 30, 2017 with cancelling date April 30, 2017 in either party's option, if the other party has failed to perform.

As described in paragraph 17 below, the Barge and Tug shall be delivered pursuant to an order of the Bankruptcy Court (as defined below), providing that the Barge and the Tug are being sold free and clear of any and all mortgages, debts, liens, claims, and/or encumbrances of any type or nature whatsoever, which order must be reasonably acceptable to Buyer.

The Seller shall tender to Buyer a Notice of Readiness when the Barge and Tug are in all respects ready for delivery.

3.   The purchase price in total for the Barge and Tug shall be lump sum US $740,000.00, subject to adjustment as hereafter provided.

The Barge and Tug's combined total purchase price shall be paid to Seller as follows:

A five (5) percent deposit (USD $37,000.00)(herein after called the "Earnest Money") wired to Sellers bank as follows:

Regions Bank

ABA 062005690
For Credit to:
United Ocean Services, LLC
Account#: 0079094643

Simultaneously with the execution of this Agreement.

The balance of the lump sum purchase price for the Barge and Tug (i.e., US $703,000.00 or such otherwise adjusted amount) shall be transferred to Seller's nominated account above at time of closing. The final purchase price will be subject to adjustment at the time of closing to account for actual market price, in accordance with Exhibit "A" attached hereto and incorporated herein.

4. In consideration of and as a prerequisite to the payment of the purchase price by Buyer the following documents for the Barge and Tug shall be submitted by the Seller to the Buyer or Buyer's representative at the place of closing:

i) Signed commercial invoice giving a brief description of the Barge and Tug and certifying the purchase price.

ii) Separate legal Bills of Sale USCG-1340, duly executed and notarized, each transferring full title to the Barge and Tug to Buyer specifying free and clear of all liens, claims, encumbrances, mortgages and debts of any description whatsoever.

iii) Certificates of Ownership of Barge and Tug from the United States Coast Guard on form CG-1330 confirming that Seller is owner of the Barge and Tug and evidencing that the Barge and Tug is free from all liens, claims and encumbrances, except for the mortgage in favor of Regions Bank, as Collateral Agent, which mortgage is to be released contemporaneously with the sale of the Barge and Tug.

2

iv) If necessary an Original Deletion Certificate from USCG or a letter of undertaking from the Seller to obtain a Deletion Certificate from the USCG within 30 days of the date of sale of the Barge and Tug.

v)    Resolutions of the sole member of the Seller approving the sale of the Barge and Tug, as well as the execution, delivery and performance of this Agreement.

vi) Power of Attorney of the Seller appointing one or more representatives of Seller to act on behalf of the Seller in the performance of this Agreement.

vii)    Certified copy of the final order entered by the Bankruptcy Court approving the sale,    which order is unappealed and unappealable.

viii)    Certification of the Tampa Port Authority of no outstanding port charges, other than those that being administered through the bankruptcy.

Buyers shall also submit as a part of this closing Power of Attorney appointing one or more representatives of the Buyer to act on behalf of the Buyer in the performance of this Agreement.

5.  At the time and place of closing which is to be mutually agreed to by Seller and Buyer, Seller shall execute and furnish to Buyer two copies of a Protocol of Delivery and Acceptance specifying the date, time and place of physical delivery of the Barge and Tug, and Buyer shall execute and return to Seller one copy. Any additional documentation as may reasonably be required to complete the sale of the Barge and Tug is to be provided by the Buyer or Seller, which ever applies, upon request at that time.

6.  Except as specifically provided herein, the Barge and Tug shall be at the risk and expense (including port charges) of Seller until passage of title to the Barge and Tug as specified herein, and Seller represents and warrants that it will indemnify, protect, and hold Buyer harmless from any and all mortgages, liens claims, and encumbrances of any nature against the Barge and Tug arising out of or in connection with any matter or thing occurring prior to or at the time of the passage of title hereunder and agrees to defend all such claims at no expense to Buyer.  This representation and

3

warranty shall survive the closing and delivery of the Bills of Sale.

