PHELPS DUNBAR, LLP
Brian D. Wallace, (Louisiana Bar #17191)
(*pro hac vice* application to be filed)
365 Canal Place, Suite 2000
New Orleans, Louisiana 70130-6534
T: 504-566-1311
Email: wallaceb@phelps.com

Richard Montague (Mississippi Bar #3411)
Admitted *pro hac vice*
4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi 39236-6114
Telephone: 601-352-2300
Facsimile: 601-360-9777
Email: richard.montague@phelps.com
**Counsel to Patriot Shipping, LLC and US Ocean, LLC**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| INTERNATIONAL SHIPHOLDING | ) | CASE NO. 16-12220 (SMB) |
| CORPORATION, et al.,[1] | ) | |
| | ) | JOINTLY ADMINISTERED |
| **Debtors** | ) | |

**MOTION FOR SUMMARY JUDGMENT OF PATRIOT SHIPPING, LLC AND US
OCEAN, LLC ON THEIR MOTION FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM FROM WATERMAN STEAMSHIP
CORPORATION [Doc. 843]**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Enterprise Ship Co. (9059); Sulphur Carriers, Inc. (8965); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N. W. Johnsen & Co., Inc. (8006); LMS Shipmanagement, Inc. (0660); U.S. United Ocean Services, LLC (1160); Mary Ann Hudson, LLC (8478); Sheila McDevitt, LLC (8380); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); LCI Shipholdings, Inc. (8094); Dry Bulk Australia LTD (5383); Dry Bulk Americas LTD (6494); and Marco Shipping Company PTE LTD (4570). The service address for each of the above Debtors is 601 Poydras Street, Pan American Building, Suite 1850, New Orleans, Louisiana 70130.

Patriot Shipping, LLC ("Patriot") and US Ocean, LLC (US Ocean") (collectively, "Intermarine") move for summary judgment granting their Motion of for Allowance and Payment of Administrative Expense Claim from Waterman Steamship Corporation ("Waterman"), [Doc. 843], and in support thereof respectfully state as follows:

1. Pursuant to Bareboat and Time Charter Agreements between Intermarine and Waterman covering the Ocean Globe and Ocean Giant, in effect and governing the relationship between Waterman and Intermarine prior to the Effective Date of the ISH Chapter 11 Plan (the "Effective Date"), the Debtor Waterman was obligated to pay charter hire to Intermarine, which included payments (the "MSP Stipend") received by Waterman pursuant to the participation in Maritime Security Program of the Ocean Globe and the Ocean Giant.

2. Waterman received a catch-up MSP Stipend for the Ocean Globe and Ocean Giant on June 23, 2017, which triggered an obligation of Waterman to pay Intermarine the MSP stipend in the amount of $1,399,469.55, under the terms of the Charters in effect. Waterman actually paid or credited the catch-up MSP Stipend due for May, 2017, in the amount of $157,252.83. The failure to pay the remaining portion of deferred or "catch-up" MSP Stipend in the amount of $1,242,216.72, (the "Administrative Claim Amount") is a default in the Charters which must be cured before the Charters are assumed and assigned. This amount needed to cure the default in the Charters so that they can be assumed and assigned is an actual and necessary cost of preserving the bankruptcy estate.

3. The Effective Date of the ISH Plan was July 3, 2017. On June 27, 2017, one of Waterman's attorneys emailed one of US Ocean's attorneys indicating the MSP payment would be sent by wire as part of the consummation of the Plan. Waterman's failure to pay the Administrative Claim Amount has led to this dispute.

## THE STANDARD FOR GRANTING SUMMARY JUDGMENT

4. Federal Rule of Civil Procedure 56 applies in adversary proceedings pending in bankruptcy court.[2] The moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact.[3] Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4] Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.[5] While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.[6] Further, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."[7] If the nonmoving party is unable to provide evidence in the record of a genuine issue of material fact, "the movant is entitled to judgment as a matter of law."[8]

### I. THERE IS NO GENUINE ISSUE OF FACT THAT THE ADMINISTRATIVE EXPENSE AMOUNT IS AN ADMINISTRATIVE EXPENSE AS A MATTER OF LAW

---

[2] FED. R. BANKR. P. 7056; *see also* Local Rule 7056-1, made applicable to contested matters pursuant to Fed. R. Bankr. P. 9014.

