AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
David F. Staber (admitted *pro hac vice*)

*Counsel to Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 16-12220 (SMB)<br><br>Jointly Administered<br><br>**Re: Docket No. 953** |

**REORGANIZED DEBTORS' RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF PATRIOT SHIPPING, LLC AND US OCEAN, LLC ON THEIR MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM FROM WATERMAN STEAMSHIP CORPORATION [DOC. 843]**

The reorganized debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Reorganized Debtors") hereby file this response in opposition (the "Response") to the *Motion for Summary Judgment of Patriot Shipping, LLC and US Ocean, LLC on Their Motion for Allowance and Payment of Administrative Expense Claim From Waterman Steamship Corporation [Doc. 843]* (the "Summary Judgment Motion") [Docket No. 953] filed

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); and LCI Shipholdings, Inc. (8094). The service address for each of the above Reorganized Debtors is 2200 Eller Drive, P.O. Box 13038, Fort Lauderdale, FL 33316.

by Patriot Shipping, LLC ("Patriot") and US Ocean, LLC ("US Ocean") (collectively, "Intermarine"). In support of this Response, the Reorganized Debtors respectfully state as follows:

## INTRODUCTION

Intermarine seeks summary judgment on its alleged administrative expense claim—essentially, a claim for payment arising under a contract—without submitting any evidence in support of its claim, including, importantly, the underlying contract. Intermarine wrongly argues that there is no genuine issue of material fact and that it is entitled to payment as a matter of law, but cannot even establish the essential elements of the claim. While the Court should deny Intermarine's Summary Judgment Motion for failing to submit evidence and a proper, supported statement of "undisputed" material facts, these defects also reveal that Intermarine cannot support its motion on the merits. In short, Intermarine has no evidence to establish a claim for the amounts asserted and has not shown that any such claim merits administrative expense status as a matter of law.

Further, even if Intermarine could show that it was entitled to the payment it now seeks, Intermarine's motion must still be denied. Intermarine released all claims arising prior to the Plan's effective date (the "Effective Date") both contractually and by failing to timely assert a cure claim as required by the Federal Rules of Bankruptcy Procedure, the Disclosure Statement Order, and the Plan. Because there is a genuine issue of material fact as to whether Intermarine was ever due any administrative expense, and because Intermarine released and waived any and all claims arising prior to the Effective Date without exception as a matter of law, the Court should deny Intermarine's Summary Judgment Motion.

**BACKGROUND**

1. Pursuant to Local Bankruptcy Rule 7056-1(c), the Reorganized Debtors have separately filed a response and statement of additional material facts (the "Statement Response") opposing the *Statement of Material Facts as to Which There is No Genuine Issue Submitted by Patriot Shipping, LLC and US Ocean, LLC in Support of Their Motion for Summary Judgment on Their Motion for Allowance and Payment of Administrative Expense Claim From Waterman Steamship Corporation (Doc. 843)* (the "Statement of Facts") [Docket No. 952].[2] The material facts relevant to this Response are set forth in the Statement Response, as well as in the Reorganized Debtors' Motion for Summary Judgment [Docket No. 949][3] and Statement of Undisputed Facts [Docket No. 951][4], and are incorporated by reference as if fully set forth herein.

**ARGUMENT**

2. For the reasons explained in the Statement Response, as well as the Reorganized Debtors' Motion for Summary Judgment and Statement of Undisputed Facts, and based on the law discussed below, Intermarine is not entitled to summary judgment on its administrative expense request.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Reorganized Debtors' Statement Response. The Reorganized Debtors respectfully request that the Court take judicial notice of all documents referred to herein by their Docket Number.

[3] *See* Reorganized Debtors' Motion for Summary Judgment on Patriot Shipping, LLC and US Ocean, LLC's Request for Allowance and Payment of Administrative Expense Claim from Waterman Steamship Corporation [Docket No. 949] ("Reorganized Debtors' "Motion for Summary Judgment").

[4] *See* Reorganized Debtors' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment on Patriot Shipping, LLC and US Ocean, LLC's Request for Allowance and Payment of Administrative Expense Claim from Waterman Steamship Corporation [Docket No. 951] (Reorganized Debtors' "Statement of Undisputed Facts").

