**Hearing Date: March 7, 2019, at 10:00 a.m. (prevailing Eastern Time)**
**Response Deadline: February 4, 2019, at 4:00 p.m. (prevailing Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
David H. Botter

2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Sarah Link Schultz (admitted *pro hac vice*)
David F. Staber (admitted *pro hac vice*)

*Counsel to Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>INTERNATIONAL SHIPHOLDING CORPORATION, *et al.*,[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 16-12220 (SMB)<br><br>Jointly Administered |

**RESPONSE OF THE REORGANIZED DEBTORS TO MOTION OF
THE GUC TRUSTEE TO ENFORCE THE PLAN AND CONFIRMATION ORDER**

The Reorganized Debtors hereby file this response (the "Response") to the *Motion of the GUC Trustee to Enforce the Plan and Confirmation Order with Respect to the Reorganized Debtors' Responsibility to Defend Asbestos Claims, Relieving Stay and Injunction, and Approving the GUC Trustee's Right Not to Defend Asbestos Claims* [Docket No. 1047] (the "Motion").[2] In support of this Response, the Reorganized Debtors respectfully state as follows:

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: International Shipholding Corporation (9662); Central Gulf Lines, Inc. (8979); Coastal Carriers, Inc. (6278); Waterman Steamship Corporation (0640); N.W. Johnsen & Co., Inc. (8006); Tower LLC (6755); Frascati Shops, Inc. (7875); Gulf South Shipping PTE LTD (8628); and LCI Shipholdings, Inc. (8094). The service address for each of the above Reorganized Debtors is 2200 Eller Drive, P.O. Box 13038, Fort Lauderdale, FL 33316.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

4827-9597-1972 v6

**PRELIMINARY STATEMENT**

By the Motion, the GUC Trustee attempts to revise the unambiguous language of the confirmed Plan to reallocate the burden of resolving General Unsecured Claims. A Plan that was a product of arms-length negotiations between the Debtors and the Committee. The Asbestos Claims at issue have been filed as general unsecured claims. No request has been made by any party to elevate or otherwise change this status. Nor has any request been made to determine that these claims were not discharged by the Plan. Therefore, only beneficiaries of the GUC Trust as holders of General Unsecured Claims will be impacted by the allowance of the Asbestos Claims. Under the Plan, the Reorganized Debtors owe no duty to the GUC Trust or its beneficiaries to administer General Unsecured Claims, including Asbestos Claims. Rather, the GUC Trustee is charged with these tasks, and cannot now transfer such obligations to the Reorganized Debtors.

**BACKGROUND**

    **A.**    **The Asbestos Claims**

1. Debtors Waterman Steamship Corporation ("Waterman") and Central Gulf Lines, Inc. ("Central Gulf") are named as defendants in lawsuits claiming damages related to asbestosis and asbestos-related malignancies. As of the Petition Date, Waterman and Central Gulf were named as defendant in 98 and 37 lawsuits, respectively, in various state and federal courts arising from asbestos-related claims. *See Disclosure Statement for First Amended Joint Chapter 11 Plan of Reorganization for International Shipholding Corporation and Its Affiliated Debtors* [Docket No. 537] (the "Disclosure Statement") § 3.1(d).

2. Of the approximately 1,398 proofs of claim filed against the Debtors, 816 of such proofs of claim asserted *general unsecured claims* against Waterman, Central Gulf, and Sulphur Carriers Inc. related to alleged exposure to asbestos onboard the Debtors' vessels (collectively, the "Asbestos Claims"). The amounts asserted in the Asbestos Claims ranged from $150,000 to

4827-9597-1972 v6

$3,000,000, with the majority alleged to be $1,000,000. The Asbestos Claims, however, did not include any specific information regarding the date of alleged diagnosis or the methodology used to calculate the Debtors' alleged liability. *See Debtors' Determination Motion with Respect to Certain Litigation Claims Solely for Voting Purposes Pursuant to Bankruptcy Rule 3018* [Docket No. 581] (the "Disallowance Motion") ¶ 11.