After passage of title to Buyer, Buyer shall be responsible for all risks and expenses (including insurance) of any description other than the foregoing warranties.

Buyer shall not be responsible for any sales taxes that apply to this transaction. Buyer shall be responsible for all other costs, taxes and fees of transferring title to the Barge and Tug. Buyer and Seller shall be solely responsible for their own counsel fees.

Within thirty (30) calendar days following the date that the Barge and Tug departs Tampa, Buyer shall remove all markings, including but not limited to Barge and Tug name, from the Barge and Tug which, in any way, identify or are associated with Seller.

7. Buyer shall have no interest in or lien upon the Barge and Tug by reason of this Agreement until title to the Barge and Tug has passed to Buyer, it being agreed that Seller shall not be liable to Buyer if the Barge and/or Tug should be lost, stranded, or become a constructive total loss prior to such passage of title. In such event, Seller, at its sole option, may elect to repair and/or restore the Barge and/or Tug, at the Seller's expense, to substantially the same physical condition as would have existed in the absence of such casualty or damage, in which event, if and only if Buyer mutually agrees, this Agreement shall continue in full force and effect. In that case, Buyer also shall have the option to agree to continue this Agreement, or to declare it as being terminated whereupon this Agreement shall terminate and the deposit shall immediately be released to the Buyer and there shall be no further liability hereunder on the part of either party to the other. If Seller does not elect within a reasonable time to repair and/or restore the Barge and Tug, Buyer may, by notice in writing, require Seller to declare within seven (7) days after service of such notice whether Seller so elects or not. If Seller declares that it does not elect to repair and/or restore the Barge and Tug or if it fails to comply with said notice by Buyer, this Agreement shall terminate upon such declaration or upon expiry of such seven (7) days (as the case may be), whereupon the deposit shall immediately be released and returned to the Buyer and there shall be no further liability hereunder on the part of either party to the other.

4

8. If Seller should be unable to transfer title and physically deliver the Barge and Tug or otherwise complete the sale of the Barge and Tug, or if Buyer should be unable to receive title and accept delivery of the Barge and Tug, due to outbreak of war, restraint of Governments, princes or people of any nation or the United Nations, or Acts of God, or any other causes beyond the control of Seller or Buyer, then either Seller or Buyer may terminate this Agreement by declaring in writing with seven (7) days' notice, in which case the deposit shall immediately be released and returned to Buyer and there shall be no further liability hereunder on the part of either party to the other.

9. Subject to the provisions of this Agreement, if Seller should wrongfully fail or refuse to execute and deliver the Barge and Tug in the manner allowed herein, and such failure is not caused by the fault or neglect of Buyer, or should Seller breach any other covenant required or represented in this Agreement it shall be Buyer's right to terminate this Agreement by notice in writing to Seller, whereupon the deposit shall be immediately released and returned to Buyer without prejudice to any other rights which Buyer may have.

10. If Buyer should fail to pay to Seller any monies due under this Agreement, or breach any other covenant required or represented in this Agreement, Seller shall have the right to terminate this Agreement by seven (7) days' notice in writing to Buyer, during which period Buyer shall have the right to cure, and upon Buyer's failure to cure, the deposit shall be released to the Seller. Notwithstanding negotiations and without notice, Seller shall have the right to resell the Barge and Tug by public or private sale without prejudice to any other rights which Seller may have.

11. This Agreement shall be construed according to the general maritime law of the United States and to the extent not covered thereby the law of the State of Louisiana.

12. The Bankruptcy Court shall have jurisdiction of all disputes arising under this Agreement.

13. The Buyer represents and warrants that it is a citizen of the United States for purposes of Section 2 of the Shipping Act, 1916, as amended.

5

14. The Buyer may, with the consent of Seller, which shall not be unreasonably refused, assign this Agreement in whole or in part.