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see In re Ionosphere Clubs, Inc.*, 147 B.R. 855, 862 (Bankr. S.D.N.Y. 1992) (movant initially bore burden of proof on claim that adversary proceeding was barred by affirmative defense of release).

[4] *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (citing *Celotex*, 477 U.S. at 322–23).

[5] *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[6] *See Celotex*, 477 U.S. at 323.

[7] *Niagara Mohawk*, 315 F.3d at 175 (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)) (internal quotation marks omitted).

[8] FED. R. CIV. P. 56(c); *McHale v. Boulder Capital, LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 58 (Bankr. S.D.N.Y. 2010).

5.  Section 503(b) of the Bankruptcy Code provides that a court shall allow administrative expenses for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). This includes amounts for "commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A)(i).

6.  In order for a claim to be given the priority afforded to a claim for an administrative expense, the claimant bears the burden of proving that the debt (1) arises out of a transaction between the creditor and the debtor's estate and (2) the transaction must have conferred upon the debtor's estate a benefit in the operation of its post-petition business. *See In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007); *In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 192 (S.D.N.Y. 2011). For purposes of the first element, even if a contract between the debtor and creditor is entered into prepetition, if the creditor's right to payment arises postpetition, the claim may be entitled to administrative expense treatment. *In re Nat'l Steel Corp.*, 316 B.R. 287, 301 (Bankr. N.D. Ill. 2004).

7.  There is no dispute that between the Petition Date and July 3, 2017 (the "Administrative Expense Period"), the Debtor Waterman requested and Patriot Shipping and US Ocean provided to the Debtor Waterman services pursuant to the terms of the Petition Date Charters. The OCEAN GIANT and the OCEAN GLOBE continued to transport cargo around the world and operate as part of the MSP fleet during the pendency of the ISH Chapter 11 Case. Prior to the Effective Date, the Petition Date Charters, as amended by the Advance Agreement, were in effect and governed the relationship between the parties. The services provided under the Petition Date Charters conferred an ongoing advantage to the Debtor's estate during the Administrative Expense Period by providing vital shipping services that allowed the Debtor to continue operating and maintain participation in the MSP.

8. There is no dispute the failure to pay the "catch-up" MSP Stipend is a default in the Charters in effect prior to the Effective Date. There is no dispute amount needed to cure the default in the Charters so that they can be assumed and assigned is an actual and necessary cost of preserving the bankruptcy estate

9. There is no dispute the services provided by Patriot and US Ocean during the Administrative Expense Period thus conferred a benefit upon the Debtor's estate. *In re Pre-Press Graphics Co., Inc.*, 300 B.R. 902, 909 (Bankr. N.D. Ill. 2003) (finding the second prong met where the non-debtor "provided post-petition benefits to the Debtor by continuing to perform work" and services under the contract before and after the Debtor rejected the contract). Accordingly, the Administrative Expense Claim satisfies the requirements of § 503(b)(1)(A) of the Bankruptcy Code and should be afforded administrative expense status as a matter of law

**II.   LETTING A ZERO CURE AMOUNT STAND IN PAPERS FILED FOUR MONTHS BEFORE A CONCEALED DEFAULT DOES NOT AMOUNT TO A KNOWING WAIVER OF THE RIGHT TO SEEK RELIEF AGAINST THE DEBTOR FOR A DEFAULT THAT COULD NOT BE DISCOVERED UNTIL AFTER THE EFFECTIVE DATE**

10. The Debtor's claims in its objection to Intermarine's administrative expense claim that Intermarine waived its right to make a claim for breach when it did not object to the cure amount of Intermarine's Charters, listed as zero in papers filed in February, 2017, prior to the confirmation hearing, even though no default had occurred at that time. It is undisputed that at the time of the plan confirmation hearing, the Intermarine cure amount was in fact zero. At the time of the confirmation hearing, the Charters were not in default. It was not at all clear whether the catch-up MSP Stipend would be received by Waterman before or after the Effective Date.