I. **The Summary Judgment Motion is Unsupported By Evidence, is Procedurally Improper, and Should be Denied.**

3. Intermarine acknowledges in its Summary Judgment Motion that the "moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact."[5] The Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules of the Southern District of New York require litigants moving for summary judgment to present their case with specific citations to the Court's record to demonstrate that there are, or are not, genuine issues of material fact.[6] In this Court, movants must submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."[7]

4. Pursuant to Local Bankruptcy Rule 7056-1(e), each statement of material fact submitted by a movant must "be followed by citation to evidence which would be admissible."[8] The parties must cite to the parts of the record that support or undercut the assertion that a fact is not disputed.[9] A "statement [of material facts] is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."[10] Where a party fails to comply with Local Rule 7056-1(e) by failing to cite to any evidence, the Court may disregard that party's statement of material facts.[11] The United States District Court for the Southern District of New

---

[5] Intermarine's Summary Judgment Motion at ¶ 4 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[6] *See* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Local R. Bankr. S.D.N.Y. 7056-1.

[7] Local R. Bankr. S.D.N.Y. 7056-1(b).

[8] Local R. Bankr. S.D.N.Y. 7056-1(e).

[9] *In re Sultan Realty, LLC*, No. 12-10119 SMB, 2012 WL 6681845, at *4 (Bankr. S.D.N.Y. Dec. 21, 2012).

[10] *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001).

[11] *See In re Waterscape Resort, LLC*, 483 B.R. 601, 610 (Bankr. S.D.N.Y. 2012) (disregarding party's statement where party provided only a "handful of citations to . . . evidence submitted with the motion"); *see also Shepard v. Frontier Comm'cns Servs., Inc.*, 92 F. Supp. 2d 279, 284 (S.D.N.Y. 2000) ("this Court will not consider any statements made by plaintiff in her Rule 56.1 statement that are not supported by a citation to the record"); *Shkreli v. JPMorgan Chase Bank, N.A.*, No. 13 Civ. 5647 (LGS), 2015 WL 1408840, at *1 n.1 (S.D.N.Y. Mar. 27, 2015) (declining to consider paragraphs from plaintiff's Local Rule 56.1 statement that were not supported by citation to evidence in the record).

York has regularly held that statements of material fact that do not cite to admissible evidence should be disregarded. In interpreting Local Rule 56.1, the basis for Local Bankruptcy Rule 7056-1, the Second Circuit has held that "where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion."[12] And without evidentiary support, the party's motion for summary judgment cannot succeed.[13]

5.      As explained in the Reorganized Debtors' Statement Response, Intermarine has not supported its "factual assertions" with evidence or record citations. Nor has Intermarine supported its Summary Judgment Motion with evidence. Instead, many of Intermarine's purported "facts" are legal conclusions that are improper in a statement of material facts and lack support in admissible evidence. For these reasons, Intermarine's Statement of Facts should be stricken and the Reorganized Debtors' Statement of Additional Material Facts annexed to their Statement Response and Statement of Undisputed Facts in support of their Motion for Summary Judgment, which properly cite to the record and are supported by evidence, should be deemed admitted.[14]

6.      In addition, Intermarine did not timely file its Summary Judgment Motion. While

---

[12] *Holtz*, 258 F.3d at 73–74 (2d Cir. 2001) (citing cases from the Southern and Eastern District Courts of New York); *see* Local R. Bankr. S.D.N.Y. 7056-1 cmt. ("Subdivisions (b) through (e) of this rule are . . . an adaptation of Civil Rule 56.1 of the Local District Rules."); *see also* Local R. S.D.N.Y. 56.1 committee note (explaining that the "brief, numbered paragraphs" of any statement of facts "must be supported by citations to specific evidence of the kind required by Fed. R. Civ. P. 56(c)"); *Banco Cent. de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 CIV. 9649 (JFK)(FM), 2005 WL 53271, at *8 (S.D.N.Y. Jan. 7, 2005), *judgment entered sub nom.* No. 01 CIV. 9649 (JFK), 2008 WL 2951681 (S.D.N.Y. July 28, 2008), *aff'd sub nom. DEF v. ABC*, 366 Fed. App'x 250 (2d Cir. 2010) (denying motion for summary judgment because statement of facts was "fatally flawed" where it contained "only three cited sentences in fifteen paragraphs").

[13] *See, e.g., Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

[14] *See, e.g., Sultan*, 2012 WL 6681845, at *4 (applying Local Bankruptcy Rule 7056-1 and deeming admitted the statement of material facts that properly included citations to admissible evidence).