3.   Of the 816 Asbestos Claims that were filed, 744 of such claims were dismissed in federal court for lack of personal jurisdiction. In addition, forty-six additional claims have been dismissed on the "bankruptcy-only-docket."[3] Seven claims were dismissed for other reasons. Of the remaining claims, the Debtors' believed their aggregate liability was approximately $0 as a result of the prior dismissals and settlements. *See* Disclosure Statement § 5.12, n.31; Disallowance Motion ¶ 14.

4.   As a result of an agreement with counsel for the holders of a majority of the Asbestos Claims, on February 15, 2017, the Order Granting Debtors' Determination Motion with Respect to Certain Litigation Claims Solely for Voting Purposes Pursuant to Bankruptcy Rule 3018 was entered [Docket No. 636] (the "Determination Order"). The Determination Order included schedules setting forth temporary allowance of Asbestos Claims based on the nature of the alleged injury and whether the underlying litigation had been dismissed.

B.   **The Plan and the GUC Trust Agreement**

5.   The Plan was confirmed by this Court's entry of the Confirmation Order on March 2, 2017 [Docket No. 671], and the Effective Date occurred on July 3, 2017 [Docket No. 796]. On

---

[3] The "bankruptcy-only-docket" means that claims against all entities who were not subject to a bankruptcy proceeding at the time the applicable order was entered were dismissed and only claims against entities in bankruptcy at the time of the dismissal survived. Disallowance Motion ¶14.

3

the Effective Date, the GUC Trustee and the Reorganized Debtors executed the GUC Trust Agreement. *See* Plan § 9.2.2.

6.  The Plan reflects a settlement reached by the Debtors and the Unsecured Creditors Committee (the "Committee") with respect to the treatment of the Debtors' general unsecured creditors. As part of such settlement, the Debtors and the Committee agreed to the formation of the GUC Trust for the benefit of the holders of allowed general unsecured claims against the GUC Trust Debtors, including the Asbestos Claims.[4] Accordingly, on the Effective Date, the GUC Trustee and the Reorganized Debtors executed the GUC Trust Agreement and the GUC Trustee was appointed. *See* Plan §§ 9.2.2; 9.5.

7.  The GUC Trust Agreement provides that the GUC Trust was created "for the sole purpose of collecting, holding, administering, liquidating and distributing the [GUC] Trust Assets for the benefit of the holders of [GUC] Claims [against the GUC Trust Debtors]."[5] *See* GUC Trust Agreement §§ 1.3.1; 1.3.3; 2.2. The Asbestos Claims were filed as, and remain, GUC Claims against the GUC Trust Debtors and, therefore, are claims to be administered by the GUC Trust.

8.  On the Effective Date, the GUC Trust Assets automatically vested in the GUC Trust, free and clear of all claims and interests. *See* Plan § 9.3.1. As defined in the Plan, the GUC Trust Assets consist of "(a) $3 million in Cash and (b) the GUC Trust Causes of Action," and the GUC Trust Causes of Action include "any defense or counterclaim relating to any Disputed General Unsecured Claims." *See id.* §§ 1.1.66; 1.1.68. Upon the transfer of the GUC Trust Assets to the GUC Trust on the Effective Date, the GUC Trust stepped into the shoes of the Debtors with respect

---

[4] Pursuant to the terms of the Plan, separate treatment was agreed to by the Debtors and the Committee with respect to general unsecured claims against LCI Shipholdings, Inc., Gulf South Shipping PTE LTD, and Marco Shipping Company PTE LTD, and such claims were outside the scope of the GUC Trust. *See* Plan § 3.3.7(b).

[5] The GUC Trust Debtors included all of the Debtors except Gulf South Shipping PTE LTD., LCI Shipholding, Inc. and Marco Shipping Company PTE LTD.  Plan § 1.1.69.