15. All notices hereunder shall be in writing, delivered by recognized overnight courier service requiring receipt of delivery, with a duplicate copy sent by E mail, and shall be addressed to Seller and Buyer as follows:

Peter M. Johnston
U.S. United Ocean Services, LLC
29000 Highway 98
Suite 201
Daphne, Alabama 36526
facsimile:
telephone: (251) 243-9153
email: johnstpm@intship.com

And to the Buyer as follows:

Southern Recycling, L.L.C.
838 Highway 182
Houma, Louisiana 70361
Attention: Jeff Bordelon, VP Marine Purchasing
Telephone:  985-879-1700
Email: jeff.bordelon@emrgroup.com

With a copy to:

Michael Gross
General Counsel EMR USA
143 Harding Avenue, Bellmawr, NJ  08031
Telephone: 848 220 2638
Email:  michael.gross@emrgroup.com


16. Notwithstanding anything to the contrary contained in this Agreement or in any prior discussions or negotiations (including prior drafts hereof) involving the sale of the Barge and Tug, this Agreement shall have no force and effect until it has been signed by both parties and the Earnest Money has been received by the Seller or its counsel. In the event the Earnest Money is not received by the Seller or its counsel within three (3) banking days of both parties having signed this Agreement, this Agreement shall, unless otherwise agreed by the parties in writing, become void ab initio.

6

17. On July 31, 2016, the Seller and certain of its affiliates filed voluntary petitions for relief pursuant to title 11 of chapter 11 of the United States Code. These cases are pending before the United States Bankruptcy Court for the Southern District of New York (hereinafter called "the Bankruptcy Court"), Case No. 16-12220 (SMB). Seller is a debtor-in-possession and no trustee has been appointed in this matter. The sale of the Barge and Tug is expressly contingent upon the entry of an order from the Bankruptcy Court approving the sale of the Barge and Tug to the Buyer free and clear of any and all liens, claims and encumbrances of any type or nature whatsoever, which order shall be in form and substance reasonably satisfactory to the Seller and the Buyer. Seller shall provide Buyer with any drafts of the proposed order, motion for sale, and any other relevant papers impacting this Agreement with reasonable time for review and comment prior to submission to the Bankruptcy Court. If such an order is not obtained on or prior to April 26, 2017, or if the order as entered materially changes the terms of this Agreement, then either party may terminate this Agreement upon written notice to the other party, in which case the deposit will be immediately released and returned to Buyer.

This Agreement constitutes the entire agreement between the parties and supersedes and cancels all prior agreements and communications, whether written or oral, on the subject matter of this Agreement.

Seller and Buyer each warrant and represent that the person whose signature appears below is its representative and is duly authorized to execute this Agreement as a binding commitment of such party.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their names and by their respective officers, agents or representatives duly authorized on the day and year first above written.

Seller:    U.S. United Ocean Services, LLC

By:    Coastal Carriers, Inc., its sole member

Name:    _____

Title:    _EXECUTIVE VICE PRESIDENT_

PETER M. JOHNSTON

7

Buyer:     Southern Recycling, L.L.C.

Name:    _____

Title:    VP  MARINE  PURCHASING

8

## EXHIBIT A
### Pricing Agreement

The final adjusted price for the Barge and Tug is subject to the market in the month in which the title is transferred from Seller to Buyer.

The final adjusted price will be a reflection of the scrap steel market as shown in the American Metals Market "Consumer Buying Prices, NO.1 HEAVY MELT, Ark/Tenn Border" index. The index that is published on the second Friday of the month will determine the final adjusted price for both the Barge and Tug, as shown below:

| LA Enterprise | 4378 | gross tons |
|---|---|---|
| Coastal 101 | 1266 | gross tons |
| Total | 5644 | gross tons |
| Bid (March 17) | $740,000.00 | |
| $/GT | $131.11 | per gross ton |
| AMM Index (March 17) | $290.00 | per gross ton |
| Differential (-) | $158.89 | per gross ton |

The aforementioned "differential" is a fixed number which will be deducted from the monthly pricing index above to determine the final adjusted price for both the Barge and Tug, provided that in no case shall the total lump sum price for the Barge and Tug equal less than $650,000.