11. The Debtor argues that since Intermarine did not make a claim for a default that didn't exist, Intermarine waived the right to make a claim for the default when it actually

occurred. Following the logic of the Debtor's waiver argument, the Debtor could stop making payments or performing on all of its contracts listing zero as a cure amount during the period of time between the confirmation hearing and the effective date of the plan, which in this case was over four months. This Court stated in has stated in different context:[9]

> Furthermore, section 365(b)(1) of the Bankruptcy Code provides that if there has been a default the trustee may not assume a lease unless the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default. *See* 11 U.S.C. § 365(b)(1) (1994). By its terms, section 365(b)(1) requires that the trustee cure present defaults, not defaults that are not yet in existence. As it would be atypical for a trustee to include future obligations in the cure amount, if a trustee wanted to include contingent, unmatured debts in a cure prior to assumption, it would be incumbent on the trustee to state with some degree of clarity that these debts were to be included.

12.     The Court in *Macy* defined future amounts as amounts due after the assumption. However this reasoning should apply here to deal with the practical problems that arise when there is a four month lag between the cure notice and the time for assumption. In light of the fact that the Debtor's counsel told us the payment would be made just prior to the Effective Date, Intermarine cannot be said to have knowingly waived its right to a remedy. Intermarine has no reason to believe counsel's statement that the payment would be wired was intended to conceal the default until after the effective date, Waterman's default was in fact concealed from Intermarine until after the Effective Date.

### III. THE AGREEMENT BY INTERMARINE TO WAIVE CLAIMS AGAINST THE DEBTOR IS DEPENDENT ON SEACOR'S BROKEN PROMISE THAT IT WOULD NOT TAKE ANY ACTION THAT WOULD CAUSE THE MSP STIPEND TO BE INCLUDED IN THE ESTATE OF THE DEBTORS, WHICH RENDERS THE WAIVER UNENFORCEABLE UNDER NEW YORK LAW.[10]

---

[9] *In re R.H. Macy & Co., Inc*., 236 B.R. 583 at 591 (1999)
[10] *Encompass Ins. Co. of Am. v. English*, No. 11 CIV. 2606 KMW, 2013 WL 796309, at *6–7 (S.D.N.Y. Mar. 5, 2013), discussed more fully below.

13.     The Debtor's objection also argues that Intermarine waived its claim based on language in the Memorandum of Agreement ("MOA") between Intermarine and Seacor, the Debtor's plan sponsor. That waiver was expressly conditioned upon assumption of the Charter Agreements, which assumption is conditioned as a matter of law, upon the curing of defaults. Waterman's failure to pay the Administrative Claim based on instructions from Seacor is a breach by the Debtor that renders the waiver language in the MOA unenforceable.

14.     The Debtor also disingenuously argues that language in the MOA authorizes the Debtor, prior to the Effective Date, to breach its obligation to Intermarine to pay the $1,242,216.72 owed as part of the catch-up MSP Stipend. The language relied upon by the Debtor reads:

> … to the extent any MSP accrued or future stipends *received by the Reorganized Debtors* with respect to any period prior to the effective date of the ISH Chapter 11 Plan are required to be included in the estate of the Debtors under any of the ISH Chapter 11 Cases, such accrued or future stipends, or portion thereof, shall not be taken into account with respect to the adjustments, reimbursements, true up mechanisms or any other obligations of the Reorganized Debtors under the Bareboat Charters or Time Charters as amended. (Emphasis Added).

15.     The MOA does not refer to MSP Stipends received by the Debtor, such as the $1,242,216.72, received by the Debtor on June 23, 2017.[11] It refers to MSP Stipends received by the Reorganized Debtor. There is no authority in the MOA that relieves the Debtor of its obligation to pay the stipend if it is received by the Debtor prior to the Effective Date.