5

the Reorganized Debtors agreed to the briefing schedule that Intermarine proposed and timely submitted their respective summary judgment motion on May 18 as agreed, Intermarine did not file its deficient Summary Judgment Motion until May 19.

7.    Intermarine's untimeliness, coupled with the numerous procedural deficiencies as well as a wholly unsupported Statement of Facts and Summary Judgment Motion, merits the denial of its Summary Judgment Motion.

## II. There is No Evidence to Establish Intermarine's Claim for Administrative Expense Priority.

8.    Further, the Summary Judgment Motion should be denied because Intermarine has not established that it holds an administrative claim for the amount it seeks (hereinafter the "Retro MSP Payments") as a matter of law.[15]  Bankruptcy Code subsection 503(b)(1)(A) provides administrative expense status for the "actual, necessary *costs and expenses* of preserving the estate."[16]  Thus, to qualify as an administrative expense, there must be an actual expense that arises from "a post-petition transaction between the claimant and the debtor-in-possession and the consideration supporting the right to payment must have been both supplied to and beneficial to the debtor-in-possession in the operation of its business post-petition."[17]  The burden of establishing administrative expense priority for a claim rests on the creditor asserting the claim.[18]  Therefore, the movant seeking summary judgment on an administrative expense request must first establish that the movant holds a valid claim.  In evaluating if the moving party

---

[15] *See Celotex*, 477 U.S. at 323.

[16] 11 U.S.C. § 503(b)(1)(A) (emphasis added).

[17] *In re Hostess Brand, Inc.*, 499 B.R. 406, 411 (S.D.N.Y. 2013); *see also In re Grubb & Ellis Co.*, 478 B.R. 622, 624 (Bankr. S.D.N.Y. 2012) (citing *Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986)) ("Courts in the Second Circuit use a two-part test to determine whether a specific claim qualifies as an administrative expense . . . : first, there must be a postpetition transaction, . . . and second, the estate must receive a benefit from the transaction.").

[18] *See, e.g., In re Oldco M Corp.*, 438 B.R. 775, 781-782 (Bankr. S.D.N.Y. 2010); *Matter of TransAmerica Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992).

has met this burden, the law requires this Court to "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."[19]

9. Intermarine has submitted no evidence to show that it possesses a right to payment of the Retro MSP Payments—an essential element of its administrative expense claim. As detailed in the Reorganized Debtors' Statement Response, Intermarine has failed to provide this Court with evidence necessary to even establish an administrative claim for the Retro MSP Payments, much less to obtain summary judgment on the claim. Intermarine has only made bald, conclusory assertions that it is owed an alleged amount, without citing to so much as an invoice for the claimed amount.[20]

10. For example, Intermarine wrongly, without support, states in its Summary Judgment Motion that "[t]here is no dispute the failure to pay the 'catch-up' MSP Stipend is a default in the Charters in effect prior to the Effective Date."[21] Intermarine has not supported this alleged "fact" in its Statement of Facts. Intermarine does not even define the term "Charters" nor cite to the specific document or provision that it purports is in default. Furthermore, Intermarine has not brought a claim for default under any agreement with the Reorganized Debtors in connection with its administrative claim, and there has been no judicial finding of such. It is both disingenuous and legally improper to now claim, without any legal or factual support, that there has been a default.

---

[19] *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

[20] *See* Intermarine's Summary Judgment Motion ¶¶ 5–9. Intermarine has not cited to a single piece of evidence or part of the record to support any of its assertions.

[21] *Id.* at ¶ 8.

7

11. Intermarine has not demonstrated that it is or ever was entitled to make the administrative expense claim it now asserts. Because Intermarine cannot establish as a matter of law that it succeeds on its claim, the Summary Judgment Motion must be denied.

### III. Intermarine's Express Contractual Release Bars Its Administrative Expense Claim as a Matter of Law.

12. Even if Intermarine could establish that it had a valid administrative expense claim, Intermarine's claim is barred, and the Summary Judgment Motion should be denied, because Intermarine explicitly agreed to release any and all claims against the Debtors and Reorganized Debtors that arose before the assumption of the Amended Charters on the Effective Date of the Plan.[22] Section 2(a)(iv) of the MOA states in no uncertain terms that Intermarine agreed to "*irrevocably* waive any and all claims . . . whether known or unknown" upon the assumption of the Amended Charters.[23] Intermarine does not dispute that it agreed to this release when it executed the MOA.[24]