4

to the GUC Claims, including the Asbestos Claims, and the Debtors ceased to have any interest in or with respect to the GUC Trust Assets or the GUC Trust. *See id.* § 9.3.1; GUC Trust Agreement § 2.3.2 ("On the Effective Date, the [GUC] Trust shall stand in the shoes of the Debtors for all purposes with respect to the [GUC] Trust Assets and administration of the [GUC] Claims.").

    **C.**    **The GUC Trustee's Motion to Compel**

    9.    On November 28, 2018, the GUC Trustee filed the Motion asserting, among other things, that the Reorganized Debtors, and not the GUC Trustee, are obligated to defend the Asbestos Claims. *See* Motion ¶ 20. A hearing on the Motion is currently scheduled before this Court for March 7, 2019.

## RESPONSE

    **A.**    **The GUC Trustee is Responsible for Liquidating GUC Claims**

    10.    By the Motion, the GUC Trustee incorrectly asserts that the Reorganized Debtors are responsible for defending, or reimbursing the GUC Trust for defending, asbestos-related causes of action that were transferred to the GUC Trust as GUC Trust Assets on the Effective Date. Contrary to the assertions of the GUC Trustee, the plain language of the Plan and the GUC Trust Agreement clearly establish that following the creation of the GUC Trust and the transfer of the GUC Trust Assets on the Effective Date, the Reorganized Debtors ceased to have any liability with respect to the GUC Trust Assets, including the GUC Trust Causes of Action and, therefore, the Reorganized Debtors do not have any obligation to defend the causes of action underlying the Asbestos Claims or reimburse the GUC Trust for any of its costs in doing so.

    11.    The GUC Trustee Agreement clearly sets forth the responsibility of the GUC Trust for the administration of General Unsecured Claims.

> 3.5    <u>Responsibility for Administration of Claims</u>. ***As of the Effective Date, the Trust shall become responsible for administering and paying distributions to the holders of Allowed***

5

> ***Claims entitled to receive distributions from the Trust pursuant to the Plan.*** The Debtors or the Reorganized Debtors, as applicable, shall have the authority to file, settle, compromise, withdraw or litigate to judgment any objections to claims as permitted under the Plan; provided, however, that, subject to section 6.2 of the Plan, the Trustee and the Debtors or the Reorganized Debtors, as applicable, shall have the joint authority to file, settle, compromise, withdraw or litigate to judgment any objection to General Unsecured Claims in accordance with the terms of this Agreement; provided further, however, that the Debtors or the Reorganized Debtors, as applicable, shall provide notice prior to seeking the reclassification of any claim to a General Unsecured Claim and the GUC Trust shall have standing to object to such reclassification. ***The Trust shall have the right to object to the allowance of any claim on any ground and shall be entitled to assert all defenses of the Debtors and their Estates. The Trust shall also be entitled to assert all of the Estates' rights under applicable law, including, without limitation, section 558 of the Bankruptcy Code. The Trust may also seek estimation of any General Unsecured Claims under and subject to section 502(c) of the Bankruptcy Code.***

GUC Trustee Agreement § 3.5. (emphasis added)  See also, Plan § 6.2. While the Reorganized Debtors have authority to object to General Unsecured Claims, it is the GUC Trust that has the responsibility for "administering and paying distributions to the holders of Allowed Claims."

12.  Further, the actions and defenses underlying the Asbestos Claims are GUC Causes of Action that were transferred to the GUC Trust as GUC Trust Assets on the Effective Date. *See* Plan §§ 1.1.66; 1.1.68. Section 1.1.66 of the Plan defines GUC Trust Assets as "(a) $3 million in Cash and (b) the GUC Trust Causes of Action." Plan § 1.1.66. Further, section 1.1.68 of the Plan defines GUC Trust Causes of Action to include "any defense or counterclaim relating to any Disputed General Unsecured Claims." Plan § 1.1.68. No party has established, or has sought to establish, that the Asbestos Claims are not GUC Claims or that the actions underlying the Asbestos Claims are not GUC Causes of Action, and the GUC Trustee does not dispute the nature of the Asbestos Claims in the Motion. This alone should foreclose the GUC Trustee's argument.