9

## EXHIBIT C

**Estrada Declaration**

Hearing Date: April 11, 2017 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: April 4, 2017 at 4:00 p.m. (prevailing Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
David F. Staber (admitted *pro hac vice*)

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1] | Case No. 16-12220 (SMB) |
| Debtors. | Jointly Administered |

**DECLARATION OF MANUEL G. ESTRADA IN SUPPORT OF THE DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
DEBTORS TO CONSUMMATE THE SALE OF THE LOUISIANA ENTERPRISE**

I, Manuel G. Estrada, declare as follows under penalty of perjury:

1.    I am the Vice President and Chief Financial Officer ("CFO") of International

Shipholding Corporation ("International Shipholding" and, together with its affiliated debtors

and debtors in possession, the "Debtors").   In my capacity as Vice President and CFO, I am

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation  (0640); N.W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570).  The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

familiar with the Debtors' day-to-day operations, business, financial affairs, and books and records. I am directly involved in supervising the Debtors' accounting staff, which monitors and maintains records regarding the financials of the Debtors. These financial records include invoices and other documentation of accounts payable of the Debtors as well as records of payment in satisfaction of the Debtors' accounts payable.

2.      I submit this declaration in support of the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Consummate the Sale of the Louisiana Enterprise* (the "Motion").

3.      Except as otherwise indicated, all facts set forth herein are based on my personal knowledge, my discussions with other members of the Debtors' staff and senior management and the Debtors' advisors, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this declaration. I am authorized to submit this Declaration on behalf of the Debtors.

**The Louisiana Enterprise**

4.      The Louisiana Enterprise (USCG Official No. 667454) and the Coastal 101 (USCG Official No. 544994) (collectively, the "Louisiana Enterprise") together are an Articulated Tug Barge Unit owned by Debtor U.S. United Ocean Services, LLC. The Louisiana Enterprise is a U.S.-flagged Jones Act-eligible vessel that is registered in Tampa, Florida with a 33,000-ton capacity, is presently laid up, and has been inactive for the past year. The Louisiana Enterprise (USCG Official No. 667454) was constructed in 1984 and the Coastal 101 tug (USCG Official No. 544994) in 1973.

2

5.      The Louisiana Enterprise is part of the collateral under a senior secured credit facility with a syndicate of lenders led by Regions Bank pursuant to that certain Credit Agreement, dated as of September 24, 2013, with Regions Bank, as administrative agent and collateral agent, and Regions Bank, Capital One, N.A., Branch Banking and Trust Company, and Whitney Bank, as lenders, (as comprehensively amended on November 13, 2015, the "Regions Facility").  The vessel secures Regions Bank's claim of $59.25 million in these chapter 11 cases.

6.      Further, under the *Final Order (1) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Certain Protections to Prepetition Lenders and (2) Granting Certain Related Relief* [ECF No. 180], DVB Bank SE and the DIP Agent hold a first priority, senior security interest against the Louisiana Enterprise and a junior security interests in the Debtors' encumbered property, including the Louisiana Enterprise.

**Pre-Petition Marketing Efforts**

7.      As described in the First Day Declaration, since 2014, International Shipholding has encountered certain challenges related to complying with debt covenants and overall liquidity restraints.  In an attempt to strengthen International Shipholding's financial position, on October 21, 2015, the Board of Directors of ISH approved a plan (the "Strategic Plan") to restructure International Shipholding by focusing on its three (3) core segments—the Jones Act,[2]

---

[2] The Merchant Marine Act of 1920 (better known as the Jones Act) requires that all goods transported by water between U.S. ports must, subject to certain limited exceptions, be carried aboard U.S. flag vessels that are constructed in the U.S., owned predominantly by U.S. citizens, and crewed by U.S. citizens.  Under its Jones Act segment, International Shipholding currently deploys two (2) bulk carriers, one (1) integrated tug-barge unit, one (1) articulated tug-barge unit, and one (1) vessel that transports molten sulphur.  Vessels deployed under the Jones Act segment serve primarily in the Gulf of Mexico and operate as the primary marine transporter of coal, sulphur, and phosphate rock.  Petroleum coke and fertilizer are the other principal cargoes carried by the Jones Act vessels.