16.     This misappropriation and misapplication of the language of the MOA as a pretext to authorize the Debtor (not the Reorganized Debtor) to use the catch-up MSP Stipend to pay ISH operating expenses is only reason the Debtor Waterman cited as its rationale for breaching its obligation to pay the catch-up MSP Stipend to Intermarine. In the deposition of the Waterman's corporate representative, Manny Estrada testified:

---

[11] 30(b)(6) Deposition of Corporate Representative of the Debtor, Page 102, lines 7-21.

```
8    Q.  All right.  So, the payment that was received

9  on June 23rd, none of it went to Intermarine; is that

10 correct?

11   A.  That is correct.

12   Q.  Why didn't that payment go to Intermarine?

13   A.  There was a memorandum of agreement that was

14 entered between SEACOR and Intermarine sometime in

15 February --

16   Q.  Uh-huh.

17   A.  -- that specified that those retro funds could

18 be used by the estate, or ISH, in order to support

19 day-to-day operations; and, so, under that agreement,

20 those funds were retained by the estate and placed in

21 its operating cash account to pay operating bills.

22   Q.  Okay.

23   A.  So, the MOA drove the action to not refund or

24 pay Intermarine.

25   Q.  Is that the only reason?

                         106

1    A.  It's the only reason I'm aware of.[12]
```

17.     The Reorganized Debtor makes a convenient edit of the language in the MOA cited in its objection. The language as cited by the Debtor was:[13]

---

[12] 30(b)(6) Deposition of the Reorganized Debtor Waterman, pages 105 and 106.
[13] Debtor's Objection to the Administrative Expense Claim [Doc. 881], page 5 of 11.

> (" . . . provided that to the extent any such stipends relating to the period prior to the Effective Date are required to be paid, disgorged or set over to the estate of the debtors in respect of the Bankruptcy Case, such stipends shall not be part of the, nor fall within the definition of, MSP Amount nor otherwise payable hereunder.").

18. Note there is no reference in this quote to the Reorganized Debtors, nor any reference to the obligation of Seacor and Reorganized Debtors to refrain from taking any action that would cause, directly or indirectly, any MSP Stipend to be included in the estate of the Debtors or the General Unsecured Creditors Trust in the ISH Chapter 11 Cases. The quoted language in context is:[14]

> Provided however, that to the extent any MSP accrued or future stipends received by the Reorganized Debtors with respect to any period prior to the effective date of the ISH Chapter 11 Plan are required to be included in the estate of the Debtors under any of the ISH Chapter 11 Cases, such accrued or future stipends, or portion thereof, shall not be taken into account with respect to the adjustments, reimbursements, true up mechanisms or any other obligations of the Reorganized Debtors under the Bareboat Charters or Time Charters as amended. ***Neither SEACOR nor the Reorganized debtors shall take any action that would cause, directly or indirectly, any MSP Stipend to be included in the estate of the Debtors or the General Unsecured Creditors Trust in the ISH Chapter 11 Cases.*** (Emphasis added).

19. By telling the Debtors to not pay Intermarine the MSP Stipend that the Debtor received on June 23, 2017, Seacor took action that would and did directly cause the MSP Stipend to be included in the Waterman Estate.[15] Taking into account all the circumstances of this case, the agreement by Intermarine to waive claims against the Debtor is dependent on Seacor's promise that it would not take any action that would cause any MSP Stipend to be included in the estate of the Debtors, which renders the waiver unenforceable under New York law.[16] The MOA designates the law of the State of New York for governance and construction.[17]

---

[14] MOA, Exhibit A, Amendments to Time Charters and Bareboat Charters, as Amended
[15] See 30(b)(6) Deposition of Corporate Representative of the Debtor, Page 105, line 8—Page 107, line 22.
[16] *Encompass Ins. Co. of Am. v. English*, No. 11 CIV. 2606 KMW, 2013 WL 796309, at *6–7 (S.D.N.Y. Mar. 5, 2013), discussed more fully below.
[17] Section 4.a. of the MOA

20. In considering whether an express waiver in a contract is enforceable in face of a non-waiving party's breach, the U.S. District Court for the Southern District of New York held:[18]