#### A. There is No Evidence that SEACOR Breached the MOA—Nor is Any Alleged Breach by SEACOR a Matter Before the Court.

13. Despite this clear and unambiguous release language, Intermarine asserts the novel argument in its Summary Judgment Motion that the release is unenforceable due to an alleged breach by SEACOR. For the first time in this dispute, Intermarine claims that SEACOR allegedly breached an obligation in Exhibit A to the MOA, and that this supposed breach renders the release provision unenforceable. In making this unfounded assertion, Intermarine posits that its release of claims is somehow "dependent" on SEACOR's separate obligation that it would "not take any action that would cause any MSP Stipend to be included in the estate of the

---

[22] *See* MOA at 2(a)(iv), **Ex. D** to Reorganized Debtors' Statement of Undisputed Facts; Intermarine's Statement of Facts at ¶ 22.

[23] MOA at 2(a)(iv) (emphasis added); Intermarine's Statement of Facts at ¶ 22.

[24] MOA at 2(a)(iv); Intermarine's Statement of Facts at ¶ 22.

8

Debtors . . . ."[25]  Despite the complete absence of any evidence to support this connection between the two discrete provisions of the MOA, as well as an incorrect application of case law as discussed *infra*, Intermarine intractably contends that a purported breach by SEACOR therefore renders the release unenforceable.[26]

14.    First and foremost, Intermarine's argument requires, among other things, a finding that SEACOR has breached the MOA. Intermarine has not brought any claim against SEACOR for any purported breach nor has there been any finding of such breach. Furthermore, Intermarine has failed to support its "factual assertions" regarding SEACOR's actions with evidence and record citations to support a finding of any such breach. To the contrary, Intermarine has continued to behave as if the release were valid in all other forms, including with respect to the withdrawal of a separate administrative expense claim.[27]

15.    Additionally, the undisputed evidence clearly establishes that the Debtors, not SEACOR, made the decision to set over the Retro MSP Payments into the estates of the Debtors in order for the Debtors to satisfy the conditions precedent of the Plan and go effective.[28] Manuel Estrada, Waterman's CFO at the time, testified that he made this decision along with Waterman's treasurer.[29] In fact, Intermarine admits this several times in its own Statement of Facts. For example, in describing the Declaration submitted by SEACOR's corporate

---

[25] Intermarine's Summary Judgment Motion at ¶ 19.

[26] The Reorganized Debtors also strongly deny that SEACOR has in fact breached any obligation found in the MOA or any other contract. Confusingly, however, Intermarine seems to also allege that SEACOR's alleged breach of the language in Exhibit A of the MOA "is a breach by the Debtor that renders the waiver language in the MOA unenforceable." Intermarine's Summary Judgment Motion at ¶ 13. To the extent a response is required, the Reorganized Debtors strongly deny that Waterman breached any part of the MOA—an agreement to which it is not a party.

[27] *See* Withdrawal of Motion of US Ocean, LLC for Allowance and Payment of Administrative Expense Claim From Central Gulf Lines, Inc. [Docket No. 844].

[28] Dep. Tr. of Manuel Estrada dated Mar. 22, 2018 ("Estrada Dep. Tr.") at 106:2–107:7, **Ex. K** to Statement Response; *see also* Statement Response ¶¶ 45, 51.

[29] **Ex. K**, Estrada Dep. Tr. at 106:6–11.

9

representative, Intermarine avers: "Daniel J. Thorogood stated as follows regarding *the decision made by the Debtor* prior to the Effective Date to not pay Intermarine the catch-up MSP Stipend . . . ."[30]

### B. Regardless of the Fact that SEACOR *Did Not* Breach Any Part of the MOA, and There Has Been No Finding of Such, the Purported Breach Would Not Render the Release Provision Unenforceable.

16. Intermarine's argument that the release provision is somehow invalidated by an imagined and newly alleged breach by SEACOR has no support in law or fact. As an initial matter, the MOA's release provision is clear and unambiguous, as briefed more fully in the Reorganized Debtors' Motion for Summary Judgment.[31] "The proper interpretation of an unambiguous contract is a question of law for the court."[32] A contract is not ambiguous merely because the parties assert differing interpretations; rather, "where a contract provision is unambiguous, a court must interpret the contract to 'effectuate its plain language.'"[33] The Court must make this determination without any reference to extrinsic evidence.[34] Moreover, where parties of equal bargaining power like Intermarine and SEACOR enter into a release agreement, "the intent of the parties is indicated by the language employed."[35]

17. It is undisputed that Intermarine agreed to "irrevocably release any and all claims" against the Debtors and Reorganized Debtors.[36] With respect to releases, "[i]t is well settled

---

[30] Intermarine's Statement of Facts at ¶ 46 (emphasis added).