6

13. Moreover, the Asbestos Claims were filed as general unsecured claims and, therefore, are properly administered by the GUC Trust and not the Reorganized Debtors. Once the GUC Trust Assets were transferred to the GUC Trust, the Reorganized Debtors ceased to have any responsibility with respect to such assets. *See* Plan §§ 9.3.1 ("Upon the transfer of the GUC Trust Assets, the Debtors shall have **no** interest in or with respect to the GUC Trust Assets or the GUC Trust."); 9.1 ("The Debtors shall transfer, **without recourse**, to the GUC Trust all of their right, title and interest in the GUC Trust Assets. Upon the transfer by the Debtors of the GUC Trust Assets to the GUC Trust, the Debtors will have no reversionary or further interest in or with respect to the GUC Trust Assets or the GUC Trust.") (emphasis added); *see also* GUC Trust Agreement § 2.3.2 ("On the Effective Date, the [GUC] Trust shall stand in the shoes of the Debtors for all purposes with respect to the [GUC] Trust Assets and administration of the [GUC] Claims."). Indeed, the Plan provides that following the Effective Date, the GUC Trustee—not the Reorganized Debtors—is the party with standing to prosecute, defend, or settle the GUC Causes of Action. *See* Confirmation Order at p. 15 ("On and after the Effective Date, the Reorganized Debtors may . . . prosecute, compromise or settle any . . . Causes of Action (**that are not GUC Trust Causes of Action**).") (emphasis added); *see also* Plan § 9.6 ("The GUC Trustee shall . . . prosecute any GUC Trust Causes of Action").

14. It is clear from the plain language of the Plan and the GUC Trust Agreement that the Asbestos Claims and the causes of action related thereto were transferred to the GUC Trust as of the Effective Date. Accordingly, the Reorganized Debtors have no interest in, and are no longer liable with respect to, the defense of the Asbestos Claims.

15. In paragraph 10 of the Motion, the GUC Trustee asserts that the Reorganized Debtors have an obligation to defend the Asbestos Claims by quoting only part of the first sentence

7

of section 6.2 of the Plan. Upon review of the entire first sentence of section 6.2 of the Plan, it is clear that while the Reorganized Debtor has the *authority* to object to General Unsecured Claims, the primary *responsibility* to do so falls on the GUC Trustee.

> The Debtors or the Reorganized Debtors, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan; provide, however, that the GUC Trustee and the Debtors or the Reorganized Debtors, as applicable, shall have the joint authority to file, settle, compromise, withdraw or litigate to judgment any objection to General Unsecured Claims in accordance with the terms of the GUC Trust Agreement; provided further, however, that the Debtors or the Reorganized Debtors, as applicable, shall provide notice prior to seeking the reclassification of any Claim to a General Unsecured Claim and the GUC Trust shall have standing to object to such reclassification.

Plan § 6.2. This allocation of authority and responsibility to object to General Unsecured Claims is consistent with the structure of the Plan and the settlement with the Committee. General Unsecured Claims receive their recovery from the GUC Trust, not the Reorganized Debtors. The Reorganized Debtors generally have no financial stake in the outcome of objections to the allowance of General Unsecured Claims and has no obligations to the beneficiaries of the GUC Trust. While the Reorganized Debtors have the authority to object to all Claims, regardless of classification, they have no obligation to do so. The GUC Trustee, on the other hand, not only has the authority to object to General Unsecured Claims, but has the responsibility to do so, in a prudent manner. The GUC Trust assets are a finite pool of assets to be distributed on a pro rata basis. Thus, in administering the GUC Trust, the GUC Trustee has an incentive to object to invalid claims. In fact, the GUC Trustee has filed numerous claim objections. See Docket Nos. 908 and 909. Because the Reorganized Debtors have no financial stake in the allowance of the Asbestos Claims and have no obligations to the GUC Trust or its beneficiaries, the Reorganized Debtors could simply waive all objections to the Asbestos Claims.