3

PCTC,[3] and Rail-Ferry[4] segments—with the objective to reduce debt to more manageable levels and to increase liquidity. Since that date, International Shipholding has modified the Strategic Plan in response to new developments, including efforts to sell assets and ongoing discussions with its lenders, lessors, directors, and others.

8.      In tandem with these efforts, the Debtors also marketed the Louisiana Enterprise for sale prior to the Petition Date.

**The Buyer's Offer to Purchase the Louisiana Enterprise**

9.      In approximately January 2017, the Debtors together with their financial advisors, Blackhill Partners, LLC ("Blackhill"), identified and reached out to seven (7) potential buyers for the Louisiana Enterprise. The Debtors thereafter engaged with each of the potential buyers and provided vessel specifications and general information to each. Five (5) of these parties then visited the units to survey the vessel. The Debtors thereafter received offers from four (4) of these potential buyers for both the Louisiana Enterprise.[5] After ongoing, arm's-length negotiations, and research into the market for the Louisiana Enterprise, the Debtors determined that the offer from the Buyer reflected in the Memorandum of Agreement attached to the Motion

---

[3] The PCTC business segment currently includes five (5) vessels, four (4) of which are U.S. flag vessels and one (1) of which is an international flag vessel. The PCTC vessels transport all types of vehicles from fully assembled passenger cars to construction machinery and equipment in large number on multiple internal decks.

[4] The Rail-Ferry segment currently uses two (2) double-deck roll-on/roll-off rail ferries, which carry rail cars between the U.S. Gulf Coast and Mexico in regularly scheduled waterborne service. The service provides departures every four (4) days from Mexico and the U.S. Gulf Coast, respectively, for a three (3) day transit between ports. Since 2007, International Shipholding has conducted these operations out of its terminal in Mobile, Alabama and a terminal in Coatzacoalcos, Mexico. Trade for this segment is primarily driven by commodities such as forest products, sugar, metals, minerals, plastics and chemicals. In August 2012, ISH acquired two (2) related businesses that own and operate a certified rail-car repair facility near the port of Mobile, Alabama.

[5] One (1) potential buyer subsequently withdrew its offer and submitted a bid for the Coastal 101 tug unit (USCG Official No. 544994) only.

4

as <u>Exhibit B</u> (the "<u>MOA</u>") to be the best offer and otherwise appropriate under the circumstances.

10.      Although the Debtors did not conduct a Court-authorized sale process to market the Louisiana Enterprise, they conducted an analysis of recent comparable sales and they contacted brokers regarding the Buyer's offer.  The Debtors also discussed the proposal with Regions Banks and SEACOR.  As the result of this inquiry, the Debtors have determined that the Buyer's offer is higher than any offer that the Debtors could reasonable expect to obtain after additional marketing or establishing auction procedures.

11.      Due to the difficulties facing the global shipping industry, the secondary vessel market is weak—and has only declined since the filing of the Debtors' cases—especially for vessels like the Louisiana Enterprise.  In addition, the Louisiana Enterprise would require an extensive amount of capital expenditure in order to satisfy applicable class requirements to be seaworthy, and therefore has only received offers based on the vessel's scrap value.

12.      Given the pre-petition marketing of the Louisiana Enterprise, the state of the secondary vessel market, the current condition of the Louisiana Enterprise, the notice of the Debtors' intention to liquidate the Louisiana Enterprise contained in the Plan, and the fact that the proposed sale will not require the payment of a broker fee, I do not believe that the Debtors have a realistic chance of obtaining a better offer than the offer reflected in the MOA.  I therefore believe it is in the best interests of the Debtors' estates and creditors to enter into an asset purchase agreement with the Buyer.

*[The remainder of this page is intentionally left blank.]*

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 21st day of March 2017.

 

 

Manuel G. Estrada
Chief Financial Officer
International Shipholding Corporation