> To determine whether the waiver is enforceable in spite of English's purported breaches, the relevant question is "whether the parties' promises are independent of, or dependent on, each other; if the latter, one party's performance of a particular promise is a condition precedent to the other party's performance." *Indian Harbor Ins.*, 430 F.Supp.2d at 192. Whether covenants in a lease are dependent or independent "is a question to be determined 'by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication.' " *Greasy Spoon Inc. v. Jefferson Towers, Inc.*, 551 N.E.2d 585, 587 (N.Y.1990); see also *Pfizer, Inc. v. Stryker Corp.*, 348 F.Supp.2d 131, 147 (S.D.N.Y.2004) (Kaplan, J.) (same).

21. In *English,* the Court determined that the covenants in question were independent of the waiver (of subrogation in that case). The court stated:[19]

> Accordingly, waivers of subrogation are generally held to be dependent on lease provisions that directly affect the allocation of risk between contracting parties and their insurers. *See, e.g., Liberty Mutual Ins. Co. v. Perfect Knowledge, Inc.,* 299 A.D.2d 524, 526 (N.Y.App.Div.2002) (declining to enforce waiver where asserted breach involved failing to procure liability coverage). Lease provisions that do not directly implicate this allocation of risk, however, are considered independent of waivers of subrogation.

22. A review of the breached covenants in the MOA to determine whether it is dependent or independent of the waiver leads to only one conclusion. Seacor caused the MSP Stipend to be included in the estate when Dan Thorogood of Seacor and Manny Estrada of Waterman consulted about whether to pay the catch-up MSP Stipend to Intermarine or use catch-up MSP Stipend to fund operations. This directly resulted in a breach by the Debtor Waterman, leading directly to Intermarine's administrative expense claim in the amount of $1,242,216.72. This is a claim to which the waiver would apply, if enforced. Seacor's promise not to cause a claim has a direct bearing on the risk that a waivable claim would arise. Seacor cannot conspire

---

[18] Ibid.
[19] Ibid.

with the Debtor to breach that promise and then expect the waiver to be enforce to defeat the claim created by the breach.

### CONCLUSION AND REQUEST FOR RELIEF

23. Submitted herewith is the Statement of Patriot Shipping, LLC and US Ocean, LLC of Material Facts as to which there is no genuine issue. Based on those facts, Intermarine has an administrative expense claim as a matter of law in the amount of $1,242,216.72. The claim has not been waived by virtue of not objecting to a zero cure pleading filed four months before a default concealed, perhaps inadvertently, but concealed nonetheless, from Intermarine until after the Effective Date. Moreover, the claim has not be been waived by the unenforceable waiver in the MOA. As a result, Intermarine is entitled to a judgment finding that Intermarine shall be allowed a valid administrative expense claim in the amount of $1,242,216.72, and directing the Reorganized Debtor to pay the claim forthwith.

### RESERVATOIN OF RIGHTS

24. Intermarine renews the reservation of rights made in paragraph 29 of the Motion for Allowance of this claim, including the right to seek payment of the Administrative Expense Claim from Seacor to the extent the Administrative Expense Claim is not paid by the Debtor Waterman or the Reorganized Debtor Waterman. Intermarine further reserves all other rights it has against the Debtor Waterman, the Reorganized Debtor Waterman and Seacor.

Dated: May 18, 2018.

                Respectfully submitted,

                **PHELPS DUNBAR LLP**

                BY:  s/ Richard Montague
                      Richard Montague (Mississippi Bar #3411)

                (Admitted *pro hac vice*)
                4270 I-55 North
                Jackson, Mississippi 39211-6391
                Telephone: 601-352-2300
                Telecopier: 601-360-9777
                Email: richard.montague@phelps.com

                Brian D. Wallace, (Louisiana Bar #17191)
                (*pro hac vice* application to be filed)
                365 Canal Place, Suite 2000
                New Orleans, Louisiana 70130-6534
                T: 504-566-1311
                Email: wallaceb@phelps.com

                **COUNSEL TO PATRIOT SHIPPING, LLC AND US OCEAN, LLC.**