[31] *See* Reorganized Debtors' Motion for Summary Judgment at § II.

[32] *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2001); *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010).

[33] *Corines v. Charter One Bank*, 365 Fed. App'x 237, 238 (2d Cir. 2010) (citing *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002)).

[34] *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("The parties' rights under an unambiguous contract should be fathomed from the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable.").

[35] *Id.* at 238–39 (quoting *Middle East Banking Co. v. State St. Bank Int'l,* 821 F.2d 897, 907 (2d Cir. 1987)).

[36] *See* Intermarine's Statement of Facts at ¶ 22.

10

under New York law that 'a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties.'"[37]  Here, the release provision in the MOA plainly states that Intermarine "irrevocably waived *any and all claims* against the Debtors or the Reorganized Debtors (as defined in the ISH Chapter 11 Plan) whether known or unknown, asserted or unasserted."[38]  This release "must be interpreted to give the intent of the parties' effect as indicated by the clear meaning of the words used by the parties."[39]  Indeed, to underscore Intermarine's clear release of any and all potential claims against the Debtors and Reorganized Debtors upon the Effective Date of the Plan and assumption of the Amended Charters, the parties carved out proof of claim number 1367 from Intermarine's irrevocable general release.[40]  Likewise, the parties were careful to note—"[f]or the avoidance of doubt"—that the release did not eliminate Intermarine's ability to bring claims against the Reorganized Debtors arising *after* the Effective Date.[41]  The *only* reasonable interpretation of this unambiguous language, then, is that Intermarine released "*any and all claims*" that were not expressly carved out from the release.[42]

---

[37] *Interpharm, Inc. v. Wells Fargo Bank, N.A.,* No. 08 Civ. 11365, 2010 WL 1257300, at *6 (S.D.N.Y. Mar. 31, 2010) (quoting *DuFort v. Aetna Life Ins. Co.,* 818 F. Supp. 578, 581 (S.D.N.Y.1993)).

[38] MOA at 2(a)(iv) (emphasis added); Intermarine's Statement of Facts at ¶ 22.

[39] *In re Slater*, No. 03–16647(PCB), 2008 WL 755015, at *5 (Bankr. S.D.N.Y. Mar. 19, 2008).  The effect of the MOA's unambiguous terms is the same regardless of whether the Court treats the language as "waiving" or "releasing" all claims against the Debtors and Reorganized Debtors.  Where a party has waived a known right through an express agreement, that party has "clearly manifested its intent to relinquish" that right and no further consideration of the parties' intent by the court is warranted.  *In re Lehman Bros. Holdings,* 544 B.R. 62, 70 (Bankr. S.D.N.Y. 2015) (granting summary judgment where express waiver provision of the parties' contract precluded creditor's claim).  Thus, the plain and unambiguous language of the MOA shows that Intermarine has waived the ability to bring any purported Administrative Expense Claim regarding the Retro MSP Payments.

[40] MOA at 2(a)(iv), **Ex. D** to Reorganized Debtors' Statement of Undisputed Facts; Intermarine's Statement of Facts at ¶ 22.

[41] MOA at 2(a)(iv) ("For the avoidance of doubt, nothing contained herein shall release the Reorganized Debtors (as defined in the ISH Chapter 11 Plan) from complying with their post-Effective Date obligations . . . ."); Statement Intermarine's Statement of Facts at ¶ 22.

[42] MOA at 2(a)(iv) (emphasis added); *see* Dep. Tr. William Terrill dated Mar. 23, 2018 ("Terrill Dep. Tr.") at 35:11–17 ("We waived claims in consideration of the amended and the original charter agreements and the ongoing structure."), **Ex. J** to Reorganized Debtors' Statement of Undisputed Facts.

11

18. There is no language whatsoever in the MOA—and Intermarine does not and cannot point to any—that invalidates or renders unenforceable the clear and unambiguous release of any and all claims arising prior to the Effective Date. Intermarine agreed, in exchange for continuing the mutually beneficial business relationship it had established with Waterman, to release any claims that may have accrued, known or unknown.[43] Intermarine is undeniably bound by the terms of that agreement.