8

  **B.**  **The Availability of Insurance for the Asbestos Claims Does Not Alter the Responsibility of Liquidating the Asbestos Claims**

  16.  As the GUC Trustee acknowledges in the Motion, the Asbestos Claims are covered by insurance policies and/or indemnity. *See* Motion ¶¶ 12-14. The Plan and Disclosure Statement provide that with respect to claims covered by insurance or indemnity, the GUC Trust, Debtors or Reorganized Debtors shall not have any liability ***unless and until*** the claimants have exhausted their remedies against the applicable insurance policies. *See* Disclosure Statement § 13.5 ("Holders of Claims that are covered by the Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies"); Plan § 6.5.1 ("No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy."). Further, the Plan provides that "the Debtors or Reorganized Debtors, as applicable, shall have no obligation to pay any amounts in respect of prepetition deductibles." Plan § 6.5.1.

  17.  The Asbestos Claims are covered by insurance or an indemnity agreement and that each applicable insurance policy or indemnity agreement contains a "pay to be paid" provision, obligating a party to expend defense costs and satisfy damages before being reimbursed.[6] Accordingly, before the holder of an Asbestos Claim is entitled to seek any distribution from the GUC Trust pursuant to the terms of the Plan, it is the holder's responsibility to (i) liquidate the claim through either resolution of litigation or settlement and (ii) seek payment of such claim from applicable insurance. *See* Plan § 6.5.1. The GUC Trustee does not assert that any holder of an Asbestos Claim has satisfied either of these requirements. If the holder of an Asbestos Claim establishes that it has liquidated its claim and sought payment from the applicable insurance

---

[6] *See* Disclosure Statement, § 3.1(d), fn. 26.

9

policies, to the extent the Asbestos Claim was not fully satisfied, such claim would become a General Unsecured Claim, payable from the GUC Trust. *See id.* Now that the Effective Date has occurred and the GUC Trust has been established, there is simply no reading of the Plan that would hold the Reorganized Debtors responsible for the payment of an Asbestos Claim (or any other general unsecured claim). Further, the Plan explicitly provides that the Reorganized Debtors "shall have no obligation to pay any amounts in respect of pre-petition deductibles." *See id.* If the GUC Trustee wants to defend the Asbestos Claims or the underlying litigation in respect of such claims, the GUC Trust needs to advance funds to the applicable claimant and, subsequently, seek reimbursement from the applicable insurance policy. Accordingly, the terms of the Plan clearly provide that the Reorganized Debtors are not responsible for the payment of Asbestos Claims or to incur defense costs (or reimburse the GUC Trust for such defense costs) in respect of asbestos-related causes of action. For these reasons, the Motion should be denied in its entirety.

    **C.    Any Obligations of the Reorganized Debtors Under the Insurance Policies is Conditional**

18.    The Liquidating Trustee inaccurately asserts that through the asbestos policies, the Reorganized Debtors must defend and pay the Asbestos Claims to obtain coverage for the benefit of the GUC Trust and its beneficiaries. In paragraph 26 of the Motion, the GUC Trustee omits the conditionality of any obligation of the Reorganized Debtors to perform any obligations under the Insurance Policies. The penultimate sentence of section 6.5.3 provides, "[t]o the extent that any such claims ***have not been satisfied or discharged in the Chapter 11 cases***, the Reorganized Debtors will comply with any valid, contractual obligations they may have under the Asbestos Policies as applicable." Plan § 6.5.3 (emphasis added).[7] The Reorganized Debtors' obligations to

---

[7] Pursuant to Plan § 7.1, Allowed Claims are satisfied by any Plan Distributions and deliveries to be made on account of such Allowed Claims.