### C. There is No Legal Support for Intermarine's Strained Argument.

19. Intermarine has failed to provide any legal support for its argument that the unambiguous release language should not be enforced. Intermarine's reliance on *Encompass Insurance Company of America v. English* is misplaced and does not support Intermarine's claim for summary judgment. In fact, the District Court in that case found that a waiver provision was enforceable, despite the insurance company's claims that a tenant's waiver of a subrogation provision was unenforceable because the tenant breached his lease.[44] The District Court determined that only in narrow circumstances would a waiver provision be rendered unenforceable by another the breach of another provision of the contract: (1) where the agreement "expressly condition[s] the enforcement of the waiver on the performance of the breached provisions," and (2) "the breached provisions do not affect the allocation of risk between the contracting parties . . . and their insurers . . . ."[45]

20. Under the Court's analysis in *English*, the release provision is independent of the obligation provision identified by Intermarine. Applying the first *English* factor, Intermarine's waiver is not expressly conditioned on the performance by SEACOR of the identified

---

[43] *See* Dep. Tr. of Daniel J. Thorogood dated Jan. 4, 2018 ("Thorogood Dep. Tr.") at 49:5–15, **Ex. L** to Statement Response.

[44] *Encompass Ins. Co. of Am. v. English*, No. 11 Civ. 2606 (KMW), 2013 U.S. Dist. LEXIS 31152 (S.D.N.Y. Mar. 4, 2013)).

[45] *Id.* at *17–19.

12

obligation.[46] In fact, Intermarine's release of its claim is entirely based on Section 2(a)(iv) of the MOA, which is part of the parties' agreements on bankruptcy matters. The allegedly breached obligation, however, is located in Exhibit A to the MOA, which deals with amendments to the various charter agreements between the parties. The lack of any express cross-reference between the provisions at issue shows that they are independent of one another.[47]

21. The second factor from *English*, that "the breached provisions do not affect the allocation of risk between the contracting parties . . . and their insurers," does not apply to and is easily distinguishable from the instant case, given that insurance and subrogation issues are not involved here. SEACOR's obligation to not "take any action that would cause, directly or indirectly, any MSP Stipend to be included in the estate of the Debtors . . . in the ISH Chapter 11 Cases" does not implicate the allocation of risk between the parties.[48]

22. More broadly, evaluating "a review of the [contract's] terms as a whole, and the general construction of the document," it is clear that the provisions simply do not directly depend on one another.[49] The Court in *Indian Harbor* noted that the question of whether covenants made by parties to a contract are dependent or independent of each other is "a question to be determined by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication."[50] A plain reading of SEACOR's obligation set forth above reveals a narrow obligation relating to MSP Stipends that are received by the Reorganized Debtors, which by definition must occur after the date of the

---

[46] *See Indian Harbor Ins. v. Dorit Baxter Skin Care, Inc.*, 430 F. Supp. 2d at 193 (finding a waiver enforceable because, among other things, "the Lease does not contain any *express statement* conditioning the enforcement of the [waiver] clause on defendant's performance of any other covenant") (emphasis added).

[47] *See* MOA at 2(a)(iv) & Ex. A, **Ex. D** to Reorganized Debtors' Statement of Undisputed Facts.

[48] *Id.*

[49] *Indian Harbor*, 430 F. Supp. 2d at 192.

[50] *Id.* (citations omitted).

Effective Date of the Plan.[51]  Intermarine's release, on the other hand, is a comprehensive provision relating to "*any and all claims*" against the Debtors and the Reorganized Debtors upon the Effective Date of the Plan and assumption of the Amended Charters.

23. Therefore, under applicable New York law, Intermarine's release of its claims is independent of SEACOR's obligation and the alleged breach (unproven and unfounded as it is) of such obligation would not nullify Intermarine's release.  Given the fact that Intermarine could cite to no better authority than a case discussing the narrow circumstances of a subrogation clause within an apartment lease for its strained legal proposition, it is clear that this argument is merely an unpersuasive distraction to attempt to circumvent the terms of the MOA that now bar Intermarine's alleged claim.

24. In sum, Intermarine's Summary Judgment Motion should be denied because, assuming *arguendo* that Intermarine had supported its administrative expense claim with any evidence, which it has not, the MOA's plain, unambiguous language establishes that Intermarine waived any and all claims upon the parties' assumption of the Amended Charters that it did not expressly carve out of the release provision, which would include the purported administrative expense claim.  Intermarine's claim for the Retro MSP Payments is thus barred as a matter of law by the MOA's express terms.  It is undisputed that the funds were authorized and appropriated prior to the Effective Date.  It is also undisputed that Intermarine released any claim to those funds upon the Effective Date and assumption of the Amended Charters.  Therefore, the Summary Judgment Motion should be denied.