perform under the Insurance Policies is expressly conditioned on the Asbestos Claims being determined to be excepted from the discharge or not otherwise being satisfied under the Plan.[8] The Asbestos Claims have been discharged and will be satisfied by their treatment under the Plan. Plan § 7.1. The asbestos policies were not deemed rejected and remain available to the Reorganized Debtors in the event that certain Asbestos Claims are not discharged. This provision does not amount to an assumption of an obligation to defend the Asbestos Claims for the benefit of the GUC Trust. Likewise, the GUC Trustee attempts to lift provisions of section 6.5.1 of the Plan out of content to contort the meaning. Section 6.5.1 of the Plan allows insured claims to liquidate their claims and collect from applicable insurance policies. Any unpaid portion of the Claim is an Allowed General Unsecured Claim which is payable from the GUC Trust. The Reorganized Debtors are not required to fund deductibles in order to trigger coverage. These plan provisions do not create an obligation to the GUC Trust for the Reorganized Debtors to assume the defense of the Asbestos Claims and fund amounts to access coverage. In fact, the contrary result is dictated by the language of these Plan provisions.

### D. The GUC Trustee is Attempting to Retrade the Settlement with the Committee

19. As described above, the creation and funding of the GUC Trust under the Plan was a result of a settlement with the Committee. Three million dollars in cash and other assets were transferred to the GUC Trust. The history and scope of the issues involving the Asbestos Claims were spelled out in the Disclosure Statement, the Determination Motion, and the Determination Order. In fact, the Disclosure Statement specifically cautions that the Asbestos Claims could dilute creditor recoveries. Disclosure Statement, § 10.1(e). The vast majority of Asbestos Claims were

---

[8] "[W]hen interpreting a contract the entire contact must be considered so as to give each part meaning." *See Brooke Group v JCH Syndicate 488*, 640 N.Y.2d 530, 533 (1996).

filed by a single law firm. The majority of these claims have been dismissed in the underlying litigation as described in the Determination Motion and Determination Order. The GUC Trust states that the Reorganized Debtors have the records associated with the Asbestos Claims, but does not allege that they have requested those records or sought to employ the Debtors' former counsel in the asbestos cases to assist in resolving the Asbestos Claims. The GUC Trustee now finds that the task of liquidating the General Unsecured Claims may be more costly and time consuming than he originally anticipated. However, that is the responsibility of the GUC Trustee, not the Reorganized Debtors. Rather than complying with his responsibilities under the GUC Trust Agreement, the GUC Trustee improperly seeks to (i) to modify the confirmed Plan to place new burdens on the Reorganized Debtors, and (ii) to modify the plan injunction without a sufficient showing of either standing or cause that would justify those changes.[9] Contrary to the assertions of the GUC Trustee, the Reorganized Debtors would be saddled with the direct and indirect costs of administering the claims, potential exposure on the deductibles and risks associated with collection under the insurance policies and indemnification agreements. None of these burdens of the administration of unsecured claims were placed upon the Reorganized Debtors.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that this Court (i) deny the relief requested in the Motion, (ii) hold that the Reorganized Debtors are not obligated to defend the Asbestos Claims, and (iii) grant such other and further relief as may be appropriate.

---

[9] In connection with the GUC Trustee's reservation of rights to seek reimbursement of costs and expenses associated with the administration of Asbestos Claims, the Reorganized Debtors reserve their rights concerning such costs and expenses.

4827-9597-1972 v6

| | |
|---|---|
| Dated: New York, New York<br>February 4, 2019 | AKIN GUMP STRAUSS HAUER & FELD LLP<br>By: /s/ *Sarah Link Schultz*<br>David H. Botter<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>Sarah Link Schultz (admitted *pro hac vice*)<br>David F. Staber (admitted *pro hac vice*)<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201<br>Telephone: (214) 969-2800<br>Facsimile: (214) 969-4343<br><br>*Counsel to Reorganized Debtors* |

4827-9597-1972 v6