---

[51] *See* Intermarine's Summary Judgment Motion at ¶ 15 (stating that the MOA "refers to MSP Stipends received by the Reorganized Debtor").

14

IV. **Intermarine Waived Any Purported Right to Collect the Retro MSP Payments Because It Failed to Assert a Cure Claim.**

25. Finally, the Summary Judgment Motion should be denied because Intermarine did not preserve its right to pursue the Retro MSP Payments as a cure claim upon the assumption of the Amended Charters on the Effective Date. Intermarine cannot now assert any such claim for pre-Effective Date amounts, or assert that the assumption of the Amended Charters is not effective because the Reorganized Debtors have not paid a cure claim, because Intermarine failed to assert a cure claim for such amounts under the procedures proscribed by the Disclosure Statement Order and the Plan.[52] It is undisputed that the Debtors assumed the Amended Charters (as amended pursuant to the MOA) on the Effective Date with a cure cost of $0.[53] Intermarine does not dispute that it received notice of the Debtors' asserted cure claim and the specific mechanism by which Intermarine was required to object to that cure cost if it took any issue with it.[54] Intermarine failed to object and is now indisputably and forever barred from asserting its claim.[55]

26. Intermarine argues that the Petition Date Charter Agreements were not in default at the time of the confirmation hearing in February 2017 and that any "future amounts" due should not be included in the cure amount.[56] The Court's logic in the *R.H. Macy* case cited by Intermarine is inapplicable here, however, as the obligations in that case—reimbursement by a tenant of property taxes to a landlord—were unmatured, contingent obligations *at the time of*

---

[52] *See* Reorganized Debtors' Statement of Undisputed Facts at ¶ 21. *See also* 11 U.S.C. § 365(b)(1)(A) (requiring that a debtor cure (or provide adequate assurance that the debtor will promptly cure) a default in an executory contract prior to the time of assumption).

[53] Reorganized Debtors' Statement of Undisputed Facts at ¶¶ 17, 19.

[54] *See* Affidavit of Service [Docket No. 605]; Affidavit of Service [Docket No. 659]; Terrill Dep. Tr. at 61:11–25, **Ex. J** to Reorganized Debtors' Statement of Undisputed Facts ("I'm not disputing service . . . I know there were a lot of documents because I read them all.").

[55] Reorganized Debtors' Statement of Undisputed Facts at ¶ 20.

[56] *See* Intermarine's Summary Judgment Motion at ¶¶ 11–12 (citing *In re R.H. Macy & Co.*, 236 B.R. 583 (Bankr. S.D.N.Y. 1999); *In re Aerovias Nacionales de Colom.*, 323 B.R. 879, 889 (Bankr. S.D.N.Y. 2005)).

15

*assumption.*[57] Upon the assumption of the Amended Charters, however, the Retro MSP Payments were not contingent "future amounts." On the contrary, Intermarine does not dispute that the amounts had been anticipated for months and received prior to the Effective Date and the assumption of the Amended Charters.[58] In fact, the Plan could not become effective until the Retro MSP Payments were approved and appropriated by the federal government and therefore due and owing under the Amended Charters.[59]

27.     It is undisputed that neither Patriot nor US Ocean objected to a cure amount of $0 even though they knew, or should have known, that the Plan could not become effective until the Retro MSP Payments were approved and appropriated by the federal government and therefore due and owing under the Amended Charters.[60] Specifically, the consummation of the PCTC Transaction was a condition precedent to the effectiveness of the Plan.[61] For the PCTC Transaction to close, the purchase agreement required that:

> The United States Government shall have approved and authorized an increase in the MSP stipend payable to Seller under the applicable MSP Operating Agreement in an amount that is no less than USD $4,900,000 per Vessel for 2017.[62]

Therefore, Intermarine knew, or should have known, that the Retro MSP Payments would be appropriated and therefore due and owing under the Petition Date Charter Agreements prior to

---

[57] *Macy*, 236 B.R. 583.

[58] Intermarine's Statement of Facts at ¶¶ 12–14; *see also* Reorganized Debtors' Statement of Undisputed Facts at ¶¶ 21–22; Reorganized Debtors' Statement Response at ¶ 29.

[59] Reorganized Debtors' Statement of Undisputed Facts at ¶¶ 21–22.

[60] *Id.*

[61] *Id.* at ¶¶ 16, 21–22; s*ee* Plan at ¶ 10.2.5 [Docket No. 671-1] (including the "closing of all transactions contemplated by the PCTC Transaction" in the conditions precedent to the Effective Date). In addition, the Plan expressly required that "[a]ll material governmental, regulatory, and third party approvals, including the necessary approvals from the U.S. Department of Transportation Maritime Administration (MARAD), authorizations, certifications, rulings, no-action letters, opinions, waivers and consents required in connection with the Plan, if any, shall have been obtained and remain in full force and effect . . . ." *Id.* This provision would include, by way of the PCTC Transaction, the appropriation of funds for the Retro MSP Payment.

[62] Notice of Filing of Amended Plan Supplement Documents, Exhibit I [Docket No. 646].

the Effective Date of the Plan. Intermarine has submitted no evidence to the contrary. Consequently, Intermarine was obligated to assert any claim on such amounts as a cure cost upon the assumption of the Amended Charters.

28. This Court analyzed a similar situation in *Aerovias Nacionales de Colombia*.[63] In *Aerovias*, as in the case of the Reorganized Debtors, a contract counterparty asserted a claim against a chapter 11 debtor arising from amendments to the contract upon assumption by the reorganized debtor. Specifically, the lessor agreed to reduced lease terms as part of the debtor lessee's agreement to assume the lease, but then filed a proof of claim for the agreed reductions. The Court denied the claim because, among other reasons, the lessor "gave up its bankruptcy claim to cure payments for future amounts that *would have been due* under the original leases if those leases had been assumed in their original form."[64] The lessor waived its ability to assert a claim in the debtor's bankruptcy case (and did not expressly preserve any such claim) in exchange for the payments to be received under the lease as amended.[65] Likewise, in the instant case, Intermarine consented to a $0 cure amount for known, future amounts in exchange for the assumption of the Amended Charters. Intermarine therefore cannot even assert the Administrative Expense Request, let alone be granted summary judgment on it.

29. Under the confirmed terms of the Plan and the *Notice of Executory Contracts and Unexpired Leases to be Assumed and Assigned or Rejected in Connection with the Debtors' First Amended Joint Chapter 11 Plan of Reorganization and the Proposed Cure Amounts with Respect to Assumed and Assigned Contracts and Leases* [Docket No. 595], to the extent a party fails to object to the cure amount set forth, "then the counterparty to the applicable Executory Contract

---

[63] 323 B.R. 879 (Bankr. S.D.N.Y. 2005).

[64] *Id.* at 889 (emphasis in original).

[65] *Id.*

17

or Unexpired Lease shall be deemed to have assented to . . . the Cure Amount proposed by the Debtors . . . , and shall ***forever be barred and enjoined from asserting such objection*** against the Debtors or terminated or modifying such contract on account of transactions contemplated by the Plan."[66]

30.  Because it is undisputed that Patriot and US Ocean failed to object to the cure amount of $0, they have waived their right to now assert an administrative claim for allegedly deferred or "catch-up" payments and are forever barred from doing so.  In any event, Intermarine released the purported claim when it executed the MOA.  And in the simplest terms, Intermarine has not complied with the rules for summary judgment motions nor supported its motion with any evidence.  For all of these reasons, the Summary Judgment Motion should be denied.

## CONCLUSION

WHEREFORE, the Reorganized Debtors respectfully request that this Court (a) deny Intermarine's Summary Judgment Motion, (b) grant the Reorganized Debtor's motion for summary judgment, and (c) grant the Reorganized Debtors such other and further relief as may be just and proper.

---

[66] *See* Plan at ¶ 8.2.3; Docket No. 595 at 3 (emphasis added).

| | |
|---|---|
| Dated:  New York, New York<br>June 8, 2018 | AKIN GUMP STRAUSS HAUER & FELD LLP<br>By: */s/ Sarah Link Schultz*<br>David H. Botter<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>Sarah Link Schultz (admitted *pro hac vice*)<br>David F. Staber (admitted *pro hac vice*)<br>1700 Pacific Avenue, Suite 4100<br>Dallas, Texas 75201<br>Telephone: (214) 969-2800<br>Facsimile: (214) 969-4343<br><br>*Counsel to Reorganized Debtors* |